NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

CULLIGAN LTD.,[1]

       Debtor in Foreign Proceedings.

-------------------------------------------------------------------x

Chapter 15

Case No. 20-12192 (JLG)

**MEMORANDUM DECISION AND ORDER
ON MOTION FOR (I) RECOGNITION OF THE BERMUDA LIQUIDATION
AS A FOREIGN MAIN PROCEEDING AND (II) CERTAIN RELATED RELIEF**

**APPEARANCES:**

ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
Telephone: (212) 571-0550
Facsimile: (212) 571-0555
By:    Lawrence P. Gottesman
        David A. Berger
        David A. Shaiman

*Counsel to the Foreign Representatives*

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Fax: (212) 967-4258
By:    Kyle J. Ortiz
        Brian F. Shaughnessy
        Amanda C. Glaubach

SINGLER PROFESSIONAL LAW
CORPORATION
103 Johnson Street
P.O. Box 2298
Windsor, California. 95492
Telephone: (707) 823-8719
By:    Peter A. Singler

*Co-Counsel to the New York Plaintiffs*

---

[1]    Culligan Ltd. is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 35591. Culligan's registered office is located at c/o KPMG Advisory Limited, Crown House, 4 Par-la-Ville Road, Hamilton, Bermuda.

**HONORABLE JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE:**

## INTRODUCTION

Before the Court is the motion (the "<u>Recognition Motion</u>")[2] of Charles Thresh and

Michael Morrison, in their capacities as the joint liquidators and authorized foreign

representatives (in such capacity, the "<u>Foreign Representatives</u>") of Culligan, Ltd., a Bermuda

exempted company incorporated under the laws of Bermuda (the "<u>Debtor</u>" or "<u>Culligan</u>") that is

subject to a court-supervised liquidation proceeding under the Companies Act of 1981

(the "<u>Bermuda Companies Act</u>") entitled *In the Matter of Culligan Limited (In Members'*

*Voluntary Liquidation and In the Matter of the Companies Act 1981*, pending before the

Supreme Court of Bermuda (the "<u>Bermuda Court</u>"), Companies (Winding Up) Commercial

Court, 2019: No. 278 (the "<u>Bermuda Liquidation</u>") for the entry of an order (i) recognizing the

Bermuda Liquidation as a "foreign main proceeding," as defined in section 1502(4) of the

Bankruptcy Code; (ii) recognizing each of the Foreign Representatives as a "foreign

representative," as defined in section 101(24) of the Bankruptcy Code; (iii) recognizing, granting

comity to, and giving full force and effect in the United States to the Bermuda Liquidation; and

(iv) granting such other relief as the Court deems just and proper. The "New York Plaintiffs"[3]

---

[2]    *Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief* [ECF No. 5]. Unless otherwise specified, citations to "ECF No. ___" refer to documents filed on the electronic docket of the instant proceeding (No. 20-12192).

[3]    The New York Plaintiffs are a group of minority shareholders of the Debtor: Culligan Soft Water Company; Cecil R. Hall; C&D Of Rochester, LLC; Driessen Water, Inc.; Michael A. Bannister; T&B Enterprises, Inc.; California Water & Filter, Inc.; Shar Sher I, Inc.; Water Quality Improvement, Inc.; Culligan Southwest, Inc.; Carey Water Conditioning, Inc.; Michael Carey; Eric B. Clarke; Culligan Water Conditioning (Barrie) Ltd.; Arthur H. Cooksey, Jr.; Corbett's Water Conditioning, Inc.; Glen Craven; Culligan Water Conditioning Horicon, LLP; Henry T. Wood; Mayer Soft Water Co., Inc.; Timothy Fatheree And Sue Fatheree; Clean Water, Inc.; Catherine Gilby; Canatxx, Inc.; Quality Water Enterprises, Inc.; Robert R. Heffernan; Charles F. Hurst; Karger Enterprises, Inc.; Keppler Water Treatment, Inc.; Robert Kitzman And Tracy Kitzman; Ladwig Enterprises, Inc.; Richard Lambert And Marianne Conrad; Low Country Water Conditioning, Inc.; Gina Larson; Michael G. Macaulay; Vetter's, Inc.; Robert W. Mccollum And Barbara N. Mccollum; Richard C. Meier; Donald E. Meredith; Cleanwater Corporation Of America; John Mollman And Janette Mollman; The Good Water Company Ltd.; E&H Parks, Inc.; Maumee Valley Bottlers, Inc.; Schry Water Conditioning, Inc.; Schry Water Treatment, Inc.; Winslow Stenseng; Stewart

2

oppose the Recognition Motion (the "Objection").[4] The Foreign Representatives have filed a

reply to the Objection (the "Reply").[5] For the reasons set forth below, the Court overrules the

Objection and grants the Recognition Motion.

## JURISDICTION

The Court has jurisdiction over these matters pursuant to 28 U.S.C §§ 1334(a) and 157(a)

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012

(Preska, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

## FACTS[6]

### Background

The Debtor was incorporated in Bermuda as an exempted company under the Bermuda

Companies Act. Original Thresh Decl. ¶ 7. Its business was the distribution of water purification

---

Water Conditioning, Ltd.; Bret P. Tangley; B.A.R. Water Corporation; Trilli Holdings, Inc.; Bruce Van Camp; Walter C. Voigt And Charlotte P. Voigt; Marin H2o, Inc.; Allan C. Windover; Everett Windover; Culligan Soft Water Service (Que) Inc.; G.R. Mccoy; Richard N. Wendt; Richard Sample And Marie Sample; The Water Meister, Inc.; Alex Connelly; Go Water, Inc.; Van D. Waugh; Melissa Grill; Petro's Water Conditioning Of Johnson County, Inc.; Water Treatment Services Of Shelbyville, Inc.; Countryside Management, Inc.; Gulf Coast Water Conditioning, Inc.; Adrian Water Conditioning, Inc.; Canney's Water Treatment, Inc.

[4]    *New York Plaintiffs' Objection to the Foreign Representatives' Motion for Recognition as a Foreign Main Proceeding* [ECF No. 15].

[5]    *The Foreign Representatives' Reply to the New York Plaintiffs' Objection to the Foreign Representatives' Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief* [ECF No. 25].

[6]    At the hearing on the Recognition Motion, the Court admitted the following declarations, and all parties waived their rights to cross examine the declarants: *Declaration of C. Christian R. Luthi in Support of the Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief* [ECF No. 6] (the "Luthi Decl."); *Declaration of Charles Thresh in Support of the Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief* [ECF No. 7] (the "Original Thresh Decl."); *Declaration of Peter A. Singler in Support of Objection of New York Plaintiffs to Chapter 15 Recognition of Foreign Proceeeding* (sic) [ECF No. 22] (the "Singler Decl."*); Reply Declaration of Charles Thresh in Further Support of the Motion for (I) Recognition of the Bermuda Liquidationas* (sic) *a Foreign Main Proceeding and (II) Certain Related Relief* [ECF No. 26] (the "Reply Thresh Decl."); *Reply Declaration of David a. Berger in Further Support of the Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief* [ECF No. 27] (the "Reply Berger Decl." and, collectively with the Luthi Decl., the Original Thresh Decl., the Singler Decl., and the Reply Thresh Decl., the "Declarations"). In addition, the Foreign Representatives have filed the *Corporate Statement and Lists Pursuant to Federal Rules of Bankruptcy Procedure*

and filtration units through franchise dealers in North America. *Id*. ¶ 8. In 2004, Clayton Dubilier

& Rice, LLC, the successor in interest of Clayton, Dubilier & Rice, Inc. (collectively, "CDR"),

acquired all of the operating companies and intermediary holding companies which comprised

the "Culligan System" from Vivendi/Veolia, a French conglomerate, through a $610 million

leveraged buyout (the "LBO"). Singler Decl. ¶ 6a. In that transaction, CDR contributed $200

million and borrowed $410 million secured by the operating assets of the Culligan Entities.

*Id.* ¶ 6c. As a result of the LBO, the Debtor was formed as an ultimate shell parent company,

with its sole asset being 100% of the equity of Culligan Investments, S.á.r.l., a Luxembourg

entity ("Culligan Investments"). *Id*. ¶ 6a. In turn, Culligan Investments owned all the equity of

the other entities comprising the Culligan System. *Id.* The Debtor was a holding company for

various other holding and operating companies in the Culligan System (the "Culligan Entities")

but did not directly conduct any business operations. *Id.* Culligan International Company

("Culligan International") is a Delaware Corporation with its principal business operations and

executive offices in Illinois. *Id.* It was the primary operating company and source of revenue

within the Culligan Entities. *Id.*

In 2006, the Debtor repaid CDR for its initial $200 million dollar investment in the

Debtor, and then in 2007 CDR caused the Culligan Entities to recapitalize by borrowing more

than $850 million which it used to refinance $400 million in existing debt and to pay a $375

million dividend to shareholders. *Id.*

---

*1007(a)(4) and 7007.1 and Local Rule 1007-3* [ECF No. 4] (the "Corporate Statement"). Unless otherwise stated,
the facts herein are based upon the Corporate Statement and the Declarations.

**Members' Voluntary Liquidation**

In or about May 2012, the Debtor underwent an out-of-court restructuring

(the "Restructuring Transaction") pursuant to which it transferred 100% of the equity in Culligan

Investments, one of its subsidiaries, into a new company, Culligan Newco Ltd. ("Newco").

