TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Fax:  (212) 967-4258
Kyle J. Ortiz
Brian F. Shaughnessy
Eitan E. Blander

*Co-Counsel to the New York Plaintiffs*

SINGLER PROFESSIONAL LAW CORPORATION
103 Johnson Street
P.O. Box 2298
Windsor, California. 95492
(707) 823-8719
Peter A. Singler (*pro hac vice*)

*Co-Counsel to the New York Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| CULLIGAN LTD.,[1] | Case No.:  20-12192 (JLG) |
| Debtor in Foreign Proceedings. | |

**NEW YORK PLAINTIFFS' APPLICATION FOR AN ORDER**
**LIFTING THE AUTOMATIC STAY AND DIRECTING THE FOREIGN**
**REPRESENTATIVES TO ABANDON THE NEW YORK ACTION**

---

[1]    Culligan Ltd is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 35591. The Debtor's registered office is located at c/o KPMG Advisory Limited, Crown House, 4 Par-la-Ville Road, Hamilton, Bermuda.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................2

BACKGROUND ...................................................................................................................3

    I.   The Debtor's Attempts to Obstruct the New York Action .........................................3

    II.  The Instant Proceeding ...............................................................................................7

    III. The Status of the Debtor's Liquidation Efforts..........................................................7

    IV. The New York Plaintiffs' Proposed Sixth Amended Complaint..............................8

REQUESTED RELIEF...........................................................................................................9

ARGUMENT .......................................................................................................................9

    I.   Modification of a Potential Automatic Stay for Cause Under Section 362(d)(1)
        of the Bankruptcy Code Would be Warranted...........................................................9

    II.  The Debtor's Bad Faith Warrants Lifting the Automatic Stay With Regard
        to the New York Action ............................................................................................13

    III. The Court Should Direct the Foreign Representatives to Abandon the New
        York Action...............................................................................................................16

JURISDICTION ................................................................................................................19

RESERVATION OF RIGHTS ...............................................................................................19

CONCLUSION...................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Culligan Soft Water Co. v. Clayton Dubilier & Rice LLC,*
   118 A.D.3d 422 (1st Dept 2014) ........................................................................5

*Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC,*
   139 A.D.3d 621 (N.Y. App. Div. 2016) ............................................................4, 6

*In re 950 Meat & Grocery Corp.,*
   617 B.R. 224 (Bankr. S.D.N.Y. 2020)...............................................................11

*In re Am.'s Ins. Ctr., Inc.,*
   620 B.R. 528 (Bankr. D.N.J. 2020) ...................................................................16

*In re Consol. Distributors,*
   No. 13-40350 (NHL), 2013 WL 3929851 (Bankr. E.D.N.Y. July 23, 2013) .......12

*In re Containtership Co.,*
   466 B.R. 219 (SHL) (Bankr. S.D.N.Y. 2012) ......................................................9

*In re Cortuk,*
   2019 WL 2171481 (D.N.J. May 20, 2019) .........................................................10

*In re Creative,*
   543 B.R. 498 (Bankr. S.D.N.Y. 2016).........................................................13, 15

*In re C-TC 9th Ave. P'ship,*
   113 F.3d 1304 (2d Cir. 1997)......................................................................14, 15

*In re Eclair Bakery Ltd.,*
   255 B.R. 121 (Bankr. S.D.N.Y. 2000)..........................................................14, 15

*In re Gen. Dev. Corp.,*
   179 B.R. 335 (S.D. Fla. 1995)...........................................................................17

*In re Granite Partners, L.P.,*
   219 B.R. 22 (Bankr. S.D.N.Y. 1998)..................................................................18

*In re Hellas Telecommunications (Luxembourg) II SCA,*
   524 B.R. 488 (Bankr. S.D.N.Y)..........................................................................19

*In re Island Helicopters, Inc.,*
   211 B.R. 453 (Bankr. E.D.N.Y. 1997) ................................................................14

*In re Kaplan Breslaw Ash, LLC,*
   264 B.R. 309 (Bankr. S.D.N.Y. 2001 .................................................................13

*In re Murray,*
543 B.R. 484 (Bankr. S.D.N.Y. 2016) ......................................................................15

*In re Newton,*
2020 WL 2731995 (S.D.N.Y. May 26, 2020) ...........................................................15

*In re Oracle Sec. Litig.,*
829 F. Supp. 1176 (N.D. Cal. 1993) .........................................................................17

*In re Quigley Co., Inc.,*
361 B.R. 723 (Bankr. S.D.N.Y. 2007) ......................................................................11

*In re Strata Energy Services,*
Case No. 15-20821 [Docket No. 87] (Bankr. D. Wy Sept. 7, 2016) .........................16

*In re Syndicom Corp.,*
268 B.R. 26 (Bankr. S.D.N.Y. 2001) ........................................................................14

*In re XO Commc'ns, Inc.,*
330 B.R. 394 (Bankr. S.D.N.Y. 2005) ......................................................................12

*In re: Motorcycle Tires,*
Case No. 19-12706 [Docket No. 48] (Bankr. D. Del. Mar. 31, 2020) ......................16

*Lewis v. Shaffer Stores Co.,*
218 F. Supp. 238 (S.D.N.Y. 1963) ............................................................................18

*Lippl v. Int'l Fid. Ins. Co.,*
514 B.R. 127 (W.D. Pa. 2014) ..................................................................................17

*Musso v. Hirsch,*
2011 WL 4543225 (E.D.N.Y. Sept. 29, 2011) ..........................................................11

*Schneiderman v. Bogdanovich (In re Bogdanovich),*
292 F.3d 104 (2d Cir. 1999) .......................................................................................9

