ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
Telephone: (212) 571-0550
Facsimile: (212) 571-0555
Lawrence P. Gottesman
David A. Berger
David A. Shaiman

*Counsel to the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Case No. 20-12192 (JLG)** |
| **CULLIGAN LTD.,[1]** | |
| **Debtor in Foreign Proceedings.** | **Chapter 15** |

### THE FOREIGN REPRESENTATIVES' OBJECTION TO THE NEW YORK PLAINTIFFS' APPLICATION FOR AN ORDER LIFTING THE AUTOMATIC STAY AND DIRECTING THE FOREIGN <u>REPRESENTATIVES TO ABANDON THE NEW YORK ACTION</u>

---

[1] Culligan Ltd. ("Culligan") is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 35591.  Culligan's registered office is located at c/o KPMG Advisory Limited, Crown House, 4 Par-la-Ville Road, Hamilton, Bermuda.

TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 2

BACKGROUND ..................................................................................................... 6

    A.    This Court Has Recognized the Bermuda Liquidation as a Foreign
         Main Proceeding. ....................................................................................... 6

    B.    The Bermuda Court Sanctions the Foreign Representatives'
         Substitution in the New York Action as Plaintiffs on behalf of the
         Debtor. ....................................................................................................... 7

OBJECTION .......................................................................................................... 9

    A.    The Court Should Deny the Motion as a Procedurally Improper
         Attempt to Relitigate the Recognition Order. ........................................... 9

    B.    The Court Should Deny the Request for Abandonment as Such
         Relief is Unavailable in Chapter 15, is Otherwise Unwarranted,
         and is Improperly Before this Court. ...................................................... 10

         (1)    Abandonment pursuant to 11 U.S.C. § 554(b) is not
               available in a chapter 15 proceeding........................................ 10

         (2)    Retention of the New York Action by the Foreign
               Representatives, rather than abandonment to the New York
               Plaintiffs, would alleviate the burden imposed on the
               Debtor by its continued prosecution. ....................................... 13

         (3)    The New York Plaintiffs' allegations of conflict are
                irrelevant and unsubstantiated................................................. 14

         (4)    Even if abandonment under Section 554(b) is available in
               Chapter 15, the New York Plaintiffs have not met their
               burden because they do not have a possessory interest in
               the claims underlying the New York Action. ........................... 16

    C.    There is no Cause for Stay Relief. ......................................................... 16

         (1)    The New York Plaintiffs have failed to establish cause for
                stay relief under the *Sonnax* factors. ....................................... 17

         (2)    The New York Plaintiffs have not met their extraordinary
                burden to show that the chapter 15 proceeding was brought
               in bad faith. .............................................................................. 21

i

CONCLUSION........................................................................................................................ 25

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*In re ABC Learning Centres Ltd.*,
728 F.3d 301 (3d Cir. 2013).................................................................................4, 11

*In re AMC Realty Corp.*,
270 B.R. 132 (Bankr. S.D.N.Y. 2001).......................................................................21

*Bartolini v. Mongelli*,
No. 17-CV-6276-PKC-SJB, 2018 WL 2725417 (E.D.N.Y. June 5, 2018) ..................15

*In re Bogdanovich*,
292 F.3d 104 (2d Cir. 2002)......................................................................................21

*In re C-TC 9th Ave. P'ship*,
113 F.3d 1304 (2d Cir. 1997)........................................................................21, 22, 23

*In re Caesars Ent. Operating Co., Inc.*,
561 B.R. 457 (Bankr. N.D. Ill. 2016) ........................................................................24

*In re CC Holdings 2000 LLC*,
No. 3:18CV2139 (JBA), 2020 WL 1430012 (D. Conn. Mar. 24, 2020) ......................13

*In re Cohoes Indus. Terminal, Inc.*,
931 F.2d 222 (2d Cir. 1991)......................................................................................24

*In re Consol. Nevada Corp.*,
778 F. App'x 432 (9th Cir. 2019) ..............................................................................13

*In re Cortuk*,
No. CV 18-2626 (BRM), 2019 WL 2171481 (D.N.J. May 20, 2019)...........................17

*In re Creative Fin. Ltd.*,
543 B.R. 498 (Bankr. S.D.N.Y. 2016)........................................................................22

*In re Crown Vill. Farm, LLC*,
415 B.R. 86 (Bankr. D. Del. 2009) ..................................................................6, 24, 25

*In re Eclair Bakery Ltd.*,
255 B.R. 121 (Bankr. S.D.N.Y. 2000)........................................................................23

*In re Fairfield Sentry Ltd. Litig.*,
458 B.R. 665 (S.D.N.Y. 2011)...............................................................................4, 11

iii

*In re Food Mgmt. Grp., LLC*,
380 B.R. 677 (Bankr. S.D.N.Y. 2008) ........................................................................20

*In re Hassan*,
527 B.R. 97 (Bankr. E.D.N.Y. 2015) ..........................................................................14

*In re Interpictures Inc.*,
217 F.3d 74 (2d Cir. 2000) ..................................................................................5, 16

*In re Island Helicopters, Inc.*,
211 B.R. 453 (Bankr. E.D.N.Y. 1997) .......................................................................23

*In re K.C. Mach. & Tool Co.*,
816 F.2d 238 (6th Cir. 1987) ....................................................................................13

*L. v. Siegel*,
571 U.S. 415 (2014) ..................................................................................................13

*In re Manley Toys Ltd.*,
No. 16-15374 (JNP), 2020 WL 1580244 (Bankr. D.N.J. Mar. 31, 2020) .............11, 22

*In re Mazzeo*,
167 F.3d 139 (2d Cir. 1999) ..................................................................................5, 16

*In re Motorcycle Tires*,
Case No. 19-12706, at Dkt. No. 48 (Bankr. D. Del. Mar. 31, 2020) ...........................12

*In re Newton*,
No. 16 BR. 11304 (CGM), 2020 WL 2731995 (S.D.N.Y. May 26, 2020) ...................23

*Norwest Bank Worthington v. Ahlers*,
485 U.S. 197 (1988) ..................................................................................................13

*Pampillonia v. RJR Nabisco, Inc.*,
138 F.3d 459 (2d Cir. 1998) .......................................................................................15

*In re RCM Glob. Long Term Cap. Appreciation Fund, Ltd.*,
200 B.R. 514 (Bankr. S.D.N.Y. 1996) .......................................................................24

*In re Residential Cap., LLC*,
No. 12-12020 MG, 2012 WL 3249641 (Bankr. S.D.N.Y. Aug. 7, 2012) .....................17

*In re Smart World Techs., LLC*,
423 F.3d 166 (2d Cir. 2005) .......................................................................................24

*In re Sonnax Indus., Inc.*,
907 F.2d 1280 (2d Cir. 1990) ............................................................................. *passim*

*In re Soundview Elite Ltd.*,
565 B.R. 534 (Bankr. S.D.N.Y. 2017) ......................................................................20

*St. Croix Condo. Owners v. St. Croix Hotel*,
682 F.2d 446 (3d Cir. 1982) ....................................................................................22

*In re Strata Energy Services*,
Case No. 15-20821, at Dkt. No. 87 (Bankr. D. Wy Sept. 7, 2016) .............................12

*In re Sullivan & Lodge, Inc.*,
No. C03-00588 CRB, 2003 WL 22037724 (N.D. Cal. Aug. 20, 2003) .........................14

Statutes

11 U.S.C. § 103(a) .........................................................................................4, 10, 12

11 U.S.C. § 554 ....................................................................................... *passim*

11 U.S.C. § 1509(b)(3) ................................................................................................4

11 U.S.C. § 1515 ........................................................................................................7

