**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

In re:

CULLIGAN LTD.,

        Debtor in a Foreign Proceeding.

-----------------------------------------------------------------x

Chapter 15

Case No. 20-12192 (JLG)

**MEMORANDUM DECISION AND ORDER DENYING THE NEW YORK**
**PLAINTIFFS' APPLICATION FOR AN ORDER (I) LIFTING THE**
**AUTOMATIC STAY AND (II) DIRECTING THE FOREIGN REPRESENTATIVES**
**TO ABANDON THE NEW YORK ACTION**

**APPEARANCES:**

ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
Telephone: (212) 571-0550
Facsimile: (212) 571-0555
By:    Lawrence P. Gottesman
        David A. Berger
        David A. Shaiman

*Counsel to the Foreign Representatives*

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
By:    Kyle J. Ortiz
        Brian F. Shaughnessy
        Eitan E. Blander

      -and-

SINGLER PROFESSIONAL LAW CORPORATION
103 Johnson Street
P.O. Box 2298
Windsor, California 95492
Telephone: (707) 823-8719
Facsimile: (707) 823-8737
By:    Peter A. Singler

*Co-Counsel to the New York Plaintiffs*

**HONORABLE JAMES L. GARRITY, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

## INTRODUCTION

Pending before the Court is a motion (the "Motion")[1] by a group of minority shareholders

(collectively, the "New York Plaintiffs")[2] of Culligan Ltd. (the "Debtor" or "Culligan") for an

order lifting the automatic stay under 11 U.S.C. § 362(d) to permit the continuation of a

derivative action pending in the Supreme Court of the State of New York, County of New York

("New York Court") styled *Culligan Soft Water Co., et al. v. Clayton Dubilier & Rice LLC, et*

*al.*, Index No. 651863/2012 (the "New York Action").  The Motion also seeks entry of an order

---

[1]    *New York Plaintiffs' Application for an Order Lifting the Automatic Stay and Directing the Foreign Representatives to Abandon the New York Action*, ECF No. 65 . Unless otherwise indicated, citations to "ECF No. __" refer to documents filed on the electronic docket of this chapter 15 case, *In re Culligan Ltd.*, Case No. 20-12192 (JLG) (Bankr. S.D.N.Y.).

[2]    The New York Plaintiffs are: Culligan Soft Water Company; Cecil R. Hall; C&D of Rochester, LLC; Driessen Water, Inc.; Michael A. Bannister; T&B Enterprises, Inc.; California Water & Filter, Inc.; Shar Sher I, Inc.; Water Quality Improvement, Inc.; Culligan Southwest, Inc.; Carey Water Conditioning, Inc.; Michael Carey; Eric B. Clarke; Culligan Water Conditioning (Barrie) Ltd.; Arthur H. Cooksey, Jr.; Corbett's Water Conditioning, Inc.; Glen Craven; Culligan Water Conditioning Horicon, LLP; Henry T. Wood; Mayer Soft Water Co., Inc.; Timothy Fatheree and Sue Fatheree; Clean Water, Inc.; Catherine Gilby; Canatxx, Inc.; Quality Water Enterprises, Inc.; Robert R. Heffernan; Charles F. Hurst; Karger Enterprises, Inc.; Keppler Water Treatment, Inc.; Robert Kitzman and Tracy Kitzman; Ladwig Enterprises, Inc.; Richard Lambert and Marianne Conrad; Low Country Water Conditioning, Inc.; Gina Larson; Michael G. Macaulay; Vetter's, Inc.; Robert W. Mccollum and Barbara N. Mccollum; Richard C. Meier; Donald E. Meredith; Cleanwater Corporation of America; John Mollman and Janette Mollman; The Good Water Company Ltd.; E&H Parks, Inc.; Maumee Valley Bottlers, Inc.; Schry Water Conditioning, Inc.; Schry Water Treatment, Inc.; Winslow Stenseng; Stewart Water Conditioning, Ltd.; Bret P. Tangley; B.A.R. Water Corporation; Trilli Holdings, Inc.; Bruce Van Camp; Walter C. Voigt and Charlotte P. Voigt; Marin H2o, Inc.; Allan C. Windover; Everett Windover; Culligan Soft Water Service (Que) Inc.; G.R. Mccoy; Richard N. Wendt; Richard Sample and Marie Sample; The Water Meister, Inc.; Alex Connelly; Go Water, Inc.; Van D. Waugh; Melissa Grill; Petro's Water Conditioning of Johnson County, Inc.; Water Treatment Services of Shelbyville, Inc.; Countryside Management, Inc.; Gulf Coast Water Conditioning, Inc.; Adrian Water Conditioning, Inc.; and Canney's Water Treatment, Inc.

under 11 U.S.C. § 554(b) directing Charles Thresh and Michael Morrison, as joint liquidators

and authorized foreign representatives of the Debtor (together, the "Foreign Representatives" or

"Joint Liquidators"), to abandon the New York Action. The Foreign Representatives object to

the Motion. For the reasons outlined below, the Motion is denied.

## JURISDICTION

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334(a) and 157(a)

and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States

District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska,

C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(G), (O), and (P).

## FACTS[3]

### A.    The 2006/2007 Distributions and the Members' Voluntary Liquidation

The Debtor was incorporated in Bermuda under the Companies Act of 1981 (the

"Bermuda Companies Act")[4] as a Bermuda exempted company and was a distributor of water

---

[3]    The background is culled from the following declarations and exhibits appended thereto: *Declaration of C. Christian R. Luthi in Support of the Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief*, ECF No. 6 ("Luthi Declaration"); *Declaration of Charles Thresh in Support of the Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief*, ECF No. 7 ("First Thresh Declaration"); *Declaration of Peter A. Singler in Support of Objection of New York Plaintiffs to Chapter 15 Recognition of Foreign Proceeding*, ECF No. 22 ("First Singler Declaration"); *Reply Declaration of Charles Thresh in Further Support of the Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief*, ECF No. 26 ("Second Thresh Declaration"); *Reply Declaration of David A. Berger in Further Support of the Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief*, ECF No. 27 ("First Berger Declaration"); *Declaration of Peter A. Singler in Support of New York Plaintiffs' Application for an Order Lifting the Automatic Stay and Directing the Foreign Representative to Abandon the New York Action*, ECF No. 65-1 ("Second Singler Declaration"); *Declaration of Rhys Williams in Support of the Foreign Representatives' Objection to the New York Plaintiffs' Application for an Order Lifting the Automatic Stay and Directing the Foreign Representatives to Abandon the New York Action*, ECF No. 67 ("Williams Declaration"); *Declaration of Abid Qureshi in Support of the Foreign Representatives' Objection to the New York Plaintiffs' Application for an Order Lifting the Automatic Stay and Directing the Foreign Representatives to Abandon the New York Action*, ECF No. 68 ("Qureshi Declaration"); and *Declaration of David A. Berger in Support of the Foreign Representatives' Objection to the New York Plaintiffs' Application for an Order Lifting the Automatic Stay and Directing the Foreign Representatives to Abandon the New York Action*, ECF No. 70 ("Second Berger Declaration").

[4]    A copy of the Bermuda Companies Act is attached to the Luthi Declaration as Exhibit A.

purification and filtration units, which it sold through a network of franchise dealers in the United States and Canada. First Thresh Declaration ¶¶ 7-8. In 2004, Clayton Dubilier & Rice, LLC, as successor in interest to Clayton, Dubilier & Rice, Inc. ("CDR") acquired the operating and intermediary holding companies comprising the "Culligan System" from Vivendi/Veolia, a French conglomerate, through a $610 million leveraged buyout (the "LBO"). First Singler Declaration ¶ 6(a). As a result of the LBO, the Debtor was formed to act as the ultimate parent company indirectly owning the equity of the subsidiary holding and operating companies comprising the Culligan System (collectively, the "Culligan Entities"). *Id*. To fund the LBO, CDR contributed $200 million and borrowed an additional $410 million secured by the operating assets of the Culligan Entities. *Id*. ¶ 6(c).

In 2006, the Debtor repaid CDR for its $200 million investment in the Debtor (the "2006 Repayment"). *Id*. In 2007, CDR caused the Culligan Entities to recapitalize by borrowing more than $850 million, which it used to refinance $400 million of existing debt and to pay a $375 million dividend to shareholders (the "2007 Dividend," and together with the 2006 Repayment, the "2006/2007 Distributions"). *Id*.

In or around May 2012, the Debtor underwent an out-of-court restructuring (the "2012 Restructuring") with the business of the Debtor continuing through a newly formed entity, Culligan Newco Ltd. ("Newco"). First Thresh Declaration ¶ 9. The Debtor was solvent following the 2012 Restructuring as it had only cash and no liabilities. *Id*. ¶¶ 10, 40. The successor entities comprising the Culligan System have been sold two additional times since the 2012 Restructuring. In or around November 2016, the assets of Newco were sold to subsidiaries of Advent International Corporation. Second Singler Declaration ¶ 9(j). In 2021, those assets were sold to BDT Capital Partners. *Id*. ¶¶ 10-11.

4

On April 29, 2013, the Debtor's shareholders executed a unanimous resolution[5] commencing a members' voluntary liquidation ("MVL") under the Bermuda Companies Act.[6] *Id*. ¶ 10. The shareholders' resolution also appointed the Foreign Representatives as Joint Liquidators for the purpose of winding up the Debtor. *Id*.

### B.   New York Action

The New York Plaintiffs commenced the New York Action on May 30, 2012 against, among others, the Debtor's directors and controlling shareholders. First Singler Declaration ¶¶ 4-5. The Debtor is a nominal defendant to the action.[7] *Id*. ¶ 5. The New York Plaintiffs are a group comprising 71 of the total 262 Culligan water dealers who hold, in the aggregate, approximately 3.8% of the Debtor's shares. First Thresh Declaration ¶ 15. The gravamen of the New York Action is that the Culligan Entities, including the Debtor, violated N.Y. BUS. CORP. LAW § 510(b) because they had neither retained earnings nor profits sufficient to legally pay the 2006/2007 Distributions.[8] First Singler Declaration ¶ 6(d); *see also* Second Singler Declaration

---

[5]   A copy of the shareholder resolution is attached to the First Thresh Declaration as Exhibit C.

