**Objection Deadline: September 4, 2026 at 5:00 p.m. (prevailing U.S. Eastern Time)**
**Hearing Date and Time: September 18, 2026 at 10:00 a.m. (prevailing U.S. Eastern Time)**

ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
Telephone: (212) 571-0550
Facsimile: (212) 571-0555
David A. Berger
David A. Shaiman
Alexander E. Ehrlich

*Counsel to the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Case No. 20-12192 (LGB)** |
| **CULLIGAN LTD.,[1]** | |
| **Debtor in Foreign Proceedings.** | **Chapter 15** |

**DECLARATION OF MICHAEL W. MORRISON IN SUPPORT OF THE MOTION OF THE FOREIGN REPRESENTATIVES FOR (I) RECOGNITION AND ENFORCEMENT OF THE BERMUDA COURT'S SANCTION ORDER APPROVING THE SETTLEMENT AGREEMENT; (II) A PERMANENT INJUNCTION AGAINST ACTIONS IN CONTRAVENTION OF THE SANCTION ORDER; (III) LIMITED RELIEF FROM THE AUTOMATIC STAY TO DISMISS THE NEW YORK ACTION; AND (IV) RELATED RELIEF**

TO THE HONORABLE LISA G. BECKERMAN,
UNITED STATES BANKRUPTCY JUDGE:

I, Michael W. Morrison, hereby declare as follows:

1. I am over the age of 18 and, if called upon, could testify to all matters set forth in this declaration (this "**Declaration**").[2] I make this Declaration in my role as a joint liquidator of

[1] Culligan Ltd. is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 35591. Culligan's registered office is located at c/o Teneo (Bermuda) Limited, 19 Par-la-Ville Road, 3rd Floor, Hamilton, HM 11, Bermuda.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion, the Foreign Representatives' memorandum of law in support of the Motion, or the proposed Order, each filed

the Debtor (as defined below). Consistent with that role, I have gained knowledge of the Debtor's history, day-to-day operations, assets, financial condition, business affairs, and books and records. All facts set forth in this Declaration are based upon (a) my personal knowledge; (b) my review of relevant documents and any and all documents prepared and/or filed in connection with the Bermuda Liquidation, the New York Action (each as defined below), and this chapter 15 case; (c) information supplied to me by the officers, directors, employees or professionals retained by the Debtor; or (d) my experience and knowledge of the Debtor's assets and financial condition.

2. On April 29, 2013, Charles Thresh and I were appointed joint liquidators (the "**Foreign Representatives**") of the above-captioned debtor (the "**Debtor**" or the "**Company**") pursuant to a resolution of the Debtor's shareholders commencing a members' voluntary liquidation under the Companies Act 1981 of Bermuda. On August 23, 2019, the Supreme Court of Bermuda (the "**Bermuda Court**") entered a winding up order continuing our appointment as joint liquidators in the court-supervised liquidation of the Debtor (the "**Bermuda Liquidation**"). Mr. Thresh and I have served continuously as joint liquidators since our 2013 appointment. Although we were employed by KPMG Advisory Limited ("**KPMG**") at the time of our appointment, we have since left KPMG and are now Senior Managing Directors of Teneo (Bermuda) Limited.

---

contemporaneously herewith, or, if not defined therein, in the Court's July 2, 2021 Memorandum Decision and Order on the motion for recognition, as corrected (ECF No. 60-1; the "**Recognition Decision**"), and the Court's September 12, 2023 Memorandum Decision and Order denying the New York Plaintiffs' motion for stay relief and abandonment (ECF No. 83; the "**Stay Decision**"). The Foreign Representatives also refer the Court to (1) the Declaration of Charles Thresh (ECF No. 7) (the "**First Thresh Declaration**", cited herein as "**First Thresh Decl.**"), the Reply Declaration of Charles Thresh (ECF No. 26) (the "**Second Thresh Declaration**", cited herein as "**Second Thresh Decl.**"), and the Reply Declaration of David A. Berger (ECF No. 27) (the "**First Berger Declaration**", cited herein as "**First Berger Decl.**"), each submitted in connection with the Recognition Decision; and (2) the Declaration of David A. Berger (ECF No. 70) (the "**Second Berger Declaration**", cited herein as "**Second Berger Decl.**"), submitted in connection with the Stay Decision.