Original Thresh Decl. ¶ 9. The Debtor was solvent after it closed the Restructuring Transaction,

as it had only cash and no liabilities. *Id.* ¶ 10. On April 29, 2013, the Debtor entered into a

members' voluntary liquidation ("MVL") under applicable Bermuda law. *Id.*[7] On that day,

pursuant to a resolution of the Debtor's shareholders, the Foreign Representatives were

appointed joint liquidators of the Debtor for the purpose of winding-up the Debtor. *Id.*; *see also*

*id.*, Ex. C.[8]

In June 2017, Newco paid $11.67 million to the Debtor. That left the Debtor with $11.87

million in cash. Original Thresh Decl. ¶ 40. The Foreign Representatives—as joint liquidators in

the MVL—determined that a distribution should be made to shareholders under the MVL in the

---

[7]    At the date the Debtor was placed into the MVL, the Debtor's shareholders were:

> Clayton, Dubilier & Rice Fund VI Limited ("CD&R Fund") which was the majority shareholder
> of the Debtor with approximately ninety-two percent (92%) of the ordinary shares; and

> CDR, acting as a voting trust for the underlying beneficial owners of the remaining eight percent
> (8%) of the shares. These beneficial owners were various dealers in the Culligan water network,
> employees, and directors.

*Id.* ¶ 11.

[8]    Following the appointment of the Foreign Representatives, certain deferred share units ("DSUs") were
converted into shares of the Debtor through the MVL, which resulted in the following shareholder breakdown of the
ordinary shares:

> CD&R Fund represented 86.3%;

> Dealer common shares, held through CDR represented 4.1%;

> Employee common shares, held through CDR, represented 1.6%;

> DSU shares of directors and employees represented 4.9%; and

> Dealer converted DSU shares represented 3.1%.

*Id.* ¶ 12.

amount of approximately $11.34 million. *Id.* ¶ 41. In calculating the amount of the distribution, they reserved $500,000 to pay liquidation fees and expenses, as well as fees related to the New York Action (as defined below). *Id.* ¶ 45.[9] To date, the Foreign Representatives have distributed $11.1 million in funds, which includes a total of $396,699.58 to 56 of the 71 plaintiffs in the New York Action. *Id.* ¶ 46. The Debtor has approximately $240,000 remaining in payment obligations to multiple shareholders (including $37,235.98 to the 15 remaining unpaid New York Plaintiffs) relating to that shareholder distribution. *Id.*

**The Bermuda Liquidation**

Under the Bermuda Companies Act, liquidators appointed under a MVL can also "exercise any of the other powers of . . . the [Act] given to the liquidator by the Court." *See* Luthi Decl. ¶ 30 n.7. Under the Bermuda Companies Act, where a liquidator believes that the company is no longer solvent it can petition the Bermuda Court for a winding up order. *Id.* That is what happened here. In June 2019, Debtor had $288,000 in cash ($48,000 in excess of its obligations to shareholders re: the distribution) and the Foreign Representatives determined Debtor had become insolvent due to expected future liabilities arising from the estimated fees of the New York Action. Original Thresh Decl. ¶ 48. On July 2, 2019, the Foreign Representatives petitioned the Bermuda Court for court supervision of the Bermuda Liquidation. On August 23, 2019, the Bermuda Court entered an order in the Bermuda Liquidation converting the Debtor's MVL into a court-supervised liquidation (the "Liquidation Order"). Luthi Decl. ¶ 37. That order

---

[9]    An Executive and Organization and Lability Policy (the "E&O Policy") issued to the Debtor is currently providing coverage for certain of the defense costs accrued in the New York Action. *Id.* ¶ 43. However, the fees of the Foreign Representatives in connection with their work supporting the effort of Debtor's counsel in the New York Action are not covered under the E&O Policy and are therefore chargeable to the Debtor's estate. *Id.* However, some, but not all, of the Foreign Representatives' fees in connection with this chapter 15 proceeding will be covered under the E&O Policy. *Id.* ¶ 44.

also confirmed the Foreign Representatives as joint liquidators of the Debtor. *Id.*; Reply Berger

Decl. ¶ 14.[10] In part, the Liquidation Order provides, as follows:

- Culligan Limited be wound up by this Court under the provisions of the Companies Act 1981.

- Mike W. Morrison and Charles Thresh of KPMG do continue as joint liquidators of the Company, and in respect of any act which, under the Companies Act 1981, is required to be done by a liquidator or authorized by him, the joint liquidators may do such act or give such authorization either jointly or by acting on behalf of both.

- The period for convening for the first meetings of creditors and contributors as set out in the Rules be and is hereby extended six months from the date of this Order.

- The costs of the Petitioner be paid out of the assets of the Company as an expense of the liquidation.

Reply Berger Decl. ¶ 50; *id*. Ex. A.

## New York Litigation

On May 30, 2012, the New York Plaintiffs commenced a derivative action against,

among others, the Debtor's directors and controlling shareholders in the Supreme Court of the

State of New York, County of New York (the "New York Court"), entitled, *Culligan Soft Water

Company, et al. v. Clayton Dubilier & Rice LLC, et al.*, Index No. 651863/2012 (the "New York

Action"). Singler Decl. ¶ 5. The Debtor is the Nominal Defendant. *Id.* ¶ 5.[11] The New York

Plaintiffs are minority shareholders. They consist of 71 of the total 262 Culligan water dealers,

and in the aggregate, they hold approximately 3.8% of the Debtor's shares. Original Thresh Decl.

¶¶ 13, 15. In support of the New York Action, the plaintiffs contend that the consolidated

---

[10]    The Foreign Representatives say that they filed the Bermuda Liquidation because of (i) the Debtor's insolvency due to the mounting cost of the New York Action, and (ii) certain allegations by the New York Plaintiffs that the Foreign Representatives were conflicted such that the MVL was no longer appropriate. *Id.* In contrast, the New York Plaintiffs contend that the filing was initiated with "the looming possibility that the New York Plaintiffs would finally be able to proceed to discovery" in the New York Action. Objection ¶ 17.

[11]    The defendants (collectively, the "Defendants") in the New York Action include the Debtor (nominally), Newco, certain past and present directors of the Debtor, CD&R Fund, CD&R LLC, Clayton, Dubilier & Rice, Inc., certain lenders to the Debtor's former subsidiaries ("Lenders"), and, as described below, New York Plaintiffs were granted leave to add KPMG Advisory Limited ("KPMG Advisory") to their Fourth Amended Complaint.

Culligan Entities, including the Debtor, had neither retained earnings nor profits to sufficient to pay either the $200 million return of capital to CDR or the $375 million dividend, and thus made those payments in violation of N.Y. B.C.L. § 510(b). Singler Decl. ¶ 6d.

**First Amended Complaint**

On July 12, 2012, on the heels of the Restructuring Transaction, the New York Plaintiffs filed a First Amended Complaint as of right, to among other things, add Newco as a defendant. Singler Decl. ¶ 8a.; Original Thresh Decl. ¶ 21. All the Defendants filed motions to dismiss the First Amended Complaint based primarily on the argument that Bermuda law, not New York law, governs the transactions at issue, and that Bermuda law does not allow for derivative actions. Singler Decl. ¶ 8a. On March 13, 2013, the New York Court granted the motions to dismiss, finding that Bermuda law applied and that the New York Plaintiffs did not meet the narrow exceptions under Bermuda Law to allow for derivative actions. *Id.*¶ 8b.

On April 29, 2013, upon their appointment in as joint liquidators of the Debtor in the MVL, the Foreign Representatives, wrote to the New York Plaintiffs' counsel to inquire about the substance of the allegations in the First Amended Complaint, and in subsequent correspondence, requested that the New York Plaintiffs take no further action in light of the alleged change in control of the Debtor. Original Thresh Decl. ¶ 18. The Foreign Representatives took the position that their appointment effected a change in control of the Debtor and that any claims of the Debtor, including those pursued in the New York Action, could only be pursued by the joint liquidators of the Debtor. *Id.* The New York Plaintiffs did not accede to the request.

On May 2, 2013, the New York Plaintiffs filed their notice of appeal of the dismissal of the New York Action. On June 13, 2014, the Appellate Division of the Supreme Court of the State of New York, First Judicial Department (the "First Department") reversed, finding that

8

New York law applied, but upheld dismissal with regard to a single party (CDR Fund VI) on the grounds that it was not an officer or director. Singler Decl. ¶ 8. The First Department granted the New York Plaintiffs leave to replead.

### Second Amended Complaint

In 2014, the New York Plaintiffs filed their Second Amended Complaint. The Defendants objected to the complaint on the grounds that it did not conform to the amendment that New York Plaintiffs had been granted leave to file. In response to that argument, the New York Plaintiffs filed their Third Amended Complaint. Original Thresh Decl. ¶ 23.

### Third Amended Complaint

The Defendants moved to dismiss the Third Amended Complaint. On or about May 28, 2015, the New York Court granted the motion and dismissed the complaint for lack of standing under New York law. In doing so, the court denied the New York Plaintiffs leave to further amend the complaint. *Id*. ¶ 25. The New York Plaintiffs appealed the dismissal of the Third Amended Complaint to the First Department. In May 2016, the First Department affirmed the New York Court's dismissal of the complaint, but reversed the decision denying the New York Plaintiffs leave to file a further amended complaint. *Id*. ¶ 26.

### Fourth Amended Complaint

In their Fourth Amended Complaint, the New York Plaintiffs sought leave to add KPMG Advisory as an additional defendant. *Id.* ¶ 29. Leave was granted. *Id*. ¶ 30. In March 2019, all Defendants filed motions to dismiss the Fourth Amended Complaint. The Foreign Representatives, as joint liquidators of the Debtor, filed motions seeking to substitute the Foreign Representatives as plaintiffs in the New York Action in the place of the New York Plaintiffs, and to dismiss the Fourth Amended Complaint for failure of the New York Plaintiffs to make due

9

demand on the Foreign Representatives or otherwise properly plead demand futility. *Id.* ¶ 31. In

March 2020, the New York Court dismissed the New York Plaintiffs' Fourth Amended

Complaint for failure to adequately plead that New York Plaintiffs had made a demand on the

Foreign Representatives or that it would have been futile to have made such a demand. *Id.* ¶ 32.