*Seinfeld v. Allen,*
169 F. App'x 47 (2d Cir. 2006) ................................................................................16

*Sheehan v. Scotchel,*
536 B.R. 166 (N.D.W. Va. 2015) ..............................................................................17

*Sonnax Indus. Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus. Inc.),*
907 F.2d 1280 (2d Cir. 1990) ............................................................................10, 11

## Statutes

11 U.S.C. § 554(b) .......................................................................................................16

11 U.S.C. § 1501 .........................................................................................................19

28 U.S.C. § 157 ................................................................................................................... 19

28 U.S.C. § 157(b)(2)(P) ..................................................................................................... 19

28 U.S.C. § 1334 ................................................................................................................. 19

28 U.S.C. § 1410 ................................................................................................................. 19

TO THE HONORABLE JAMES L. GARRITY, JR.,
UNITED STATES BANKRUPTCY JUDGE:

The parties listed in footnote 1 herein (the "<u>New York Plaintiffs</u>"),[2] by and through their undersigned counsel Togut, Segal & Segal LLP, hereby submit this application (the "<u>Motion</u>") for an order lifting the automatic stay to allow continuation of the New York Action and directing the Foreign Representatives of the debtor (the "<u>Debtor</u>") in the above-captioned Chapter 15 case to abandon the New York Action, pursuant to sections 362(a) and 554(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rules 2002, 4001, and 6007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  In support of the Motion, the New York Plaintiffs respectfully submit the Declaration of Peter A. Singler (the "<u>Singler Decl.</u>"), annexed hereto as **Exhibit "A,"** and incorporated herein by reference.  In further support of the Motion, the New York Plaintiffs respectfully state:

---

[2]   The New York Plaintiffs are: Culligan Soft Water Company; Cecil R. Hall; C&D Of Rochester, LLC; Driessen Water, Inc.; Michael A. Bannister; T&B Enterprises, Inc.; California Water & Filter, Inc.; Shar Sher I, Inc.; Water Quality Improvement, Inc.; Culligan Southwest, Inc.; Carey Water Conditioning, Inc.; Michael Carey; Eric B. Clarke; Culligan Water Conditioning (Barrie) Ltd.; Arthur H. Cooksey, Jr.; Corbett's Water Conditioning, Inc.; Glen Craven; Culligan Water Conditioning Horicon, LLP; Henry T. Wood; Mayer Soft Water Co., Inc.; Timothy Fatheree And Sue Fatheree; Clean Water, Inc.; Catherine Gilby; Canatxx, Inc.; Quality Water Enterprises, Inc.; Robert R. Heffernan; Charles F. Hurst; Karger Enterprises, Inc.; Keppler Water Treatment, Inc.; Robert Kitzman And Tracy Kitzman; Ladwig Enterprises, Inc.; Richard Lambert And Marianne Conrad; Low Country Water Conditioning, Inc.; Gina Larson; Michael G. Macaulay; Vetter's, Inc.; Robert W. Mccollum And Barbara N. Mccollum; Richard C. Meier; Donald E. Meredith; Cleanwater Corporation Of America; John Mollman And Janette Mollman; The Good Water Company Ltd.; E&H Parks, Inc.; Maumee Valley Bottlers, Inc.; Schry Water Conditioning, Inc.; Schry Water Treatment, Inc.; Winslow Stenseng; Stewart Water Conditioning, Ltd.; Bret P. Tangley; B.A.R. Water Corporation; Trilli Holdings, Inc.; Bruce Van Camp; Walter C. Voigt And Charlotte P. Voigt; Marin H2o, Inc.; Allan C. Windover; Everett Windover; Culligan Soft Water Service (Que) Inc.; G.R. Mccoy; Richard N. Wendt; Richard Sample And Marie Sample; The Water Meister, Inc.; Alex Connelly; Go Water, Inc.; Van D. Waugh; Melissa Grill; Petro's Water Conditioning Of Johnson County, Inc.; Water Treatment Services Of Shelbyville, Inc.; Countryside Management, Inc.; Gulf Coast Water Conditioning, Inc.; Adrian Water Conditioning, Inc.; Canney's Water Treatment, Inc.

## PRELIMINARY STATEMENT[3]

1.      The fundamental purpose of the automatic stay is to allow space for reorganization or liquidation activities to be conducted without interference.  A stay of the New York Plaintiffs' state court derivative litigation (the "New York Action") would serve no such purpose here.  By the Foreign Representatives' own admission, there is no further reorganization or liquidation required by the Debtor – a shell company that has no debts, conducts no business, and already liquidated virtually all of its cash assets.  There is nothing left to impede.

2.      Nor has the New York Action ever impeded the Debtor's prior liquidation efforts.  The Debtor's near-complete liquidation occurred entirely between the commencement of the New York Action in 2012 and the Petition Date.  Now, the Debtor's only significant asset remaining is the New York Action itself, which, if allowed to proceed, could result in significant new funds for the benefit of the Debtor and its stakeholders.  Keeping the stay in place, on the other hand, could irreparably prejudice the New York Plaintiffs, given the differences between Bermuda and New York law with respect to the viability of the New York Action.  Simply put, while the First Department held that the New York Plaintiffs' claims are governed by New York law, the Foreign Representatives no doubt will seek to circumvent that ruling by resurrecting their pursuit of the Bermuda Anti-Suit Action based on Bermuda law, which does not recognize derivative claims of the type at issue.  The New York Plaintiffs will thus have no recourse in New York if the stay remains.  For these reasons, and those set forth below, lifting the stay here is warranted under the *Sonnax* factors.