11 U.S.C. § 1520 ..................................................................................... *passim*

11 U.S.C. § 1521 .................................................................................................7, 12

11 U.S.C. § 1524 ...............................................................................................10, 25

Rules

Fed. R. Bankr. P. 4001(a)(3) ......................................................................................1

Fed. R. Bankr. P. 6007 ...............................................................................................5

Fed. R. Bankr. P. 8002 .........................................................................................7, 10

Fed. R. Bankr. P. 9023 .........................................................................................7, 10

Fed. R. Civ. P. 60 ............................................................................................4, 9, 10

Other Authorities

H.R. Rep. No. 109-31(I) (2005) ..............................................................................10, 12

TO THE HONORABLE JAMES L. GARRITY, JR.,
UNITED STATES BANKRUPTCY JUDGE:

1.    Michael Morrison and Charles Thresh, in their capacities as the joint liquidators and authorized foreign representatives (the "**Foreign Representatives**") of Culligan,[2] hereby file this objection (the "**Objection**") to the New York Plaintiffs' application (ECF No. 65) (the "**Motion**", cited herein as "**Mot.**") for an order (i) lifting the automatic stay;[3] and (ii) directing the Foreign Representatives to abandon the New York Action.[4]  In support of the Objection, the Foreign Representatives respectfully represent as follows:[5]

---

[2] *See* July 2, 2021, Memorandum Decision and Order on Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief.  (ECF No. 58 at 39.)  On July 15, 2021, the Court issued a corrected version of the Recognition Order (the "**Recognition Order**") (ECF No. 60-1).  All citations to the Recognition Order below are to the corrected version.

[3] If and solely to the extent necessary to effectuate the substitution of the Foreign Representatives as plaintiffs in the New York Action, the Foreign Representatives do not object to the Motion to the limited extent of modifying the automatic stay to permit the Foreign Representatives to be substituted as plaintiffs in the New York Action pursuant to the Substitution Sanction (as defined below).

[4] The Foreign Representatives also object to the New York Plaintiffs' requested waiver of the FRBP 4001(a)(3) stay of any lift stay order in the Proposed Order (ECF No. 65-11 at 2, the sixth decretal paragraph), and note that the New York Plaintiffs do not even attempt to provide any support or basis for this request.

[5] Capitalized terms used but not defined herein have the meanings ascribed to them in the Foreign Representatives' *Motion for (i) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding, and (ii) Certain Related Relief* (ECF No. 5) (the "**Recognition Motion**").  In addition to the Thresh Declaration (ECF No. 7) and Luthi Declaration (ECF No. 6), each submitted with the Recognition Motion, the Thresh Reply Declaration (ECF No. 26) and Berger Declaration (ECF No. 27), each submitted with the *Foreign Representatives' Reply to the New York Plaintiffs' Objection to the Foreign Representatives' Motion For (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief* (ECF No. 25), the Foreign Representatives also refer the Court to (1) the *Declaration of David A. Berger in Support of the Foreign Representatives' Objection to the New York Plaintiffs' Application for an Order Lifting the Automatic Stay and Directing the Foreign Representatives to Abandon the New York Action* (the "**Berger Objection Declaration**", cited herein as "**Berger Obj. Decl.**"); (2) the *Declaration of Rhys Williams in Support of the Foreign Representatives' Objection to the New York Plaintiffs' Application for an Order Lifting the Automatic Stay and Directing the Foreign Representatives to Abandon the New York Action* (the "**Williams Declaration**", cited herein as "**Williams Decl.**"); and (3) the *Declaration of Abid Qureshi in Support of the Foreign Representatives' Objection to the New York Plaintiffs' Application for an Order Lifting the Automatic Stay and Directing the Foreign Representatives to Abandon the New York Action* (the "**Qureshi Declaration**", cited herein as "**Qureshi Decl.**"), in further support of the Objection.

## PRELIMINARY STATEMENT

2.      The New York Plaintiffs' Motion is nothing more – and nothing less – than a direct attack on this Court's Recognition Order.  If granted, the Motion would effectively nullify this Court's recognition of the Bermuda Liquidation as the foreign main proceeding and deprive the Foreign Representatives of their statutory right to control the Debtor's property, including the New York Action.  The New York Plaintiffs' attempt to do so should be denied.

3.      This intent to undo the Recognition Order is clearly shown by the proposed order submitted with the Motion (ECF No. 65-11 ("**Proposed Order**")).  The Proposed Order provides that "the Foreign Representatives *shall not use* the [Recognition Order] to apply directly to the presiding court in the New York Action to substitute the [Foreign Representatives] as plaintiff in the New York Action, to dismiss the New York Action, or to otherwise remove control [of] the New York Action from the New York Plaintiffs."  (Proposed Order at fourth decretal paragraph (emphasis added).)  An order that cannot be used by the prevailing party is functionally no different than an order that has been vacated or withdrawn by the Court.

4.      As this Court is aware, this chapter 15 case and the Recognition Motion were filed for the express purposes of enabling the Foreign Representatives to obtain control of the New York Action so as to bring the Bermuda Liquidation to a final conclusion.  The Recognition Order, and the triggering of 11 U.S.C. § 1520 thereby, enabled that relief.  The Proposed Order seeks to nullify the Recognition Order by providing that "*the New York Action shall revert to whichever party held an interest in the New York Action prior to recognition of this Chapter 15 case.*"  (Proposed Order at third decretal paragraph (emphasis added).)

5.      Entry of the Proposed Order would render the Recognition Order a nullity by stripping away the very statutory powers – granted automatically to the Foreign Representatives

2

under 11 U.S.C. § 1520, by virtue of the Recognition Order – without the New York Plaintiffs ever having challenged or appealed the Recognition Order itself and having had to make the requisite showing involved.

6.     Moreover, the Foreign Representatives have already taken steps consistent with the Court's Recognition Order to seek sanction from the court in the foreign main proceeding – the Bermuda Liquidation – as to how they propose to administer the New York Action, including seeking its dismissal only after further proceedings in the Bermuda Liquidation on notice to the New York Plaintiffs (the "**Bermuda Hearing**").  (Williams Decl. ¶ 3.)[6]  Accordingly, and as expressly set out in the Substitution Sanction (described below), the Foreign Representatives' conduct in seeking substitution as plaintiffs in the New York Action has already been approved (sanctioned) by the Bermuda Court.  (Williams Decl. ¶ 4.)  While the Foreign Representatives, having examined the claims asserted in the New York Action, and based upon the facts currently known to them, continue to believe the claims are meritless, the New York Plaintiffs, who have previously and expressly refused to answer the Foreign Representatives' questions about the claims (*see* Thresh Reply Decl. ¶¶ 12-18) will nevertheless have the opportunity at the Bermuda Hearing to present to both the Foreign Representatives and the Bermuda Court any arguments or evidence that they might have about any purported merit to their claims.  (Williams Decl. ¶¶ 3, 9.)

7.     In any event, the Motion fails on the merits even if taken at face value.

8.     ***First,*** because the New York Plaintiffs' Motion seeks to overturn the legal rights that automatically vest in the Foreign Representatives under the Recognition Order (*i.e.,* the foreign

---

[6] As the Substitution Sanction (described below) requires, the Foreign Representatives will, following their substitution as plaintiffs in the New York Action, seek from the court in the Bermuda Liquidation an order directing the Foreign Representatives to take all necessary steps to dismiss the New York Action.  This request will be made on notice to the New York Plaintiffs and will contemplate a hearing at which time any interested party may be heard.  (Williams Decl. ¶¶ 5-6.)

representatives' right to conduct the business of the debtor, including controlling litigation that is an

asset of the debtor (*see* 11 U.S.C. § 1520)), the Motion is functionally a procedurally improper

motion for reconsideration.  Even if it were procedurally correct, however, the Motion should be

denied because the New York Plaintiffs have neither identified a "mistake" in the prior decision, nor

offered any "newly discovered evidence" that is material and outcome determinative such that the

Court could grant such relief.  *See* FRCP 60(b)(1), (2).