[6]   Part XIII of the Bermuda Companies Act provides authority to enter into an MVL. Luthi Declaration ¶ 30 n.7.

[7]   The defendants to the New York Action include the Debtor (nominally); Newco; certain past and present directors of the Debtor; CDR; Clayton, Dubilier & Rice Fund VI Limited ("CDR Fund"); certain lenders of the Debtor's former subsidiaries; and KPMG Advisory Limited. First Thresh Declaration ¶ 17; *see* First Singler Declaration ¶ 5.

[8]   N.Y. BUS. CORP. LAW § 510(b) (McKinney 2008) states:

> Dividends may be declared or paid and other distributions may be made either (1) out of surplus, so that the net assets of the corporation remaining after such declaration, payment or distribution shall at least equal the amount of its stated capital, or (2) in case there shall be no such surplus, out of its net profits for the fiscal year in which the dividend is declared and/or the preceding fiscal year. If the capital of the corporation shall have been diminished by depreciation in the value of its property or by losses or otherwise to an amount less than the aggregate amount of the stated capital represented by the issued and outstanding shares of all classes having a preference upon the distribution of assets, the directors of such corporation shall not declare and pay out of such net profits any dividends upon any shares until the deficiency in the amount of stated capital represented by the issued and outstanding shares of all classes having a preference upon the distribution of assets shall have been repaired. A corporation engaged in the exploitation of natural resources or other wasting assets, including patents, or formed primarily for the liquidation of specific assets, may declare and pay dividends or make other distributions in excess of its surplus, computed after taking due account of depletion and amortization, to the extent that the cost of the

¶ 3. The New York Action has been wending through the New York Court, as well as the Supreme Court, Appellate Division, First Department ("First Department"), for years, and a summary of the proceedings follows.

### 1.   First Amended Complaint

Shortly after the commencement of the New York Action, the Debtor's equity was transferred to Newco through the 2012 Restructuring, and the New York Plaintiffs amended their complaint to reflect the change in parties and circumstances. Second Singler Declaration ¶ 9(a). All the defendants moved to dismiss the complaint based primarily on the contention that Bermuda law applied to the claims, and under Bermuda law, shareholders generally may not maintain derivative actions. *Id*. ¶ 9(a)-(b).[9] On March 13, 2013, the New York Court granted the defendants' motions on that basis.  *Id*. ¶ (b).

The Foreign Representatives were appointed as Joint Liquidators on April 29, 2013. Immediately thereafter, they wrote to the attorney representing the New York Plaintiffs to inquire about the allegations in the New York Litigation (which, at the time, was dismissed). In subsequent correspondence, they requested that the New York Plaintiffs take no further action with respect to the litigation. First Thresh Declaration ¶ 18. The Foreign Representatives took the position that their appointment effected a change in control of the Debtor and that any claims of the Debtor, including those at issue in the New York Action, could be pursued only by the Joint Liquidators of the Debtor. *Id*. The New York Plaintiffs did not accede to the request. *Id*. ¶ 19.

---

wasting or specific assets has been recovered by depletion reserves, amortization or sale, if the net assets remaining after such dividends or distributions are sufficient to cover the liquidation preferences of shares having such preferences in involuntary liquidation.

[9]    Under common law, a minority shareholder in a Bermuda company may bring a derivative claim only in circumstances involving both (i) fraud on the minority, and (ii) wrongdoer control. Luthi Declaration ¶ 34.

The New York Plaintiffs appealed the dismissal of the complaint to the First Department. On June 3, 2014, that court issued its decision reversing the trial court. *See Culligan Soft Water Co. v. Clayton Dubilier & Rice LLC*, 118 A.D. 3d 422 (N.Y. App. Div. 2014) ("*Culligan I*"). The First Department ruled that, with one exception, New York law, rather than Bermuda law, governed the claims and remanded the case to consider whether the claims should be dismissed under New York law. *Culligan I*, 118 A.D.3d at 423-24. The exception was for the claims asserted against defendant CDR Fund – the majority shareholder. The First Department ruled that Bermuda law applied to those claims, and they were properly dismissed by the trial court. *Id.* at 423.

### 2.    Second Amended Complaint

On September 26, 2014, the New York Plaintiffs filed their second amended complaint. Defense counsel objected to the complaint on various grounds, but rather than litigate these points, the parties stipulated to permit the New York Plaintiffs to file a third amended complaint. First Thresh Declaration ¶ 23; Second Singler Declaration ¶ 9(e).

### 3.    Third Amended Complaint

The New York Plaintiffs filed their third amended complaint, and the defendants moved to dismiss it under New York law. On or about May 28, 2015, the New York Court dismissed the complaint for lack of standing and denied the New York Plaintiffs leave to replead. First Thresh Declaration ¶ 25. The New York Plaintiffs appealed, and the First Department affirmed dismissal of the claims in an opinion dated May 31, 2016, citing the New York Plaintiffs' failure to adequately plead "demand futility."[10] *Culligan Soft Water Co. v. Clayton Dubilier & Rice*

---

[10]    New York law provides that "(1) Demand is excused because of futility when a complaint alleges with particularity that a majority of the board of directors is interested in the challenged transaction. . . . (2) Demand is excused because of futility when a complaint alleges with particularity that the board of directors did not fully

*LLC*, 139 A.D.3d 621, 622 (N.Y. App. Div. 2016) ("*Culligan II*") ("Here we find that the allegations of demand futility in the third amended complaint were inadequate to satisfy the pleading requirements of Business Corporation Law § 626(c), and thus the complaint was properly dismissed.").[11] However, the First Department reversed the lower court's decision denying the New York Plaintiffs an opportunity to replead. *Id*.

Around the same time, the New York Plaintiffs entered into partial settlement of the New York Action with certain lender defendants, under which the New York Plaintiffs would receive $4 million. On June 8, 2015, the court approved the partial settlement, but the First Department reversed on appeal. *See Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*, 144 A.D.3d 611 (N.Y. App. Div. 2016) ("*Culligan III*"). The court rejected the settlement because the "bulk" of the settlement proceeds would go toward paying counsel's legal fees, "who, after four attempts, have yet to plead properly that [the New York Plaintiffs] have standing to sue derivatively . . . . *Id*. at 611; *see also id*. ("It was an abuse of discretion to approve the settlement of a derivative action purporting to bind the company and all shareholders that was obtained by plaintiffs who had not established—and may never establish—their standing to bring the action.").

### 4.    Fourth Amended Complaint

In November 2017, the New York Plaintiffs moved for leave to amend their complaint to add additional defendants and causes of action. Second Singler Declaration ¶ 9(k). On January 2,

---

inform themselves about the challenged transaction to the extent reasonably appropriate under the circumstances . . . . (3) Demand is excused because of futility when a complaint alleges with particularity that the challenged transaction was so egregious on its face that it could not have been the product of sound business judgment of the directors." *Marx v. Akers*, 666 N.E.2d 1034, 1040-41 (N.Y. 1996).

[11]    The First Department also affirmed the denial of the New York Plaintiffs' motion to disqualify the then defense counsel Debevoise & Plimpton, LLP but advised the Debtor to retain separate counsel to the extent the repleaded complaint survives the pleading stage. *Culligan II*, 139 A.D.3d at 622.

2019, the New York Court entered an order granting the motion in part and denying it in part. *See Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*, No. 651863/2012, 2019 WL 78923 (N.Y. Sup. Ct. Jan. 2, 2019) ("*Culligan IV*"). On January 17, 2019, the New York Plaintiffs filed their fourth amended complaint. Second Singler Declaration ¶ 9(l).

In March 2019, all defendants moved to dismiss the fourth amended complaint, and the Foreign Representatives sought the alternative relief of being substituted for the New York Plaintiffs as plaintiff in the amended complaint. First Thresh Declaration ¶ 31. By order dated March 19, 2020, the New York Court denied the branch of the motion seeking substitution. *See Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*, No. 651863/2012, 2020 WL 1307209 (N.Y. Sup. Ct. Mar. 19, 2020) ("*Culligan V*"). In doing so, the court referenced N.Y. C.P.L.R. § 1017, which provides for the substitution of a party where a receiver is appointed, and cited First Department precedent extending the provision to circumstances where a bankruptcy trustee is appointed. *Culligan V*, 2020 WL 1307209, at *3 ("[f]or the purpose of applying [CPLR § 1017], no difference exists between a receiver and a trustee in bankruptcy" (quoting *SNR Holdings, Inc. v. Ataka Am., Inc.*, 54 A.D.2d 406, 409 (N.Y. App. Div. 1976))). The New York Court observed that the powers of liquidators under Bermuda law were "similar to those of a bankruptcy trustee," and therefore, "no difference should exist between a receiver and [Culligan's Joint Liquidators] for purposes of applying CPLR 1017." *Id*. at *4. Still, the New York Court denied the Foreign Representatives' substitution request because of a possible conflict of interest. *Id*. At that time, the Foreign Representatives were employed by KPMG Advisory Limited (Bermuda) ("KPMG Advisory"). The fourth amended complaint contained breach of fiduciary duty claims against KPMG Advisory, which the New York Plaintiffs identified as "an entity which allegedly served as auditors, accountants, and advisers of

[Culligan], each of its subsidiaries, and each of the CDR and Director Defendants, and currently serves as the liquidator of [Culligan]." *Id.*[12] The court found that, "[a]t this juncture, it is unclear as to whether the Liquidators' relationship with [KPMG Advisory] raises a 'possible conflict of interest which, if established, would make impossible that undivided loyalty requisite for the protection' of [Culligan] and the claims raised by plaintiffs." *Id.* (quoting *SNR Holdings, Inc.*, 54 A.D.2d at 409).