3. I submit this Declaration in support of the Foreign Representatives' motion (the "**Motion**") for entry of an order (i) recognizing and enforcing in the United States the order of the Bermuda Court (the "**Sanction Order**") sanctioning the Foreign Representatives' entry into the settlement agreement resolving the New York Action (the "**Settlement**" or the "**Settlement Agreement**"); (ii) permanently enjoining all parties, including the New York Plaintiffs, from taking any action in the United States in contravention of the Sanction Order; (iii) granting limited relief from the automatic stay to permit the Foreign Representatives to seek dismissal of the New York Action with prejudice; and (iv) granting related relief.

**BACKGROUND**

**A. The Debtor and the Bermuda Liquidation**

4. Culligan is a Bermuda corporation that was the ultimate parent of a group of companies that distributed water purification and filtration units through franchise dealers in the United States and Canada. (Stay Decision at 3-4.) In 2004, Clayton Dubilier & Rice Fund VI Limited Partnership (the "**CD&R Defendant**") acquired a majority interest in the Company through a leveraged buy-out.

5. In 2007, the Company completed a leveraged recapitalization transaction pursuant to which its operating subsidiaries borrowed more than $800 million, used approximately $400 million to refinance existing indebtedness, and paid a $375 million dividend (the "**2007 Dividend**") that was distributed to all of the Company's shareholders on a *pro rata* basis (the 2007 Dividend, together with a prior 2006 repayment of equity and related transactions, the "**2006-2007 Distributions**"). The New York Plaintiffs were beneficiaries of the 2006-2007 Distributions, accepting more than $30 million from the very transactions they now allege were improper.

6. The Company was solvent at the time of the 2006-2007 Distributions, and the 2006-2007 Distributions did not render it insolvent. Before approving the 2006-2007 Distributions, the Company's board considered both a solvency opinion of its then Chief Financial Officer and an independent solvency opinion from Duff & Phelps. Those opinions analyzed the Company's solvency under the cash-flow, balance-sheet, and capital-adequacy tests and determined that the Company satisfied each.

7. In 2008, however, the global financial crisis materially altered the availability and cost of credit, and the Company was unable to refinance its maturing loans. In May 2012, the Company therefore completed an out-of-court restructuring (the "**2012 Restructuring**") under which its operating business was transferred to a newly formed entity, Culligan Newco Ltd. ("**Newco**"). (Stay Decision at 4.) Following the 2012 Restructuring, the Debtor was solvent, with assets consisting primarily of cash received from Newco and no operating liabilities.

8. On April 29, 2013, the Company's shareholders adopted a unanimous resolution commencing a members' voluntary liquidation (the "**MVL**") under the Companies Act 1981 of Bermuda and appointed Mr. Thresh and me as joint liquidators to wind up the Debtor. (Stay Decision at 5.) In June 2017, the Debtor held approximately $11.87 million in cash, largely consisting of an $11.67 million payment from Newco. (*Id.* at 11.) We distributed approximately $11.34 million to shareholders and reserved $500,000 for liquidation expenses and anticipated legal fees in the New York Action. (*Id.*)

9. That reserve was rendered insufficient by the costs of the New York Action. By June 2019, the Debtor held only $288,000 in cash, approximately $240,000 of which was earmarked for unpaid shareholder distributions, leaving insufficient funds to cover both anticipated litigation costs and the Company's obligations to shareholders. (Stay Decision at

12.) Mr. Thresh and I therefore determined that the Debtor had become insolvent and petitioned the Bermuda Court to convert the MVL into a court-supervised compulsory liquidation. (*Id.*) On August 23, 2019, the Bermuda Court entered a winding up order commencing the Bermuda Liquidation, confirming us as court-supervised liquidators, and directing that our fees and expenses "be paid out of the assets of the Company as an expense of the liquidation." (*Id.*)

10. The New York Action, and the seemingly endless amended complaints that have perpetuated it, exacted a heavy toll on the Debtor's estate. As of August 31, 2020, the Debtor's estate was left with only approximately $97,248—an amount insufficient even to satisfy outstanding shareholder distributions—due in substantial part to the costs of the New York Action, which has delayed completion of the Bermuda Liquidation for more than a decade.