The court also denied the Foreign Representatives' substitution request. *Id.* ¶ 33. The New York

Court granted leave to replead. Singler Decl. ¶ 8m.

### Bermuda Anti-Suit Injunction

On June 22, 2020, the Debtor, by the Foreign Representatives, commenced an action in

the Bermuda Court entitled *Michael Morrison and Charles Thresh (As Liquidators of Culligan

Limited) v. Culligan Soft Water Company and Others* (the "Bermuda Anti-Suit Action") in order

to issue a generally endorsed Writ of Summons. The proposed Writ of Summons

(the "Restraining Writ") restrained the New York Plaintiffs from bringing proceedings against

the Debtor, and bringing proceedings in the name of the Debtor, anywhere in the world. Original

Thresh Decl. ¶ 51; *id.*, Ex. D; Luthi Decl. ¶ 38; *id.*, Ex. E. The New York Plaintiffs are not

within the jurisdiction of the Bermuda Court. As such, the Debtor had to seek leave of the

Bermuda Court to serve the Restraining Writ on the New York Plaintiffs out of the jurisdiction.

Luthi Decl. ¶ 39. On July 16, 2020, the Foreign Representatives obtained an order by the

Bermuda Court granting leave to serve New York Plaintiffs out of the jurisdiction, and

substituted service, such that service of the Writ could be effected by delivering the Restraining

Writ to New York Plaintiffs' U.S. attorney (the "Writ Order"). *Id.* In response to the issuance of

the Writ Order, the New York Plaintiffs sought an emergency restraining order in the New York

Action (the "Plaintiffs' TRO"), enjoining the Debtor anyone on its behalf, from continuing the

Bermuda Anti- Suit Injunction Action. Siegler Decl. ¶ 8n; Original Thresh Decl. ¶ 52. On August

10

4, 2020, the New York Court heard argument on the request for the Plaintiffs' TRO. It was

resolved by the Foreign Representative's agreement not to prosecute the Bermuda Anti-Suit

Action pending the New York Court's resolution of the New York Plaintiffs' request for a

preliminary injunction. Reply Berger Decl. ¶ 18. On September 21, 2020, the New York Court

conducted a hearing on the motion. Original Thresh Decl. ¶ 53; *id*., Ex. E. The court encouraged

the parties to enter into a stipulation on consent resolving the motion. On September 28, 2020,

such stipulation was ordered staying the Bermuda Anti-Suit Action until such time as the

New York Court or this Court orders otherwise. Reply Berger Decl. ¶ 19.

### Fifth Amended Complaint

At present, the plaintiffs in the New York Action have filed their fifth complaint

(the "Fifth Complaint"), which is currently subject to a motion to dismiss. *Id.* ¶ 35. The Fifth

Complaint was filed with the intention of properly pleading demand or futility with regard to the

Foreign Representatives. Singler Decl. ¶ 8.m. The motion to dismiss the Fifth Complaint has

been argued, on the grounds that the demand requirements were not met, and the parties are

awaiting a decision from the New York Court. Transcript [ECF No. 36] (the "Transcript"),

12:6-22.

### Sanction Order

On September 17, 2020, the Bermuda Court issued an order in the Bermuda Liquidation

(the "Sanction Order") specifically sanctioning the filing of the Recognition Motion. Luthi Decl.

¶ 50. That day, the Foreign Representatives filed a voluntary petition for relief under chapter 15

of the Bankruptcy Code for the Debtor (the "Chapter 15 Petition").[12] Without limitation, in

support of the Recognition Motion, the Foreign Representatives state their purpose in filing the

---

[12]    *See* Chapter 15 Petition for Recognition of a Foreign Proceeding [ECF No. 1].

motion is to ensure that "the Bermuda Liquidation and any order issuing from the Bermuda court [are] binding and enforceable in the United States so that the New York Plaintiffs are precluded from continuing the New York [Action] under the automatic stay and otherwise taking any actions in the United States that may further deplete the dwindling assets of the Debtor and frustrate the Bermuda Liquidation." Recognition Motion ¶ 38.

## The Recognition Motion

Section 1517(a) of the Bankruptcy Code provides that, after notice and a hearing, subject to section 1506 of the Bankruptcy Code, an order recognizing a foreign proceeding shall be entered if—

> (1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (2) the foreign representative applying for recognition is a person or body; and
>
> (3) the petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). "While not explicit in this section, the foreign proceeding and the foreign representative must meet the definitional requirements set out in sections 101(23) and 101(24)." *See In re U.S. Steel Canada Inc.*, 571 B.R. 600, 608 (Bankr. S.D.N.Y. 2017) (quoting 8 COLLIER ON BANKRUPTCY ¶ 1517.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017)). Section 1515 of the Bankruptcy Code, and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") identify the documents that a petitioner must file in support of a chapter 15 petition. *See* 11 U.S.C. § 1515; Fed. R. Bankr. P. 1007(a)(4). Section 1506 qualifies a debtor's right to recognition based on a narrow public policy exception, stating:

> Nothing in this chapter prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States.

11 U.S.C. § 1506. Under this framework, unless barred by the public policy exception, courts

will grant recognition to foreign proceedings that meet the requirements of section 1517(a) of the

Bankruptcy Code. *See In re Millard*, 501 B.R. 644, 653–54 (Bankr. S.D.N.Y. 2013) (noting that

"section 1517(a) imposes a mandatory requirement, in the first instance, for recognition when its

requirements have been met."); *see also In re Bear Stearns High-Grade Structured Credit*

*Strategies Master Fund, Ltd.,* 374 B.R. 122, 126-27 (Bankr. S.D.N.Y. 2007) (hereinafter *Bear*

*Stearns I*), *aff'd,* 389 B.R. 325 (S.D.N.Y. 2008) (hereinafter *Bear Stearns II*) ("[T]he recognition

must be coded as either main or nonmain."); *In re Oi Brasil Holdings Cooperatief U.S.,* 578 B.R.

169, 194 (Bankr. S.D.N.Y. 2017), *reconsideration denied,* 582 B.R.358 (Bankr. S.D.N.Y. 2018)

("Recognition is mandatory if all three requirements of Section 1517(a) are met"). The ultimate

burden of proof for each of section 1517's requirements is on the foreign representative."

*In re Creative Fin. Ltd.*, 543 B.R. 498, 514 (Bankr. S.D.N.Y. 2016).

  Under section 109(a) of the Bankruptcy Code, to qualify as a "debtor" an entity must

reside or have a domicile, a place of business, or property in the United States. 11 U.S.C.

§ 109(a). Section 103(a)(1) of the Bankruptcy Code makes that section applicable in chapter

applicable in chapter 15 cases. *See* 11 U.S.C. § 103(a)(1). To qualify for relief under chapter 15,

a debtor must meet (a) the general eligibility requirements under section 109(a) of the

Bankruptcy Code, and (b) the more specific eligibility requirements under section 1517(a) of the

Bankruptcy Code; and the chapter 15 petition for recognition must meet the requirements of

section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4).

  In the Recognition Motion, the Foreign Representatives seek the entry of an order

(i) recognizing the Bermuda Liquidation as a "foreign main proceeding," as defined in section

1502(4) of the Bankruptcy Code; (ii) recognizing each of the Foreign Representatives as a

"foreign representative" as defined in section 101(24) of the Bankruptcy Code; (iii) recognizing, giving comity to, and giving full force and effect in the United States to the Bermuda Liquidation; and (iv) granting such other relief as the Court deems just and proper. Recognition Motion ¶ 1. As explained below, the parties agree (and this Court holds), that the Debtor satisfies the general eligibility requirements under section 109(a) of the Bankruptcy Code, the petition meets the requirements of section 1515, including Bankruptcy Rule 1007(a)(4), the Foreign Representatives are "foreign representative," as defined in section 101(24) of the Bankruptcy Code, and the Bermuda Liquidation is a "foreign proceeding," as defined in section 101(23) of the Bankruptcy Code.

The New York Plaintiffs contend that the Court should deny the Recognition Motion because the Bermuda Liquidation should not be recognized as either a foreign main or foreign nonmain proceeding. They also complain that the that the Debtor did not commence this chapter 15 case to assist in an unfinished liquidation proceeding in Bermuda—which they maintain is virtually completed. They contend that the Foreign Representatives are forum shopping and that they commenced the case to enjoin the New York Action and thereby circumvent the adverse rulings of the New York Court. Objection ¶ 1. They argue that the Foreign Representatives filed the Chapter 15 Petition in bad faith, and for the improper purpose of barring the New York Plaintiffs from prosecuting the New York Action by application of the automatic stay. *Id.* ¶ 3. They maintain that the Debtor's bad faith is evidenced by the facts that the Debtor is merely a nominal defendant in the New York Action that will not suffer damages they prevail in the action, and whose litigation costs are covered by insurance. *Id.* They assert that the Debtor is not seeking a stay to provide breathing room to conduct good faith liquidation

efforts. Rather, it is improperly seeking recognition and application of the stay to, in effect, permanently enjoin—as opposed to stay (pause)—the New York Action**.** *Id.* ¶¶ 5-6.