---

[3]     Capitalized terms used but not defined herein should have the meanings ascribed to them in *the Foreign Representatives' Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief* [Docket No. 5] (the "Motion for Recognition").

3.      This Court should also lift the stay for the independent reason that the Debtor sought and obtained it in bad faith.  As the Foreign Representatives have admitted, they commenced this Chapter 15 proceeding for one purpose:  "so that the New York Plaintiffs are precluded from continuing the New York Litigation under the automatic stay."  They did not seek a stay to facilitate good faith liquidation efforts. The stay itself was the goal, a litigation strategy to permanently enjoin – as opposed to stay (pause) – the New York Action.  For that reason alone, the stay should be lifted.

4.      To the extent the Foreign Representatives argue that they now have exclusive control of the New York Action and that lifting the stay would be moot, the Court should direct them to abandon the New York Plaintiffs' claims.  The Debtor has opposed the New York Action from the outset, such that directing abandonment would be a mere formality at this point.  Moreover, the New York Supreme Court has already denied the Foreign Representatives' attempt to be substituted as plaintiffs in the New York Action (for the express purpose of voluntarily dismissing it), noting a potential conflict of interest.  The state court's concerns are well-founded – the Foreign Representatives are employed by a defendant in the New York Action and thus should be foreclosed from taking over a case they intend to dismiss.

5.      Accordingly, the Motion should be granted in its entirety.

### BACKGROUND

I.      **The Debtor's Attempts to Obstruct the New York Action**[4]

6.      On May 30, 2012, the New York Plaintiffs – a group of minority shareholders of the Debtor – derivatively commenced the New York Action, asserting

---

[4]    For a more complete factual background, *see* the Declaration of Peter Singler, dated November 2, 2020 [Docket No. 22] (the "Initial Singler Declaration").

claims against certain directors and controlling shareholders for, *inter alia*, illegal distributions, breach of fiduciary duty, and corporate waste.  Singler Decl. ¶ 4.  The New York Plaintiffs seek over $500 million in damages, plus interest and punitive damages.  *Id.* ¶ 5.  Additional defendants in the New York Action include the Debtor, which is only a nominal defendant, and KPMG Advisory Limited (Bermuda) ("KPMG"), which has employed the Foreign Representatives during the entire period since the New York Action was commenced.[5]  *Id.* ¶ 7.  KPMG, the Debtor, and the Foreign Representatives are all represented by the same counsel – Allegaert Berger & Vogel LLP ("Allegaert") – in the New York Action.[6]  *Id.* ¶ 8.

7.      The Debtor, through the Foreign Representatives, has opposed the New York Action from the outset, moving to dismiss the case multiple times, and even objecting to a $4 million partial settlement that would have benefited the Debtor and its shareholders.  *Id.* ¶ 9(f).  However, the Debtor has failed to obtain final dismissal.

8.      In its first motion to dismiss (concerning the First Amended Complaint), the Debtor argued that Bermuda law precluded the New York Action.  The New York Supreme Court agreed and dismissed the case on March 13, 2013, holding that the New York Plaintiffs' allegations did not meet the very narrow exceptions under Bermuda law allowing shareholders to maintain derivative actions.  *Id.* ¶ 9(b).

---

[5]  The Foreign Representatives were Managing Directors of KPMG in 2006-2007, when the underlying malfeasance alleged in the New York Action occurred.  Singler Decl. ¶ 7.

[6]  Prior to the filing of the New York Plaintiffs' Fourth Amended Complaint, the Debtor, the Foreign Representatives, the CDR Defendants, and all individual director defendants were represented by Debevoise & Plimpton, LLP.  Singler Decl. ¶ 9(h).  Although a related Motion to Disqualify by the New York Plaintiffs was denied, the First Department ruled: "However, to the extent plaintiffs' complaint, as repleaded, survives the pleading stage, the nominal defendant should, at that time, obtain separate counsel."  *Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*, 139 A.D.3d 621, 622 (N.Y. App. Div. 2016).  *See* Singler, Exhibit 7 (*Culligan 2* Opinion).  And yet the Debtor and KPMG still have the same counsel.

9.     On April 29, 2013 the Debtor, which had cash assets and no liabilities, sought a members' voluntary liquidation under Bermuda law, pursuant to which the Foreign Representatives were appointed as joint liquidators (the "MVL").  *Id.* ¶ 8(c);  *see* Motion for Recognition ¶ 9.  Instead of investigating the New York Plaintiffs' claims or seeking to bring the New York Action themselves, the Foreign Representatives demanded that the New York Plaintiffs cease prosecuting the case.  *See* Motion for Recognition ¶ 15.

10.     The New York Plaintiffs, however, appealed the trial court's March 13, 2013 ruling, and the First Department reversed on June 13, 2014.  *Id.* ¶ 16.  The First Department explicitly rejected the Debtor's core theory that only Bermuda law applied, holding that New York law applied instead.  *See Culligan Soft Water Co. v. Clayton Dubilier & Rice LLC*, 118 A.D.3d 422, 422-423 (1st Dept 2014) ("Bermuda law does not apply" to New York Plaintiffs' core claims – New York law applies;  and "the issue of plaintiffs' standing to bring a shareholder derivative action is governed by New York law").  *See* Singler Decl., Exhibit 6 (*Culligan 1* Opinion).