9.    ***Second****, the request for abandonment fails for at least four independent reasons:

- Abandonment cannot be ordered because 11 U.S.C. § 554, which governs
abandonment applications, is inapplicable in chapter 15 cases (*see* 11 U.S.C.
§§ 103(a) (delineating provisions applicable to chapter 15 cases) and 1520(a)
(delineating provisions applicable following recognition of foreign main
proceeding)).[7]  Indeed, allowing the mere "adjunct or arm of the foreign
bankruptcy court" (*In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 678-79
(S.D.N.Y. 2011) – as the Court became upon its entry of the Recognition
Order – to supplant the right of the court in a foreign insolvency proceeding,
especially one that has been recognized by this Court as a foreign main
proceeding, would undermine Congress' purpose in enacting chapter 15 to
promote comity in multinational insolvencies.  *See In re ABC Learning
Centres Ltd.*, 728 F.3d 301, 306 (3d Cir. 2013); *see also* 11 U.S.C. §
1509(b)(3) ("If the court grants recognition under section 1517, and subject to
any limitations that the court may impose consistent with the policy of this
chapter . . .  a court in the United States shall grant comity or cooperation to
the foreign representative.")

- The standard for abandonment is not satisfied even if Section 554 applies in
chapter 15 cases because the New York Action will burden the estate even if it is
abandoned.  Abandonment, as reflected in the statutory language, is intended to
relieve the estate from any obligations to administer property "that is burdensome
to the estate . . . ."  This purpose is not served where, as is the case here, were the
New York Action to be abandoned, it would continue to burden the Debtor and
interfere with the Bermuda Liquidation.  For example, in trying to minimize their
estimate of the costs that the Debtor will incur if the New York Action continues
(Mot. ¶ 30), the New York Plaintiffs completely ignore that because the New
York Action has yet to proceed to discovery, if the New York Plaintiffs are
ultimately successful in obtaining relief from the stay to restart the New York
Action (*and* obtaining abandonment of the claims to them, *and* finally survive

---

[7] Section 554 applies only to "property of the estate."  11 U.S.C. § 554.  The fact that Section 541, which defines
"property of the estate," is inapplicable to chapter 15 cases, *see* 11 U.S.C. §§ 103(a), 1520(a), is further indication
that Section 554 does not apply to this chapter 15 case.

motions to dismiss either their current Fifth Amended Complaint, their proposed Sixth Amended Complaint (or some yet further amended complaint)), the Foreign Representatives' participation, as representatives of the Debtor, and with their fees fully chargeable to the Debtor, will remain necessary.  If the case were to be abandoned to the New York Plaintiffs and discovery were to proceed, the fees associated with the Foreign Representatives' time and costs in responding to discovery requests, marshalling relevant materials, and sitting for depositions, like all other costs and fees incurred by the Foreign Representatives in supporting counsel in the New York Action, will not be covered by relevant insurance.  (*See* Thresh Decl. ¶ 43.)  In short, abandonment of the New York Action to the New York Plaintiffs would only exacerbate, not relieve, the burden of this "asset" to the Debtor.

- The existence of an alleged conflict of interest is not, standing alone, a sufficient basis for ordering abandonment of the New York Action.  Even if applicable to this chapter 15 case, nothing in the text of Section 554 provides that abandonment may be compelled when the express statutory prerequisite is not satisfied and the effect of abandonment would actually be to increase the burden to the debtor.  As such, the New York Plaintiffs' conflict allegations are irrelevant, and, in any event, completely manufactured and easily debunked, as shown below.

- As pre-petition derivative plaintiffs asserting claims solely on behalf of the Debtor, the New York Plaintiffs lack the necessary "possessory interest" in the New York Action to compel abandonment.  *See In re Interpictures Inc.*, 217 F.3d 74, 76 (2d Cir. 2000) (affirming decision denying abandonment of RICO claim to pre-petition shareholder who lacked "possessory interest" in claim, whether viewed as direct or derivative).[8]

10.    ***Third***, as the New York Plaintiffs acknowledge, their request to lift the automatic stay is moot if their request for abandonment fails.  (*See, e.g.*, Mot. ¶¶ 4, 42.)  But even if New York Plaintiffs' request to vacate the automatic stay were not mooted by the lack of merit to the abandonment motion, they have failed entirely to meet their burden to establish cause.  *See In re Mazzeo,* 167 F.3d 139, 142 (2d Cir. 1999).  As shown below, the *Sonnax* factors on which the New York Plaintiffs rely to demonstrate ostensible cause supposedly supporting a lift stay do no such thing, and they ignore other pertinent factors which show that the stay should *not* be lifted in their

---

[8] The abandonment request is further objectionable because the New York Plaintiffs have failed to demonstrate that they are "parties in interest" for the purposes of Section 554 and FRBP 6007 and, therefore, have not established they are entitled to make this request at all.  *See* 11 U.S.C. § 554(b).

favor.  Moreover, their attempt to rely on inapposite chapter 11 case law to characterize this chapter

15 case as a bad faith filing does not establish cause, and the Foreign Representatives have

demonstrated their good faith in any event.  *See In re Crown Vill. Farm, LLC*, 415 B.R. 86, 91-92

(Bankr. D. Del. 2009).

11.     Accordingly, the Court should deny the Motion in its entirety, except to the limited

extent as may be necessary to modify the automatic stay in the New York Action for the limited

purpose of allowing the Foreign Representatives to substitute as plaintiffs in the New York Action

pursuant to the Substitution Sanction (defined below).

## BACKGROUND

### A.     This Court Has Recognized the Bermuda Liquidation as a Foreign Main Proceeding.

12.     On September 17, 2020, the Foreign Representatives sought and received an order

from the Bermuda Court in the Bermuda Liquidation specifically sanctioning their

commencement of this chapter 15 case in order to recognize the Bermuda Liquidation in the

United States.  (Luthi Decl. ¶ 50.)  That same day, the Foreign Representatives filed a voluntary

petition for relief under chapter 15 of the Bankruptcy Code on behalf of the Debtor (ECF No. 1),

and on September 23, 2020, the Foreign Representatives filed the Recognition Motion (ECF No.

5).

13.     The stated purpose of the Recognition Motion was to conclude the Debtor's

liquidation and ensure that "the Bermuda Liquidation and any order issuing from the Bermuda

court [are] binding and enforceable in the United States so that the New York Plaintiffs are

precluded from continuing the New York [Action] under the automatic stay and otherwise taking

any actions in the United States that may further deplete the dwindling assets of Debtor and

frustrate the Bermuda Liquidation."  (Recognition Motion ¶ 38.)

14.     The New York Plaintiffs submitted an objection which, *inter alia*, contained a procedurally improper motion for stay relief (ECF No. 21, the "**Recognition Objection**"; Recognition Order at 39) and on January 5, 2021, this Court conducted a telephonic hearing on the Recognition Motion.  (ECF No. 32.)

15.     On July 2, 2021 (the "**Recognition Date**"), this Court entered the Recognition Order, in which the Court overruled the Recognition Objection, granted the Recognition Motion and found that: "(i) the Bermuda Liquidation is a foreign main proceeding; (ii) the Foreign Representatives are the foreign representatives of the Debtor, and (iii) the Chapter 15 Petition meets the requirements of section 1515 of the Bankruptcy Code, without prejudice to the rights of the Foreign Representatives to seek further relief under 11 U.S.C. § 1521 or the New York Plaintiffs to seek relief from the automatic stay to continue the prosecution of the New York Action." (Recognition Order at 39 (as corrected by the Court).)