The New York Court, however, granted dismissal of all claims against the Debtor and the other defendants for failure to allege a demand on the Joint Liquidators to pursue the New York Action or demand futility. The court found that when "a complaint is amended following a dismissal without prejudice, demand and demand futility must be assessed by reference to the board in place at the time the amended pleading is filed." *Id.* at *5. Therefore, the demand or demand futility must be measured "in terms of the 2019 board, or in this case, the Liquidators who had already been appointed" when the New York Plaintiffs filed the fourth amended complaint. *Id.* Since the complaint was "devoid of any allegations that such demand was made or excusing plaintiffs for not making the demand on the Liquidators," all of the derivative claims asserted by the New York Plaintiffs were dismissed. *Id.* at *5-6. The dismissal was without prejudice to the New York Plaintiffs filing a fifth amended complaint within forty-five days. *Id.* at *7.

### 5.    Subsequent Complaints

On May 4, 2020, the New York Plaintiffs filed their fifth amended complaint, and the defendants, including the Debtor and KPMG Advisory, moved for dismissal asserting, *inter alia*,

---

[12]   KPMG Advisory apparently failed to object to the inclusion of the breach of fiduciary duty claim against it in the fourth amended complaint. *See Culligan IV*, 2019 WL 78923, at *5 (denying New York Plaintiffs' motion to replead to add defendant-professionals except KPMG Advisory, which had not opposed inclusion of a breach of fiduciary duty claim against it).

a failure to adequately plead a demand on the Foreign Representatives or demand futility. First Thresh Declaration ¶¶ 34-36; Second Singler Declaration ¶ 9(n). The New York Court heard oral argument on the dismissal motions on October 28, 2020. First Berger Declaration ¶ 9.

The New York Plaintiffs have now drafted a proposed sixth amended complaint that, among other things, seeks to add BDT Capital Partners as a defendant. Second Singler Declaration ¶ 11. Their motion for leave to replead, however, has been enjoined by operation of the automatic stay which has been in place since this Court granted recognition of the Debtor's chapter 15 bankruptcy case (discussed *infra*). Second Singler Declaration ¶ 12.

**C.      The Bermuda Liquidation**

The Debtor's shareholders commenced the MVL on April 29, 2013. First Thresh Declaration ¶ 10. By June 2017, the Debtor held $11.87 million in cash, the bulk of which came from a payment of $11.67 million from Newco. *Id*. ¶ 40. Accordingly, the Foreign Representatives – as Joint Liquidators for the Debtor's MVL – determined that a distribution should be made to shareholders in the approximate amount of $11.34 million and sent notices to shareholders requesting banking details in August 2017. *Id*. ¶ 41. To date, the Foreign Representatives have distributed $11.10 million to shareholders, which includes $396,699.58 to 56 of the 71 New York Plaintiffs. *Id*. ¶ 46. Of the remaining $240,000 to be distributed, $37,235.98 is payable to the other 15 New York Plaintiffs. *Id*.

The Foreign Representatives reserved $500,000 to pay fees and expenses relating to the liquidation as well as legal fees stemming from the New York Action. *Id*. ¶ 45. While certain defense costs for the New York Action are covered by the Debtor's liability insurance policy, fees incurred by the Foreign Representatives in supporting the efforts of counsel in the New York Action are not covered by insurance, and are therefore chargeable to the Debtor's estate. *Id*.

11

¶ 43. By June 2019, the Debtor held $288,000 in cash, of which, $240,000 was earmarked for distribution to shareholders under the aforementioned distribution. *Id*. ¶ 48. Thus, the Foreign Representatives determined that, due to future liabilities arising from the Debtor's involvement in the New York Action, the Debtor had become insolvent. *Id*.

On July 2, 2019, the Foreign Representatives petitioned the Supreme Court of Bermuda (the "Bermuda Court") for court supervision of the winding up of the Debtor, which commenced the liquidation proceeding under the Bermuda Companies Act styled *In the Matter of Culligan Limited (In Members' Voluntary Liquidation) and In the Matter of the Companies Act 1981*, 2019: No. 278 ("Bermuda Liquidation").[13] First Thresh Declaration ¶ 49. On August 23, 2019, the Bermuda Court entered a compulsory winding up order in the Bermuda Liquidation stating that:

1. [The Debtor] be wound up by this Court under the provisions of the [Bermuda Companies Act].

2. [The Joint Liquidators] do continue as joint liquidators of the Company, and in respect of any act which, under the [Bermuda Companies Act], is required to be done by a liquidator or authorised by him, the joint liquidators may do such act or give such authorisation either jointly or by act on behalf of both.

3. The period for convening the first meeting of creditors and contributories as set out in the Rules be and is hereby extended to six months from the date of this Order.

4. The costs of the [Joint Liquidators] be paid out of the assets of the Company as an expense of the liquidation.

First Thresh Declaration, Ex. A (Winding Up Order).

As of August 31, 2020, the Debtor's estate had $97,248 remaining, which was insufficient to satisfy the outstanding distribution obligations to shareholders. *Id*. ¶ 54. According

---

[13]   Under the Bermuda Companies Act, liquidators appointed under an MVL can "exercise any of the other powers of . . . the [Act] given to the liquidator by the Court." Luthi Declaration ¶ 30 n. 7. Where a liquidator believes that the company is no longer solvent, it can petition the Bermuda Court for a winding up order. *Id*. That is what happened here.

to the Foreign Representatives, the continuation of the New York Action has delayed the winding up of the Debtor. *Id.* ¶ 39.

**D.     Bermuda Anti-Suit Action**

On June 22, 2020, the Foreign Representatives commenced a separate action in the Bermuda Court styled *Michael Morrison and Charles Thresh (as Liquidators of Culligan Limited) v. Culligan Soft Water Company and Others*, 2020: No. 194 (the "Bermuda Anti-Suit Action") seeking, *inter alia*, an order restraining the New York Plaintiffs from (i) bringing proceedings against the Debtor, and (ii) bringing proceedings in the name of the Debtor, anywhere in the world. Luthi Declaration ¶ 38. Since the New York Plaintiffs are not within the jurisdiction of the Bermuda Court, the Foreign Representatives sought leave to serve the New York Plaintiffs out of the jurisdiction, and the Bermuda Court granted the application on July 16, 2020, approving service by delivery of pleadings to the New York Plaintiffs' U.S. counsel. *Id.* ¶ 39.

Before Debtor's counsel effectuated service to the New York Plaintiffs' U.S. counsel, the New York Plaintiffs filed a proposed order to show cause and temporary restraining order in the New York Action seeking to restrain the Foreign Representatives from proceeding in the Bermuda Anti-Suit Action. First Thresh Declaration ¶ 52. The New York Court held a hearing on September 21, 2020, and the matter was resolved by so-ordered stipulation among the parties staying the Bermuda Anti-Suit Action until "a) further order by [the New York Court]; or b) the United States Bankruptcy Court for the Southern District of New York hears the matter of In re: CULLIGAN LTD., Debtor in Foreign Proceedings, Case No. 20-12192(JLG) and issues an order recognizing a foreign proceeding or otherwise orders that these proceedings be stayed." *See* First Berger Declaration, Ex. C (so-ordered stipulation).

**E.       This Court's Recognition Decision**

The Foreign Representatives commenced this case under chapter 15 of the Bankruptcy Code seeking recognition of the Bermuda Liquidation, and the New York Plaintiffs objected. This Court overruled the New York Plaintiffs' objections and granted recognition of the Bermuda Liquidation as a foreign main proceeding. *See Memorandum Decision and Order on Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main Proceeding and (II) Certain Related Relief*, ECF No. 60-1 at 27 ("Recognition Decision").

The granting of recognition as a foreign main proceeding resulted in a stay of the New York Action by operation of section 362(a) of the Bankruptcy Code. 11 U.S.C. § 1520(a)(1) ("Upon recognition of a foreign proceeding that is a foreign main proceeding . . . sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States . . . .").[14] As part of its objection to recognition, the New York Plaintiffs argued that relief from the automatic stay was proper because the Debtor's chapter 15 petition was filed in bad faith. Recognition Decision at 38 (describing the New York Plaintiffs' objection). The Court found that the New York Plaintiffs' request was premature because they had "not properly moved for stay relief and cannot make such a request in the context of an objection" to recognition. *Id*. at 39 (citing 11 U.S.C. § 362(d) (providing that stay relief is available "[o]n request of a party in interest and after notice and a hearing")). The Court explained that the New York Plaintiffs could file an appropriate motion for relief from the automatic stay, which the Court would address in due course. *Id*.

---

[14]     Among other things, the Bankruptcy Code's automatic stay enjoins the "continuation . . . of a judicial . . . action or proceeding against the debtor . . . ." 11 U.S.C. § 362(a)(1).

F.      **The Bermuda Substitution Order**

In September 2021, the Foreign Representatives applied in the Bermuda Liquidation for an order authorizing them to take actions to be substituted as plaintiffs in the New York Action. Williams Declaration ¶ 3. The Bermuda Court granted the application (the "Bermuda Substitution Order"),[15] reasoning that the "Joint Liquidators [are] obligated to take into their custody or under their control all property and things in action to which [the Debtor] is or appears to be entitled pursuant to Section 174(1) of the [Bermuda Companies Act]." Bermuda Substitution Order at 1. The order provides that:

1.  The Joint Liquidators shall take all steps necessary to be substituted as plaintiff in their capacity as joint liquidators of the Company, in [the New York Action].

2.  The Joint Liquidators shall take such other steps as they believe are reasonable or necessary to take control of the New York Action.

3.  The Joint Liquidators shall not seek the dismissal of or otherwise dispose of the New York Action without the sanction of this Court.

4.  The Joint Liquidators [sic] substitution as plaintiff in the New York Action and consequent conduct or proceedings is hereby sanctioned pursuant to section 175 of the [Bermuda Companies Act].

5.  The Joint Liquidators shall be permitted to seek recognition of this Order pursuant to Chapter 15 [of the U.S. Bankruptcy Code].

*Id*. ¶¶ 1-5. Any future hearing seeking authority to discontinue or otherwise dispose of the New York Action would be on notice to the New York Plaintiffs with an opportunity to be heard and present evidence. Williams Declaration ¶¶ 7-9.