**B. The New York Action**

11. On May 30, 2012, the New York Plaintiffs filed a shareholder derivative lawsuit in the Supreme Court of the State of New York, County of New York (the "**New York Court**"), styled *Culligan Soft Water Company, et al. v. Clayton Dubilier & Rice, LLC, et al.*, Index No. 651863/2012 (the "**New York Action**"). Purporting to sue on the Company's behalf, the New York Plaintiffs alleged in the New York Action that the 2006-2007 Distributions violated Section 510 of the New York Business Corporation Law because the Company was insolvent at the time of those distributions or was rendered insolvent as a result, that the Company's former directors and officers breached their fiduciary duties, and that the transfer of assets to Newco constituted a fraudulent conveyance, corporate waste, and unjust enrichment. The Debtor was named as a nominal defendant in the New York Action. (Stay Decision at 5.)

12. After the New York Plaintiffs filed their First Amended Complaint—and before Mr. Thresh and I were appointed as voluntary liquidators—the defendants, including the Debtor,

moved to dismiss the First Amended Complaint under Bermuda law and, in the alternative, under New York law. In March 2013, the New York Court dismissed the action, holding that Bermuda law governed and generally does not permit shareholder derivative suits. (Stay Decision at 6.)

13. While that dismissal was on appeal, and shortly after our April 2013 appointment as voluntary liquidators, Mr. Thresh and I wrote to counsel for the New York Plaintiffs, requesting that they take no further action in the litigation (the "**2013 Correspondence**"). As we explained, control of the Debtor had changed, and the Debtor's claims, including those asserted in the New York Action, could be pursued only by us as joint liquidators. (Stay Decision at 6.) The 2013 Correspondence explained, point by point, why the derivative claims lacked both merit and economic justification: (i) all shareholders were treated equally in the 2006-2007 Distributions, and the New York Plaintiffs accepted their *pro rata* share, effectively consenting to the decision they now challenge; (ii) the 2007 Dividend was a commercial decision made in good-faith reliance on independent legal and financial advice, for which directors are not liable under Bermuda law absent preferential treatment; (iii) recovering the 2007 Dividend would be an illogical "in and out" exercise, with funds repaid by all shareholders only to be redistributed to them *pro rata* after costs—yielding no net benefit to the Company; and (iv) the Company was solvent at the time of the 2006-2007 Distributions, never became insolvent as a result of those transactions, and in fact benefited from the 2012 Restructuring, which restored the Debtor's subsidiaries to solvency and enhanced shareholder value. (Second Thresh Decl. ¶ 17 and Ex. J, ECF No. 26-5 at 3-5.) The New York Plaintiffs did not accede to our request.

14. On June 3, 2014, the Supreme Court of the State of New York, Appellate Division, First Department (the "**First Department**") held that, with certain exceptions, New York law governed the claims asserted in the New York Action and remanded for consideration

of whether those claims should be dismissed under New York law. *Culligan Soft Water Co. v. Clayton Dubilier & Rice LLC*, 118 A.D.3d 422, 423-24 (1st Dep't 2014).

15. Following that ruling, Mr. Thresh and I—by then voluntary liquidators of the Debtor—faced the question of whether the claims asserted in the New York Action had any merit under New York law. We took advice on the claims' viability under New York law from our then New York counsel, Debevoise & Plimpton LLP ("**Debevoise**"). With counsel's advice, we determined that the New York Plaintiffs had neither properly pleaded derivative standing nor stated viable claims—in particular because they could not allege that the Company was insolvent when the 2007 Dividend was paid or was rendered insolvent by it—consistent with what the 2013 Correspondence and the solvency opinions described above had already established. We accordingly instructed Debevoise to move to dismiss the then-operative Third Amended Complaint for, among other grounds, failure to state a cause of action under New York law.

16. The New York Court dismissed the Third Amended Complaint for failure to plead derivative standing and denied leave to replead. The First Department affirmed the dismissal, but reversed the denial of leave, affording the New York Plaintiffs still another opportunity to amend. *Culligan Soft Water Co. v. Clayton Dubilier & Rice LLC*, 139 A.D.3d 621, 622 (1st Dep't 2016).