In considering the Objection, the Court first reviews application of sections 109 and 1517(a)(2) and (3) in this case. Thereafter, the Court reviews the matters in dispute and application of section 1517(a)(1) herein.

**Discussion**

**The General Eligibility Requirements**
**Of Bankruptcy Code Section 109(a)**

For purposes of chapter 15, the term "debtor" means "any entity that is the subject of a foreign proceeding." 11 U.S.C. § 1502(1). In turn, the term "foreign proceeding" means:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court for the purpose of reorganization of liquidation.

11 U.S.C. § 101(23). For these purposes, a "proceeding" is a "statutory framework that constrains a company's actions and that regulates the final distribution of a company's assets" and includes "acts and formalities set down in law so that courts, merchants and creditors can know them in advance, and apply them evenly in practice." *In re Betcorp Ltd.*, 400 B.R. 266, 277-78 (Bankr. D. Nev. 2009). The Bermuda Liquidation is governed by the statutory framework set forth in the Bermuda Companies Act. The liquidation is a "proceeding' for purposes of section 101(23), because, without limitation, the Bermuda Companies Act specifies the procedures for appointing liquidators and winding up a Bermudian company. *See* Luthi Decl. ¶¶ 20-32. As supplemented by Bermuda common law, the Bermuda Companies Act also sets forth the permitted scope and powers of the liquidators. *Id*. Courts in this district routinely recognize insolvency proceedings in Bermuda and in offshore jurisdictions that have analogous English-law based frameworks similar to Bermuda, as "foreign proceedings." *See, e.g., In re*

15

*Digicel Grp. One Ltd.,* No. 20-11207 (SCC) (Bankr. S.D.N.Y. June 17, 2020) [ECF No. 29]

(recognizing Bermuda provisional liquidation as a foreign proceeding); *In re PDV Ins. Co., Ltd.*,

No. 18-12216 (MEW) (Bankr. S.D.N.Y Aug. 30, 2018) [ECF No. 11] (same); *In re Ocean Rig*

*UDW Inc.*, 570 B.R. 687, 702 (Bankr. S.D.N.Y. 2017) (recognizing Cayman provisional

liquidation and scheme of arrangement as a foreign proceeding); *In re Gerova Fin. Grp., Ltd.*,

No. 12-13641 (MEW) (Bankr. S.D.N.Y. Oct. 11, 2012) [ECF No. 29] (recognizing Bermuda

provisional liquidation as a foreign proceeding); *In re Millennium Glob. Emerging Credit Master*

*Fund, et al.*, No. 11-13171 (ALG) (Bankr. S.D.N.Y. Sept. 19, 2011) [ECF No. 47] (same); *In re*

*Inverness Distrib. Ltd. f/k/a Morgan Creek Int'l Ltd.*, No. 11-12106 (SCC) (Bankr. S.D.N.Y.

June 1, 2011) [ECF No. 31] (same); *In re Hatteras Reinsurance Ltd.*, No. 06-11304 (JMP)

(Bankr. S.D.N.Y. Sept. 27, 2006) [ECF No. 88] (same).

The Debtor is an "entity." *See* 11 U.S.C. §§ 101(15) (the term "entity" includes a

"person"), 101(41) (the term "person" includes "corporations"). It is the subject of a foreign

proceeding because, as noted, the Bermuda Liquidation is a "foreign proceeding." Section 103(a)

of the Bankruptcy Code makes chapter 1 thereof (including section 109) applicable in chapter 15

cases. *See* 11 U.S.C. § 103(a). Section 109 states that "[n]otwithstanding any other provision of

this section, only a person that resides or has a domicile, a place of business, or property in the

United States, or a municipality, may be a debtor under this title." 11 U.S.C. § 109(a). In this

circuit, it is settled that those requirements apply to foreign debtors under chapter 15.

*See Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238, 247

(2d Cir. 2013). Accordingly, under section 109(a), and in accordance with *Barnet*, as a condition

precedent to eligibility under section 1517, a foreign representative must show that the debtor

has either a domicile, a place of business, or property in the United States. *See id*.; *In re Octaviar Admin. Pty. Ltd.*, 511 B.R. 361, 369 (Bankr. S.D.N.Y. 2014).

The Debtor does not satisfy either of the first two options because its domicile is in Bermuda and it does not have a place of business in the United States. However, it has property in the United States. It is undisputed that the Debtor has an interest in certain funds deposited with its U.S. Counsel, Allegaert Berger & Vogel LLP, as a retainer for its services, which funds are held in a client trust account in New York, New York. *See* Original Thresh Decl. ¶ 59. Undrawn attorney retainers satisfy the "property in the United States" eligibility requirement of section 109(a) of the Bankruptcy Code. *See, e.g., In re Octaviar Admin. Pty Ltd.*, 511 B.R. at 373-74 (finding that the foreign debtor "ha[d] property in the United States in the form of an undrawn retainer in the possession of the Foreign Representatives' counsel."); *In re U.S. Steel Canada Inc.*, 571 B.R. at 610 (foreign debtor had property in the United States including "an undrawn $100,000 retainer paid to its U.S. counsel and held in a JP Morgan Chase Bank account located in New York, NY."). Accordingly, the Debtor satisfies the general eligibility requirements set forth in section 109(a) of the Bankruptcy Code.

## The Eligibility Requirements of Section 1517(a)(2)

Section 1517(a)(2) of the Bankruptcy Code requires that "the foreign representative applying for recognition is a person or body." 11 U.S.C. § 1517(a)(2). For these purposes, the term "foreign representative" means:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24). The Bankruptcy Code defines "person" to include an "individual."

11 U.S.C. 101(41).

Pursuant to the Liquidation Order, the Bermuda Court appointed the Foreign

Representatives as joint liquidators of the Debtor for the purposes of the Debtor's liquidation. It

is well settled that a liquidator, or provisional liquidator, appointed under Bermuda law is a

"foreign representative" for chapter 15 purposes. S*ee, e.g.*, *In re Gerova Fin. Grp. Ltd.*,

Case No. 12-13641 (MEW) (Bankr. S.D.N.Y. Oct. 11, 2012) [ECF No. 29] (joint provisional

liquidators appointed pursuant to Bermuda law were authorized as duly appointed foreign

representatives within the meaning of section 101(24)); *In re Inverness Distrib. Ltd. f/k/a*

*Morgan Creek Int'l Ltd.*, Case No. 11-12106 (SCC) (Bankr. S.D.N.Y. June 1, 2011) [ECF No.

31] (same); *In re Lehman Re Ltd.*, Case No. 09-14884 (JMP) (Bankr. S.D.N.Y. Sept. 24, 2009)

[ECF No. 56] (same); *Bluepoint Re Ltd.*, Case No. 08-13169 (REG) (Bankr. S.D.N.Y Sept. 29,

2008) [ECF No. 24] (same).

Moreover, the Sanctions Order specifically authorizes the Foreign Representatives to file

the Recognition Motion. The Foreign Representatives are proper "foreign representatives" within

the meaning of section 101(24) of the Bankruptcy Code. *See* 11 U.S.C. § 1516(a) ("If the

decision [commencing the foreign proceeding] . . . indicates . . . that the person or body is a

foreign representative, the court is entitled to so presume."); *see also In re SphinX, Ltd.*, 351 B.R.

103, 116-17 (Bankr. S.D.N.Y. 2006) (hereinafter "*SPhinX I*"), *aff'd sub nom.*, *Krys v. Official*

*Comm. of Unsecured Creditors of Refco Inc. (In re SphinX Ltd.)*, 371 B.R. 10 (S.D.N.Y. 2007)

(holding that section 101(24) of Bankruptcy Code was satisfied where foreign representatives

submitted a "copy of the Cayman Court's order appointing them to administer the [d]ebtors'

winding up under [Cayman law] and authorizing their commencement of these chapter 15

cases").

**The Eligibility Requirements of Section 1517(a)(3)**

Section 1517(a)(3) incorporates the requirements of section 1515 of the Bankruptcy

Code. Under section 1515(a), "[a] foreign representative applies to the court for recognition of a

foreign proceeding in which the foreign representative has been appointed by filing a petition for

recognition." 11 U.S.C. § 1515(a). The Foreign Representatives meet that standard. Pursuant to

section 1515(b), a petition for recognition must be accompanied by one of the following:

> (1) a certified copy of the decision commencing such foreign proceeding and
> appointing the foreign representative;
>
> (2) a certificate from the foreign court affirming the existence of such foreign
> proceeding and of the appointment of the foreign representative; or
>
> (3) in the absence of evidence referred to in paragraphs (1) and (2), any other
> evidence acceptable to the court of the existence of such foreign proceeding and of
> the appointment of the foreign representative.

11 U.S.C. § 1515(b). By application of section 1516 of the Bankruptcy Code, "[t]he court is

entitled to presume that documents submitted in support of the petition for recognition are

authentic, whether or not they have been legalized," (§ 1516(b)) and "[i]f the decision or

certificate referred to in section 1515(b) indicates that the foreign proceeding is a foreign

proceeding and that the person or body is a foreign representative, the court is entitled to so

presume." 11 U.S.C. § 1516(a). Bankruptcy Rule 1007(a)(4) mandates that, in addition to the

documents required under section 1515, a foreign representative filing a petition for recognition

under chapter 15, must file with the petition:

> (i) a corporate ownership statement containing the information described in
> Bankruptcy Rule 7007.1, and
>
> (ii) a list of foreign persons or bodies authorized to administer the foreign
> proceeding of the Foreign Debtor pursuant to Bankruptcy Rule 1007(a)(4), as well
> as a list of all parties to litigation pending in the United States to which the debtor
> is a party at the time of the filing of the petition, and all entities against whom
> provisional relief is being sought under § 1519 of the Bankruptcy Code.