11.     On September 16, 2014, the New York Plaintiffs filed a Second Amended Complaint.  *See* Singler Decl. ¶ 9(e).  Shortly thereafter, on October 31, 2014, the New York Plaintiffs stipulated with the Debtor and the other defendants to file a Third Amended Complaint.  *Id.*

12.     The Debtor moved to dismiss again, this time on the basis that the New York Plaintiffs lacked derivative standing for failing to satisfy New York's demand requirements.  *Id.* ¶ 9(g).  On June 4, 2015, the trial court granted the Debtor's motion and dismissed the Third Amended Complaint.  *Id.*  The New York Plaintiffs appealed, and the First Department reversed the decision denying them leave to

replead.  *See Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC* (N.Y. App. Div. 2016) 139 A.D.3d 621 [33 N.Y.S.3d 34]; Singler Decl., Exhibit 7 (*Culligan 2* Opinion).

13.     On November 8, 2017, the New York Plaintiffs filed a motion for leave to file a Fourth Amended Complaint.  On December 31, 2018, the trial granted the motion, holding that the New York Plaintiffs sufficiently pled:  (i) director self-interest to meet the requirements for demand futility;  (ii) breach of fiduciary duty by the controlling shareholder, CDR, and the director defendants;  and (iii) dominion/control by CDR of the director defendants.  Singler Decl. ¶ 9(k).  On January 17, 2019, the New York Plaintiffs filed the Fourth Amended Complaint.  *Id.* ¶ 9(l).

14.     In March 2019, the Debtor and other New York Action defendants moved to dismiss the Fourth Amended Complaint.  The Debtor also moved to have the Foreign Representatives substituted as plaintiffs in the litigation (for the express purpose of voluntarily dismissing the case, not prosecuting it).  *Id.* ¶ 9(m).  With these motions pending, the Debtors initiated the Bermuda Liquidation on July 2, 2019.  The Bermuda Court entered a winding up order on August 23, 2019.  *Id.* ¶ 9(o).

15.     On March 19, 2020, the trial court in the New York Action issued a decision regarding the Fourth Amended Complaint.  *Id.* ¶ 9(n).  The court denied the Debtor's request to substitute the Foreign Representatives as plaintiffs, finding *inter alia*, that "[a]t this juncture, it is unclear as to whether the Liquidators' relationship with KMPG raises a possible conflict of interest which, if established, would make impossible that undivided loyalty requisite for the protection of [the Debtor] and the claims raised by plaintiffs" (internal quotations omitted).  *See id.*, Exhibit 8 (3/19/20 Opinion) at p. 7.

16.     The court, however, dismissed the Fourth Amended Complaint for failure to meet the technical pleading requirements with respect to the Debtor's Foreign

Representatives, but granted leave to replead. *Id.* ¶ 9(n). The New York Plaintiffs filed a Fifth Amended Complaint on May 4, 2020. *Id.* On July 3, 2020, the Debtor moved to dismiss again. *Id.*

17. On June 22, 2020, the Foreign Representatives also filed the Bermuda Anti-Suit Action, a proceeding entirely separate from the Bermuda Liquidation. In the Bermuda Anti-Suit Action, the Foreign Representatives sought an order restraining the New York Plaintiffs from continuing the New York Action. *Id.* ¶ 9(o). But that attempt to circumvent the New York Plaintiffs' claims was subsequently enjoined pursuant to a consent order in the New York Action, until resolution of the Debtor's Motion for Recognition. *See id.*, Exhibit 9 (Stipulation).

## II.    **The Instant Proceeding**

18. After all of their other attempts to get rid of the New York Action failed, the Foreign Representatives filed the instant Chapter 15 proceeding on September 17, 2020, seeking recognition of the Bermuda Liquidation. As explicitly stated in their Motion for Recognition, they commenced this case "so that the New York Plaintiffs are precluded from continuing the New York Litigation under the automatic stay." *See* Motion for Recognition ¶ 38.

19. On July 2, 2021, the Court granted the Motion for Recognition, triggering the automatic stay with respect to the New York Action (the "Recognition Decision") [Docket No. 59, replaced by Docket No. 60].

## III.    **The Status of the Debtor's Liquidation Efforts**

20. During the time period in which the Debtor instituted the MVL in 2013 through to the Petition Date – all while the New York Action was pending – the Foreign Representatives distributed over $11 million to the Debtor's shareholders, *i.e.*, virtually all of its assets. *See Declaration of Charles Thresh in Support of the Motion for*

*Recognition* [Docket No. 7] (the "Thresh Decl.") ¶ 46.  There are now no assets left to sell, no corporate structures to re-organize, and no business affairs to wind-down.  At the time the Debtor filed its Motion for Recognition, all it had left to distribute was approximately $97,000 in cash.  *Id.* ¶ 54.  That amount is no doubt even smaller as of today.  The Debtor has no other remaining assets, except for the potential multi-hundred-million-dollar value of the New York Action.

21.      The Debtor's defense costs for the New York Action are covered by insurance, except for a portion of the Foreign Representatives' fees in connection therewith.  *See Id.* ¶¶ 43-44 ("For the sake of completeness, some, but not all, of the Foreign Representatives' fees in connection with this chapter 15 proceeding will be covered under the Insurance Policy.").

## IV.    The New York Plaintiffs' Proposed Sixth Amended Complaint

22.      In the last week of May 2021, Advent International Corporation ("Advent") announced a proposed sale of certain former assets of the Debtor at issue in the New York Action (which Advent purchased in 2016) to another private equity group, BDT Capital Partners ("BDT").  The New York Plaintiffs immediately began discussions with, and sought additional information from, Advent regarding the potential impact of the sale.  Singler Decl. ¶ 10.