16.     The Recognition Order automatically stayed the New York Action as of the Recognition Date.  (*Id.*)  The Recognition Order also confirmed that only the Foreign Representatives may now exercise any control of the property of the Debtor in the United States, which property includes the claims asserted in the New York Action.  *See* 11 U.S.C. § 1520(a)(3).

17.     The New York Plaintiffs did not seek reargument of or appeal the Recognition Order.  The last day to timely file a notice of appeal was July 16, 2021.  (*See* FRBP 8002 and 9023.)

**B.      The Bermuda Court Sanctions the Foreign Representatives' Substitution in the New York Action as Plaintiffs on behalf of the Debtor.**

18.     The Foreign Representatives sought and received, on September 8, 2021, an order from the Bermuda Court in the Bermuda Liquidation (the "**Substitution Sanction**") specifically

sanctioning the Foreign Representatives to substitute in as plaintiffs in the New York Action.

(Williams Decl. ¶ 4.)  As specifically required by the Substitution Sanction, the Foreign

Representatives will, following their substitution as plaintiffs in the New York Action, seek an

order from the Bermuda Court in the Bermuda Liquidation, on notice to the New York Plaintiffs

(and all other parties to the New York Action), for an order, following a hearing at which the

New York Plaintiffs may be heard (the "**Bermuda Hearing**"), directing the Foreign

Representatives to dismiss or dispose of the New York Action.  (*Id*. ¶ 5-9.)  The Foreign

Representatives have examined the claims asserted in the New York Action, and have

concluded, based upon the facts currently known to them, that the claims are meritless and of

immaterial value while imposing significant burdens on the estate.  The New York Plaintiffs,

who have previously and expressly refused to answer the Foreign Representatives' questions

about the claims (*see* Thresh Reply Decl. ¶¶ 12-18), will nevertheless have the opportunity at the

Bermuda Hearing to present to both the Foreign Representatives and the Bermuda Court

arguments or any evidence that they might have that their claims have any merit (despite the

multiple complaints that they have filed, which have all been rejected by the New York courts).[9]

(Williams Decl. ¶¶ 3, 9.)

19.    Following entry of an order by the Bermuda Court in connection with the

Bermuda Hearing, the Foreign Representatives intend to return to this Court for an Order (1)

recognizing the Bermuda Court's Order on the Bermuda Hearing; and (2) as may be provided in

the Bermuda Court's Order, for leave to lift the automatic stay for the limited purpose of

dismissing the New York Action.  (Williams Decl. ¶¶ 5-6.)

---

[9] Participating in the Bermuda Hearing, should the New York Plaintiffs choose to do so, is not unduly burdensome on them.  They are, after all, shareholders in a Bermuda company, and if they were to prevail in the Bermuda Hearing, they have the ability to potentially recover their costs in doing so.  (*See* Luthi Decl. ¶¶ 43-48.)

**OBJECTION**

A.     **The Court Should Deny the Motion as a Procedurally Improper Attempt to Relitigate the Recognition Order.**

20.     The New York Plaintiffs' Motion is functionally a motion to reconsider. Rather than genuinely seeking relief from the stay, which they acknowledge would be insufficient to allow them to continue the New York Action (*see, e.g.*, Mot. ¶¶ 4, 42), the New York Plaintiffs ask the Court to effectively nullify its decision finding that Morrison and Thresh are foreign representatives, and that the Bermuda Liquidation is a foreign main proceeding. The New York Plaintiffs' Motion should be denied for this reason, because the New York Plaintiffs have neither identified a "mistake" in the prior decision, nor offered any "newly discovered evidence" that is material and outcome determinative. *See* FRCP 60(b)(1), (2).[10]

21.     The New York Plaintiffs' Motion, by its own terms, seeks an "ORDER[] that the Foreign Representatives shall not use the [Recognition Order] to apply directly to the presiding court in the New York Action to substitute the [Foreign Representatives] as plaintiff in the New York Action, to dismiss the New York Action, or to otherwise remove control [of] the New York Action from the New York Plaintiffs." (Proposed Order at 2, fourth decretal paragraph.) Such language would effectively nullify the Recognition Order.

22.     Accordingly, the New York Plaintiffs' request is not merely for stay relief, but to overturn the Court's prior decision. The New York Plaintiffs' Motion targets the legal rights

---

[10] While the Motion nominally seeks vacatur of the automatic stay and the forced abandonment of the New York Action to the New York Plaintiffs, in reality the Motion is a *sub silentio* motion for relief under FRCP 60. Not only is such Motion procedurally improper given that the Motion does not provide the actual grounds for the relief sought, but the Motion fails to address, much less establish, any of the grounds for relief potentially available under FRCP 60. It is beyond dispute that there is no clerical mistake that would require modification of the Recognition Order. It is equally clear that the other possible grounds, such as fraud, newly discovered evidence or mistake, inadvertence or surprise are also not present here. Thus, even if viewed as seeking relief under FRCP 60, the Motion still fails.

granted to the Foreign Representatives that automatically vest after the Recognition Order.  In a

chapter 15 case, an order recognizing a "foreign main proceeding" and a "foreign representative"

under 11 U.S.C. § 1520 automatically grants the foreign representative the right to conduct the

business of the debtor, including controlling litigation that is an asset of the debtor.  *See* H.R.

Rep. No. 109-31(I), at 114-15 (2005) ("Subsection (a)(2), by its reference to sections 363 and

552 adds to the powers of a foreign representative of a foreign main proceeding an automatic

right to operate the debtor's business and exercise the power of a trustee under sections 363 and

542, unless the court orders otherwise.").  Additionally, 11 U.S.C. § 1524 explicitly grants

foreign representatives the right to "intervene in any proceedings in a State or Federal court in

the United States in which the debtor is a party."

23.     If the New York Plaintiffs, however, wanted to seek to so overturn the Court's

Recognition Order, they could have sought to do so either by:  (1) timely appealing or otherwise

seeking modification of the Recognition Order; or (2) moving for relief under FRCP 60.  They

did neither and their time to appeal or move to alter the judgment has expired.  *See* FRBP 8002

and 9023.

**B.     The Court Should Deny the Request for Abandonment as Such Relief is
Unavailable in Chapter 15, is Otherwise Unwarranted, and is Improperly
Before this Court.**

(1)     ***Abandonment pursuant to 11 U.S.C. § 554(b) is not available in a
chapter 15 proceeding.***

24.      Abandonment is unavailable for foreign main proceedings recognized under

chapter 15.  As noted above, 11 U.S.C. § 554, which governs abandonment, is not a section

applicable to chapter 15 cases.  *See* 11 U.S.C. §§ 103(a) (delineating provisions applicable to

chapter 15 cases, not including Section 554) and 1520(a) (delineating provisions applicable

following recognition of foreign main proceeding, again not including Section 554).  That is

10

because in a recognized foreign main proceeding, it is the foreign court that supervises the

proceeding, and is entrusted to consider issues like abandonment, not the U.S. bankruptcy court.

*See In re Manley Toys Ltd.*, No. 16-15374 (JNP), 2020 WL 1580244, at \*7 (Bankr. D.N.J. Mar.