G.      **The Parties' Contentions on the Instant Motion**

The New York Plaintiffs filed the Motion for an order lifting the automatic stay to permit continuation of the New York Action and directing the Foreign Representatives to abandon the

---

[15]    A copy of the Bermuda Substitution Order is attached to the Williams Declaration as Exhibit B.

action. They argue that analysis of the multi-factor test set forth in *Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280 (2d Cir. 1990), favors relief from the automatic stay because:

- the vast majority of the Debtor's assets have already been distributed such that continuation of the New York Action would not interfere with the Bermuda Liquidation (Motion ¶ 29);

- the Debtor's legal fees associated with the New York Action are mostly covered by insurance (*id.* ¶ 30);

- given that the Debtor is a mere nominal defendant, the New York Action primarily involves third parties (*id.* ¶ 31);

- the Debtor has few, if any, creditors, and they would not be prejudiced by the ongoing prosecution of the New York Action (*id.* ¶ 32);

- success in the New York Action would not result in a judicial lien avoidable by the Debtor (*id.* ¶ 33); and

- the balance of equities favors lifting the stay as a successful prosecution of the New York Action will benefit the Debtor's stakeholders while a failure to lift the stay furthers the Foreign Representatives' goal of dismissing the New York Action (*id.* ¶¶ 34-35).

They also argue that the Court should lift the automatic stay because the Foreign Representatives commenced this chapter 15 case in "bad faith" as a litigation tactic to prevent the New York Plaintiffs from prosecuting the New York Action. *Id.* ¶¶ 38-41.

The New York Plaintiffs request that this Court compel the Foreign Representatives to abandon the New York Action for two reasons. First, the Foreign Representatives have made plain their belief that the New York Action is of inconsequential value within the meaning of 11 U.S.C. § 554(b). *Id.* ¶ 43. Second, the New York Plaintiffs allege that the Foreign Representatives have a conflict of interest because they are employed by KPMG Advisory, an entity that is a Defendant in the New York Action. *Id.* ¶ 44.

The Foreign Representatives object to the Motion (the "Objection").[16] Initially, they argue that the Motion is the functional equivalent of a request to reconsider the *Recognition Decision* because it specifically seeks to unwind the legal rights that were granted to the Foreign Representatives through recognition including the right to control the Debtor's assets, which includes the New York Action. Objection ¶ 22.

The Foreign Representatives oppose an order compelling their abandonment of the New York Action because section 554 of the Bankruptcy Code is not included in 11 U.S.C. § 103(a) as a section applicable in a chapter 15 case. *Id.* ¶¶ 24-27. The Foreign Representatives also argue that abandonment is improper because the abandoned property—the New York Action—will continue to burden the Debtor. They maintain that if the New York Action, which is still in the pleading stage, is permitted to proceed, the fees arising from the Foreign Representatives' participation in the action will be borne by the Debtor. *Id.* ¶¶ 28-30. They also contend that the New York Plaintiffs' allegations of a conflict of interest on the part of the Foreign Representatives are irrelevant and unsubstantiated. *Id.* ¶¶ 31-32. Last, the Foreign Representatives assert that abandonment of the New York Action to the New York Plaintiffs is improper because they lack a possessory interest in the action. *Id.* ¶ 33.

The Foreign Representatives also oppose relief from stay to continue the New York Action. They contend that the New York Plaintiffs have failed to establish cause for relief from the automatic stay under the *Sonnax* factors because:

- continuation of the New York Action would deplete the Debtor's resources (*id.* ¶ 36);
- lifting the stay will not lead to the resolution of the New York Action as the action, despite years of litigation, remains in the pleading stage (*id.* ¶ 37);

---

[16]  *The Foreign Representatives' Objection to the New York Plaintiffs' Application for an Order Lifting the Automatic Stay and Directing the Foreign Representatives to Abandon the New York Action*, ECF No. 69.

- insurance proceeds are not available to cover the costs incurred by the Foreign Representatives in connection with the New York Action (*id.* ¶ 38);

- the New York Action is comprised of derivative claims, all of which belong to the Debtor (*id.* ¶ 39); and

- the New York Plaintiffs will have an opportunity to be heard before the Bermuda Court, obviating any prejudice (*id.* ¶ 40).

Finally, the Foreign Representatives deny that they commenced the chapter 15 case in bad faith. They say that the case was filed in a good faith attempt to complete the liquidation of the Debtor, *id.* ¶ 41, and that it is not bad faith to forestall the depletion of the Debtor's assets due to legal costs in defending proceedings against it, *id.* ¶ 42 (citing *In re Manley Toys Ltd.*, Case No. 16-15374 (JNP), 2020 WL 1580244, at *4 (Bankr. D.N.J. Mar. 31, 2020)). The Foreign Representatives also argue that the New York Plaintiffs' reliance on *C-TC 9th Ave. P'ship v. Norton Co.* (*In re C-TC 9th Ave. P'ship*), 113 F.3d 1304 (2d Cir. 1997) is not apt because that case dealt with a bad faith dismissal in the chapter 11 context and is factually distinguishable. Objection ¶¶ 42, 44-50.

The New York Plaintiffs submitted a reply brief (the "Reply"),[17] reiterating arguments made in their Motion and responding to the Foreign Representatives' arguments in the Objection. The Court held a hearing on the Motion and took the matter under advisement.

Thereafter, the Foreign Representatives and the New York Plaintiffs each filed letters on the impact of the Foreign Representatives having transitioned their employment from KPMG Advisory to Teneo (Bermuda) Limited ("Teneo Bermuda").[18] The Foreign Representatives argue

---

[17]   *New York Plaintiffs' Reply in Support of Their Application for an Order Lifting the Automatic Stay and Directing the Foreign Representatives to Abandon the New York Action*, ECF No. 75.

[18]   *See* Letter of David A. Shaiman, counsel to the Foreign Representatives, ECF No. 81, and Letter of Peter A. Singler, counsel to the New York Plaintiffs, ECF No. 82. The Foreign Representatives apparently transitioned their employment to Teneo Bermuda on or about October 25, 2022 when they filed a notice pursuant to Federal Bankruptcy Rule 4002(a)(5) ("Rule 4002(a)(5) Notice"), ECF No. 79, listing a new mailing address of the Debtor c/o Teneo Bermuda. The letter submitted by the Foreign Representatives requested a conference to address the

that their change in employment to Teneo Bermuda moots the New York Plaintiffs' assertion that their employment with KPMG Advisory created a conflict of interest. The New York Plaintiffs disagree, maintaining that the Foreign Representatives were employed by defendant KPMG Advisory at all relevant times, and their recent change in employment does not change the analysis.

## DISCUSSION

The Motion raises two related issues: (1) whether the automatic stay should be lifted to permit the continuation of the New York Action, and (2) whether this Court should compel the Foreign Representatives to abandon the New York Action to the New York Plaintiffs. The Court addresses the latter issue first because it more closely tracks the underlying dispute between the parties: whether the Foreign Representatives or the New York Plaintiffs should control the New York Action.

**A.    Abandonment**

**1.    The Chapter 15 Overlay**

Given that the Motion arises in the context of this chapter 15 case, the Court outlines several general principles that apply in this case. The purpose of chapter 15 of the Bankruptcy Code is to incorporate the Model Law on Cross-Border Insolvency promulgated by the United Nations Commission on International Trade Law so as to provide "effective mechanisms for dealing with cases of cross border insolvency." 11 U.S.C. § 1501(a). The Model Law reflects a "universalism" approach to cross-border insolvency and "treats the multinational bankruptcy as a single process in the foreign main proceeding, with other courts assisting in that single proceeding." *In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 306 (3d Cir. 2013) (citing Jay

---

significance of the change in employment. Based on the Court's ruling *infra* that there is not a conflict of interest sufficient to compel abandonment, the request for a conference is denied as moot.

Lawrence Westbrook, *Chapter 15 at Last*, 79 AM. BANKR. L.J., 713, 715 (2005)), *cert. denied sub nom. RCS Cap. Dev., LLC v. ABC Learning Ctrs. Ltd.*, 571 U.S. 1198 (2014); *see also* 11 U.S.C. § 1508 ("In interpreting this chapter, the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions."). Chapter 15 cases are "ancillary" cases where a U.S. bankruptcy court acts "'in aid of the [foreign] main proceedings' to avoid 'a system of full bankruptcies . . . in each state where assets are found.'" *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 678 (S.D.N.Y. 2011) (alteration and omission in original) (quoting H.R. Rep. No. 109-31(I), at 108 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 171). "Thus, a Chapter 15 court in the United States acts as an adjunct or arm of a foreign bankruptcy court where the main proceedings are conducted." *Id.* at 678-79; *accord Hosking v. TPG Cap. Mgmt., L.P.* (*In re Hellas Telecomms. (Lux.) II SCA*), 555 B.R. 323, 344 (Bankr. S.D.N.Y. 2016) ("the function of this Court is to provide *assistance* to the U.K. court" and this Court "will not supplant the U.K. court on matters properly pending before the U.K. court"). Consistent with the purpose of chapter 15, the U.S. bankruptcy court must "cooperate to the maximum extent possible with a foreign court or a foreign representative." 11 U.S.C. § 1525(a).