17. On June 8, 2015, the New York Court approved a $4 million partial settlement between certain lender defendants and the New York Plaintiffs (the "**2015 Partial Settlement**"). A true and correct copy of the 2015 Partial Settlement is included within the exhibit bundle to the Second Singler Affidavit (as defined below) submitted to the Bermuda Court in the sanction proceedings described in Section E, *infra*, attached hereto as **Exhibit D**, at pages 192-203 of that bundle's continuous internal pagination. The non-settling defendants in the New York Action

objected to the 2015 Partial Settlement because it released purportedly derivative claims of the Debtor but provided no payment or other benefit to the Debtor. In fact, the full $4 million was payable to the Culligan Dealers' Association of North America ("**CDANA**"), a non-party trade association that had been subsidizing the costs of prosecuting the New York Action. (2015 Partial Settlement, Ex. D at 203.) CDANA was, in turn, directed to use the funds to reimburse legal fees already incurred, to hold up to $1 million for future legal expenses, and to distribute any remainder to the New York Plaintiffs at its discretion. (*Id.*)

18. In November 2016, the First Department reversed the approval of the 2015 Partial Settlement, finding that the settlement "does not provide for payment to the company" and that the New York Plaintiffs had "not obtained a substantial benefit for the company, but have accomplished only getting their lawyers paid." *Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*, 144 A.D.3d 611, 611 (1st Dep't 2016). The First Department held that approving a settlement "purporting to bind the company and all shareholders" was "an abuse of discretion" where the New York Plaintiffs, after four attempts, "had not established—and may never establish—their standing to bring the action." *Id.*

19. In November 2017, the New York Plaintiffs moved for leave to file a Fourth Amended Complaint, seeking to add additional claims and defendants, including KPMG, which the New York Plaintiffs alleged—incorrectly and without evidence—to have been involved in the 2007 Dividend. (Second Berger Decl. ¶¶ 7-8 and Exs. B-C.) Although Mr. Thresh and I were at that time managing directors and employees of KPMG, our appointment as joint liquidators was, and is, in our personal capacities. The New York Plaintiffs' motion was granted in part and denied in part in January 2019. *Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*, No. 651863/2012, 2019 WL 78923, at *10 (Sup. Ct. N.Y. Cnty. Jan. 2, 2019).

20. The addition of KPMG needlessly prolonged the litigation. (First Thresh Decl. ¶¶ 29-30.) We had by then engaged separate counsel for the Company, Allegaert Berger & Vogel LLP, and we moved to dismiss the Fourth Amended Complaint or, in the alternative, to be substituted as plaintiffs in the New York Action. (Stay Decision at 9.) In March 2020, the New York Court denied substitution "[a]t this juncture" because "it is unclear" whether our relationship with KPMG raised a "possible conflict," but dismissed all claims because the Fourth Amended Complaint was "devoid of any allegations" that the New York Plaintiffs had made a demand on us—the "board in place at the time the amended pleading [was] filed"—or that such a demand would have been futile. *Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*, No. 651863/2012, 2020 WL 1307209, at *4-6 (Sup. Ct. N.Y. Cnty. Mar. 19, 2020). The dismissal was without prejudice to the filing of a Fifth Amended Complaint. (*Id.* at *7.)

21. The New York Plaintiffs filed their Fifth Amended Complaint in May 2020. (Stay Decision at 10.) All defendants, including the Debtor, moved to dismiss it in July 2020. (First Berger Decl. ¶ 9.) The New York Court heard oral argument on the dismissal motions on October 28, 2020 and, on July 14, 2021, denied the motions without prejudice to renewal in light of the automatic stay arising in this chapter 15 case, described below. (Stay Decision at 10-11; First Berger Decl. ¶ 9; Chapman Expert Affidavit (as defined below) ¶ 22.) More than fourteen years after the New York Action was commenced, and through six iterations of the complaint, no version of the complaint has ever been held to state a claim. (*See* Stay Decision at 33-34.)

**C. This Chapter 15 Case and the Court's Prior Rulings**

22. On September 17, 2020, with the Bermuda Court's prior sanction, Mr. Thresh and I commenced this chapter 15 case. (Recognition Decision at 11-12.) The New York Plaintiffs

objected to recognition, arguing, among other things, that the chapter 15 petition was filed in bad faith as a litigation tactic. (*Id.* at 14; ECF No. 21 ¶¶ 45-46.)