19

Fed. R. Bankr. P. 1007(a)(4).

The Chapter 15 Petition meets the requirements of section 1515(b) and Bankruptcy Rule 1007(a)(4). The Liquidation Order constitutes a decision of the Bermuda Court commencing the Debtor's liquidation and appointing the Foreign Representatives as the foreign representatives. Original Thresh Decl.; *id.*, Ex. A. The Sanction Order constitutes a decision of the Bermuda Court specifically authorizing the Foreign Representatives to bring this chapter 15 proceeding for recognition of the Bermuda Liquidation in the United States. *Id.*, Ex. B. The Chapter 15 Petition was filed accompanied by all fees, documents and information required by the Bankruptcy Code and the Bankruptcy Rules including:

> (i) a corporate ownership statement containing the information required by Bankruptcy Rule 7007.1;
>
> (ii) a list containing (a) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor, (b) all parties to litigation pending in the United States in which the Debtor is a party at the time of the filing of this chapter 15 case and (c) all entities against whom provisional relief is being sought under section 1519 of the Bankruptcy Code;
>
> (iii) a statement identifying all foreign proceedings with respect to the Debtor that are known to the Foreign Representatives; and
>
> (iv) a certified copy of the Liquidation Order.

*See* Corporate Statement. As the Court is entitled to presume the authenticity of those documents filed in connection with the petition for recognition, *see* 11 U.S.C. § 1516(b), the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 1007(a)(4) have been met and the Foreign Representatives properly commenced this chapter 15 case. *See* 11 U.S.C. §§ 1504, 1509(a), 1515; Bankruptcy Rule 1007(a)(4).

**The Eligibility Requirements of Section 1517(a)(1)**

Section 1517(a)(1) mandates that a foreign proceeding for which recognition is sought be either "a foreign main proceeding or a foreign nonmain proceeding within the meaning of section

1502." 11 U.S.C. § 1517(a)(1); *see also Bear Stearns I,* 374 B.R. at 126-27 ("[T]he recognition

must be coded as either main or nonmain.").

A "foreign main proceeding" is a "foreign proceeding pending in the country where the

debtor has the center of its main interests." 11 U.S.C. § 1502(4). *See, e.g., In re Fairfield Sentry*

*Ltd.*, 714 F.3d 127 (2d Cir. 2013) ("*Fairfield Sentry*") (affirming recognition of foreign main

proceeding); *In re Ocean Rig UDW Inc.*, 570 B.R. at 705 (recognizing foreign main proceeding);

*In re Suntech PowerHoldings Co.*, 520 B.R. 399, 416-17 (Bankr. S.D.N.Y. 2014) (same). A

principal relevant to identifying a debtor's center of main interests ("COMI") "is that the COMI

lies where the debtor conducts its regular business, so that the place is ascertainable by third

parties." *Fairfield Sentry,* 714 F.3d at 129. That is because "[a] COMI that is regular and

ascertainable is not easily subject to tactical removal." *Id.* at 137; *see also In re British Am. Ins.*

*Co.,* 425 B.R. 884, 912 (Bankr. S.D. Fla. 2010) ("The location of a debtor's COMI should be

readily ascertainable by third parties."). The statute does not define the term "center of main

interests," although it establishes a presumption regarding it. Absent evidence to the contrary,

"the debtor's registered office . . . is presumed to be the center of main interests."

11 U.S.C.  1516(e). *See also In re Gerova Fin. Grp. Ltd.,* 482 B.R. 86, 91 (Bankr. S.D.N.Y.

2012); *Bear Stearns I*, 374 B.R. at 130. Still, the process for identifying a debtor's COMI is not

"a rubber stamp exercise." *In re Basis Yield Alpha Fund (Master),* 381 B.R. 37, 40

(Bankr. S.D.N.Y. 2008). That is because the presumption is rebuttable if other factors suggest

that COMI lies elsewhere. *In re Servicos de Petroleo Constellation S.A.*, 600 B.R. 237, 272

(Bankr. S.D.N.Y. 2019) (citing *Bear Stearns II*, 389 B.R. at 335 ("[S]ection 1516(c) creates no

more than a rebuttable evidentiary presumption, which may be rebutted notwithstanding a lack of

party opposition.")); *see also In re Creative Fin. Ltd.,* 543 B.R. at 517 (noting that reliance on a

21

presumption that the country of registration is the COMI "is especially inappropriate in a case

where there is a substantial dispute."); *In re Basis Yield Alpha Fund (Master),* 381 B.R. at 48-49

(declining to presume that the debtor's COMI is where its registered office is located because

there is enough "evidence to the contrary" to rebut section 1516(c)).

> Where COMI is contested, courts have focused on a broad range of factors, as follows:
>
> Various factors, singly or combined, could be relevant to such a determination: the location of the debtor's headquarters; the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes.

*Fairfield Sentry,* 714 F.3d at 133 (citing *In re SPhinX I*, 351 B.R. at 117). Nonetheless,

"consideration of these specific factors is neither required nor dispositive. *Id.* Thus, the court

may also consider the location of the debtor's "nerve center," "including from where the debtor's

activities are directed and controlled, in determining a debtor's COMI." *Fairfield Sentry,*

714 F.3d at 138 n.10. Finally, international sources of law that the court may look to

"underscore[ ] the importance of factors that indicate regularity and ascertainability." *Id.* at 138.

Importantly, in applying these standards, a court must determine a debtor's COMI "based on its

activities at or around the time the Chapter 15 petition is filed," although the court may consider

the debtor's activities during "the period between the commencement of the foreign insolvency

proceeding and the filing of the Chapter 15 petition to ensure that a debtor has not manipulated

its COMI in bad faith." *Id.*; *see also In re Ascot Fund Ltd.*, 603 B.R. 271, 282 (Bankr. S.D.N.Y.

2019) ("since *Fairfield Sentry*, courts are required to assess COMI on the date the chapter 15

petition is filed with a lookback period to the date of the commencement of the foreign

proceeding to decide whether COMI has been manipulated"); *In re Pirogova*, 593 B.R. 402, 408

(Bankr. S.D.N.Y. 2018), *aff'd*, 612 B.R. 475 (S.D.N.Y. 2020) ("The relevant time period for

determining a debtor's COMI is as of the time of the filing of the chapter 15 petition unless a court finds that the debtor has manipulated its COMI in bad faith."); *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. at 416-17 (examining whether the commencement of a provisional liquidation had the effect of transferring COMI from China to the Cayman Islands). As a consequence, "in instances in which a foreign representative has engaged in significant pre-U.S. filing work to operate (or even liquidate) the foreign debtor in the jurisdiction where the foreign insolvency proceeding was commenced (even if in a letterbox jurisdiction), the COMI can be found to have shifted from the foreign debtor's original principal place of business to the new locale." *In re Creative Fin. Ltd.*, 543 B.R. at 518.

The Foreign Debtor's registered office is located in Bermuda. Thus, there is a presumption that Bermuda is the Debtor's COMI. The New York Plaintiffs contend that they have rebutted the presumption and that the undisputed facts demonstrate that the Debtor's COMI is in New York, not Bermuda. Objection ¶ 32. They assert that the Debtor's COMI cannot be in Bermuda because the debtor has no connection with Bermuda. As support, they point to the following undisputed facts:

> The Foreign Debtor is a holding company that prior to 2013, operated its business through a number of subsidiaries, but has never had a place of business or conducted business in Bermuda. Objection ¶ 24.

> Prior to 2013, when the Debtor's operating companies were conducting business, CDR – a New York-based company – owned approximately 90% of the Debtor (indirectly, through a fund titled CDR Fund VI), and voted 100% of the company shares. *Id*. ¶ 27.

> Prior to engaging in the out-of-court restructuring in May 2012, the Foreign Debtor's operating companies were headquartered in Illinois and operated mostly in the United States and Canada. *Id*.

However, those factors are irrelevant to the COMI analysis because those activities do not attach to, and pre-date the Debtor's liquidation proceedings. The shareholders commenced the MVL in

23

2013. The Foreign Representatives have been continuously engaged in liquidating the Debtor

since that time, as court appointed fiduciaries under both the MVL and Bermuda Liquidation.

They commenced the Bermuda Liquidation after determining that the Debtor is insolvent. In

these circumstances it is appropriate for the Court to assess COMI based upon the Foreign

Representatives actions beginning in 2013 when they were appointed joint liquidators under the

MVL. Thus, April 29, 2013, the date of the Foreign Representative's appointment as joint

liquidators in the MVL, begins the time period relevant to the assessment of COMI. The

Debtor's activities prior to that date have no bearing on the determination of the Debtor's COMI.

*See, e.g.*, *In re Ascot Fund Ltd.*, 603 B.R. at 282 (noting that while the *SPhinX* court focused

generally on the debtor's activities before the petition date, *Fairfield Sentry* limited the lookback

period to the date of the commencement of the foreign proceeding); *In re Olinda Star Ltd.*,

614 B.R. 28, 41 (Bankr. S.D.N.Y. 2020) ("The Second Circuit has made clear that COMI is

determined as of the time of the chapter 15 filing, without regard to a debtor's historical

operational activity.")

     The New York Plaintiffs also assert that application *SPhinX* factors, even as limited by

*Fairfield Sentry* to the events post-dating the commencement of the MVL, supports a finding that

COMI is outside of Bermuda. The Court finds no merit to that contention. On the Petition Date,

the Debtor's assets consisted of $97,000 in cash and the claims underlying the New York Action.