23.      Ultimately, the New York Plaintiffs prepared a motion for leave to file a Sixth Amended Complaint, which would, *inter alia:* (i) name BDT as a defendant on the same claims as Advent (unjust enrichment / constructive trust); (ii) add a claim against Advent to enjoin the proposed sale;  (iii) add a claim for injunctive relief against the Debtor and the Foreign Representatives to enjoin them from pursuing the Bermuda Anti-Suit Action;  and (iv) name Messrs. Morrison and Thresh individually as to the same claims asserted against KMPG.  *Id.* ¶ 11.

24.     On July 1, 2021, the New York Plaintiffs asked to meet and confer with the defendants in the New York Action regarding the proposed Sixth Amended Complaint, but to no avail.  Before the New York Plaintiffs were able to file their motion for leave to amend, this Court granted the Motion for Recognition, leaving the New York Action at the mercy of the automatic stay.  *Id.* ¶ 12.

## REQUESTED RELIEF

25.     The New York Plaintiffs respectfully request that the Court enter the Proposed Order substantially in the form attached hereto as **Exhibit "B"**: (i) lifting the automatic stay to allow the New York Plaintiffs to continue the New York Action; (ii) directing the Foreign Representatives to abandon the New York Action;  and (iii) granting such other and further relief as the Court deems just and appropriate.

## ARGUMENT

**I.     Modification of the Automatic Stay is Warranted Under the *Sonnax* Factors**

26.     As the Court is aware, the *Sonnax* factors are utilized in the Second Circuit in "deciding whether or not to lift a stay in order that litigation may continue to completion in another tribunal . . . [n]ot every one of these factors will be relevant in every case."  *Schneiderman v. Bogdanovich (In re Bogdanovich),* 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo),* 167 F.3d 139, 143 (2d Cir. 1999)); *see also In re Containership Co.,* 466 B.R. 219, 232 (SHL) (Bankr. S.D.N.Y. 2012) (applying *Sonnax* factors in a Chapter 15 case).

27.     The *Sonnax* factors are:  (i) whether relief would result in a partial or complete resolution of the issues;  (ii) lack of any connection with or interference with the bankruptcy case;  (iii) whether the other proceeding involves the debtor as a fiduciary;  (iv) whether a specialized tribunal with the necessary expertise has been

established to hear the cause of action;  (v) whether the debtor's insurer has assumed

full responsibility for defending it;  (vi) whether the action primarily involves third

parties;  (vii) whether litigation in another forum would prejudice the interests of other

creditors;  (viii) whether the judgment claim arising from the other action is subject to

equitable subordination;  (ix) whether movant's success in the other proceeding would

result in a judicial lien avoidable by the debtor;  (x) the interests of judicial economy and

the expeditious and economical resolution of litigation;  (xi) whether the parties are

ready for trial in the other proceeding;  and (xii) impact of the stay on the parties and

the balance of harms.  *See Sonnax Indus. Inc. v. Tri Component Prods. Corp. (In re Sonnax*

*Indus. Inc.),* 907 F.2d 1280, 1285-86 (2d Cir. 1990).

28.    The facts of this case unequivocally support lifting the stay here

with respect to the New York Action.

29.    <u>First</u>, the New York Action has never interfered with the Debtor's

liquidation efforts (factor 2).  The Foreign Representatives distributed virtually all of the

Debtor's remaining cash assets prior to the Petition Date – at the same time they

repeatedly sought dismissal of the New York Action.  *See* Motion for Recognition ¶ 26.

Additionally, the notion, *see, e.g., id.* ¶ 35, that the New York Action is diminishing the

Debtor's estate is a red herring.  The Debtor is merely a nominal defendant in the New

York Action, with no obligation to do anything.  The Foreign Representatives' zealous

efforts to get rid of the case are simply inexplicable, given that any potential recovery in

the case would *enhance*, not diminish, the Debtor's estate.  *See, e.g. In re Cortuk*, 2019 WL

2171481, at *5 (D.N.J. May 20, 2019) (affirming the bankruptcy court's application of the

*Sonnax* factors, including findings that continuation of pending litigation "would

enhance the [chapter 7] bankruptcy proceeding by potentially recovering additional

assets for the estate [regarding factor 2] . . .  [and] would not prejudice other creditors

because any recovery would return to the estate for the benefit of all creditors [regarding factor 7]").

30.  Second, putting aside the fact that the Debtor, as a nominal defendant, need not incur any fees in the New York Action, the Debtor has acknowledged (Thresh Decl. ¶¶ 43-44) that defense of the New York Action is covered by insurance (factor 5).  The only cost to the Debtor is a mere portion of the fees of the Foreign Representatives.  *See In re Sonnax,* 907 F.2d at 1286 ("Where the claim is one covered by insurance or indemnity, continuation of the action should be permitted since hardship to the debtor is likely to be outweighed by hardship to the plaintiff.") (quoting 2 *Collier on Bankruptcy* ¶ 362.07(3)).

31.  Third, given the Debtor's status as a nominal defendant on whose behalf the New York Action was brought, the case primarily involves third parties (*e.g.*, certain directors, controlling shareholders, professionals, and lenders connected to the Debtor) (factor 6).  *See, In re Quigley Co., Inc.,* 361 B.R. 723, 744 (Bankr. S.D.N.Y. 2007) (cause existed to lift the stay to allow commencement of arbitration against the debtor, its parent company, and 62 other defendants, in part because the "proposed arbitration 'primarily' involves third parties") (citing *Sonnax* factor 6);  *In re 950 Meat & Grocery Corp.*, 617 B.R. 224, 228 (Bankr. S.D.N.Y. 2020) ("[T]he State Court Action involves numerous claims involving multiple parties that are not stayed [supporting *Sonnax* factor 6].").