31, 2020) ("one of the primary goals of Chapter 15 is to treat the multinational bankruptcy as a

single process in the foreign main proceeding, with other courts assisting in that single

proceeding."  (internal citations and quotation marks omitted)); *see also Fairfield Sentry*, 458

B.R. at 678-79 ("Chapter 15 cases are 'ancillary' cases.  In such a case, a United States

bankruptcy court acts 'in aid of the [foreign] main proceedings' . . . .  Thus, a Chapter 15 court in

the United States acts as an adjunct or arm of a foreign bankruptcy court where the main

proceedings are conducted." (internal citations and quotation marks omitted).)[11]

25.    Allowing a mere "adjunct or arm of the foreign bankruptcy court" *Fairfield*

*Sentry*, 458 B.R. at 679, to supplant the judgment of the court in a foreign insolvency

proceeding, especially one that has already been recognized by this Court as a foreign main

proceeding, would undermine Congress' purpose in enacting chapter 15 to promote comity in

multinational insolvencies.  *See ABC Learning Centres*, 728 F.3d at 306 ("Mandatory

recognition when an insolvency proceeding meets the criteria fosters comity and predictability,

and benefits bankruptcy proceedings in the United States that seek to administer property located

in foreign countries . . ." (internal citation omitted).)

---

[11] As this Court previously recognized, "any dismissal or lack of prosecution of such action would be subject to challenge before the Bermuda Court by the New York Plaintiffs."  (Recognition Order at 32, n.15.)  Moreover, the New York Plaintiffs will have an opportunity to argue and present evidence to the Bermuda Court in the Bermuda Hearing.  (Williams Decl. ¶¶ 3, 9.)

26.     Viewed in this proper context then, and bereft of statutory or case support,[12] the

New York Plaintiffs' implicit request to import this inapplicable provision of the Bankruptcy

Code into chapter 15 makes no more sense than importing other equally inapplicable substantive

provisions that Congress saw fit to omit from chapter 15, such as the plan and disclosure

statement provisions of chapter 11, as the matters covered by those provisions are likewise more

appropriately presented in the foreign main proceeding.  Moreover, allowing the importation of

such provisions without express statutory authority would leave the courts without any limiting

principle as to which provisions apply and which do not in chapter 15.  This is flatly contrary to

Congress' intent in enacting chapter 15, which was intended to be of limited and focused

application.  *See* H.R. Rep. No. 109-31(I), at 118 (2005) (unlike worldwide jurisdiction in a

plenary case, in a chapter 15 case, "the United States is acting solely in an ancillary position, so

jurisdiction over property is limited to that stated in chapter 15").

27.     Accordingly, Section 554(b) is simply inapplicable in a chapter 15 case.[13]

---

[12] Neither chapter 15 nor 11 U.S.C. § 103(a) mentions Section 554 and the New York Plaintiffs cite *no* case, and research has disclosed none, holding that an "interested party" (if the New York Plaintiffs so qualify) may compel a Foreign Representative to abandon any property of a foreign debtor, let alone a legal claim, to another party in a chapter 15 case.  The Orders from out of circuit Bankruptcy Courts cited by the New York Plaintiffs for the proposition that Section 554 applies in a chapter 15 proceeding (*see* Mot. ¶ 42) are inapposite, of limited application, and entirely distinguishable.  *In re Motorcycle Tires*, Case No. 19-12706, at Dkt. No. 48 (Bankr. D. Del. Mar. 31, 2020), is an order granting an unopposed motion *by the Foreign Representatives* under both Sections 554(a) *and* 1521(a)(7) (*see id.* at Dkt. No. 46), in connection with an order authorizing the rejection of unexpired leases of warehouses to allow the Foreign Representatives to abandon any personal property remaining in the warehouse following a liquidation sale, to the extent any such property was even left.  *In re Strata Energy Services*, Case No. 15-20821, at Dkt. No. 87 (Bankr. D. Wy Sept. 7, 2016), likewise relied on the Court's power to *assist the Foreign Representatives.*  There, the Court granted an Order, also on an unopposed motion under Sections 554(a), 1517, and 1521 to recognize an order in the foreign main proceeding authorizing the Foreign Representatives to abandon the remaining U.S. assets of the Debtor.  Neither Order involved a contested motion under Section 554(b), and neither Order stands for the proposition that Section 554 applies generally in a chapter 15 case.  Most importantly, and consistent with the purpose of chapter 15 generally, both cases relied on other powers of the Court, extended solely and specifically to the Foreign Representative under chapter 15, to effectuate the purpose of the underlying motions.  Here, the New York Plaintiffs have not pointed to any section of chapter 15 which would extend to them the right to seek an order compelling the Foreign Representatives to abandon the claims to them and Section 554(b) does not provide that right on its own.

[13] To the extent the New York Plaintiffs claim they are relying on the Court's equitable powers, the Supreme Court

> (2)   ***Retention of the New York Action by the Foreign Representatives, rather than abandonment to the New York Plaintiffs, would alleviate the burden imposed on the Debtor by its continued prosecution.***

28.     The Court should also deny the Motion because abandonment, were it applicable in chapter 15, is inappropriate where, as here, the abandoned property would continue to burden the Debtor.  Indeed, denial of abandonment here "is not burdensome and confers a value and benefit upon the estates by aiding the efficient and timely administration of the cases."  *In re Consol. Nevada Corp.*, 778 F. App'x 432, 436 (9th Cir. 2019) (upholding bankruptcy court's decision not to order abandonment of claims deemed "implausible and colorless") (internal quotation marks omitted); *see also In re K.C. Mach. & Tool Co.*, 816 F.2d 238, 247 (6th Cir. 1987) ("compelled abandonment is not available where administration promises a benefit to the estate"); *In re CC Holdings 2000 LLC*, No. 3:18CV2139 (JBA), 2020 WL 1430012, at *2 (D. Conn. Mar. 24, 2020) ("Abandonment should not be ordered where the benefit of administering the asset exceeds the cost of doing so.") (quoting *K.C. Mach. & Tool Co.*, 816 F.2d at 246).

29.     On the contrary, abandonment to the New York Plaintiffs would *continue* the burden on the Debtor because the New York Action has yet to proceed to discovery, and if the New York Plaintiffs regain control, and are ultimately successful in both obtaining relief from the stay to restart the New York Action (and finally surviving a motion to dismiss), the Debtor will incur fees occasioned by the necessary participation of the Foreign Representatives in responding to discovery from all sides, as well as suffer continued delays to the ultimate resolution of the Bermuda Liquidation.[14]

---

has "long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code.'" *L. v. Siegel*, 571 U.S. 415, 421 (2014) (quoting *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206 (1988)).  Allowing application of Section 554(b) here would be an exercise far outside of the confines of the Bankruptcy Code.

[14] The New York Plaintiffs have already and repeatedly sought pre-answer discovery from Debtor, even moving to

30.     Those fees associated with the Foreign Representatives' time and costs in responding to such requests, marshalling relevant materials, and sitting for depositions, like all other costs and fees incurred by the Foreign Representatives in supporting counsel in the New York Action, would not be covered by relevant insurance.  (*See* Thresh Decl. ¶ 43.) Abandonment, therefore, will not relieve the burden on the Debtor.

(3)     ***The New York Plaintiffs' allegations of conflict are irrelevant and unsubstantiated.***

31.     The New York Plaintiffs' contention that the New York Action should be abandoned to them because the Foreign Representatives are somehow conflicted also fails because such allegations are irrelevant.  Even if available in a chapter 15 case, under Section 554(a) or (b), "abandonment is proper *only* when the party seeking abandonment can establish that the property at issue is burdensome or of inconsequential value and benefit to the estate."  *In re Hassan*, 527 B.R. 97, 101 (Bankr. E.D.N.Y. 2015) (emphasis added) (quoting *In re Sullivan & Lodge, Inc.,* No. C03-00588 CRB, 2003 WL 22037724, at *4 (N.D. Cal. Aug. 20, 2003)); *see also In re Sullivan & Lodge*, 2003 WL 22037724, at *4 (bankruptcy court improperly ordered chapter 7 trustee to abandon potential tort claim to debtor's principals absent a showing that claim was of inconsequential value to estate).