Upon recognition as a foreign main proceeding, certain relief is automatically granted to the foreign debtor and the foreign representative pursuant to 11 U.S.C. § 1520(a). The automatic stay becomes applicable with respect to the debtor's property within the territorial jurisdiction of the United States. 11 U.S.C. § 1520(a)(1). Further, section 363 of the Bankruptcy Code applies to the transfer of the debtor's U.S.-based property, and the foreign representative may exercise the rights and powers of a bankruptcy trustee under and to the extent provided by section 363. 11 U.S.C. § 1520(a)(2)-(3). Upon the commencement of a plenary bankruptcy case, "the trustee

succeeds to a debtor's rights, including the ability to sue and be sued." *Grubin v. Rattet* (*In re Food Mgmt. Grp., LLC*), 380 B.R. 677, 693 (Bankr. S.D.N.Y. 2008) (citing 11 U.S.C. § 323); *see also* 11 U.S.C. § 1509(b)(1) (upon recognition of a foreign proceeding, "the foreign representative has the capacity to sue and be sued in a court in the United States"). Generally, a bankruptcy trustee has the power to prosecute a debtor's derivative claims. *Tronox Inc. v. Kerr-McGee Corp.* (*In re Tronox Inc.*), 855 F.3d 84, 106 (2d Cir. 2017) ("[A]fter a company files for bankruptcy, creditors lack standing to assert claims that are estate property. Instead, the trustee is conferred the right to recover for derivative, generalized claims . . . ."). A claim is considered "derivative" if it arises from "harm done to the estate" and seeks "relief against third parties that pushed the debtor into bankruptcy." *Marshall v. Picard* (*In re Bernard L. Madoff Inv. Sec. LLC*), 740 F.3d 81, 89 (2d Cir. 2014) (quoting *Picard v. JPMorgan Chase & Co.* (*In re Bernard L. Madoff Inv. Sec. LLC*), 721 F.3d 54, 70 (2d Cir. 2013)). Derivative claims, including those brought by shareholders, become property of the debtor's estate upon the filing of a bankruptcy. *Pub. Sch. Teachers' Pension & Ret. Fund v. Ambac Fin. Grp., Inc.* (*In re Ambac Fin. Grp., Inc.*), 487 F. App'x 663, 665 (2d Cir. 2012) (summary order); *see also Miller v. Generale Bank Nederland, N.V.* (*In re Interpictures Inc.*), 217 F.3d 74, 76 (2d Cir. 2000) ("The derivative RICO claim belongs to the debtor's estate. Appellant's status as a creditor to the debtor does not give him either standing to prosecute or a possessory interest in this claim.") (per curiam).

Unlike a plenary bankruptcy case under chapter 7, 11 or 13 of the Bankruptcy Code in which the provisions of chapters 1, 3, and 5 have general application, the following subset apply in a chapter 15 case: (i) the entirety of chapter 1 of the Bankruptcy Code, (ii) sections 307 and 362(o), and (iii) sections 555 through 557, and 559 through 562. 11 U.S.C. § 103(a) (outlining applicability of chapters). Upon recognition as a foreign main proceeding, sections 361, 362,

549, and 552 of the Bankruptcy Code also become applicable in a chapter 15 case pursuant to 11

U.S.C. § 1520(a). Neither 11 U.S.C. § 103(a) or 11 U.S.C. § 1520(a) explicitly apply section 554

of the Bankruptcy Code, which addresses abandonment of estate property, to chapter 15 cases.

### 2.     Legal Standard for Abandonment

Section 554(b) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court may
> order the trustee to abandon any property of the estate that is burdensome to the
> estate or that is of inconsequential value and benefit to the estate.

11 U.S.C. § 554(b). "The party seeking to compel abandonment bears the burden of proving by a

preponderance of the evidence that the property is in fact burdensome or of inconsequential

value." *In re SRS Cap. Funds, Inc.*, No. 20-72883, 2022 WL 1110557, at *3 (Bankr. E.D.N.Y.

Apr. 13, 2022). The statute gives the court discretion to order abandonment of worthless or

burdensome property, "but does not specify to whom such property may be abandoned."

*Interpictures*, 217 F.3d at 76. This Court has previously held that "abandonment under any

subsection of 554 will be to a party with a 'possessory interest' which is defined as a 'right to

exert control over' or a 'right to possess' property 'to the exclusion of others.'" *In re Jandous

Elec. Constr. Corp.*, 96 B.R. 462, 466 (Bankr. S.D.N.Y. 1989); *accord In re Jimenez*, 492 B.R.

373, 378 (Bankr. S.D.N.Y. 2013). "The rationale for this rule is that once the debtor's property is

abandoned in bankruptcy, the property should be treated as though no bankruptcy proceedings

had occurred and therefore revert to the party that held a pre-petition interest in it." *Interpictures*,

217 F.3d at 76; *accord Jandous Elec.*, 96 B.R. at 466. Typically, the abandoned property reverts

back to the debtor, but the Court may direct abandonment of a cause of action to another party

that could prosecute such claim absent a bankruptcy. *Mitchell Excavators, Inc. v. Mitchell*, 734

F.2d 129, 131 (2d Cir. 1984) ("[U]nder certain circumstances a shareholder may assert a cause of

action of the debtor even after the commencement of a bankruptcy proceeding. For example, the trustee may abandon a particular claim, making it possible for others to assert it. Also, the bankruptcy court may order the trustee to abandon a claim."); *accord* 5 COLLIER ON BANKRUPTCY ¶ 554.02 (16th ed. 2023).

Although "Congress gave creditors a procedure to eliminate valueless or burdensome property . . . an order compelling abandonment is the exception, not the rule." *In re Interpictures, Inc.*, 168 B.R. 526, 535 (Bankr. E.D.N.Y. 1994); *accord In re Crockett*, 642 B.R. 97, 101 (Bankr. D. Conn. 2022) (citing *Morgan v. K.C. Mach. & Tool Co.* (*In re K.C. Mach. & Tool Co.*), 816 F.2d 238, 246 (6th Cir. 1987)). "Abandonment should not be ordered where the benefit of administration exceeds the cost of doing so," and courts will "generally defer to a Trustee's exercise of business judgment in determining whether to abandon an estate asset." *Crockett*, 642 B.R. at 101 (quoting *In re K.C. Mach. & Tool Co.*, 816 F.2d 238, 246 (6th Cir. 1987)).

**3.      Analysis**

This Court's recognition of the Bermuda Liquidation as a foreign main proceeding was a significant event in the wind down of the Debtor. It recognized the Bermuda Court as the primary situs of the Debtor's liquidation and established this chapter 15 case as a proceeding ancillary to the Bermuda Liquidation. *Fairfield Sentry*, 458 B.R. at 678. Recognition also vested the Foreign Representatives with the "rights and powers" of a bankruptcy trustee to control the Debtor's U.S.-based assets, *see* 11 U.S.C. § 1521(a)(3), which includes the derivative claims comprising the New York Action. *See Ambac Fin. Grp.* 487 F. App'x at 665. These are the circumstances under which the New York Plaintiffs now seek abandonment of the New York Action to them.

Section 554 of the Bankruptcy Code does not apply in a chapter 15 case because it is not included as an applicable provision under 11 U.S.C. § 103(a) or 11 U.S.C. § 1520(a). In fact, the only sections of chapter 5 – the chapter of the Bankruptcy Code addressing matters pertaining to creditors, the debtor, and the estate – that automatically apply in a chapter 15 case are (i) the safe harbor provisions permitting counterparties to certain types of financial contracts to terminate such contracts and exercise contractual remedies (§§ 555, 556, 559, 560 & 561) and a related provision on the measurement of damages (§ 562), and (ii) a provision providing for expedited determination of rights in a bankruptcy of a grain storage facility operator (§ 557).[19] The limited applicability of chapter 5 provisions accords with the fact that this Court presides over a proceeding that is ancillary to the main liquidation occurring in Bermuda.

The New York Plaintiffs cite orders in two chapter 15 cases in which bankruptcy courts outside of this district granted unopposed motions to abandon property. Motion ¶ 42; Reply ¶ 15 n. 5 (each citing Order, dated Mar. 31, 2020 in *In re Motorcycle Tires & Accessories LLC*, No. 19-12706 (Bankr. D. Del.), ECF No. 48, and Amended Order, dated Sept. 7, 2016 in *In re Strata Energy Servs. Inc.*, No. 15-20821 (Bankr. D. Wyo.), ECF No. 88).[20] These cases are readily distinguishable from the circumstances here because the underlying motions were brought by the foreign representatives who specifically invoked section 1521(a)(7) of the Bankruptcy Code in connection with its request to approve abandonment of property under section 554. *See* Motion, dated Mar. 13, 2020, ECF Motorcycle Tires Doc. No. 46 at ¶ 20; Motion, dated July 13, 2016,

---

[19]    Sections 549 (avoidance of post-petition transfers) and 552 (generally providing that post-petition acquired property is not subject to liens from any pre-petition security agreement) apply upon recognition as a foreign main proceeding. *See* 11 U.S.C. § 1520(a).

[20]    Documents filed on the dockets of these two cases will be referenced as "ECF Motorcycle Tires Doc. No. _" and "ECF Strata Energy Doc. No. _." The New York Plaintiffs' Motion and Reply reference the order entered in the *Strata Energy* case at ECF Strata Energy Doc. No. 87. However, the Wyoming Bankruptcy Court entered an amended order at ECF Strata Energy Doc. No. 88 to fix a typo on page three of the order.

ECF Strata Energy Doc. No. 78 at ¶ 17. Section 1521(a)(7) specifically permits a foreign representative to seek this type of relief:

> (a) Upon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interest of the creditors, the court may, *at the request of the foreign representative*, grant any appropriate relief, including –
>
> . . .
>
> > (7) granting *any additional relief that may be available to a trustee*, except for relief available under sections 522, 544, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a)(7) (emphases added). Since a court can grant a trustee's motion to abandon property under section 554 in a plenary bankruptcy case, section 1521(a)(7) allows a court to provide the same relief to a foreign representative. Therefore, the courts in *Motorcycle Tires* and *Strata Energy* were on firm ground in granting the foreign representatives' unopposed motions. Here, the Motion is brought by the New York Plaintiffs, not by the Foreign Representatives. The movants have stated no grounds upon which they are entitled to relief under section 1521(a)(7).