23. While our motion for recognition and the motions to dismiss the Fifth Amended Complaint remained pending, the New York Plaintiffs, on July 1, 2021, threatened to file a Sixth Amended Complaint that would seek, among other things, to name Mr. Thresh and me as defendants in the New York Action and to add "a claim for injunctive relief against Culligan Ltd and the Liquidators to enjoin them from pursuing the [Bermuda Liquidation]." (ECF No. 57 ¶ 2 (quoting Ex. A at 1); Ex. B ¶¶ 270-275.) We alerted this Court to these developments on July 2, 2021. (ECF No. 57.)

24. This Court entered the Recognition Decision that same day, granting recognition of the Bermuda Liquidation as a foreign main proceeding and recognizing Mr. Thresh and me as the Debtor's foreign representatives. (Recognition Decision at 39.) I am advised and understand that recognition imposed the automatic stay as to the Debtor and its U.S. property and vested us with the rights and powers of a trustee to control the Debtor's U.S.-based assets, including the derivative claims comprising the New York Action. *See* 11 U.S.C. § 1520(a)(1), (3). The New York Plaintiffs did not timely appeal from or seek reconsideration of the Recognition Decision. *See generally* docket.

25. Following recognition, the New York Plaintiffs moved before this Court for relief from the automatic stay to continue the New York Action and for an order directing us to abandon the New York Action to them. (ECF No. 65; Stay Decision at 15-16.) On September 12, 2023, this Court issued the Stay Decision, denying that motion in its entirety. (*Id.* at 40.) In the Stay Decision, the Court explained that the New York Plaintiffs could have up to three opportunities to litigate their objections to the disposition of the New York Action: first, in

Bermuda, in opposition to our request for sanction; second, in this Court, in opposition to any request to recognize and enforce the Bermuda Court's resulting order; and third, potentially in the New York Court. (Stay Decision at 31.)

**D. The Settlement Agreement**

26. In light of this history, Mr. Thresh and I proceeded on the basis that, although the claims asserted in the New York Action are without merit, certain defendants might be willing to settle on a "nuisance" basis in order to bring the New York Action to an end and provide a further benefit to the estate. Accordingly, in or about February 2024, we, through counsel, entered into good-faith, arm's-length negotiations with counsel for the defendants in the New York Action. Those negotiations culminated in the summer of 2025—after approximately eighteen months of negotiations—in an agreement in principle and a draft agreement, subject to the sanction of the Bermuda Court, to settle the New York Action on the same terms set forth in the final Settlement Agreement. The Settlement Agreement was fully executed on August 12, 2026 following the conclusion of the sanction proceeding described in Section E, *infra*. A true and correct copy of the executed Settlement Agreement is attached hereto as **Exhibit A**.

27. The Settlement Agreement's terms are straightforward and uniformly beneficial to the estate. The settling defendants will pay a settlement payment of $1,580,000 (the "**Settlement Payment**") to the Debtor, subject to conditions precedent that include entry of the Sanction Order and its recognition and enforcement by this Court. (Settlement Agreement § 1.) The Settlement Payment will form part of the Debtor's estate in the Bermuda Liquidation, and any settling defendant that is a direct or indirect shareholder of the Debtor has agreed to waive any right to distributions from the Settlement Payment, thereby increasing the amounts available for distribution to non-defendant stakeholders, including the New York Plaintiffs. (*Id.* § 7.) In

exchange, the Settlement Agreement provides for releases of the claims asserted against the settling defendants and certain related entities and individuals in the New York Action, and for dismissal of the New York Action with prejudice upon satisfaction of the Settlement Agreement's conditions. (*Id.* §§ 3-5, 9-11.)

28. The Settlement Agreement also provides for our statutory fees and costs, which are properly payable as an expense of the liquidation under the Bermuda Court's August 23, 2019 winding up order. It is anticipated, however, that the Company's insurers will cover a significant portion of our legal fees in connection with our application to the Bermuda Court for sanction of the Settlement (the "**Sanction Application**"), the Motion, and the dismissal of the New York Action. Based on our experience, Mr. Thresh and I anticipate that at least $750,000 of the Settlement Payment will ultimately be distributed to the non-defendant shareholders of the Company, including the New York Plaintiffs.