The New York Plaintiffs incorrectly assert that all of the cash is on deposit in a bank account in

the United States. Objection ¶ 32. In fact, only $10,000 of that cash is on deposit in a United

States bank account (as the retainer held by its United States counsel). The remainder of the

Debtor's cash is on deposit in the Debtor's Bermuda bank account. *See* Reply Thresh Decl.

¶¶ 3-8. The Foreign Representatives used that account to accept the $11.67 million payment the

Debtor received from Newco in June 2017, and then to distribute such money to shareholders. *Id.* ¶ 17. The claims and causes of action underlying the New York Action constitute intangible property of the Debtor. *See, e.g., In re Octavier Admin. Pty Ltd*, 511 B.R. at 369-70 (citation omitted). Those claims plainly are in New York. However, as noted, after eight years, the action remains in the pre-answer stage. Those contingent and disputed litigation claims do not support grounds for finding a New York COMI. *See In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 86 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 88 (S.D.N.Y. 2012) ("The *Fairfield Sentry* Court properly rejected the proposition that the location of 'contingent and disputed litigation claims' could form the basis for a COMI determination."). The location of the Debtor's assets supports a Bermuda COMI. The Debtor has few, if any, creditors. The New York Plaintiffs are equity holders, not creditors. The majority of the defendants in the New York Action reside in or are located in New York. Singler Decl. ¶ 5(e); Objection ¶ 32. Some may have indemnification claims against the Debtor, but those claims are contingent, and thus are not factored by the Court. Application of this factor is neutral.

The New York Plaintiffs make much of the fact that the New York Court determined that New York law is applicable to the claims at issue in the New York Action and that the documents relevant to potential disputes between the New York Plaintiffs and the Debtor are governed by New York law. Singler Decl. ¶¶ 8(d), 13; Objection ¶ 32. That is certainly relevant to the Court's consideration of the Debtor's COMI. However, the Debtor is incorporated in Bermuda and is subject to the Bermuda Companies Act. Bermuda law is generally applicable to the Debtor and will be applicable with respect to any disputes arising with respect to the Bermuda Liquidation. It is plainly central to the liquidation. Application of this factor weighs in favor of a Bermuda COMI. *See In re Servicos de Petroleo Constellation S.A.*, 600 B.R. at 283-83

("By virtue of being incorporated in the BVI [the foreign debtor] is subject to the BVI's laws,

regulations, and jurisdiction, including with respect to potential corporate disputes." Although

Brazilian and Luxembourg law was relevant to the chapter 15 case, the court found that on

balance, the factor weighed in favor of finding a BVI COMI because "the company always

maintains the direct governance of BVI law."); *see also In re Betcorp*, 400 B.R. at 292 ("The

voluntary winding up is being conducted pursuant to the Australian Corporations Act, and

therefore this s the law that would apply to most disputes.").

The Foreign Debtor's headquarters are in Bermuda and have been since at least 2013,

when the Debtor's shareholders commenced the MVL. The Foreign Representatives have been

the sole day-to-day managers of the Debtor since the MVL was initiated in 2013.[13] They reside

in Bermuda and have played an active role in monitoring and coordinating the Debtor's affairs

since their appointment. Original Thresh Decl. ¶ 68. Under the auspices of the MVL, the Foreign

Representatives were empowered to, among other things, "(i) satisfy the outstanding liabilities of

the [Debtor] . . . (ii) pay the fees and expenses of winding-up the affairs of the [Debtor], and

(iii) distribute the remaining assets of the [Debtor] in kind to the extent practicable to the

Members of the [Debtor] in accordance with applicable law." *See id*., Ex. C. As noted, under the

MVL, they distributed more than $ 11 million to the Debtor's shareholders (including some of

the New York Plaintiffs). Pursuant to the Liquidation Order, the Bermuda Court granted the

Foreign Representatives the power, "in respect of any act which, under the Companies Act 1981,

is required to be done by a liquidator or authorized by him, the joint liquidators may do such act

or give such authorization either jointly or by acting on behalf of both." *See id*. ¶ 68. The New

---

[13]    The board of directors' powers ceased upon the appointment of the Foreign Representatives as joint
liquidators. *See* Original Thresh Decl. ¶ 68.

York Plaintiffs say that although the Foreign Representatives contend that they have played an active role in the Debtor's affairs since their appointment in the MVL, in reality their work on behalf of the Debtor has been limited to merely handling the distribution of cash assets (virtually all of which has already been distributed) and other statutorily mandated tasks; and assisting in challenging the New York Action. *See* Objection ¶ 29. That may be so, but the Court will "include the debtor's liquidation activities" in its COMI analysis. *Fairfield Sentry*, 714 F.3d at 138. As in *Fairfield Sentry*, here, the foreign proceeding is like a liquidation case under chapter 7 of the Bankruptcy Code. Luthi Decl. ¶ 20. As such, in determining the Debtor's COMI, it is particularly appropriate to consider where the liquidation is being administered. *In re Betcorp Ltd.*, 400 B.R. at 292 (finding COMI in Australia in part because it was the place where "the winding up is being administered," as well as "[t]he location of those that manage Betcorp - the liquidators"); *see also In re Suntech*, 520 B.R. at 418 (finding COMI in the Cayman Islands where joint provisional liquidators had "centralized the administration of the Debtor's affairs and its restructuring"). All of those actions have been undertaken by the Foreign Representatives in Bermuda.

The Court finds that as of the filing of the Recognition Motion, the Debtors center of main interests has been in Bermuda. As such, subject to the discussion below, the Court finds that the Foreign Administrators are entitled to an order recognizing the Bermuda Liquidation as a foreign main proceeding for purposes of section 1517(a)(1) of the Bankruptcy Code.[14]

---

[14]    As the Court has found that the Bermuda Liquidation is a foreign main proceeding, there is no need to consider whether the Bermuda Liquidation qualifies as a foreign nonmain proceeding.

**Whether the Foreign Representatives'**
**Alleged Bad Faith Bars Them From Obtaining Relief Herein**

Section 1506 establishes the public policy exception to granting relief under chapter 15,

as follows:

> Nothing in this chapter prevents the court from refusing to take an action
> governed by this chapter if the action would be manifestly contrary to the public
> policy of the United States.

11 U.S.C. § 1506. The exception "is intended to be invoked only under exceptional

circumstances concerning matters of fundamental importance for the United States." *In re*

*Millard*, 501 B.R. at 651 (internal quotations omitted); *see also Iida v. Kitahara* (*In re Iida*),

377 B.R. 243, 259 (9th Cir. BAP 2007) ("This public policy exception is narrow and, by virtue

of the qualifier 'manifestly,' is limited only to the most fundamental policies of the United

States"); *In re Ephedra Prods. Liability Litig.,* 349 B.R. 333, 336 (S.D.N.Y. 2006) ("In adopting

Chapter 15, Congress instructed the courts that the exception provided therein for refusing to

take actions manifestly contrary to the public policy of the United States should be narrowly

interpreted, as [t]he word 'manifestly' in international usage restricts the public policy exception

to the most fundamental policies of the United States.") (internal quotations omitted). Thus,

courts have found the exception to be narrow, with deference when a foreign court's proceedings

meet fundamental standards of fairness. *See Collins v. Oilsands Quest Inc.,* 484 B.R. 593, 597

(Bankr. S.D.N.Y. 2012); *see also In re Metcalfe & Mansfield Alternative Investments*, 421 B.R.

685, 697 (Bankr. S.D.N.Y. 2010) (only issue is whether foreign procedures meet United States

standards of fundamental fairness) (disagreed with on other grounds by *In re Kirwan Offs.*

*S.a.r.l.*, 592 B.R. 489, 504 (S.D.N.Y. 2018)).

As a consequence, courts have generally found that section 1506 does not prohibit

recognition in situations where the debtor has engaged in bad faith. *See In re Creative Fin. Ltd.*,

543 B.R. at 515 ("But even though . . . the Court has found bad faith on the part of the Debtors (and though that bad faith must be imputed to the Liquidator, even if he was not trying to assist the individuals who had retained him), and even though anything this Court might do to facilitate the Debtors' conduct could legitimately be said to be contrary to U.S. public policy, the Court does not consider it appropriate to invoke section 1506 . . . ."). As noted, the text of section 1506 requires that that recognition be limited to "instances where granting those rights would be *manifestly* contrary to the public policy of the U.S." *Id.* at 516 (emphasis in original). Therefore, "the exception 'is intended to be invoked only under exceptional circumstances concerning matters of fundamental importance for the United States.'" *Id.* (citation omitted). Taking the lead from *Creative Finance*, the court in *Manley Toys* held that "when gauging whether to recognize a proceeding, the question under section 1506 is not whether the actions of the debtor violate public policy, but rather whether the foreign tribunal's procedures and safeguards do not comport with United States public policy." *In re Manley Toys Ltd.*, 580 B.R. 632, 648 (Bankr. D.N.J. 2018), *aff'd,* 597 B.R. 578 (D.N.J. 2019); *see also In re Millard*, 501 B.R. at 654 ("[W]hen 1517(a) says [recognition of a foreign proceeding] is 'subject to' one thing—section 1506, which . . . is the public policy exception—that sends a message to the judiciary that *it is not subject to other things that were not so included*.") (emphasis in original); *In re Octaviar Admin. Pty Ltd*, 511 B.R. at 373 (declining to infer a good faith requirement under section 109(a), holding "the Court must abide by the plain meaning of the words in the statute") (citing *In re Barnet*, 737 F.3d at 246). Therefore, a bad faith filing, by itself, will not trigger the mandate of section 1506. *See In re Creative Fin. Ltd.*, 543 B.R. at 516 ("The Court has been faced with bad faith filings in U.S. chapter 11 cases as well, and while it has repeatedly taken action to deal with the abusers, it has not elevated its concerns as to the debtor misconduct to the level of public policy.").