32.  Fourth, the interests of other creditors would not be prejudiced by prosecution of the New York Action (factor 7).  As this Court observed, *see* Recognition Decision at p. 25, "the Debtor has few, if any, creditors."  *See, e.g., Musso v. Hirsch*, 2011 WL 4543225, at *12 (E.D.N.Y. Sept. 29, 2011) ("Should [plaintiff] prevail in state court [on her fraudulent conveyance action], her victory would not give her a superior

position over other creditors.  In fact, it would benefit them . . . [g]ranting the Trustee's

motion would not prejudice the interests of other creditors.").

33.    Fifth, success in the New York Action would not result in a judicial

lien avoidable by the Debtor (factor 9).  In any event, the Debtor and its shareholders

are the intended beneficiaries of the New York Action.

34.    Sixth, the balance of equities clearly favors allowing the New York

Action to continue (factor 12).  As courts have noted:

> The legislative history to section 362(d)(1) emphasizes the
> section's applicability to proceedings in another forum: "it
> will often be more appropriate to permit proceedings to
> continue in their place of origin, when no great prejudice to
> the bankruptcy estate would result in order to leave the
> parties to their chosen forum . . . ."

See In re Consol. Distributors, No. 13-40350 (NHL), 2013 WL 3929851, at *9 n.55 (Bankr.

E.D.N.Y. July 23, 2013)  (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., 341 (1977), U.S.

Code & Admin. News 1978, pp. 5787, 5297).  As discussed, continuation of the New

York Action – which seeks damages *on behalf of* the Debtor – will not harm the Debtor or

its miniscule cash assets.  There is only upside here.  *See In re XO Commc'ns, Inc.*, 330

B.R. 394, 454 (Bankr. S.D.N.Y. 2005) (ruling that a debtor's bankruptcy discharge did not

prevent the continuation of an action involving the debtor as a nominal defendant,

finding that, "because there is neither a claim against the nominal defendant Debtor nor

its resources are implicated in any form by Defendants in defending or satisfying their

liability under the [action] and since the action represent a potential source to augment,

rather than reduce, the Debtor's estate to the benefit of all its creditors and at no

expense to it, the Plan Discharge is ineffective").

35.    The New York Plaintiffs, on the other hand, will suffer significant

harm if the stay remains in place.  The obvious goal of the stay here was to enable the

Foreign Representatives to continue their pursuit of the Bermuda Ant-Suit Action.

Because Bermuda law does not recognize derivative claims of the type asserted in the

New York Action, the case is likely to be enjoined from that forum unless the New York

Plaintiffs can seek recourse in New York, in which the First Department bindingly held

that the claims at issue are governed by New York law, not Bermuda law.  Therefore,

the New York Action will be dead in the water if the stay is not lifted.[7]

36.     In short, the purpose of an automatic stay – to protect the interests

of the Debtor so it may liquidate its assets in an orderly and expeditious manner –

simply does not apply here.  The New York Action is a quintessential example of a pre-

petition litigation that inures to the Debtor's benefit and should be allowed to proceed.

## II.     The Debtor's Bad Faith Warrants Lifting the Automatic Stay With Regard to the New York Action

37.     The Debtor's express use of this Chapter 15 proceeding to

circumvent the New York Action independently warrants lifting the stay here.  "[R]elief

from the stay, for cause, has long been a classic remedy for bad faith filing."  *In re*

*Creative*, 543 B.R. 498 (Bankr. S.D.N.Y. 2016);  *see In re Kaplan Breslaw Ash, LLC*, 264 B.R.

309, 334 (Bankr. S.D.N.Y. 2001) ("[T]he standards for bad faith as evidence of cause,

whether in the context of dismissal or relief from the stay, are not substantively

different from each other.") (internal citation omitted).

---

[7]     Additionally, if the Foreign Representatives are able to complete the Bermuda Liquidation before the stay is lifted, they may argue that the New York Plaintiffs' claims are extinguished, on the basis that Bermuda law does not allow a company to sue or be sued in its own name post dissolution/liquidation.  Whether or not such a theory would be valid, the Foreign Representatives likely will use it as another way to obstruct the New York Action.

38.      One of the leading cases for determining bad faith as "cause" in

the bankruptcy context is *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304 (2d Cir. 1997).[8]  In that

case, the Second Circuit upheld the dismissal of a Chapter 11 proceeding where it found

that the debtor, just like the Debtor here, was improperly attempting to use the

bankruptcy case as a "litigation tactic" to avoid the consequences of a state court

litigation that "had taken a turn adverse to" the Debtor.  *Id.* at 1309-10.  The point in *C-

TC* was that the debtor had no intent to actually reorganize;  it just wanted to avoid the

adverse decisions in a state court litigation.

39.      Here, the situation is very similar.  The Debtor, a shell company,

essentially has no unliquidated assets and commenced the Bermuda Liquidation only

after the New York Plaintiffs' latest motion to amend was granted by the trial court.