32.     But the Foreign Representatives are not conflicted in any event, and the New York Plaintiffs have not shown otherwise.  *First*, the New York Plaintiffs' ever-changing assertions – that some KPMG entity somewhere was somehow involved in the underlying transaction that gave rise to the purported claims in the New York Action (Singler Decl. ¶ 7) –

---

compel responses to those discovery demands (Berger Obj. Decl. ¶¶ 14-18), and it is likely that the other defendants will also seek documents and deposition testimony from Debtor, thereby further increasing the fees of the Foreign Representatives.

are false.[15]  *Second*, the mere fact that the New York Plaintiffs were successful in amending their

complaint to include a meritless claim against KPMG Advisory in the New York Action (Mot. ¶

44) based on the indubitably wrong contention that KPMG Advisory is the liquidator because it

employs the Foreign Representatives does not establish a conflict, much less a debilitating

conflict.  *See, e.g.*, *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998) ("a

plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal

by merely joining as defendants parties with no real connection with the controversy."); (Berger

Obj. Decl. ¶¶ 9-10.)  *Third*, the New York Plaintiffs' contention that Allegaert Berger & Vogel

LLP's joint representation of the Debtor, the Foreign Representatives and KPMG Advisory

(which has been named solely on the mistaken claim that it is Debtor's liquidator) creates a

conflict (Mot. ¶ 45), is meritless because the interests of all are aligned with their consistent

position throughout the New York Action that the challenged transactions were entirely proper.

*See, e.g.*, *Bartolini v. Mongelli*, No. 17-CV-6276-PKC-SJB, 2018 WL 2725417, at *4 (E.D.N.Y.

June 5, 2018) ("[T]he mere fact of joint representation does not raise the risk of trial taint when

an attorney represents two or more clients who are similarly situated with regard to a

lawsuit." (citation omitted).)  Moreover, if the New York Plaintiffs wish to challenge the

Foreign Representatives' appointment, whether on the basis of conflict or otherwise, the

appropriate forum for such a challenge is the Bermuda Liquidation, where, as the Court noted,

they may be heard (*see* Recognition Motion at 32, n.15), and, if their challenge is successful,

they may even recover their costs in doing so.  (*See* Luthi Decl. ¶¶ 43-48.)

---

[15] For the Court's convenience – and to underscore the disingenuity of the New York Plaintiffs' allegations – the
falsity of the alleged conflict is debunked in the accompanying Berger Objection Declaration and Qureshi
Declaration.  (*See* Berger Obj. Decl. ¶¶ 5-8, 11-13; Qureshi Decl. ¶¶ 3-5.)

      (4)    ***Even if abandonment under Section 554(b) is available in Chapter 15,
the New York Plaintiffs have not met their burden because they do not
have a possessory interest in the claims underlying the New York Action.***

33.    A debtor's asset – in this case, a derivative action brought supposedly on behalf of

the Debtor – can only be abandoned to one with a possessory interest in it.  As the Second

Circuit has found, a motion to compel abandonment may be properly denied because the movant

(a shareholder who brought a pre-petition derivative action) lacks any possessory interest in the

claim.  *See Interpictures*, 217 F.3d at 76 (affirming decision but noting it was enough "to dispose

of the appeal" rather than setting a bright-line rule as to whether a possessory interest is required

for abandonment to a third-party).  Here, as in *In re Interpictures Inc.,* the New York Plaintiffs

have brought *all* of the claims in the New York Action derivatively on behalf of the Debtor and

have no direct claims.  (*See* Recognition Order at 7; *see also* ECF No. 65-2 (the New York

Plaintiffs' Fifth Amended Complaint) at ¶ 1 ("Plaintiffs raise derivative causes of action . . . .").)

This Court should thus deny the New York Plaintiffs' Motion because, as mere pre-petition

shareholders asserting derivative causes of action on behalf of the Debtor, they lack the

necessary possessory interest in the derivative claims asserted in the New York Action.

## C.    <u>There is no Cause for Stay Relief.</u>

34.    The New York Plaintiffs' request for relief from the stay cannot succeed if

abandonment is denied, as the New York Plaintiffs' themselves acknowledge.  (*See*, *e.g.*, Mot. ¶

4).  But even if that were not the case, there is no cause necessitating relief from the stay.  *See*

*Mazzeo,* 167 F.3d at 142 ("The burden is on the moving party to make an initial showing of

'cause' for relief from the stay.  Only if the movant makes such a showing does any burden shift

to the debtor; absent a showing of cause, the court should simply deny relief from the stay."

(internal citation omitted)).

(1)    ***The New York Plaintiffs have failed to establish cause for stay relief under the Sonnax factors.***

35.    The New York Plaintiffs have not shown cause to lift the stay under the twelve

*Sonnax* factors.[16]  *See In re Sonnax Indus., Inc.,* 907 F.2d 1280 (2d Cir. 1990).

36.    *First,* the New York Plaintiffs falsely assert that the second *Sonnax* factor –

whether lifting the automatic stay will interfere with the bankruptcy case – weighs in their favor

because the "New York Action has never interfered with the Debtor's liquidation efforts."  A

pre-petition action that is "depleting estate resources" is, by definition, interfering with the

bankruptcy case.  *See In re Residential Cap., LLC*, No. 12-12020 MG, 2012 WL 3249641, at *5

(Bankr. S.D.N.Y. Aug. 7, 2012) (finding second *Sonnax* factor weighs against lifting stay to

allow continuation of pre-petition litigation where continuing pre-petition litigation would

require "Debtors' Legal Department . . . to assist in the significant work related to either

mediation or a trial, including a fact-intensive inquiry to determine the amount of damages . . .

The time and expense involved in such work would divert the Legal Department's attention and

resources from the resolution of the Debtors' chapter 11 cases.").  As established, the

continuation of the New York Action would require the Debtor to expend its own resources in

connection with the Foreign Representatives' activities in, *inter alia,* responding to discovery.

(*See* Thresh Decl. ¶ 43.)  Moreover, the Debtor would have been finally wound up years ago if

---

[16] The cases on which the New York Plaintiffs rely in seeking to lift the stay are inapposite.  For example, *In re Cortuk*, No. CV 18-2626 (BRM), 2019 WL 2171481 (D.N.J. May 20, 2019), is cited (at Mot. ¶ 29) for the proposition that "continuation of pending litigation" should be allowed to proceed.  *Id.*  That chapter 7 case, however, involved an order on a motion *by the trustee* to partially lift the stay in order to litigate judgment enforcement proceedings with respect to an *existing foreign judgment against the Debtor* "in the United Kingdom and Switzerland on the Trustee's behalf and under the Trustee's direction," rather than by a third-party "and further require[d] the Bank to turn over all proceeds from these British and Swiss proceedings to the Trustee for inclusion in [debtor]'s bankruptcy estate."  *Id.* at *2.  Far from pursuing enforcement of an extant judgment, the New York Plaintiffs seek stay relief to either try to survive pending motions to dismiss, or to seek leave to file yet another motion to amend and start the merry-go-round all over again.  (*See* Mot. ¶ 24.)

17

not for the New York Action.  "[T]he consequence of this lawsuit and the seemingly endless

amended complaints despite the New York Court's repeated dismissals, has been to interfere

with and delay the final resolution of Debtor's winding up."  (Thresh Decl. ¶ 39.)  The New

York Plaintiffs' argument that, to date, the Foreign Representatives have been able to

"distribute[] virtually all of the Debtor's remaining cash assets prior to the Petition Date" (Mot. ¶

29), misses the point entirely.  While the Foreign Representatives were able to proceed with the

liquidation to a point, they cannot conclude it until the New York Action has finally ended.

After nine years of fruitless litigation that has not even completed the pleading stage, it is

impossible to imagine that the Bermuda Liquidation could be concluded in any reasonable

timeframe without the actions the Foreign Representatives have taken to control the New York

Action.  (Relatedly, the fact that the litigation has still not proceeded past the pleadings in the

nine years since Plaintiffs filed their complaint indicates the eleventh *Sonnax* factor – whether

the case is trial ready – also weighs against granting stay relief.)