In any event, the New York Plaintiffs have failed to demonstrate grounds for relief under section 554(b). The New York Plaintiffs contend that the New York Action has "zero value" to the Foreign Representatives because they have sought to dismiss or enjoin prosecution of the action on numerous occasions. Motion ¶ 43. Although it is true that the Foreign Representatives view the New York Action as a "nuisance case," First Thresh Declaration ¶ 14, they nonetheless have demonstrated that they would be adversely impacted by the abandonment of the New York Action to the New York Plaintiffs. Despite numerous attempts, the New York Plaintiffs remain at the pleading stage with the third and fourth amended complaints each being dismissed for lack of derivative standing. *See Culligan II*, 139 A.D.3d at 622; *Culligan V*, 2020 WL 1307209, at *5-

6; *see also Culligan III*, 144 A.D.3d at 611 (noting New York Plaintiffs' repeated failure to plead derivative standing). The Foreign Representatives' legal fees in connection with the New York Action are borne by the Debtor, the amount previously reserved by the Foreign Representatives to cover legal fees has been exhausted, and the funds now remaining are insufficient to cover the shareholders distributions the Foreign Representatives are obligated to pay. First Thresh Declaration ¶¶ 43, 45-48, 54. If the New York Action were abandoned to the New York Plaintiffs, the Foreign Representatives would, at a minimum, incur more expense litigating any appeal from the motion to dismiss the New York Plaintiffs' fifth amended complaint and opposing leave to file the sixth amended complaint. Rather than lessen the burden on the Foreign Representatives, abandonment of the New York Action to the New York Plaintiffs would continue what the Foreign Representatives view as a costly litigation.

The New York Plaintiffs also contend that abandonment of the New York Action is warranted because the Foreign Representatives have a conflict of interest. Motion ¶ 46 (citing *Skolnick v. Atl. Gulf Communities Corp. (In re Gen. Dev. Corp.)*, 179 B.R. 335, 339 (S.D. Fla. 1995) ("To the extent the Appellants believe that GDC has not litigated the derivative claims because its counsel suffers from a conflict of interest . . . [the] Appellants should have petitioned the bankruptcy court pursuant to section 554(b) and Rule 6007(b) for an order directing GDC to abandon these claims.") (*dicta*). *But see In re Hassan*, 527 B.R. 97, 101 (Bankr. E.D.N.Y. 2015) ("abandonment is proper only when the party seeking abandonment can establish that the property at issue is burdensome or of inconsequential value and benefit to the estate") (quoting *In re Sullivan & Lodge, Inc.*, No. C03-00588, 2003 WL 22037724, *4 (N.D. Cal. Aug. 20, 2003)). Assuming that a conflict of interest is a basis to compel abandonment, the New York Plaintiffs have not established by a preponderance of the evidence that an actual conflict exists.

Some context is helpful here to frame the New York Plaintiffs' argument. Charles Thresh and Michael Morrison (i.e., the Foreign Representatives) were employed by KPMG Advisory, *see* Second Singler Declaration ¶ 7; First Thresh Declaration ¶ 29, until around October 25, 2022 when they moved their employment to Teneo Bermuda. *See* Rule 4002(a)(5) Notice. Their appointment as Joint Liquidators of the Debtor, however, are in their individual capacities rather than as employees of KPMG Advisory or Teneo Bermuda. First Thresh Declaration ¶ 29. KPMG Advisory is a defendant in the New York Action, and the New York Plaintiffs argue that this fact "makes it impossible for the Foreign Representatives to properly evaluate" the claims in the action or "act with undivided loyalty on behalf of the Debtor and its stakeholders." Motion ¶ 44.

Since the addition of KPMG Advisory as a defendant in *Culligan IV*, 2019 WL 78923, at *5 (denying addition of claims against several professional firms but noting that the addition of a breach of fiduciary duty claim against KPMG Advisory was unopposed), the New York Plaintiffs' allegations against KPMG Advisory has fallen into two categories. First, the New York Plaintiffs assert that Messrs. Thresh and Morrison prepared, or caused to be prepared, certain opinion letters on behalf of KPMG Bermuda that were sent to the Culligan board in the lead-up to the 2006/2007 Distributions. *See* Proposed Sixth Amended Derivative Complaint ("PSAC") ¶ 177(b).[21] In his declaration submitted in connection with this Motion, the New York Plaintiffs' counsel—Peter Singler—reiterated the allegation that "[KPMG Bermuda] authored opinion letters and / or advised with regard to those transactions" and added that this fact was

---

[21]    A copy of the PSAC is available at ECF No. 57-2.

"confirmed with defendants' counsel in the New York Action."[22] Second Singler Declaration ¶ 7.

The purported confirmation that Mr. Singler received from defense counsel is, at best, disputed, and at worst, conjectural. At an October 28, 2020 oral argument before the New York Court on motions to dismiss the fifth amended complaint, Mr. Singler revealed that the source of this confirmation was Abid Qureshi of Akin Gump Strauss Hauer & Feld LLP who represents defendant Newco and related entities in the New York Action. *See* New York Action Oct. 28, 2020 Hr'g Tr. at 15:11-16:9.[23] Specifically, Mr. Singler referenced discussions with Mr. Qureshi and a confirmation email from Mr. Qureshi sent on July 28, 2015 (the "July 2015 Email").[24] *Id.* In connection with the instant Motion, Mr. Qureshi submitted a declaration disputing Mr. Singler's account of their communications and attaching the July 2015 Email. According to Mr. Qureshi, he never told Mr. Singler that KPMG Advisory was involved in the 2006/2007 Distributions. Qureshi Declaration ¶¶ 3-4. In the July 2015 Email, Mr. Qureshi stated as follows:

> Pete:
>
> As discussed, I write to confirm that NewCo has in its possession documents from KPMG, Duff & Phelps, and Debevoise that pertain to the 2006-2007 recapitalization transaction.
>
> Please let me know if you have any questions.

*Id.*, Ex. B (July 2015 Email). According to Mr. Qureshi, his general reference to "KPMG" in this email was not "in any way" a reference to KPMG Advisory or the Foreign Representatives. *Id.*

---

[22]   In a footnote, Mr. Singler backtracks his assertion and states: "For clarity, it is unclear whether the Foreign Representatives or KPMG Advisory were directly involved, or it was others at their parent/affiliate KPMG International group." Second Singler Declaration ¶ 7 n. 2.

[23]   A copy of the Oct. 28, 2020 hearing transcript is attached to the Qureshi Declaration as Exhibit A.

[24]   Mr. Singler also referenced another lawyer—Michael Kahn—who apparently served as Mr. Qureshi's co-counsel and was included in these communications. New York Action Oct. 28, 2020 Hr'g Tr. at 15:18-22.

¶ 5. Counsel to the Debtor in the New York Action speculates that the reference in the July 2015 Email might have been "KPMG LLC," an entity that served as Culligan's auditors during the relevant time period. Second Berger Declaration ¶ 6. In January 2019, the New York Court denied the New York Plaintiffs' motion to add KPMG LLC as a defendant to the New York Action. *Culligan IV*, 2019 WL 78923, at *5. The Court is not convinced that the appearance of KPMG Advisory as a party in the New York Action creates a conflict of interest sufficient for the Court to mandate abandonment of the action by the Foreign Representatives.[25]

Second, the New York Plaintiffs allege that KPMG Advisory is responsible for actions of the Foreign Representatives under the theory that "[KPMG Advisory], directly and/or by and through Messrs. Thresh and Morrison, Managing Directors of KPMG Bermuda, acts as the liquidator to Culligan Ltd." PSAC ¶ 224. According to the PSAC, KPMG Advisory, as the Debtor's liquidator:

- failed to review the claims of the New York Plaintiffs in the New York Action (*id*. ¶ 178);

- has "participated with and on behalf of CDR, Culligan Ltd., and the Director Defendants" in the New York Action (*id*. ¶ 225);

- has failed to prudently manage the Debtor's assets by failing to commence lawsuits against the other defendants in the New York Action (*id*. ¶ 226); and

- initiated the Bermuda Anti-Suit Action "for the purpose of evading the laws of New York." (*Id*. ¶ 272).

Initially, the Court notes that allegations under this category are identically made against the Foreign Representatives and KPMG Advisory. *See id*. ¶ 173 (including both the Foreign

---

[25] As described *supra*, although the New York Court ultimately dismissed the fourth amended complaint in *Culligan V* for lack of derivative standing, it denied the branch of the Foreign Representatives' motion seeking to be substituted as plaintiff in the New York Action. 2020 WL 1307209, at *4. The New York Court, however, ruled on the record before it (which did not include Mr. Singler's subsequent statements during the October 28, 2020 hearing and Mr. Qureshi's response declaration submitted here) and on a different legal issue. Indeed, the New York Court suggested that it could re-visit the issue at a later date. *Id*. (denying substitution "[a]t this juncture" because "it is unclear" whether the Foreign Representatives' relationship with KPMG Advisory raises a "possible conflict" (quoting *SNR Holdings, Inc.*, 54 A.D.2d at 409).

Representatives and KPMG Advisory in the definition of "Liquidators"). Where the interests of parties are aligned, there is no conflict of interest. More importantly, the Debtor is subject to the Bermuda Liquidation, and allegations relating to the actions, or inactions, of the Joint Liquidators (which, according to the New York Plaintiffs, includes KPMG Advisory) should be made to the Bermuda Court. *See* Bermuda Companies Act § 176(5) ("If any person is dissatisfied by an act, omission or decision of the liquidator, that person may apply to the Court, and the Court may confirm, reverse or modify the act or decision complained of, and may give such directions and make such order in the premises as it thinks just."); *Id*. § 173(1) ("A liquidator appointed by the Court may . . . on cause shown, be removed by the Court.").[26]

Finally, the New York Plaintiffs, in their Reply, argue that permitting the Foreign Representatives to control and dismiss the New York Action would be "manifestly contrary to the public policy of the United States" within the meaning of 11 U.S.C. § 1506 because it would impinge on the New York Plaintiffs' right to due process.[27] Reply ¶ 26. Generally, a court should not consider arguments that are raised for the first time in a reply brief. *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply brief"). Nonetheless, this argument is unpersuasive. The Bermuda Substitution Order makes clear that the Foreign Representatives may not "seek the dismissal of or otherwise dispose of the New York Action without sanction of the Bermuda Court," Bermuda Substitution Order ¶

---

[26]   The New York Plaintiffs point out that the Debtor, the Foreign Representatives, and KPMG Advisory share a common defense counsel in the New York Action. Motion ¶ 45. As stated, however, the PSAC makes identical allegations against the Foreign Representatives and KPMG Advisory as a group (and the Debtor is a nominal defendant), and "the mere fact of joint representation does not raise the risk of trial taint when 'an attorney represents two or more clients who are similarly situated with regard to a lawsuit.'" *Bulkmatic Transp. Co. v. Pappas*, No. 99 Civ. 12070, 2001 WL 504841, at *3 (S.D.N.Y. May 11, 2001) (quoting *Felix v. Balkin*, 49 F. Supp. 2d 260, 270 (S.D.N.Y. 1999)).