29. The Settlement will benefit the Debtor by delivering the Settlement Payment, which will permit us to complete the remaining shareholder distributions, meet other obligations, and conclude the Bermuda Liquidation efficiently.

30. The Settlement's value reflects my and Mr. Thresh's assessment, informed by the advice of professional advisors including counsel, of the claims' lack of merit and of the financial strain of defending a decade-long campaign of unsuccessful litigation, over the course of which the New York Plaintiffs never came close to obtaining any recovery for the Debtor.

**E. The Sanction Proceedings Before the Bermuda Court**

31. On August 29, 2025, Mr. Thresh and I commenced the Sanction Application by filing a Sanction Summons in the Bermuda Court, supported by evidence including the Second Affidavit of Michael W. Morrison (the "**Second Morrison Affidavit**"), sworn to August 29,

2025, seeking approval of the Settlement. A true and correct copy of the Second Morrison Affidavit is attached hereto as **Exhibit B**, together with its exhibits. I reaffirm that the matters sworn to in the Second Morrison Affidavit are true to the best of my knowledge and belief.

32. Consistent with our commitment to this Court to proceed in Bermuda on notice to the New York Plaintiffs, we sought a directions order from the Bermuda Court (an order of the Bermuda Court setting out the procedure for how the Sanction Application would be heard), which was issued on September 26, 2025 (the "**Directions Order**"), a true and correct copy of which is attached hereto as **Exhibit C**. The Directions Order required service on the New York Plaintiffs' U.S. counsel and established a procedural timetable for the sanction hearing, including an October 31, 2025 deadline for any party wishing to file responsive evidence. Both the Sanction Application and the Directions Order were timely served on the New York Plaintiffs' U.S. counsel.

33. On October 16, 2025, Culligan Soft Water Company and Donald E. Meredith—two of the New York Plaintiffs (the "**Appearing Parties**")—filed, through their Bermuda counsel, Trott & Duncan Limited, a Notice of Intention to Appear at the sanction hearing. The Appearing Parties subsequently sought an extension of time to respond to the Sanction Application. That request was accommodated by agreement and by further order of the Bermuda Court, and the Appearing Parties filed their responsive evidence on March 5, 2026, consisting of (i) the Second Affidavit of Peter A. Singler, sworn to January 15, 2026 (the "**Second Singler Affidavit**"), a true and correct copy of which, together with its exhibits, is attached hereto as **Exhibit D**, and (ii) the expert affidavit of Robert J. Borghese, as amended by stipulation, sworn to January 15, 2026 (the "**Borghese Affidavit**"), a true and correct copy of which, together with its exhibits, is attached hereto as **Exhibit E**.

34. In their responsive evidence, the Appearing Parties opposed the Sanction Application on six grounds: (i) that only the New York Plaintiffs, with the New York Court's approval, may settle the New York Action, and that Mr. Thresh and I lack authority to do so (Second Singler Affidavit ¶ 32; Borghese Affidavit ¶¶ 9-15); (ii) that the New York Court had already held all of the claims to be sufficiently pleaded when it granted the motion for leave to file the subsequently dismissed Fourth Amended Complaint (Second Singler Affidavit ¶¶ 19, 22, 72; Borghese Affidavit ¶ 16); (iii) that Mr. Thresh and I are conflicted and partisan, having shared counsel with the CD&R Defendant and holding a personal interest in suppressing the claims (Second Singler Affidavit ¶¶ 8, 23, 38, 49, 53, 65, 73); (iv) that we should instead "disclaim" the New York Action to the New York Plaintiffs, purportedly at no cost or risk to the Company (Second Singler Affidavit ¶¶ 31, 57, 59, 61, 74); (v) that the Settlement is less favorable than the 2015 Partial Settlement (Second Singler Affidavit ¶¶ 18, 48, 50, 52.1); and (vi) that we unduly delayed the New York Action and breached our undertaking to give notice before disposing of it (Second Singler Affidavit ¶¶ 33-35, 53).