29

In the Objection, the New York Plaintiffs argue that the Debtor's bad faith filing of the
Chapter 15 Petition justifies dismissal or, at a minimum, precluding any stay relief with respect
to the New York Action. Objection ¶ 47. In particular, as support, they focus on *In re C-TC 9th
Ave. P'ship*, 113 F.3d 1304, 1309 (2d Cir. 1997) (*id.*¶ 45), in which the court dismissed a chapter
11 case in part, due to the fact that it met the following factors:

> (1) the debtor has only one asset;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to
> those of the secured creditors;
>
> (3) the debtor's one asset is the subject of a foreclosure action as a result of
> arrearages or default on the debt;
>
> (4) the debtor's financial condition is, in essence, a two party dispute between the
> debtor and secured creditors which can be resolved in the pending state foreclosure
> action;
>
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the
> legitimate efforts of the debtor's secured creditors to enforce their rights;
>
> (6) the debtor has little or no cash flow;
>
> (7) the debtor can't meet current expenses including the payment of personal
> property and real estate taxes; and
>
> (8) the debtor has no employees.

113 F.3d at 1311.

In response, the Foreign Representatives argue that any such request is procedurally
defective, as dismissal is only available upon "notice and a hearing" under section 305(a) of the
Bankruptcy Code. Reply ¶ 25 n.10. Further they argue that there is no good faith requirement in
chapter 15, so, "unlike a 'Chapter 11 filing [which] may be deemed frivolous if it is clear that on
the filing date there was no reasonable likelihood that the debtor intended to reorganize and no
reasonable probability that it would eventually emerge from bankruptcy proceedings'

(*In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1309 (2d Cir. 1997) (internal citations and quotation marks omitted)), there is no similar good faith requirement in chapter 15." *Id.*

There is evidence to support the New York Plaintiffs' assertion that the Foreign Representatives filed the Chapter 15 Petition as part of their strategy to bring on an end to the New York Action. The MVL was only filed in the brief window just after the dismissal of the First Amended Complaint, but before the appeal period had passed. Original Thresh Decl. ¶ 10. And in fact, the New York Plaintiffs successfully appealed the dismissal. Singer Decl. ¶ 8. After they were appointed joint liquidators in the MVL, the Foreign Representatives requested that the New York Plaintiffs take no further action in the litigation, and alleged that their appointment effected a change of control over the Debtor such that the New York Action was now properly controlled by the Foreign Representatives. Original Thresh Decl. ¶ 18. Further, the Foreign Representatives commenced the Bermuda Anti-Suit Action with the specific goal of preventing the New York Plaintiffs from continuing the New York Action. *Id.* ¶¶ 51-52. Although the Foreign Liquidators have agreed to stay any pursuit of the Anti-Suit Injunction at this time, if it is eventually granted it would prohibit the New York Plaintiffs from pursuing the New York Action, and would leave the Foreign Liquidators in complete control of the future of the litigation. Luthi Decl. ¶ 42. Finally, here the admitted, and apparently entire, purpose of the present chapter 15 filing is to prevent the New York Plaintiffs from continuing the New York Action. Recognition Motion ¶ 38 (stating that the purpose of the chapter 15 filing is so that "the Bermuda Liquidation and any order issuing from the Bermuda court [are] binding and enforceable in the United States so that the New York Plaintiffs are precluded from continuing the New York [Action] under the automatic stay and otherwise taking any actions in the United States that may further deplete the dwindling assets of the Debtor and frustrate the Bermuda

31

Liquidation."). Therefore, it is clear that the filing of this chapter 15 is a litigation strategy. *See In re C-TC 9th Ave. P'ship*, 113 F.3d at 1309 (finding that "thus, that the primary function of the petition was to serve as a litigation tactic").

However, despite this finding, the Court also finds that the New York Plaintiffs' attempt to import caselaw from other chapters of the Bankruptcy Code is not sufficient. Recognition under chapter 15 is subject to the public policy exception of section 1506. As noted above, however, "the question under section 1506 is not whether the actions of the debtor violate public policy, but rather whether the foreign tribunal's procedures and safeguards do not comport with United States public policy." *In re Manley Toys Ltd.*, 580 B.R. at 648. And here, no party asserts that the proceedings in Bermuda themselves are, by their nature, contrary to United States public policy. Therefore, as in other cases in this jurisdiction, the Court finds that this exception is not met by a simple finding that the Chapter 15 Petition has been filed as a litigation tactic. *See id.* at 650 ("Just as foreign courts should recognize the bankruptcy of a bad company based in the United States when all of the elements for recognition have been met, United States courts should recognize foreign proceedings of bad companies when a foreign representative can establish the requirements for recognition."); *In re Creative Fin. Ltd.*, 543 B.R. at 516 ("It does not seem right to find a violation of U.S. public policy when U.S. debtors sometimes engage in the same or similar bad faith, under U.S. law.").[15]

### Whether *SPhinX* Requires a Finding of a Nonmain Proceeding

Additionally, and for the same reasons, the New York Plaintiffs argue that the Debtor's case should not be recognized as a main proceeding. Objection ¶ 34. In particular, they allege

---

[15]   In addition, and as further noted below, even if the Foreign Representatives eventually gain control over the New York Action, any dismissal or lack of prosecution of such action would be subject to challenge before the Bermuda court by the New York Plaintiffs. *See* Luthi Decl. ¶ 43. Therefore, the New York Plaintiffs are not left without a remedy for the litigation strategy of the Foreign Representatives.

that this case is similar to *In re SPhinX*, as "[h]ere, the Debtor concedes that the sole purpose of commencing this proceeding was 'so that the New York Plaintiffs are precluded from continuing the New York Litigation under the automatic stay,' even though the New York Action is viable and is the Debtor's only remaining significant asset." *Id.* They argue that for this reason alone the Court should deny recognition of this case as a main proceeding. *Id.*

The Foreign Representatives argue that *SPhinX* is distinguishable. First, they state that the *SPhinX* court's focus on pre-petition activities of the debtor is no longer proper under *Fairfield Sentry*. Reply ¶ 15 n.7. Second, they argue that while *SPhinX* still had operations in other parts of the world, the Debtor's sole activities over the last seven years have been in Bermuda. *Id.* Third, the Foreign Representatives argue that the New York Action, due to the fact it has not left a pre-answer stage in eight years, is not comparable to the court approved settlement addressed in *SPhinX*. *Id.* And in any case, contingent and disputed liquidation claims are irrelevant to a COMI determination. *Id.*

In *SPhinX*, the court examined whether a debtor's COMI was in the Cayman Islands when it engaged in the sole activity of winding up its affairs, and most of its creditors and assets, besides the books and records, were located elsewhere. *SPhinX I*, 351 B.R. at 119. The *SPhinX* debtors were hedge funds comprised of various limited liability companies and segregated portfolio companies incorporated and registered in the Cayman Islands (the "SPhinX Funds"). *Id.* at 106-07. The SPhinX Funds had no employees or physical offices in the Cayman Islands and, except for corporate books and records, the SPhinX Funds had no assets in the Cayman Islands. *Id.* at 107. In fact, with the exception of a fraudulent transfer claim by Refco Capital Markets, Ltd. ("RCM"), it was unclear that the SPhinX Funds even had any creditors in the traditional sense. *Id.* at 108-09.

Regarding the fraudulent transfer claim, RCM alleged that, on the eve of its own chapter 11 filing, PlusFunds Group Inc. obtained an approximately $312 million preference from RCM on the SPhinX Funds' behalf. RCM's creditors' committee sought an attachment to certain of the assets of the SPhinX Funds, and on the first day of trial the parties announced a settlement in open court, which was then memorialized in a stipulation and proposed order (the "RCM Settlement"). In response to a Bankruptcy Rule 9019 motion for approval of the RCM Settlement, certain of the investors in the SPhinX Funds objected to the RCM Settlement on the basis that it was too favorable to RCM. The RCM Settlement was later approved by the bankruptcy court, and the investors appealed. The *SPhinX* court noted that:

> It is important to recognize that the pendency of such appeals, regardless of their merits, effectively postpones the date that the RCM Settlement becomes effective, notwithstanding the SPhinX Fund's prior payment of the settlement proceeds into escrow. This is because the RCM Settlement provides that '[i]f this Stipulation and Order, or any portion thereof, is not approved by the Bankruptcy Court or if it is overturned or modified on appeal, this Stipulation and Order shall be of no further force and effect. . . .'

*Id.* at 110 (emphasis in original). The objecting creditors put the SPhinX Funds into voluntary liquidation in the Cayman Islands, and then unsuccessfully sought a temporary restraining order to enjoin further activity in the appeals. *Id.* at 111. Subsequently, the SPhinX Funds filed for chapter 15 relief. *Id.* at 106. In examining COMI, the court noted that there were not any assets, except for the books and records, in the Cayman Islands, and the majority of the SPhinX Funds assets and creditors were located in the United States. *Id.* at 119. Despite the relatively minimal contacts in the Cayman Islands, and the fact that the court found that a simple "location of administration of the debtor's interests test" could well result in a COMI in a different jurisdiction, the court found it would typically find that the Cayman Islands were the main

34

proceedings given that the debtor was being competently wound up and the vast majority of

parties in interest supported the Cayman Island proceeding. *Id.* at 121.