And, the Debtor commenced the instant Chapter 15 proceeding only after:  (i) the New

York Plaintiffs survived several of the Debtor's motions to dismiss and filed their latest

pending complaint;  (ii) the Foreign Representatives failed in their self-interested plan

to be substituted as plaintiffs in order to voluntarily dismiss the New York Action;  and

(iii) after the Debtor's separate attempt to use the Bermuda Anti-Suit Action to enjoin

the New York Action also failed.  In the Debtor's own words, it brought the Bermuda

Liquidation and this Chapter 15 proceeding solely as a litigation tactic, "so that the New

---

[8]     *C-TC* is frequently cited in this Circuit for the proposition that "resort to the bankruptcy laws of the
United States [must be made] in good faith."  *In re Eclair Bakery Ltd.*, 255 B.R. 121, 137 (Bankr.
S.D.N.Y. 2000) (citing *C-TC*, 113 F.3d at 1310)).  *See, e.g., In re Syndicom Corp.*, 268 B.R. 26, 50 (Bankr.
S.D.N.Y. 2001) (applying *C-TC* analysis and finding bad faith where the debtor used "a corporate
shell in the United States Bankruptcy Court as a vehicle for protecting the occupancy rights of the
[debtor's sole shareholder], and advancing their litigation with Mr. Takaya in the state court,
ultimately for their private financial advantage");  *In re Eclair Bakery Ltd.*, 255 B.R. at 140 (finding bad
faith where bankruptcy petition was filed in order to circumvent prior court's ruling amidst two-
party dispute between debtor and landlord);  *In re Island Helicopters, Inc.*, 211 B.R. 453, 462 (Bankr.
E.D.N.Y. 1997) (finding bad faith where the "[r]esort to Chapter 11 relief by the Debtor represents
little more than a desperate and ill conceived litigation tactic necessitated by its unsuccessful attempt
in federal district court, and unwillingness to return to the state court, to stay its eviction").

York Plaintiffs are precluded from continuing the New York Litigation under the automatic stay."  Motion for Recognition ¶ 38.

40.    Each of the applicable factors cited in *C-TC* as evidence of the debtor's bad faith, *see id.* at 1311-12, also applies here.  Here, as in *C-TC*:  (i) other than its de minimis cash, the Debtor has one remaining asset – the New York Action;  (ii) the Debtor's purported financial troubles involve "only a two-party dispute" – the New York Action it is defending against the New York Plaintiffs;  and (iii) the timing of the filing of this Chapter 15 proceeding clearly "evidences an intent to delay the legitimate efforts" of the New York Plaintiffs to prosecute the New York Action.  As this Court observed: "[T]he admitted, and apparently entire, purpose of the present chapter 15 filing is to prevent the New York Plaintiffs from continuing the New York Action. . . . Therefore, it is clear that the filing of this chapter 15 proceeding is a litigation strategy." Recognition Decision at pp. 31-32.

41.    Accordingly, the Debtor's bad faith in bringing this Chapter 15 proceeding justifies lifting the stay with respect to the New York Action.  *See, e.g.*, *In re Murray*, 543 B.R. 484, 491 (Bankr. S.D.N.Y. 2016), *aff'd,* 565 B.R. 527 (S.D.N.Y. 2017), *aff'd,* 900 F.3d 53 (2d Cir. 2018) (the "C-TC Factors . . . continue in active use today, on both motions to dismiss and for relief from the stay") (internal quotation marks omitted*); In re Creative*, 543 B.R. at 501("the Court observes that in chapter 15, as in chapter 11, U.S. courts need not tolerate debtor bad faith.");  *In re Eclair Bakery LTD.*, 255 B.R. 121, 140 (Bankr. S.D.N.Y. 2000) (debtor's bad faith surrounding Chapter 11 filing basis for lifting stay);  *see also In re Newton,* 2020 WL 2731995, at *10 (S.D.N.Y. May 26, 2020) ("As an initial matter, a finding of bad faith alone, even without the express consideration of other factors, has been deemed sufficient to grant relief from an automatic stay.") (internal quotations omitted).

**III.     The Court Should Direct the Foreign
Representatives to Abandon the New York Action**

42.     The Foreign Representatives previously argued that "the necessary effect of recognition would be that the Foreign Representatives are entitled to exclusive control of the New York Action."  Recognition Reply ¶ 37.  Of course, that was all part of their reason for seeking recognition in the first place – to gain control of, and ultimately extinguish, the New York Action.  The Court should not permit this.  The Foreign Representatives should instead be compelled to abandon the New York Plaintiffs' claims.  *See, e.g., Seinfeld v. Allen*, 169 F. App'x 47, 49 (2d Cir. 2006) ("[A] shareholder may assert a cause of action of the debtor even after the commencement of a bankruptcy proceeding . . . when the trustee voluntarily abandons the claim or when the bankruptcy court orders the trustee to abandon the claim.");  *In re Am.'s Ins. Ctr., Inc.,* 620 B.R. 528, 535 (Bankr. D.N.J. 2020) ("The remedy for a creditor who wants to bring a derivative action on its own behalf that a trustee has not settled or brought on the estate's behalf is to compel abandonment under § 554(b) of the Bankruptcy Code.");  *see also In re: Motorcycle Tires*, Case No. 19-12706, at Dkt. No. 48 (Bankr. D. Del. Mar. 31, 2020) (applying section 554 of the Bankruptcy Code in a Chapter 15 case);  *In re Strata Energy Services,* Case No. 15-20821, at Dkt. No. 87 (Bankr. D. Wy Sept. 7, 2016) (same).