        37.    *Second*, the first *Sonnax* factor – whether relief would provide complete

resolution of the issues in the case – is ignored by the New York Plaintiffs, likely because it

clearly weighs in favor of denying the Motion.  Lifting the stay as to the New York Action

would do nothing to achieve a final resolution.  In fact, if the New York Action is allowed to

proceed, the New York Plaintiffs apparently intend to start over *yet again* by asking the New

York Court to simply ignore the pending motions to dismiss their Fifth Amended Complaint and

instead skip straight to seeking leave to file their Sixth Amended Complaint (naming as

defendants the Foreign Representatives in their individual capacities).  (Mot. ¶¶ 23-24.)

Defendants would undoubtedly oppose that motion, which will cause untold delay – all before

motions to dismiss that attempted sixth amended complaint are even filed, let alone decided.

And *if* those motions are eventually decided in the New York Plaintiffs' favor, it will still be

years before the case is trial-ready, not to speak of appeals, including the interlocutory appeals

permitted in New York practice, two of which are already pending in the case.[17]  *Culligan Soft*

*Water Company, et al. v. Clayton Dubilier & Rice, LLC, et al.,* Case Nos. 2017-2737, 2019-693,

both pending before the Appellate Division, First Department.

38.     *Third*, the fifth *Sonnax* factor – whether Culligan's insurer has assumed full

responsibility for defending the case – favors against granting relief from the stay.  The New

York Plaintiffs, apparently unsure how to address the explicit statement in the Thresh

Declaration that fees associated with their work in supporting the New York Litigation are

chargeable to the Debtor (*see* Thresh Decl. ¶ 43), falsely claim both that the Debtor "need not

incur any fees" and also that "defense of the New York Action is covered by insurance."  (Mot.

¶ 30.)  Neither statement is correct.  Not only are the Foreign Representatives' fees, including for

complying with discovery, not covered by insurance, but, as discussed above (*supra*, ¶¶ 28-30),

abandonment will not obviate the Foreign Representatives' involvement, who will still have

control of the Debtor, regardless of whether they control the claims, and will therefore be

obligated to comply with the Debtor's discovery obligations.

39.     *Fourth*, the sixth *Sonnax* factor – whether the New York Action primarily

involves third parties – does not favor lifting the stay.  Rather than largely involving third parties

---

[17] This perpetual pre-answer status of the New York Action underscores why the tenth *Sonnax* factor (the interests
of judicial economy and the *expeditious and economical* resolution of the litigation) weighs in favor of denying stay
relief.  Left in control, the Foreign Representatives can end the New York Action far more efficiently.

as the New York Plaintiffs contend (Mot. ¶ 31), in fact *all* the claims in the New York Action are the Debtor's claims.[18]

40.      *Last,* the New York Action is burdensome on the Debtor both in terms of the fees that the company must incur to defend the meritless, valueless action, and the fact that the company cannot be finally liquidated until the New York Action is concluded.  As this Court is aware, having described in detail the tortured procedural history of the New York Action in its Recognition Order (Recognition Order at 7-11), *Sonnax* factor ten (the interests of judicial economy and the expeditious and economical resolution of litigation) can hardly be said to be served by the New York Plaintiffs' stewardship of the New York Action.  Thus, the New York Plaintiffs are plainly wrong when they assert, without evidence, that because the New York Action is "a quintessential example of a pre-petition litigation that inures to the Debtor's benefit" (Mot. ¶ 36), it should be allowed to proceed regardless of its merit, because the Action "will not harm the Debtor or its miniscule cash assets.  There is only upside here."  (Mot. ¶ 34.)  Yet, in nine years, the New York Action has failed to proceed beyond the pleading stage.  (Thresh Decl. ¶¶ 13-37.)  Contrary to the New York Plaintiffs' claims, the New York Court has never found their claims to have merit (*see* Berger Decl. ¶ 4).  Some *eight years ago,* the Foreign Representatives conveyed their good faith belief, informed by their own due diligence as explained to the New York Plaintiffs in explicit correspondence, that those claims were without merit and did not warrant pursuit (*see* Thresh Reply Decl. ¶¶ 9-18); the Debtor's assets are being rapidly depleted while the New York Plaintiffs continue to tilt at this windmill.  Moreover,

---

[18] As explained, all of the claims in the New York Action are asserted derivatively on behalf of the Debtor (*see* Recognition Order at 7; *see also* ECF No. 65-2 at ¶ 1), control of which were vested in Foreign Representatives upon recognition.  *See In re Soundview Elite Ltd.*, 565 B.R. 534, 543-44 (Bankr. S.D.N.Y. 2017) (citations omitted); *see also In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 693 (Bankr. S.D.N.Y. 2008) ("Upon the commencement of a bankruptcy case, the trustee succeeds to a debtor's rights, including the ability to sue and be sued.").

*Sonnax* factor 12, the impact of the stay on the parties and the balance of the harms, clearly

favors retention of the stay.  There is no prejudice from denying the New York Plaintiffs' lift

stay motion now; if the New York Plaintiffs truly believe these claims have merit (however they

now conceive them), they may present evidence and arguments – evidence and arguments the

Foreign Representatives requested years ago but the New York Plaintiffs refused to provide (*see*

Thresh Reply Decl. ¶¶ 12-18) – at the Bermuda Hearing, and should the Bermuda Court find

them to have any merit at all they might well be prosecuted – although perhaps not by the New

York Plaintiffs and their law firm, but for the benefit of the beneficiaries.[19]  (Williams Decl. ¶¶ 3,

9.)

> (2)   ***The New York Plaintiffs have not met their extraordinary burden to
> show that the chapter 15 proceeding was brought in bad faith.***

41.     The Foreign Representatives brought their petition in good faith to attempt to

complete the liquidation of the Debtor and have all attendant matters resolved in the Bermuda

Liquidation, and the New York Plaintiffs have failed to meet their extraordinary burden to show

otherwise.  Relief based on allegations of bad faith is an extraordinary remedy that requires a

careful examination of the facts, on a case-by-case basis, and none of the facts here support a

finding that the chapter 15 case was filed in bad faith.  *In re AMC Realty Corp.*, 270 B.R. 132,

141 (Bankr. S.D.N.Y. 2001).

42.     As they did in the Recognition Objection (at ¶¶ 44-47), the New York Plaintiffs

rely primarily on *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304 (2d Cir. 1997), but that is a chapter

11 case with little, if any, application to a chapter 15 case or liquidation generally (as in the case

---

[19] The Foreign Representatives agree (*see* Mot. ¶¶ 32-33) that Factors 7 and 9 are inapplicable, or, at best, neutral, but of course, "[n]ot every one of these factors will be relevant in every case."  *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002).

of the underlying Bermuda Liquidation), to argue that the stay should be lifted on the basis of the

Debtor's alleged – and ill-defined – bad faith.  (*See* Mot. ¶ 41.)  Not only are *C-TC 9th Ave.* and

the other cases cited by New York Plaintiffs inapplicable and unpersuasive,[20] but the New York

Plaintiffs appear to base their entire bad faith argument on the Foreign Representatives having

admittedly brought the instant proceeding as a "litigation tactic" so that they could take the

necessary actions in the Bermuda Liquidation to wind up the liquidation of the Debtor without

further interference from the New York Plaintiffs outside of that proceeding.  The entire premise

of the New York Plaintiffs' argument is unfounded.  It is not bad faith, but consistent with all

principles applicable in a liquidation and the "primary purpose of the automatic stay is . . . 'to

forestall the depletion of the debtor's assets due to legal costs in defending proceedings against

it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the

debtor.'"  *Manley Toys*, 2020 WL 1580244, at *4 (quoting *St. Croix Condo. Owners v. St. Croix

Hotel*, 682 F.2d 446, 448 (3d Cir. 1982) (chapter 15 case denying stay relief)).