[27]   Section 1506 of the Bankruptcy Code permits a U.S. bankruptcy court to refuse to take an action in a chapter 15 case that "would be manifestly contrary to the public policy of the United States." 11 U.S.C. § 1506.

3, and that any hearing on those matters must be "on notice to the attorney for the [New York Plaintiffs] who shall be entitled to be heard at such sanction application." *Id*. at 1. If the Foreign Representatives are successful in obtaining such sanction from the Bermuda Court, they intend to return to this Court to obtain recognition of such sanction and for limited relief from the automatic stay to dismiss the New York Action. *See* Objection ¶ 19. Thus, the New York Plaintiffs will seemingly have up to three opportunities to challenge dismissal of the New York Action – (i) first, in the Bermuda Court opposing the sanction sought by the Foreign Representatives, (ii) second, in this Court opposing recognition of such sanction (to the extent it is granted by the Bermuda Court) and the corresponding limited relief from the automatic stay, and (iii) third, (assuming this Court lifts the stay for such limited purpose) possibly before the New York Court opposing final dismissal of the New York Action. Therefore, the New York Plaintiffs' complaint about a lack of due process is unfounded.

**B.      Relief from the Automatic Stay**

When this Court granted recognition of the Bermuda Liquidation as a foreign main proceeding, the automatic stay became applicable to the Debtor's U.S.-based property by operation of 11 U.S.C. § 1520(a)(1). The automatic stay operates, among other things, as a stay of the continuation of pre-petition legal proceedings against the debtor. 11 U.S.C. § 362(a)(1). Section 362(d)(1) of the Bankruptcy Code allows a party in interest to seek relief from the automatic stay "for cause" shown. The phrase "for cause" is not defined in the Bankruptcy Code, but the Second Circuit has adopted the following twelve factors to consider when deciding whether the automatic stay should be lifted to allow the continuation of litigation in another forum:

1.  whether relief would result in a partial or complete resolution of the issues;
2.  lack of any connection with or interference with the bankruptcy case;

3. whether the other proceeding involves the debtor as a fiduciary;

4. whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

5. whether the debtor's insurer has assumed full responsibility for defending it;

6. whether the action primarily involves third parties;

7. whether litigation in another forum would prejudice the interests of other creditors;

8. whether the judgment claim arising from the other action is subject to equitable subordination;

9. whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

10. the interests of judicial economy and the expeditious and economical resolution of litigation;

11. whether the parties are ready for trial in the other proceeding; and

12. impact of the stay on the parties and the balance of harms.

*Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1286 (2d Cir. 1990) (citing *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984)). "All twelve factors may not be relevant in every case, nor is each factor assigned equal weight in every case." *In re Ditech Holding Corp.*, Case No. 19-10412, 2022 WL 16952443, at *13 (Bankr. S.D.N.Y. Nov. 15, 2022) (citing *Schneiderman v. Bogdanovich* (*In re Bogdanovich*), 292 F.3d 104, 110 (2d Cir. 2002); *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994)). The movant bears the initial burden of making a *prima facie* showing of "cause." *Mazzeo v. Lenhart* (*In re Mazzeo*), 167 F.3d 139, 142 (2d Cir. 1999). Although the ultimate burden of persuasion rests with the debtor to show an absence of cause, *In re Breitburn Energy Partners LP*, 571 B.R. 59, 65 (Bankr. S.D.N.Y. 2017); *see* 11 U.S.C. § 362(g)(2) (on a motion under section 362(d) for stay relief, "the party opposing such relief has the burden of proof" on all issues other than debtor's equity in property), the court should "simply deny relief from stay" if

the movant fails to make a *prima facie* showing. *Mazzeo*, 167 F.3d at 142. An analysis of the *Sonnax* factors applicable to the Motion follows.

### 1.      Factors 1, 10, & 11

Factor 1 (whether relief would result in resolution of the issues), factor 10 (judicial economy and expeditious resolution of litigation), and factor 11 (whether the proceeding is trial ready) weigh heavily against granting relief from stay. Despite years of litigation and several iterations of the complaint, the New York Action remains at the pleading stage. *See Culligan III*, 144 A.D.3d at 611. Even assuming that the New York Plaintiffs are eventually able to establish derivative standing and otherwise defeat motions to dismiss, the New York Action will indubitably take years more to complete (*e.g.*, discovery, summary judgment motions, pre-trial motion practice, appeals, trial). Put simply, the New York Action is nowhere close to trial ready.

### 2.      Factors 2 & 5

Factor 2 (interference with the bankruptcy case) and factor 5 (availability of insurance) also weigh against granting relief from the stay. As described *supra*, the Debtor's liability insurance does not cover the Foreign Representatives' legal fees in the New York Action, such fees are chargeable to the Debtor, funds reserved for such fees have been exhausted, and the Debtor now has insufficient funds to cover the shareholder distributions it is obligated to pay. First Thresh Declaration ¶¶ 43, 45-48, & 54. These fees would continue to accrue with the continuation of the New York Action,[28] and the ongoing litigation has delayed the completion of the Bermuda Liquidation. *Id.* ¶¶ 38-39.

The New York Plaintiffs argue that the Foreign Representatives' stance on the New York Action is "simply inexplicable, given that any potential recovery in the case would enhance, not

---

[28]     The most recent iteration of the complaint names the Foreign Representatives as defendants in their individual capacities. Second Singler Declaration ¶ 11.

diminish, the Debtor's estate." Motion ¶ 29 (emphasis omitted). But, the Foreign Representatives' stance on the litigation does not appear to have been conjured out of thin air. Upon their 2013 appointment as Joint Liquidators of the Debtor in the MVL, the Foreign Representatives exchanged several correspondences with counsel to the New York Plaintiffs regarding, *inter alia*, the merits of the New York Action. *See* Second Thresh Declaration ¶¶ 11-18; *id*., Exs. G-K. The Foreign Representatives have been involved in the New York Action for years, initially as fiduciaries of defendant Culligan, then as alleged representatives of defendant KPMG Advisory—an entity the New York Plaintiffs assert is the liquidator of the Debtor (*see* fifth amended complaint ¶¶ 167, 170(b), 170(c), 171, 217-19),[29] and now as proposed defendants in their individual capacities (*see* PSAC ¶¶ 109-10). Given the New York Plaintiffs' failure to plead standing despite several attempts and the current posture of the New York Action, *see Culligan V*, 2020 WL 1307209, at *6-7 (dismissing claims in the fourth amended complaint), it is not unreasonable for the Foreign Representatives to view the New York Action as a "nuisance case" that is draining the limited remaining assets of the Debtor. Thresh Declaration ¶ 14.

### 3.     Factor 6

Factor 6 (whether the action primarily involves third parties) is neutral. On the one hand, the Debtor is merely a nominal defendant in the New York Action. On the other hand, as set forth *supra*, the PSAC asserts claims against the Foreign Representatives for their actions, and inactions, relating to their role as the fiduciaries in the wind down of the Debtor. Thus, factor 6 neither favors, nor disfavors, relief from stay.

---

[29]     A copy of the fifth amended complaint is attached to the Second Berger Declaration as Exhibit E.

### 4.    Factor 12

Factor 12 (balance of harms) weighs against lifting the stay. The Foreign Representatives' argument – that the continuation of the New York Action will further delay the wind down of the Debtor and drain the Debtor's assets – is set forth above under the analysis of factors 2 and 5. The New York Plaintiffs' argument on factor 12 implies that they will receive unfair treatment if forced to appear before the Bermuda Court. *See* Motion ¶ 35 (stating that the "New York Action will be dead in the water" if the New York Plaintiffs are forced to go before the Bermuda Court); *accord* Reply ¶ 8.[30] The fact that legal proceedings in a foreign country differ from that of the U.S. does not mean that it is invalid or inferior to domestic courts. Bermudian jurisprudence consists of statutory and case law that has developed for over 400 years and is based on the English legal system. Luthi Declaration ¶ 9. In the international insolvency context, this Court has granted recognition of numerous Bermudian insolvency proceedings including in this case, as well as proceedings in other British overseas territories which have similar jurisprudence. *See Recognition Decision* at 39 (granting recognition of the Bermuda Liquidation); *In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 96 (Bankr. S.D.N.Y. 2012) (granting recognition of Bermudian insolvency proceeding); *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 345 (Bankr. S.D.N.Y. 2012) (noting the court's prior

---

[30]   The New York Plaintiffs conflate (i) the law that applies to the underlying claims comprising the New York Action with (ii) the authority of a bankruptcy fiduciary to take custody of a debtor's assets. The New York Plaintiffs imply that the Bermuda Court will apply Bermuda law to the underlying claims notwithstanding the First Department's ruling in *Culligan I*, 118 A.D. at 423, that New York law applies to the majority of the claims. *See* Motion ¶ 35 ("Because Bermuda law does not recognize derivative claims of the type asserted in the New York Action, the case will likely be enjoined from that forum unless the New York Plaintiffs can seek recourse in New York, in which the First Department bindingly held that the claims at issue are governed by New York law, not Bermuda law."). But, the New York Plaintiffs have not cited a ruling by the Bermuda Court applying Bermuda law to the underlying claims in the New York Action. Instead, the authority cited in the Bermuda Substitution Order is for the proposition that the Joint Liquidators are obligated to take custody and control of the Debtor's property under section 174(1) of the Bermuda Companies Act. *See* Bermuda Substitution Order at 1. U.S. law is the same in this regard. *See Ambac Fin. Grp.*, 487 F. App'x at 665 ("when Ambac filed for bankruptcy, the derivative claims became property of the debtor-in-possession, Ambac").

recognition of Bermudian insolvency proceeding); *see also In re Fairfield Sentry Ltd.*, 714 F.3d

127, 140 (2d Cir. 2013) (affirming recognition of British Virgin Islands insolvency proceeding);

*In re Ocean Rig UDW Inc.*, 570 B.R. 687, 707 (Bankr. S.D.N.Y. 2017) (granting recognition of

Cayman Island insolvency proceeding), *appeal dismissed,* 585 B.R. 31 (S.D.N.Y. 2018), *aff'd*,

764 F. App'x 46 (2d Cir. 2018) (summary order). In any event, as mentioned above, the New

York Plaintiffs will be afforded the opportunity to raise objections in this Court (and possibly

before the New York Court) should they find the proceedings in Bermuda objectionable.[31]

### 5.    Bad Faith

Separate from the *Sonnax* analysis, the New York Plaintiffs contend that the stay should

be lifted because the chapter 15 case was filed in bad faith as a litigation tactic. Motion ¶¶ 37-39.