35. On April 23, 2026, Mr. Thresh and I filed with the Bermuda Court the Third Affidavit of Michael W. Morrison, then in unsworn form, and the expert affidavit of the Hon. Shelley C. Chapman (Ret.), sworn to April 21, 2026 (the "**Chapman Expert Affidavit**"). I thereafter swore the Third Affidavit of Michael W. Morrison on June 4, 2026 (the "**Third Morrison Affidavit**"), without any change to its substance and well in advance of the sanction hearing. True and correct copies of the sworn Third Morrison Affidavit and the Chapman Expert Affidavit, each together with its exhibits, are attached hereto as **Exhibit F** and **Exhibit G**, respectively.[3] Through these evidentiary and expert submissions, and subsequently through our

[3] I reaffirm that the matters sworn to in the Third Morrison Affidavit are true to the best of my knowledge and belief, with the exception of one small correction. In Paragraph 9 of the Third Morrison Affidavit I stated that the New

skeleton brief (the "**Skeleton Brief**"), we refuted each of the Appearing Parties' six objections to the Sanction Application.

36. On May 19, 2026, having appeared, obtained a requested extension of time, and entered their evidence before the Bermuda Court, the Appearing Parties voluntarily withdrew their objections to the Sanction Application. In exchange, we agreed not to seek costs against them if we were successful on the Sanction Application. At the time of this withdrawal, the evidentiary record was fully submitted; the only remaining steps were the sanction hearing and the submission of skeleton briefs.

37. On July 14, 2026, Mr. Thresh and I submitted our Skeleton Brief to the Bermuda Court, a true and correct copy of which is attached hereto as **Exhibit H**. Three days later, on July 17, 2026, the Bermuda Court held a hearing on the Sanction Application, at which our Bermuda counsel presented argument on the application, including argument addressing the Appearing Parties' withdrawn objections. The Bermuda Court reviewed the full record and granted the sanction at the hearing's conclusion, with written reasons to follow (the "**Reasons Opinion**"). (Reasons Opinion ¶¶ 2-3, 45.)

38. On July 18, 2026, the Bermuda Court entered the Sanction Order sanctioning our entry into the Settlement Agreement, and on July 29, 2026, the Bermuda Court published the Reasons Opinion explaining the Court's basis for entering the Sanction Order. A true and correct copy of the Sanction Order is attached hereto as **Exhibit I**, and a true and correct copy of the Reasons Opinion is attached hereto as **Exhibit J**. The Sanction Order reflects the Bermuda Court's express determinations that "all parties in interest had reasonable notice and had the

York Plaintiffs "collectively held approximately 8% of the Company's outstanding Shares." That number is actually 3.8%. All shareholders of the Company who are not defendants in the New York Action collectively hold 8% of the Company's outstanding shares.

opportunity to be heard"; that the claims asserted in the New York Action "lack merit and are unlikely to succeed, will be unduly protracted, and do not justify any further expense"; and that the Settlement Agreement "was the product of arms'-length, good faith negotiation," is "in the best interest of and benefits the shareholders of the Company," and "eliminates the uncertainty of further litigation, and will permit the winding up of the affairs of the Company." (Sanction Order at 1.) The Sanction Order also expressly permits us "to seek recognition of this Order pursuant to Chapter 15, Title 11 of the United States Bankruptcy Code." (*Id.* ¶ 3.)

39. In the Reasons Opinion, the Bermuda Court found, among other things, that the New York Plaintiffs "have as yet failed to establish standing," leaving the claim "demurrable and vulnerable to summary dismissal"; that successive New York attorneys have advised for more than ten years that the dividend claim is "a weak claim on the facts and the law"; that the Company "never was insolvent"; and that the New York Plaintiffs "acquiesced in and benefitted from the dividend" they now challenge—findings that the Bermuda Court concluded present "substantial (if not insurmountable) obstacles" to the claim. (Reasons Opinion ¶¶ 22-23.) Although the Appearing Parties had withdrawn their objections, the Bermuda Court nevertheless undertook "a high level evaluation" of each of the six objections and concluded there was "no substantial reason why the court should withhold its sanction." (*Id.* ¶¶ 28-30.) The Bermuda Court was "satisfied" that Mr. Thresh and I genuinely and reasonably believe the Settlement to be in the interests of the estate as a whole, that the Settlement "achieve[s] a discernible benefit to the estate as a whole," and that it causes no harm to the estate, and it concluded that "the claim is one that justifies settlement on the best available terms." (*Id.* ¶¶ 41-44.)

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 12TH day of August, 2026
in Hamilton, Bermuda

Michael W. Morrison
*Joint Liquidator of Culligan Ltd.*