Despite this finding, however, the *SPhinX* court found that the primary basis for the

petition was improper as the case was filed with the sole intent of staying the appeal. *Id.*

> [S]taying the appeal would have the same effect as overturning the RCM
> settlement *without addressing or prevailing on the merits.* (It is this sidestepping of
> consideration of the merits, or, at a minimum, obtaining strategic leverage without
> addressing the merits, rather than the JOLs' taking a position contrary to the
> settlement, that is the problem.) Indeed, given that the [joint liquidators] did not
> articulate a proper basis, or even actively pursue a request, for any other relief under
> chapter 15—for example, an injunction or turnover of property—with the exception
> of a request for further discovery primarily relating to the appeals, . . . this litigation
> strategy appears to be the only reason for their request for recognition of the
> Cayman Islands proceedings as foreign main proceedings.
>
> In any event, the strategy taints the [joint liquidator's] request and the investor's
> consent to it, giving the clear appearance of forum shopping.

*Id.* (emphasis in original). Because of this improper purpose, and due to the fact that "so many

objective factors point[ed] to the Cayman Islands not being the Debtor's COMI," the court found

that the chapter 15 case was a foreign nonmain proceeding, even though there was no "main"

proceeding. *Id.* at 122.[16]

This case is distinguishable from *SPhinX* on two crucial grounds. First, COMI is clearly

located in Bermuda. The Debtor is winding up its affairs and its assets at this stage are limited.

---

[16]    As noted by the New York Plaintiffs, this case is distinguishable from *In re Ascot Fund Limited*. Objection
¶¶ 37-38. In *Ascot*, the debtor first entered into a voluntary liquidation in the Cayman Islands for the purpose of
resolving a dispute over the distribution of certain assets. *In re Ascot Fund Ltd.*, 603 B.R. at 283. Only after the
foreign filing, a party filed a preemptive lawsuit in New York, with the admitted purpose of avoiding the Cayman
Island proceeding. *Id.* The debtor then filed the chapter 15 in attempt to return the decision to the collective
proceeding in the Cayman Islands. *Id.* Therefore, the court found that "the situation that tilted the scales in *Sphinx*
[sic] is reversed," as the lawsuit was filed as a strategy to remove the dispute from the Cayman Islands, rather than
the other way around. *Id.* As a consequence, among other considerations, the court declined to downgrade the main
proceeding to a nonmain proceeding. *Id.* at 286. Here, of course, the New York Action was filed first, and only
afterwards the Foreign Representatives filed the MVL and the Bermuda Liquidation. Therefore, this case is more
comparable to the one examined in *SPhinX*, as the chapter 15 filing is clearly an attempt to stay, and ultimately to
dismiss, the New York Action.

However, in this context the Court finds it significant that all the Debtor's assets are located in Bermuda, and all of its current activities (which consist solely of winding up its affairs) occur in Bermuda. In *SPhinX*, the court noted that "a simple 'location of administration of the debtor's interests test,' could well result in a different [COMI] outcome, particularly if there was a possibility of reorganization." *Id.* at 121. That is simply not the case here—COMI is in Bermuda. Second, in *SPhinX*, because of the unique wording of the settlement agreement, a stay pending appeal had the "same effect as overturning the RCM settlement *without addressing or prevailing on the merits.*" *Id.* (emphasis in original). Here, even if the stay comes into effect and the New York Plaintiffs are prohibited from pursuing the New York Action, whether by the Bermuda Anti-Suit Action or otherwise, the Foreign Representatives are still subject to the jurisdiction of the Bermuda court pursuant to section 176(5) of the Bermuda Companies Act, which provides:

> If any person is dissatisfied by any act, omission or decision of the liquidator, that person may apply to the Court, and the Court may confirm, reverse or modify the act or decision complained of, and may give such directions and make such order in the premises as it things just.

*See* Luthi Decl. ¶ 43. In addition, although not before the Court at this time, the New York Plaintiffs may also move to lift the stay in this proceeding and the Court will consider any such filing in due course. As a consequence, here the Foreign Representatives will not prevail "on the merits" merely as a consequence of the stay.

As noted, the Foreign Representatives attempt to distinguish *SPhinX* on the basis that its focus on pre-petition activities of the debtor is no longer proper under *Fairfield Sentry*. Reply ¶ 15 n.7. However, *SPhinX* is clearly still good law, as it was cited as relevant authority by the Second Circuit, and in any case the decision to downgrade the case to a nonmain proceeding did not appear to involve a consideration of pre-petition activities. *See, e.g., Fairfield Sentry*, 714 F.3d at 137 (citing *SPhinX* for a "widely adopted" list of COMI factors). Second, they argue that

36

while *SPhinX* still had operations in other parts of the world, the Debtor's sole activities over the last seven years have been in Bermuda. Objection ¶ 15 n.7. This objection hits closer to the mark, as discussed above, as the *SPhinX* court was faced with a situation where, "with the exception of corporate minute books and similar records, the [liquidators] have not identified any assets located in the [foreign jurisdiction]." *SPhinX I*, 351 B.R. at 119. Here, although the Debtor's operations at the time of the Recognition Motion and the Bermuda Liquidation were undeniably limited, they were centered in Bermuda during the entire time period allowed to be examined by *Fairfield Sentry*. Finally, the Foreign Representatives argue that the New York Action, due to the fact it has not left a pre-answer stage in eight years, is not comparable to the court approved settlement addressed in *SPhinX*. Objection ¶ 15 n.7. This factor is largely irrelevant. The *SPhinX* court did not make any findings regarding the strength or merits of the settlement in question. Rather, it simply focused on the fact that the chapter 15 petition itself was not filed for a proper purpose. Further, it would be premature for this Court to make any such findings regarding the merits of the New York Action, as the New York Court is still considering the latest motion to dismiss.

As a consequence, under the unique circumstances of this case, the Court declines to import a good faith requirement into the determination of a main/nonmain proceeding. Here, unlike in *SPhinX* where "so many objective factors point to the [foreign jurisdiction] not being the Debtors' COMI," the analysis is straightforward, albeit limited given the paucity of the Debtor's operations. *See id.* at 122. Further, as discussed above given the language of section 1506, the Court has limited discretion to deny recognition except when it would be manifestly contrary to the public policy of the United States.

**Requests for Stay Relief Are Premature**

In the Objection, the New York Plaintiffs spend considerable time arguing that even if the automatic stay were imposed, they would be well within their rights to seek to lift the stay for cause as a bad faith filing. *See* Objection ¶ 44. Using precedent from chapter 11 cases, they argue that cause exists to lift the stay due to the fact that the filing is solely a litigation tactic. *Id.* ¶ 45 (citing *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1309-10 (2nd Cir. 1997)). In particular, they argue that, in both this case and *C-TC*, the debtor only had one tangible asset, were engaged in an essentially "two-party dispute," and the timing of the filing was an attempt to delay the prosecution of that dispute. *Id.* ¶ 46. In the alternative they also argue that modification of any automatic stay would be appropriate by application of the *Sonnax* factors:

> (i) whether relief would result in a partial or complete resolution of the issues; (ii) lack of any connection with or interference with the bankruptcy case; (iii) whether the other proceeding involves the debtor as a fiduciary; (iv) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (v) whether the debtor's insurer has assumed full responsibility for defending it; (vi) whether the action primarily involves third parties; (vii) whether litigation in another forum would prejudice the interests of other creditors; (viii) whether the judgment claim arising from the other action is subject to equitable subordination; (ix) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (x) the interests of judicial economy and the expeditious and economical resolution of litigation; (xi) whether the parties are ready for trial in the other proceeding; and (xii) impact of the stay on the parties and the balance of harms.

*Id.* ¶ 50 (citing S*onnax Indus. Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus. Inc.*), 907 F.2d 1280, 1285-86 (2d Cir. 1990)).

In response, the Foreign Representatives argue that this request for stay relief is procedurally defective, as such relief can only be granted after a notice and a hearing, and therefore is not proper in the context of an objection to the Recognition Motion. Reply ¶ 26.

Further, in any case the Foreign Representatives argue that the *Sonnax* factors do not support

cause to lift the stay. *Id.* ¶ 28.

The Court does not have to reach this question today. As pointed out by the Foreign

Representatives, the New York Plaintiffs have not properly moved for stay relief and cannot

make such a request in the context of an objection to the Recognition Motion. *See* 11 U.S.C.

§ 362(d)(1) (stating that stay relief is available "[o]n request of a party in interest and after notice

and a hearing"). As well, the application of the stay is mandatory upon a finding of a foreign

main proceeding. 11 U.S.C. § 1520(a)(1) ("[u]pon recognition of a foreign proceeding that is a

foreign main proceeding—(1) sections 361 and 362 apply with respect to the debtor and the

property of the debtor that is within the territorial jurisdiction of the United States"). Therefore,

to the extent that the New York Plaintiffs seek to lift the automatic stay regarding the New York

Action, they may file an appropriate motion and the Court will address the matter in due course.

## CONCLUSION

Based on the foregoing analysis, the Court overrules the Objection, grants the

Recognition Motion, and finds that: (i) the Bermuda Liquidation is a foreign main proceeding;

the Foreign Representatives are the foreign representatives of the Debtor, and (iii) the Chapter 15

Petition meets the requirements of section 1515 of the Bankruptcy Code, without prejudice to the

rights of the Foreign Representatives to seek further relief under 11 U.S.C. § 1521 or the

New York Plaintiffs to seek relief from the automatic stay to continue the prosecution of the

New York Action.

IT IS SO ORDERED.

Dated: July 2, 2021
    New York, NY
                                         /s/ *James L. Garrity, Jr.*
                                         Honorable James L. Garrity, Jr.
                                         United States Bankruptcy Judge