43.     This Court should compel abandonment of the New York Action for two independent reasons.  <u>First</u>, this Court "may order the [Foreign Representatives] to abandon any property of the [debtor] that is burdensome to the [debtor] or that is of inconsequential value and benefit to the [debtor]."  11 U.S. Code § 554(b).  Here, the Foreign Representatives have vociferously argued, on the Debtor's own behalf, that the New York Action has zero value.  Indeed, the Debtor has sought dismissal/enjoinment of the case no less than eight times, on the theory that the New York Plaintiffs' claims

lack any merit. The Debtor: (i) moved to dismiss the First Amended Complaint;
(ii) demanded voluntary dismissal after the Foreign Representatives were appointed;
(iii) moved to dismiss the Third Amended Complaint; (iv) moved to dismiss the Fourth
Amended Complaint; (v) moved to substitute the Foreign Representatives as plaintiffs
for the express purpose of dismissing the New York Action; (vi) filed the Bermuda
Anti-Suit Action; (vii) moved to dismiss the Fifth Amended Complaint; and
(viii) commenced this proceeding for the express purpose of permanently enjoining the
New York Action. According to the Foreign Representatives, the New York Action is
nothing more than a "nuisance suit." Thresh Decl. ¶ 14. This, alone, warrants
compelling abandonment. *See Sheehan v. Scotchel*, 536 B.R. 166, 171 (N.D.W. Va. 2015)
(affirming order compelling abandonment where claim at issue was "of inconsequential
value from the perspective of the bankruptcy estate"); *Lippl v. Int'l Fid. Ins. Co.*, 514 B.R.
127, 131, 134 (W.D. Pa. 2014) (abandonment upheld in part because Trustee testified that
claim at issue had inconsequential value to estate).

44. Second, abandonment is warranted for the independent reason that
the Foreign Representatives are employees of a defendant KPMG in the New York
Action. *See In re Gen. Dev. Corp.*, 179 B.R. 335, 339 (S.D. Fla. 1995) ("To the extent that
Appellants believe that [chapter 11 debtor-in-possession] has not litigated the derivative
claims because its counsel suffers from a conflict of interest," the appropriate remedy is
to "petition[n] the bankruptcy court pursuant to section 554(b) and Rule 6007(b) for an
order directing [the debtor-in-possession] to abandon these claims"). That conflict of
interest makes it impossible for the Foreign Representatives to properly evaluate the
New York Plaintiffs' claims or act with undivided loyalty on behalf of the Debtor and
its stakeholders. *See In re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1189 (N.D. Cal. 1993) ("In
the matter before the court, the conflict of interest could not be stronger. The general

counsel, of course, is an employee of Oracle. At the same time, the defendants in the derivative action include three [senior Oracle executive officers and three current directors]. It seems indubitable, then, that the general counsel would be reluctant to recommend that the corporation take any position adverse to these men, individual defendants for whom he works on a day-to-day basis and who control his future with the corporation.").

45.     The Foreign Representatives' repeated efforts to get the case dismissed, combined with their attempt to be substituted as plaintiffs in the New York Action, for the stated purpose of dismissing the case, only reinforce the appearance of conflict. *See In re Granite Partners, L.P.*, 219 B.R. 22, 40 (Bankr. S.D.N.Y. 1998) ("[T]he preconceived refusal to sue a potential defendant at the beginning of an investigation constitutes a disqualifying adverse interest."). Moreover, the Foreign Representatives, the Debtor, and KPMG all share the same counsel – Allegaert – on the defense side in the New York Action, despite the prior warnings of the First Department. Allegaert also represents the Debtor and the Foreign Representatives in *this* proceeding. That only crystalizes the Foreign Representatives' conflict-of-interest here. And, if the Foreign Representatives are allowed by this Court to control the New York Action on the plaintiff side, Allegaert will be on both sides of the case, which is simply untenable. *See Lewis v. Shaffer Stores Co.*, 218 F. Supp. 238, 239–40 (S.D.N.Y. 1963) (directing corporation, as nominal defendant, to retain wholly independent counsel separate from general counsel, as "the interests of the officer, director and majority stockholder defendants in this action are clearly adverse . . . to the interests of the [minority stockholders].").

46.     At a minimum, this Court should follow the New York Supreme Court's lead in refusing to give control of the New York Action to parties such as the

Foreign Representatives with even a "possible conflict of interest." *See In re Hellas Telecommunications (Luxembourg) II SCA,* 524 B.R. 488, 522–23 (Bankr. S.D.N.Y) (a foreign representative can bring any state law claim that the debtor could have commenced prepetition, but whether the foreign representative has standing to bring the claim is also determined by state law).

## JURISDICTION

47.    This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code, as well as the Amended Standing Order of Reference dated January 31, 2012, Reference M-431 (S.D.N.Y. Feb. 2, 2012) (Preska, C.J.).  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P) .  Venue is proper under 28 U.S.C. § 1410.

## RESERVATION OF RIGHTS

48.    This Motion is made without prejudice to, and with a full reservation of, the New York Plaintiffs' rights to seek discovery and to introduce evidence at any hearing related to the Motion, and without in any way limiting any other rights that belong to the New York Plaintiffs.  Further, the New York Plaintiffs reserve the right to amend or supplement the grounds for this Motion and to reply to any facts or arguments that the Debtor makes or presents in opposition to the Motion.

*(Concludes on following page)*

## CONCLUSION

Based on the foregoing, the New York Plaintiffs respectfully request that the Court (a) grant their above-requested relief and (b) grant such other and further relief as it deems just and appropriate.

Dated:  New York, New York
       July 30, 2021

                              NEW YORK PLAINTIFFS,
                              By their Co-Counsel,
                              TOGUT, SEGAL & SEGAL LLP
                              By:

                              */s/ Brian F. Shaughnessy*
                              Kyle J. Ortiz
                              Brian F. Shaughnessy
                              Eitan E. Blander
                              One Penn Plaza, Suite 3335
                              New York, New York 10119
                              Telephone: (212) 594-5000

                              -and-

                              SINGLER PROFESSIONAL LAW
                              CORPORATION
                              Co-Counsel to the New York Plaintiffs
                              By:

                              Peter A. Singler (*pro hac vice*)
                              103 Johnson Street
                              P.O. Box 2298
                              Windsor, California 95492
                              Telephone: (707) 823-8719