43.     In this case, the Foreign Representatives – entrusted in Bermuda with the

responsibility to complete the liquidation of the Debtor – are taking good-faith steps in the

appropriate court to do exactly that, and they have sought the assistance of this Court – the

ancillary jurisdiction – to facilitate and enforce the Bermuda Court's decisions, which is a wholly

appropriate function of chapter 15.  Specifically, following on the Bermuda Court's recent entry

of the Substitution Sanction, the Foreign Representatives will take steps to commence the

Bermuda Hearing, asking the Bermuda Court to confirm that they are justified in seeking

---

[20] In the only chapter 15 case the New York Plaintiffs cite, *In re Creative Fin. Ltd.*, 543 B.R. 498 (Bankr. S.D.N.Y. 2016) (Gerber, J.), the objectors attempted to argue against recognition on bad faith, not a motion to lift the automatic stay on the basis of bad faith.  Moreover, although it noted, in *dicta*, that stay relief as a remedy for bad faith may be available in a chapter 15 case (*see, id.* at 523), it did not rely on or even cite *C-TC 9th Ave.*, 113 F.3d at 1304.

dismissal of the claims. The New York Plaintiffs will have explicit notice of the Bermuda

Hearing and will have an opportunity to present their case to the Bermuda Court. (*See* Williams

Decl. ¶¶ 3, 9.) It simply cannot be said that, and the New York Plaintiffs cite no case supporting

the notion that, the Foreign Representatives are acting in bad faith because they are seeking to

proceed appropriately with the Bermuda Liquidation under the oversight of its home court.

44.    Appropriately viewed through that lens, *C-TC 9th Ave.,* 113 F.3d at 1311, in

which the Second Circuit adopted an eight-factor test as "indicative of a bad faith filing," and

which the New York Plaintiffs do not establish is applicable in chapter 15, demonstrates little

more than the shortcomings of the New York Plaintiffs' analysis. The Second Circuit's ruling in

*C–TC,* which sustained a *sua sponte* dismissal of a Chapter 11 case, relied on the bankruptcy

court's finding that the debtor's main purpose in filing its Chapter 11 petition was to stay state

court proceedings and "relitigate in the bankruptcy forum the matters that had been settled in the

state court." *Id.*

45.    Those are not at all the facts here. The New York Action has not suddenly "taken

a turn adverse to" the Debtor (Mot. ¶ 38, quoting *C-TC*). Rather, the New York Action has been

pending for nine years and has never made its way past the initial pleading stage despite multiple

attempts.[21] Moreover, the New York Plaintiffs fail to cite a single case in which a debtor seeking

to stay a derivative action, the continuation of which is depleting the remaining assets of the

debtor, is improper where, as here, the Foreign Representatives have formed a good faith belief,

informed by their due diligence, that the claims pursued by the New York Plaintiffs (and

---

[21] The other cases cited by Plaintiffs (at Mot. ¶¶ 38, n.8, 41) are inapposite and involve truly "adverse rulings",
primarily involving warrants of evictions and foreclosures, issued pre-petition, not, as here, denial of a motion to
substitute or the granting of the petitioner's motion to dismiss, just without prejudice. *See, e.g., In re Eclair Bakery
Ltd.*, 255 B.R. 121 (Bankr. S.D.N.Y. 2000) (bankruptcy filed after warrant of eviction issued); *In re Newton*, No. 16
BR. 11304 (CGM), 2020 WL 2731995 (S.D.N.Y. May 26, 2020) (bankruptcy filed after judgement of foreclosure
granted); *In re Island Helicopters, Inc.*, 211 B.R. 453 (Bankr. E.D.N.Y. 1997) (bankruptcy filed after warrant of
eviction issued).

repeatedly dismissed by the New York Court) are meritless and do not warrant pursuit (*see* Thresh Reply Decl. ¶¶ 9-18).

46.    That is unsurprising, as that would be inconsistent with established law in this Circuit, holding that even if the case was filed as a litigation tactic, "[i]t is the totality of circumstances, rather than any single factor, that will determine whether good faith exists." *In re RCM Glob. Long Term Cap. Appreciation Fund, Ltd.*, 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996), *corrected* (Sept. 18, 1996) (holding a petition will be dismissed only if both objective futility of the reorganization process and subjective bad faith in filing the petition are found) (citing *In re Cohoes Indus. Terminal, Inc.,* 931 F.2d 222, 227 (2d Cir. 1991)).

47.    As here, even where there is no intent to reorganize rather than liquidate, "so long as the liquidation plan is maximizing the value of the debtor's estate, it serves a valid bankruptcy purpose and meets the good faith requirement." *Crown Vill. Farm*, 415 B.R. at 92.

48.    The Foreign Representatives filed the chapter 15 case, and sought the resulting stay, because they determined, as fiduciaries of the Debtor, and based on all information available to them, that either pursuing it themselves or allowing the New York Plaintiffs to continue pursuing the claim, would not maximize – and would in fact be a net drain on – the value of the estate.  That is not proof, or even indicative, of bad faith.  *See In re Caesars Ent. Operating Co., Inc.*, 561 B.R. 457, 468 (Bankr. N.D. Ill. 2016) ("Whether the refusal [to pursue a claim] is unjustified is gauged in light of a debtor in possession's statutory obligations and fiduciary duties.  One of those duties is to 'wisely manage the estate's legal claims.'  But wise management does not mean the debtor in possession must always pursue a claim." (internal citation omitted) (citing *In re Smart World Techs., LLC*, 423 F.3d 166, 175 (2d Cir. 2005)).

49.     The actions the Foreign Representatives are now taking, to seek direction from the Bermuda Court to dismiss of the New York Action, evince their good faith, and are consistent with their rights under 11 U.S.C. §§ 1520 and 1524 to conduct the business of the Debtor, including intervening in and controlling a litigation that is an asset of the Debtor in order to "maximiz[e] the value of the debtor's estate." *See Crown Vill. Farm*, 415 B.R. at 92.

50.     Here, the Foreign Representatives' goal is to shield what little cash the Debtor retains so that it can be properly distributed, and the liquidation concluded, provided the Bermuda Court confirms their analysis at the Bermuda Hearing.  (Williams Decl. ¶¶ 3, 9.)  The New York Plaintiffs cite no case in which use of the stay, coupled with the initiation of appropriate proceedings in the foreign main proceeding, consistent with the Foreign Representatives' rights under 11 U.S.C. §§ 1520 and 1524, and on notice to those who object to the counseled decision of the foreign representatives (here, the New York Plaintiffs), is indicative of anything other than good faith.

## CONCLUSION

WHEREFORE, the Foreign Representatives respectfully request that the Court (1) Deny the Motion except to the extent necessary to grant limited relief from the stay to the Foreign Representatives for the purpose of substituting in to the New York Action as plaintiffs,

but otherwise leaving the stay in place; and (2) granting such further relief as the Court may

deem just and appropriate.

Dated: New York, New York
          October 13, 2021

                                    ALLEGAERT BERGER & VOGEL LLP

                                    By: ____/s/ Lawrence P. Gottesman_____
                                         Lawrence P. Gottesman (lgottesman@abv.com)
                                         David A. Berger (dberger@abv.com)
                                         David A. Shaiman (dshaiman@abv.com)

                                    111 Broadway, 20th Floor
                                    New York, New York 10006
                                    T:  (212) 571-0550
                                    F:  (212) 571-0555

                                    *Counsel to the Foreign Representatives*