Although bad faith can constitute "cause" to lift the automatic stay under section 362(d) of the

Bankruptcy Code, "the concept of bad faith filing should be used sparingly to avoid denying

bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances." *In re

234-6 W. 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) (quoting 3 COLLIER ON

BANKRUPTCY ¶ 362.07[6] (15th ed. rev. 1997)); *see also id.* ("[W]hen faced with a motion to lift

the stay on bad faith grounds, a judge must conduct a careful analysis similar to that performed

with a motion to dismiss a case on bad faith grounds. In both cases, the relief sought is an

extraordinary remedy that requires careful examination of the facts on a case-by-case basis.");

*accord In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 334 (Bankr. S.D.N.Y. 2001).

---

[31]    Neither party has asserted that factor 3 (whether the other action involves the debtor as a fiduciary), factor 4 (whether there is a specialized tribunal with necessary expertise), or factor 8 (whether claim is subject to equitable subordination) is relevant. The remainder of the factors are not particularly relevant here because the Debtor has few, if any, creditors (factor 7), and success in the New York Action would not result in an avoidable judicial lien (factor 9). *See* Motion ¶ 33; Objection ¶ 40 n.19.

The New York Plaintiffs cite *C-TC 9th Ave. P'ship*, in which the Second Circuit adopted

the following eight factors that are indicative of a bad faith filing:

> (1) the debtor has only one asset;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
>
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages of default on the debt;
>
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
>
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
>
> (6) the debtor has little or no cash flow;
>
> (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
>
> (8) the debtor has no employees.

113 F.3d at 1311-12 (citing *Pleasant Pointe Apartments, Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828,

832 (W.D. Ky. 1992)). Invoking three of these factors, the New York Plaintiffs allege bad faith

on the part of the Foreign Representatives because the timing of the chapter 15 filing shows an

intent to delay the efforts of the New York Plaintiffs to prosecute the New York Action (factor

5), the Debtor's financial troubles essentially involve a two-party dispute (factor 4), and the New

York Action is the Debtor's sole remaining asset (factor 1). Motion ¶ 40. Indeed, the Foreign

Representatives have admitted that the purpose of the chapter 15 is to take control of the New

York Action. *See Motion for (I) Recognition of the Bermuda Liquidation as a Foreign Main

Proceeding and (II) Certain Related Relief*, ECF No. 5 ¶ 38 ("[T]he Bermuda Liquidation and

any order issuing from the Bermuda court must be binding and enforceable in the United States

so that the New York Plaintiffs are precluded from continuing the [New York Action] under the

automatic stay and otherwise taking any actions in the United States that may further deplete the dwindling assets of the Debtor and frustrate the Bermuda Liquidation."); *see Recognition Decision* at 31-32 (finding that the chapter 15 filing of the Debtor was part of the Foreign Representatives' litigation strategy).

Nonetheless, the Court finds that the Foreign Representatives did not commence this chapter 15 case in bad faith. This Court's decision in *In re Soundview Elite, Ltd.*, 503 B.R. 571 (Bankr. S.D.N.Y.), *appeal dismissed*, 512 B.R. 155 (S.D.N.Y. 2014), *aff'd*, 597 F. App'x 663 (2d Cir. 2015) (summary order), is instructive. There, the debtors—a group of mutual funds organized under the laws of the Cayman Islands operating out of New York City—filed chapter 11 petitions on September 24, 2013. Prior to the filing of the chapter 11 petitions, certain petitioning creditors filed insolvency proceedings in the Cayman Islands against the debtors, and the Cayman court entered winding up orders at a hearing held after the chapter 11 filings. *Id*. at 584. The joint official liquidators appointed by the Cayman court ("JOLs") moved for, *inter alia*, dismissal of the chapter 11 cases on the basis that it was filed in bad faith. *Id*. at 579-80. Initially, Judge Gerber observed that the case differed from the typical case, such as *C-TC 9th Ave P'ship*, seeking dismissal for bad faith, "which most commonly involve filings to avoid threatened actions against the debtor's property—such as mortgage foreclosures in single asset real estate cases or proceedings to terminate leases." *Soundview Elite*, 503 B.R. at 580. While the applicability of the factors set forth in *C-TC 9th Ave P'ship* are not limited to cases involving actions against property, "they tend to apply to a much lesser degree in other cases." *Soundview Elite*, 503 B.R. at 580. In denying the motion to dismiss, the Court was not persuaded by the JOLs' assertion that the debtors filed chapter 11 petitions for the "explicit purpose" of impeding the Cayman liquidation proceeding:

> [W]hile I agree with the JOLs that such was the Debtors' purpose, these facts, in
> the absence of more, are insufficient for me to find either bad faith or
> unenumerated cause. Indeed, if I or any other U.S. court were to consider a desire
> to invoke the stay to be sufficient, a very significant portion of perfectly
> unobjectionable chapter 11 cases could never be filed. The JOLs also question the
> Debtors' filings on the basis that the Debtors cannot be "reorganized," but it is not
> bad faith to file a chapter 11 petition for the purpose of a more orderly liquidation.
>
> Here I find that the Debtors' filings had a valid business purpose, and were not in
> bad faith. The Debtors' management was dealing with frozen assets and impaired
> liquidity – with an inability to reach the bulk of the Debtors' liquid assets before
> the Wilmington Trust interpleader was resolved, and very limited liquidity with
> respect to the remainder. The Debtors' management also had a view – which may
> or may not be correct, but which cannot be said to be unreasonable – that . . . it
> could realize more on the Debtors' illiquid assets than any court-appointed
> fiduciaries could. Although I readily accept as the JOLs' argument that the
> explicit purpose of the filings was to delay the Winding Up Proceeding and
> prevent the Grand Court from appointing the Debtors' management's
> replacement, that is insufficient, without more, to establish bad faith or
> unenumerated cause in the presence of the valid business purposes just described.

*Id.* at 580-81 (alterations and footnotes omitted). Thus, a bankruptcy filing cannot be said to be

in bad faith where the debtor reasonably seeks the benefit of the automatic stay to effectuate an

orderly liquidation. *Accord* 7 COLLIER ON BANKRUPTCY ¶ 1112.07[5][b][i] (16th ed. 2023)

("Because the automatic stay is an important incident of the bankruptcy filing, the bare fact that

the debtor desires to obtain the benefits of this element of bankruptcy relief cannot by itself

support a finding of bad faith. Rather, the debtor must intend to obtain the benefit of the

automatic stay for an improper purpose, such as merely to frustrate the rights of creditors rather

to reorganize or to have an orderly liquidation.") *see also In re Aleris Int'l, Inc.*, 456 B.R. 35, 46

(Bankr. D. Del. 2011) (the automatic stay is intended to, among other things, "forestall the

depletion of the debtor's assets due to legal costs in defending proceedings against it").

In this case, the Foreign Representatives readily admit that the chapter 15 filing is part of

their strategy to enjoin, control, and eventually dismiss, an action that they view as meritless,

which is draining the Debtor's limited assets and preventing the orderly completion of the

Bermuda Liquidation. This strategy is not so much a tactic to combat a negative outcome in the

New York Action[32] as it is a tactic to bring the New York Action to a conclusion in furtherance

of the Debtor's wind-down. In the end, the Foreign Representatives "may or may not be correct"

that dismissal of the New York Action is the best course of action, *Soundview Elite*, 503 B.R. at

580, but for reasons outlined herein, their view is not unreasonable.

**6.       Lift Stay Conclusion**

The New York Plaintiffs have failed to show "cause" under the *Sonnax* factors to lift the

automatic stay. They have also failed to show that the Foreign Representatives commenced this

chapter 15 case in bad faith such that the stay should be lifted.

## CONCLUSION

For the reasons stated, the Motion is denied.

**IT IS SO ORDERED.**

Dated: New York, New York
        September 12, 2023

                                        /s/ *James L. Garrity, Jr.*
                                        UNITED STATES BANKRUPTCY JUDGE

---

[32]   The New York Plaintiffs imply that the Foreign Representatives filed a chapter 15 petition only after receiving adverse rulings in the New York Action. Motion ¶ 39; Reply ¶ 12. This argument is unpersuasive. The Foreign Representatives commenced this chapter 15 case in September 2020, the claims in the fourth amended complaint were dismissed in March 2020 in *Culligan V*, 2020 WL 1307209, at *6-7, and dismissal motions were pending with respect to the fifth amended complaint. Further, the New York Plaintiffs imply that the Foreign Representatives "failed" in their attempt enjoin the New York Action through the Bermuda Anti-Suit Action. Motion ¶ 39. However, as described above, the Foreign Representatives stipulated with the New York Plaintiffs to stay the Bermuda Anti-Suit Action pending recognition proceedings in this Court.