**Objection Deadline: September 4, 2026 at 5:00 p.m. (prevailing U.S. Eastern Time)**
**Hearing Date and Time: September 18, 2026 at 10:00 a.m. (prevailing U.S. Eastern Time)**

ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
Telephone: (212) 571-0550
Facsimile: (212) 571-0555
David A. Berger
David A. Shaiman
Alexander E. Ehrlich

*Counsel to the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Case No. 20-12192 (LGB)** |
| **CULLIGAN LTD.,[1]** | |
| **Debtor in Foreign Proceedings.** | **Chapter 15** |

# THE FOREIGN REPRESENTATIVES' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR ENTRY OF AN ORDER (I) RECOGNIZING AND ENFORCING THE BERMUDA COURT'S SANCTION ORDER APPROVING THE SETTLEMENT AGREEMENT; (II) PERMANENTLY ENJOINING ACTIONS IN CONTRAVENTION OF THE SANCTION ORDER; (III) GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY TO DISMISS THE NEW YORK ACTION; AND (IV) GRANTING RELATED RELIEF

[1] Culligan Ltd. ("Culligan" or the "Debtor") is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 35591. Culligan's registered office is located at c/o Teneo (Bermuda) Limited, 19 Par-la-Ville Road, 3rd Floor, Hamilton, HM 11, Bermuda.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 2

RELIEF REQUESTED ..... 5

JURISDICTION AND VENUE ..... 5

BACKGROUND ..... 6

A. The Debtor and the Bermuda Liquidation ..... 6

B. The New York Action ..... 8

1. The First Three Complaints ..... 8

2. The 2015 Partial Settlement ..... 11

3. The Next Two Complaints ..... 12

C. This Chapter 15 Case and the Court's Prior Rulings ..... 14

D. The Settlement Agreement ..... 16

E. The Bermuda Court Sanctions the Settlement Following a Full and Fair Process in Which the New York Plaintiffs Participated Before Withdrawing Their Objection Before the Bermuda Court Hearing ..... 17

ARGUMENT ..... 25

A. Recognition and Enforcement of the Sanction Order Is "Appropriate Relief" Under Section 1521 and "Additional Assistance" Under Section 1507 That the Court Should Grant Consistent with Chapter 15's Focus on Comity. ..... 26

1. Comity strongly favors recognition and enforcement of the Sanction Order ..... 26

2. Sections 1521 and 1507 authorize recognition and enforcement of the Sanction Order ..... 29

3. The interests of the New York Plaintiffs and all other interested parties are sufficiently protected under section 1522 ..... 31

4. Recognition and enforcement of the Sanction Order is not manifestly contrary to United States public policy .................................. 34

B. All Parties, Including the New York Plaintiffs, Should Be Enjoined From Taking Any Action in the United States in Contravention of the Sanction Order .................................................................................... 34

C. The Court Should Grant Limited Relief from the Automatic Stay Pursuant to Section 362(d)(1) to Permit Dismissal of the New York Action with Prejudice. ............................................................................. 38

CONCLUSION ............................................................................................................ 40

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re ABC Learning Centres Ltd.*,
445 B.R. 318 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013). ....................................38

*In re Agrokor d.d.*,
591 B.R. 163 (Bankr. S.D.N.Y. 2018)....................................................................27, 29, 34

*Atl. Marine, Inc. v. Am. Classic Voyages, Co.*,
298 B.R. 222 (D. Del. 2003)...............................................................................38, 39

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009)........................................................................26, 32

*Auerbach v. Bennett*,
47 N.Y.2d 619 (1979) ..........................................................................................9

*In re Avanti Commc'ns Grp. PLC*,
582 B.R. 603 (Bankr. S.D.N.Y. 2018)........................................................................30, 35

*In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*,
238 B.R. 25 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002)................................26

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
389 B.R. 325 (S.D.N.Y. 2008)..................................................................................25

*In re Brierley*,
145 B.R. 151 (Bankr. S.D.N.Y. 1992)..........................................................................35

*In re Canterbury Sec., Ltd.*,
675 B.R. 109 (S.D.N.Y. 2025)..................................................................................34

*In re Comair Ltd. (In Liquidation)*,
No. 21-10298 (JLG), 2025 WL 3037797 (Bankr. S.D.N.Y. Oct. 30, 2025) ................................29

*In re Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.*,
670 B.R. 150 (Bankr. D. Del. 2025) ........................................................................31, 33

*Culligan Soft Water Co. v. Clayton Dubilier & Rice LLC*,
118 A.D.3d 422 (1st Dep't 2014) ..............................................................................10

*Culligan Soft Water Co. v. Clayton Dubilier & Rice LLC*,
139 A.D.3d 621 (1st Dep't 2016) ..........................................................................11, 20

*Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*,
144 A.D.3d 611 (1st Dep't 2016) ....................12, 32

*Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*,
55 Misc. 3d 1115 (Sup. Ct. N.Y. Cnty. 2017) ....................12

*Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*,
No. 651863/2012, 2019 WL 78923 (Sup. Ct. N.Y. Cnty. Jan. 2, 2019)....................12, 20

*Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*,
No. 651863/2012, 2020 WL 1307209 (Sup. Ct. N.Y. Cnty. Mar. 19, 2020) ....................13

*In re Daebo Int'l Shipping Co.*,
543 B.R. 47 (Bankr. S.D.N.Y. 2015)....................29

*In re Energy Coal S.P.A.*,
582 B.R. 619 (Bankr. D. Del. 2018) ....................29

*In re ENNIA Caribe Holding N.V.*,
596 B.R. 316 (Bankr. S.D.N.Y. 2019)....................32

*In re Ephedra Prods. Liab. Litig.*,
349 B.R. 333 (S.D.N.Y. 2006)....................34

*In re Garcia Avila*,
296 B.R. 95 (Bankr. S.D.N.Y. 2003)....................35, 36

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024)....................31

*Hilton v. Guyot*,
159 U.S. 113 (1895)....................29

*In re Int'l Banking Corp. B.S.C.*,
439 B.R. 614 (Bankr. S.D.N.Y. 2010)....................32

*In re Kenneth Cole Prods., Inc.*, *S'holder Litig.*,
27 N.Y.3d 268 (2016) ....................9

*In re Manley Toys Ltd.*,
No. 16-15374 (JNP), 2020 WL 1580244 (Bankr. D.N.J. Mar. 31, 2020) ....................26, 28, 38, 39

*In re Markel CATCo Reinsurance Fund Ltd.*,
No. 21-11733 (LGB) (Bankr. S.D.N.Y. Mar. 16, 2022)....................26

*In re Markus*,
610 B.R. 64 (Bankr. S.D.N.Y. 2019), *aff'd*, 620 B.R. 31 (S.D.N.Y. 2020)....................32

*Max v. ALP, Inc.*,
203 A.D.3d 580 (1st Dep't 2022) ....................9

*In re Metcalfe & Mansfield Alt. Invs.*,
421 B.R. 685 (Bankr. S.D.N.Y. 2010)....................28, 29, 31, 34

*In re MMG LLC*,
256 B.R. 544 (Bankr. S.D.N.Y. 2000)....................35

*In re Odebrecht Engenharia e Construcao S.A. - Em Recuperacao Jud.,*
669 B.R. 457 (Bankr. S.D.N.Y. 2025)....................29, 31, 35

*In re Olinda Star Ltd.*,
614 B.R. 28 (Bankr. S.D.N.Y. 2020)....................30, 35

*In re PT Bakrie Telecom Tbk*,
628 B.R. 859 (Bankr. S.D.N.Y. 2021)....................26

*In re Rede Energia S.A.*,
515 B.R. 69 (Bankr. S.D.N.Y. 2014).................... *passim*

*In re Rubin*,
160 B.R. 269 (Bankr. S.D.N.Y. 1993)....................35

*In re Sino-Forest Corp.*,
501 B.R. 655 (Bankr. S.D.N.Y. 2013)....................26, 28, 30, 35

*Tucker Anthony Realty Corp. v. Schlesinger*,
888 F.2d 969 (2d Cir. 1989)....................35

*In re Vitro S.A.B. de C.V.*,
701 F.3d 1031 (5th Cir. 2012) ....................29

Statutes

11 U.S.C. § 105(a) ....................1, 5

11 U.S.C. § 362(d) ....................1, 5, 38

11 U.S.C. § 554....................15

11 U.S.C. § 1507.................... *passim*

11 U.S.C. § 1517....................14

11 U.S.C. § 1520(a)(1)....................14, 38

11 U.S.C. § 1520(a)(3).................... *passim*

11 U.S.C. § 1521 ........ *passim*

11 U.S.C. § 1521(a) ........ 29, 31, 34

11 U.S.C. § 1521(e) ........ 34

11 U.S.C. § 1522 ........ 1, 5, 31, 33

11 U.S.C. § 1522(a) ........ 31

11 U.S.C. § 1524 ........ 39

28 U.S.C. § 157(a) ........ 5

28 U.S.C. § 157(b)(2)(P) ........ 6

28 U.S.C. § 1334(a) ........ 5

28 U.S.C. § 1408 ........ 6

28 U.S.C. § 1409 ........ 6

Bermuda Companies Act 1981 ........ 4, 7, 32

Bermuda Companies Act §§ 174(1), 185(1), and 192 ........ 21

N.Y. Bus Corp. Law § 510 ........ 8

N.Y. Bus. Corp. Law § 626(d) ........ 19, 39

Rules

Fed. R. Bankr. P. 8002 ........ 14

Fed. R. Bankr. P. 9023 ........ 14

TO THE HONORABLE LISA G. BECKERMAN,
UNITED STATES BANKRUPTCY JUDGE:

1. Michael Morrison and Charles Thresh, in their capacities as the joint liquidators and authorized foreign representatives (the "**Foreign Representatives**") of Culligan Ltd. ("**Culligan**," the "**Company**," or the "**Debtor**"), respectfully submit this memorandum of law in support of their motion (the "**Motion**") pursuant to sections 105(a), 362(d), 1507, 1521, and 1522 of title 11 of the United States Code (the "**Bankruptcy Code**"), for entry of an order (the "**Proposed Order**"), in the form attached to the Motion as **Exhibit A**: (i) recognizing and enforcing in the United States the order of the Supreme Court of Bermuda (the "**Bermuda Court**") sanctioning the Foreign Representatives' entry into a settlement agreement resolving the New York Action, as defined below;[2] (ii) permanently enjoining all parties, including the New York Plaintiffs, from taking any action in the United States in contravention of the Sanction Order; (iii) lifting the automatic stay for the limited purpose of permitting the Foreign Representatives to seek dismissal of the derivative action filed in the Supreme Court of the State of New York, New York County (the "**New York Court**"), styled *Culligan Soft Water Company, et al. v. Clayton Dubilier & Rice, LLC*, *et al.*, Index No. 651863/2012 (the "**New York Action**") with prejudice; and (iv) authorizing the Foreign Representatives to take all other actions necessary or appropriate to implement the Settlement Agreement and the Sanction Order in the United States.[3] In support of the Motion, the Foreign Representatives respectfully

---

[2] The settlement agreement resolving the New York Action is referred to herein as the "**Settlement**" or the "**Settlement Agreement**" and is attached as Exhibit A to the Declaration of Michael W. Morrison in Support of the Foreign Representatives' Motion (the "**Morrison Declaration**", cited herein as "**Morrison Decl.**"), filed contemporaneously herewith. The order of the Bermuda Court sanctioning the Foreign Representatives' entry into the Settlement Agreement is referred to as the "**Sanction Order**" and is attached as Exhibit I to the Morrison Decl. The Bermuda Court's decision explaining the Court's reasons for entering the Sanction Order is referred to herein as the "**Reasons Opinion**", cited as "Reasons" and attached as Exhibit J to the Morrison Decl.

[3] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion, or, if not defined therein, in the Court's July 2, 2021, Memorandum Decision and Order on the motion for recognition, as corrected

represent as follows:

## PRELIMINARY STATEMENT

2. This Motion is the next step contemplated by this Court in its Stay Decision. The Stay Decision held that resolution of the New York Action—a failed shareholder derivative suit that has consumed fourteen years and six complaints, none of which has been held to state a claim, and which this Court found to be an asset of the Debtor[4]—would first be addressed by the Bermuda Court, on notice to the New York Plaintiffs and with the opportunity to be heard, with recognition and enforcement of any resulting order then sought in this Court. (Stay Decision at 30-31.) Because the Bermuda Court—which has supervised this liquidation since 2019—has entered the Sanction Order approving the Settlement and has set forth its reasoning therefor in its Reasons Opinion, the Foreign Representatives now seek recognition and enforcement of the Sanction Order by this Court.

3. The Settlement will deliver a payment of $1,580,000 (the "**Settlement Payment**") to the Debtor, an amount sufficient to wind up the Company and allow the Foreign Representatives to meet all outstanding obligations of the Debtor, including distribution of the Settlement Payment (net of expenses) to the New York Plaintiffs themselves as shareholders.

4. The Bermuda Court sanctioned the Settlement after a full and fair process in

---

(ECF No. 60-1; the "**Recognition Decision**"), and the Court's September 12, 2023, Memorandum Decision and Order denying the New York Plaintiffs' motion for stay relief and abandonment (ECF No. 83; the "**Stay Decision**"). In addition to Morrison Decl., the Foreign Representatives also refer the Court to (1) the Declaration of Charles Thresh (ECF No. 7) (the "**First Thresh Declaration**", cited herein as "**First Thresh Decl.**"), the Reply Declaration of Charles Thresh (ECF No. 26) (the "**Second Thresh Declaration**", cited herein as "**Second Thresh Decl.**"), and the Reply Declaration of David A. Berger (ECF No. 27) (the "**First Berger Declaration**", cited herein as "**First Berger Decl.**"), each submitted in connection with the Recognition Decision; and (2) the Declaration of David A. Berger (ECF No. 70) (the "**Second Berger Declaration**", cited herein as "**Second Berger Decl.**"), submitted in connection with the Stay Decision.

[4] Stay Decision at 20-21, 23 ("Recognition also vested the Foreign Representatives with the 'rights and powers' of a bankruptcy trustee to control the Debtor's U.S.-based assets, *see* 11 U.S.C. § 1520(a)(3), which includes the derivative claims comprising the New York Action.").

which the New York Plaintiffs appeared through Bermuda counsel and submitted purported fact and expert evidence. That the New York Plaintiffs later voluntarily withdrew their objections when they became concerned about their exposure to substantial costs should their opposition fail (as was likely in the Foreign Representatives' view) does not undermine their full and fair opportunity to be heard. Moreover, despite the withdrawal of their objections, the Bermuda Court addressed the New York Plaintiffs' objections on the merits and concluded that there was "no substantial reason why the court should withhold its sanction." (Reasons ¶¶ 28-30.)

5. This Motion seeks the relief chapter 15 is designed to provide: recognition and enforcement of the Sanction Order under principles of comity and the powers vested in this Court pursuant to sections 1507 and 1521 of the Bankruptcy Code, a permanent injunction barring the New York Plaintiffs from acting in contravention of the Sanction Order or Settlement Agreement, and limited stay relief to dismiss the asset-draining New York Action with prejudice. The relief requested achieves several laudable goals:

6. *First*, the requested relief is both appropriate and necessary to allow for the orderly winding up of the Debtor. As this Court has found, it is "not unreasonable for the Foreign Representatives to view the New York Action as a 'nuisance case' that is draining the limited remaining assets of the Debtor." (Stay Decision at 34.) The Bermuda Court has now agreed, finding that the claim's defects "present substantial (if not insurmountable) obstacles to the progress and successful outcome of the claim" and that the claim "justifies settlement on the best available terms." (Reasons ¶¶ 23, 44.) The Settlement, accordingly, resolves that drain on Company resources, a repeatedly dismissed derivative action baselessly pursued by minority shareholders holding roughly 3.8% of the Company's shares that is, as this Court observed, "nowhere close to trial ready". (Stay Decision at 33-34.)

7. *Second*, the Settlement provides for the settling defendants to pay $1,580,000 to the Debtor's estate for distribution under the Bermuda Court's supervision in accordance with the priorities of the Bermuda Companies Act 1981 (the "**Bermuda Companies Act**"). Additionally, settling shareholder-defendants have waived their rights to any distribution from the Settlement Payment, thereby increasing recoveries for non-defendant shareholders, including most prominently the New York Plaintiffs. As the Bermuda Court explained, "there is clearly a discernible benefit to the estate as a whole, namely the ability to conclude the liquidation, to resolve the outstanding contingent liability represented by the New York action and to return a meaningful amount of value to the minority shareholders, net of the expenses of the liquidation." (Reasons ¶ 37.) Recognition and enforcement of the Sanction Order will allow the New York Plaintiffs to receive their *pro rata* share of the enhanced recoveries the Settlement makes possible—recoveries without which, the Bermuda Court found, there is "a likelihood of no return at all". (Reasons ¶ 38.)

8. Against this record, the legal analysis is straightforward. Chapter 15 vests this Court with broad discretion, guided by principles of comity, to recognize and enforce the orders of the Bermuda Court as the court presiding over a recognized foreign main proceeding, and courts in this district have repeatedly recognized and enforced orders of the foreign "home court" approving settlements, schemes, and plans in similar circumstances. The additional relief requested flows naturally and is necessary and appropriate. Without the entry of an injunction, counsel for the New York Plaintiffs have already made clear they will either try to enjoin the Foreign Representatives[5] or exhaust the Settlement through prolonged litigation. (Second

[5] *See* Proposed Sixth Amended Complaint, available at ECF No. 57 at Ex. B ¶¶ 270-275.

Singler Aff.[6] ¶¶ 52.3-52.4 (New York Plaintiffs' counsel asserting that the "net result [of the New York Plaintiffs' challenges to the Sanction Order] will be that there is no benefit to the Company or shareholders, the settlement funds will be depleted by the Joint Liquidators, and the case will drag on for several more years, with anything but a certain outcome.").)

9. Finally, limited stay relief will permit the Foreign Representatives to proceed to the third and final step contemplated by this Court in its Stay Decision: to seek dismissal of the New York Action with prejudice. After years of failed attempts by the New York Plaintiffs to state a claim, at this juncture, there is simply no basis for them to have yet another chance to relitigate questions already resolved in Bermuda over their objection. The Motion should be granted.

## RELIEF REQUESTED

10. By this Motion, and pursuant to sections 105(a), 362(d), 1507, 1521, and 1522 of the Bankruptcy Code, the Foreign Representatives seek entry of the Proposed Order (i) recognizing and enforcing the Sanction Order in the United States; (ii) permanently enjoining all parties, including the New York Plaintiffs, from taking any action in the United States in contravention of the Sanction Order; (iii) lifting the automatic stay for the limited purpose of permitting the Foreign Representatives to seek dismissal of the New York Action with prejudice; and (iv) authorizing the Foreign Representatives to take all other actions necessary or appropriate to implement the Settlement Agreement and the Sanction Order in the United States.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157(a) and

[6] The Second Affidavit of Peter A. Singler, filed in opposition to the sanction application described in Section E, *infra*, and attached as Ex. D to the Morrison Decl. (cited herein as "**Second Singler Affidavit**" or "**Second Singler Aff.**").

1334(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 12, 2012 (Preska, C.J.). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P).

12. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### A. The Debtor and the Bermuda Liquidation.

13. Culligan is a Bermuda corporation that was the ultimate parent of a group of companies that distributed water purification and filtration units through franchise dealers in the United States and Canada. (Stay Decision at 3-4.) In 2004, Clayton Dubilier & Rice Fund VI Limited Partnership (the "**CD&R Defendant**") acquired a majority interest in the Company through a leveraged buy-out. (Third Morrison Aff.[7] ¶ 9.) In 2007, Culligan completed a leveraged recapitalization transaction pursuant to which its operating subsidiaries borrowed more than $800 million, used approximately $400 million to refinance existing indebtedness, and paid a $375 million dividend (the "**2007 Dividend**") that was distributed to all of Culligan's shareholders on a *pro rata* basis (the 2007 Dividend, together with a prior 2006 repayment of equity and related transactions, the "**2006-2007 Distributions**"). (Stay Decision at 4; Second Morrison Aff.[8] ¶ 5.) The New York Plaintiffs were beneficiaries of these distributions, accepting more than $30 million from the very transactions they now allege were improper. (Morrison Decl. ¶ 5.)

14. The Company was solvent at the time of the 2006-2007 Distributions, and the

---

[7] The Third Affidavit of Michael W. Morrison, filed in support of the sanction application described in Section E, *infra*, and attached as Ex. F to the Morrison Decl. (cited herein as "**Third Morrison Affidavit**" or "**Third Morrison Aff.**").

[8] The Second Affidavit of Michael W. Morrison, filed in support of the sanction application described in Section E, *infra*, and attached as Ex. B to the Morrison Decl. (cited herein as "**Second Morrison Affidavit**" or "**Second Morrison Aff.**").

2006-2007 Distributions did not render it insolvent. (Morrison Decl. ¶ 6.) Before approving the 2006-2007 Distributions, the Company's board considered both a solvency opinion of its then Chief Financial Officer (the "**CFO Opinion**") and an independent solvency opinion from Duff & Phelps (the "**D&P Opinion**"). (*Id.*) Those opinions analyzed the Company's solvency under the cash-flow, balance-sheet, and capital-adequacy tests and determined that the Company satisfied each. (*Id.*)

15. In 2008, however, the global financial crisis materially altered the availability and cost of credit, and the Company was unable to refinance its maturing loans. (Morrison Decl. ¶ 7.) In May 2012, Culligan therefore completed an out-of-court restructuring (the "**2012 Restructuring**") under which its operating business was transferred to a newly formed entity, Culligan Newco Ltd. ("**Newco**"). (Stay Decision at 4.) Following the 2012 Restructuring, the Debtor was solvent, with assets consisting primarily of cash received from Newco and no operating liabilities. (Morrison Decl. ¶ 7.)

16. On April 29, 2013, Culligan's shareholders adopted a unanimous resolution commencing a members' voluntary liquidation (the "**MVL**") under the Bermuda Companies Act and appointed the Foreign Representatives as joint liquidators to wind up the Debtor. (Stay Decision at 5.) In June 2017, the Debtor held approximately $11.87 million in cash, largely consisting of an $11.67 million payment from Newco. (*Id.* at 11.) The Foreign Representatives distributed approximately $11.34 million to shareholders and reserved $500,000 for liquidation expenses and anticipated legal fees in the New York Action. (*Id.*)

17. That reserve was rendered insufficient by the costs of the New York Action. By June 2019, the Debtor held only $288,000 in cash, approximately $240,000 of which was earmarked for unpaid shareholder distributions, leaving insufficient funds to cover both

anticipated litigation costs and the Company's obligations to shareholders. (Stay Decision at 12.) The Foreign Representatives therefore determined that the Debtor had become insolvent and petitioned the Bermuda Court to convert the MVL into a court-supervised compulsory liquidation (the "**Bermuda Liquidation**"). (*Id.*) On August 23, 2019, the Bermuda Court entered a winding up order commencing the Bermuda Liquidation, confirming the Foreign Representatives as court-supervised liquidators, and directing that the Foreign Representatives' fees and expenses "be paid out of the assets of the Company as an expense of the liquidation." (*Id.*)

18. But the drain continued. By August 31, 2020, the Debtor's estate was left with only approximately $97,248—an amount insufficient even to satisfy outstanding shareholder distributions—due in substantial part to the New York Action, which has delayed completion of the Bermuda Liquidation for more than a decade. (*Id.* at 12-13; Morrison Decl. ¶ 10.)

**B. The New York Action.**

**1. The First Three Complaints**

19. The New York Action has a long and tortured procedural history, defined by the New York Plaintiffs' repeated failures to properly plead or establish derivative standing. On May 30, 2012, the New York Plaintiffs commenced the New York Action, a shareholder derivative lawsuit filed in the New York Court. (Stay Decision at 5.) Purporting to sue on the Company's behalf, the New York Plaintiffs alleged that the 2006-2007 Distributions violated Section 510 of the New York Business Corporation Law because the Company was insolvent at the time of those distributions or was rendered insolvent as a result, that the Company's former directors and officers breached their fiduciary duties, and that the transfer of assets to Newco

constituted a fraudulent conveyance, corporate waste, and unjust enrichment. (Morrison Decl. ¶ 11.) The Debtor was named as a nominal defendant. (Stay Decision at 5.)

20. After the New York Plaintiffs filed their First Amended Complaint—and before the Foreign Representatives were appointed—the defendants, including the Debtor, moved to dismiss the First Amended Complaint under Bermuda law and, in the alternative, under New York law. (Stay Decision at 6; Morrison Decl. ¶ 12.) In March 2013, the New York Court dismissed the action, holding Bermuda law governed and generally does not permit shareholder derivative suits. (Stay Decision at 6.)

21. While that dismissal was on appeal, and shortly after their April 2013 appointment as voluntary liquidators, the Foreign Representatives wrote to counsel for the New York Plaintiffs, requesting that they take no further action in the litigation (the "**2013 Correspondence**"). (Morrison Decl. ¶ 13.) As the Foreign Representatives explained, control of the Debtor had changed, and the Debtor's claims, including those asserted in the New York Action, could now be pursued only by the Foreign Representatives. (Stay Decision at 6.) The 2013 Correspondence explained, point by point, why the derivative claims lacked both merit and economic justification: (i) all shareholders were treated equally in the 2006-2007 Distributions, and the New York Plaintiffs accepted their *pro rata* share, effectively consenting to the decision they now challenge; (ii) the 2007 Dividend was a commercial decision made in good-faith reliance on independent legal and financial advice, for which directors are not liable under Bermuda law (essentially identical to New York law) absent preferential treatment;[9] (iii) recovering the 2007 Dividend would be an illogical "in and out" exercise, with funds repaid by

[9] The New York business judgment rule presumes that a corporation's directors—not courts—are best positioned to make business decisions, even where hindsight suggests the judgment was mistaken. *Auerbach v. Bennett*, 47 N.Y.2d 619, 629 (1979); *see also In re Kenneth Cole Prods., Inc.*, *S'holder Litig.*, 27 N.Y.3d 268, 274 (2016); *Max v. ALP, Inc.*, 203 A.D.3d 580, 581 (1st Dep't 2022).

all shareholders only to be redistributed to them *pro rata* after costs—yielding no net benefit to the Company; and (iv) the Company was solvent at the time of the 2006-2007 Distributions, never became insolvent as a result of those transactions, and in fact benefited from the 2012 Restructuring, which restored the Debtor's subsidiaries to solvency and enhanced shareholder value. (Second Thresh Decl. ¶ 17 and Ex. J, ECF No. 26-5 at 3-5.) The New York Plaintiffs did not accede to the Foreign Representatives' request.

22. On June 3, 2014, the Supreme Court, Appellate Division, First Department, held that, with certain exceptions, New York law governed the claims and remanded for consideration of whether the claims should be dismissed under New York law.[10]

23. Following *Culligan I*, the Foreign Representatives—by then voluntary liquidators of the Debtor—faced the question of whether the claims asserted in the New York Action had any merit under New York law. The Foreign Representatives took advice on the claims' viability under New York law from their then New York counsel, Debevoise & Plimpton LLP ("**Debevoise**"). (Morrison Decl. ¶ 15.) With counsel's advice, the Foreign Representatives determined that the New York Plaintiffs had neither properly pleaded derivative standing nor stated viable claims—in particular because they could not allege the Company was insolvent when the 2007 Dividend was paid or rendered insolvent by it—precisely what the 2013 Correspondence and the CFO and D&P Opinions had already established. (*Id.*; *supra* ¶¶ 14, 21.) The Foreign Representatives accordingly instructed Debevoise to move to dismiss the then-operative Third Amended Complaint for, *inter alia*, failure to state a cause of action under New York law. (Morrison Decl. ¶ 15.)

[10] *Culligan Soft Water Co. v. Clayton Dubilier & Rice LLC*, 118 A.D.3d 422, 423-24 (1st Dep't 2014) ("**Culligan I**").

24. The New York Court dismissed the Third Amended Complaint for failure to plead derivative standing and denied leave to replead. (Morrison Decl. ¶ 16.) The First Department affirmed the dismissal, but reversed the denial of leave, affording the New York Plaintiffs still another opportunity to amend.[11]

### 2. <u>The 2015 Partial Settlement</u>

25. On June 8, 2015, the New York Court approved a $4 million partial settlement between certain lender defendants and the New York Plaintiffs (the "**2015 Partial Settlement**", attached as Morrison Decl. Ex. D at 192).[12] (Stay Decision at 8.) The non-settling defendants in the New York Action objected to the 2015 Partial Settlement because it released purportedly derivative claims of the Debtor but provided no payment or other benefit to the Debtor. (Morrison Decl. ¶ 17.) In fact, the full $4 million was payable to the Culligan Dealers' Association of North America ("**CDANA**"), a non-party trade association that "ha[d] been subsidizing the costs of prosecuting the" New York Action. (2015 Partial Settlement, Morrison Decl. Ex. D at 203.) CDANA was, in turn, directed to use the funds to reimburse legal fees already incurred, hold up to $1 million for future legal expenses, and distribute any remainder to the New York Plaintiffs at its discretion. (*Id.*; Morrison Decl. ¶ 17.)[13]

26. The First Department reversed the approval of the 2015 Partial Settlement, finding the settlement "does not provide for payment to the company" and that the New York

[11] *Culligan Soft Water Co. v. Clayton Dubilier & Rice LLC*, 139 A.D.3d 621, 622 (1st Dep't 2016) ("**Culligan II**").

[12] Exhibit D to the Morrison Declaration includes the exhibit bundle to the Second Singler Affidavit submitted to the Bermuda Court in the sanction proceedings described in Section E, *infra*. Page pincites to Exhibit D refer to the bundle's continuous internal pagination.

[13] The 2015 Partial Settlement also included a provision for the settling defendants to furnish certain discovery to the New York Plaintiffs—a term that was illusory in practice. (Third Morrison Aff. ¶ 32.) Under the terms of the 2015 Partial Settlement, the settling defendants were required to withhold production until any objections by the non-settling defendants were resolved. (*Id.*; 2015 Partial Settlement § 1.b, Morrison Decl. Ex. D at 193.) In fact, the non-settling defendants successfully opposed the New York Plaintiffs' motion to compel pre-answer discovery, with

Plaintiffs had "not obtained a substantial benefit for the company, but have accomplished only getting their lawyers paid."[14] Approving a settlement "purporting to bind the company and all shareholders," the court held, "was an abuse of discretion" where the New York Plaintiffs, after four attempts "had not established—and may never establish—their standing to bring the action." *Id.*

**3. <u>The Next Two Complaints</u>**

27. In November 2017, the New York Plaintiffs moved for leave to file a Fourth Amended Complaint, seeking to add additional claims and defendants, including KPMG Advisory Limited ("**KPMG**"), which was alleged—incorrectly and without evidence—to have been involved in the 2007 Dividend. (Second Berger Decl. ¶¶ 7-8 and Exs. B-C.) Although the Foreign Representatives were at that time managing directors and employees of KPMG, their appointment as joint liquidators was, and is, in their personal capacities. (Morrison Decl. ¶ 19.) The New York Plaintiffs' motion, which KPMG did not separately oppose as to the claims against it, was granted in part and denied in part in January 2019.[15]

28. The addition of KPMG needlessly prolonged the litigation. (First Thresh Decl. ¶¶ 29-30.) The Foreign Representatives, by then represented by Allegaert Berger & Vogel LLP ("**ABV**"), moved to dismiss the Fourth Amended Complaint or, in the alternative, to be substituted as plaintiffs. (Morrison Decl. ¶ 20; Stay Decision at 9.) In March 2020, the New York Court denied substitution "[a]t this juncture" because "it is unclear" whether the Foreign

---

the New York Court denying the motion as "nothing more than an effort to overcome their pleading shortcomings" and to "determine whether they ha[d] a cause of action worth pursuing." *Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*, 55 Misc. 3d 1115, 1119-20 (Sup. Ct. N.Y. Cnty. 2017).

[14] *Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*, 144 A.D.3d 611, 611 (1st Dep't 2016) ("**Culligan III**").

[15] *Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*, No. 651863/2012, 2019 WL 78923, at *5, *10 (Sup. Ct. N.Y. Cnty. Jan. 2, 2019) ("**Culligan IV**"); Stay Decision at 27 (citing *Culligan IV*).

Representatives' relationship with KPMG raises a "possible conflict",[16] but dismissed all claims because the Fourth Amended Complaint was "devoid of any allegations" that the New York Plaintiffs had made a demand on the Foreign Representatives—the "board in place at the time the amended pleading [was] filed"—or that such demand would have been futile.[17] The dismissal was without prejudice to the filing of a Fifth Amended Complaint. *Id.* at *7.

29. The New York Plaintiffs filed their Fifth Amended Complaint in May 2020. (Stay Decision at 10.) All defendants, including the Debtor, moved to dismiss it in July 2020. (First Berger Decl. ¶ 9.) The New York Court heard oral argument on the dismissal motions on October 28, 2020, and, on July 14, 2021, denied the motions without prejudice to renew in light of the automatic stay, discussed *infra* ¶¶ 33-34. (Stay Decision at 10-11; First Berger Decl. ¶ 9; Expert Affidavit of the Hon. Shelley C. Chapman (Ret.) (cited herein as "**Chapman Expert Affidavit**" or "**Chapman Aff.**") at ¶ 22.[18])

30. As this Court has found, the New York Action thus "remains at the pleading stage" after more than a decade and "several iterations of the complaint," is "nowhere close to trial ready," and it is "not unreasonable for the Foreign Representatives to view the New York Action as a 'nuisance case' that is draining the limited remaining assets of the Debtor." (Stay Decision at 33-34.)

[16] This Court later found that it "is not convinced that the appearance of KPMG [] as a party in the New York Action creates a conflict of interest sufficient for the Court to mandate abandonment of the action by the Foreign Representatives." (Stay Decision at 29.) The Court further noted that in denying the Foreign Representatives' motion for substitution, "[t]he New York Court, however, ruled on the record before it (which did not include Mr. Singler's subsequent statements during the October 28, 2020 hearing and Mr. Qureshi's response declaration submitted here) and on a different legal issue. Indeed, the New York Court suggested that it could re-visit the issue at a later date." (*Id.* at 29 n.25.)

[17] *Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*, No. 651863/2012, 2020 WL 1307209, at *4-6 (Sup. Ct. N.Y. Cnty. Mar. 19, 2020) ("**Culligan V**").

[18] The Chapman Aff. is attached as Ex. G to the Morrison Decl.

### C. <u>This Chapter 15 Case and the Court's Prior Rulings.</u>

31. On September 17, 2020, the Foreign Representatives, with the Bermuda Court's prior sanction, commenced this chapter 15 case. (Recognition Decision at 11-12.) The New York Plaintiffs objected to recognition, arguing, among other things, that the chapter 15 petition was filed in bad faith as a litigation tactic. (*Id.* at 14; ECF No. 21 ¶¶ 45-46.)

32. While both the motion for recognition (and the motions to dismiss the Fifth Amended Complaint in the New York Action) remained *sub judice*, the New York Plaintiffs, on July 1, 2021, threatened to file a Sixth Amended Complaint that would seek, *inter alia,* to name the Foreign Representatives as defendants in the New York Action and to add "a claim for injunctive relief against Culligan Ltd and the Liquidators to enjoin them from pursuing the [Bermuda Liquidation]." (ECF No. 57 ¶ 2 (quoting Ex. A at 1); Ex. B ¶¶ 270-275.) The Foreign Representatives alerted this Court to these developments on July 2, 2021. (ECF No. 57.)

33. This Court entered the Recognition Decision that same day, granting recognition of the Bermuda Liquidation as a foreign main proceeding under section 1517 of the Bankruptcy Code and recognizing the Foreign Representatives as the Debtor's foreign representatives. (Recognition Decision at 39.) Recognition triggered section 1520, (i) imposing the automatic stay as to the Debtor and its U.S. property, and (ii) vesting the Foreign Representatives with the rights and powers of a trustee to control the Debtor's U.S. based assets, including the derivative claims comprising the New York Action. (Recognition Decision at 20-21; 11 U.S.C. § 1520(a)(1), (3).) The New York Plaintiffs did not timely appeal from or seek reconsideration of the Recognition Decision. *See generally* docket; *see also* Fed. R. Bankr. P. 8002, 9023.

34. Following recognition, the New York Plaintiffs moved for (i) relief from the automatic stay to continue the New York Action, and (ii) an order directing the Foreign

Representatives to abandon the New York Action to them pursuant to section 554 of the Bankruptcy Code. (ECF No. 65; Stay Decision at 15-16.) On September 12, 2023, this Court issued the Stay Decision, denying that motion in its entirety. (*Id.* at 40.) The Court held that (i) section 554 does not apply in chapter 15, (ii) abandonment was in any event unwarranted, and (iii) the New York Plaintiffs had failed to show "cause" to lift the stay. (*Id.* at 24-26, 31-36, 40.)

35. In so holding, the Court emphasized that recognition of the Bermuda Liquidation "was a significant event," establishing this chapter 15 case as "ancillary" to the Bermuda Liquidation and vesting the Foreign Representatives "with the rights and powers of a bankruptcy trustee to control the Debtor's U.S.-based assets, which include[] the derivative claims comprising the New York Action" (Stay Decision at 23 (cleaned up)); that judicial economy and the expeditious resolution of litigation weighed against lifting the stay in respect of a case "nowhere close to trial ready" *(id.* at 33); and that, because the Debtor bears the Foreign Representatives' fees and costs of supervising and supporting counsel in the New York Action, expenses not covered by applicable insurance, the funds reserved for those expenses have been exhausted, and the Debtor lacks sufficient funds to complete shareholder distributions, continuation of the New York Action would prejudice the estate and interfere with the Bermuda Liquidation (*id.* at 26, 33-34; First Thresh Decl. ¶¶ 43-44.)

36. Critically for present purposes, the Court explained that the New York Plaintiffs could have up to three opportunities to litigate their objections to the disposition of the New York Action: (i) in Bermuda, in opposition to the Foreign Representatives' request for sanction; (ii) in this Court, in opposition to any request to recognize and enforce the Bermuda Court's order; and (iii) potentially in the New York Court. (Stay Decision at 31.) Finally, the Court rejected the New York Plaintiffs' claims of bad faith, holding that chapter 15 was being used "to

bring the New York Action to a conclusion in furtherance of the Debtor's wind-down" consistent with the purposes of chapter 15 and the automatic stay. (*Id.* at 40.)

**D. <u>The Settlement Agreement.</u>**

37. The Foreign Representatives therefore proceeded on the basis that, although the claims are without merit, certain defendants might settle on a "nuisance" basis in order to bring the New York Action to an end and provide a further benefit to the estate. (Morrison Decl. ¶ 26.) Accordingly, in or about February 2024, the Foreign Representatives, through counsel, entered into good-faith, arm's-length negotiations with counsel for the defendants. (*Id.*) Those discussions culminated in the summer of 2025—after approximately eighteen months of negotiations—in an agreement in principle and draft agreement, subject to the sanction of the Bermuda Court, to settle the New York Action on the same terms set forth in the final Settlement Agreement. (*Id.*) The Settlement Agreement was fully executed on August 12, 2026 following the conclusion of the sanction proceeding described in Section E, *infra*. *Id.*

38. The Settlement Agreement's terms are straightforward and uniformly beneficial to the estate. The defendants will pay the $1,580,000 Settlement Payment to the Debtor, subject to conditions precedent including entry of the Sanction Order and its recognition and enforcement by this Court. (Morrison Decl. ¶ 27; Settlement Agreement § 1.) The Settlement Payment will form part of the Debtor's estate in the Bermuda Liquidation, and any settling defendant that is a direct or indirect shareholder of the Debtor has agreed to waive any right to distributions from the Settlement Payment, thereby increasing the amounts available for distribution to non-defendant stakeholders, including the New York Plaintiffs. (*Id.* § 7.)

39. In exchange, the Settlement Agreement provides for comprehensive releases of all claims asserted against the settling defendants and certain related entities and individuals in the

New York Action, and dismissal of the action with prejudice upon satisfaction of its conditions. (Settlement Agreement §§ 3-5, 9-11.) The Settlement will also benefit the Debtor by permitting the Foreign Representatives to complete the remaining shareholder distributions and conclude the Bermuda Liquidation efficiently. (Morrison Decl. ¶ 29.) The Settlement Agreement also provides for the Foreign Representatives' statutory fees and costs properly payable as a liquidation expense under the Bermuda Court's August 23, 2019 winding up order. (*Supra* ¶ 17; Morrison Decl. ¶ 28.) It is, however, anticipated that the Company's insurers will cover a significant portion of the Foreign Representatives' legal fees in connection with the Sanction Application, this Motion, and the dismissal of the New York Action. (*Id.*) Based on the Foreign Representatives' experience, they anticipate at least $750,000 of the Settlement Payment will ultimately be distributed to the non-defendant shareholders of the Company, including the New York Plaintiffs. (*Id.*)

40. It is the Foreign Representatives' view that the Settlement represents a reasonable recovery, given the remote prospects of success reflected in the New York Plaintiffs' repeated failure to survive a motion to dismiss. (Third Morrison Aff. ¶ 26.) Its value reflects the claims' lack of merit and the financial strain of defending a decade-long campaign of unsuccessful litigation. (Morrison Decl. ¶ 30.) In short, what the New York Action could not produce in a decade plus of litigation—*any* recovery for the Debtor—the Foreign Representatives have secured through the Settlement.

**E. The Bermuda Court Sanctions the Settlement Following a Full and Fair Process in Which the New York Plaintiffs Participated Before Withdrawing Their Objection Before the Bermuda Court Hearing.**

41. On August 29, 2025, the Foreign Representatives filed a Sanction Summons in the Bermuda Court, supported by, among other evidence, the Second Morrison Affidavit,

seeking approval of the Settlement (collectively, the "**Sanction Application**"). (Morrison Decl. ¶ 31.) Consistent with their commitment to this Court to proceed in Bermuda on notice to the New York Plaintiffs, the Foreign Representatives sought a directions order, which was issued by the Bermuda Court on September 26, 2025 (the "**Directions Order**", Morrison Decl. Ex. C), requiring service on the New York Plaintiffs' counsel and establishing a procedural timetable for the sanction hearing, including an October 31, 2025 deadline for any party wishing to file responsive evidence. (Morrison Decl. ¶ 32; Directions Order ¶¶ 1-3.) Both the Sanction Application and the Directions Order were timely served on the New York Plaintiffs' counsel. (*Id.*)

42. On October 16, 2025, Culligan Soft Water Company and Donald E. Meredith—two of the New York Plaintiffs (the "**Appearing Parties**")—filed, through their Bermuda counsel, Trott & Duncan Limited, a Notice of Intention to Appear at the sanction hearing. (Morrison Decl. ¶ 33.) The Appearing Parties then sought an extension of time to respond. (*Id.*) That request was accommodated by agreement and further order of the Bermuda Court, and the Appearing Parties filed their responsive evidence on March 5, 2026, consisting of (i) the Second Singler Affidavit and (ii) the expert affidavit of Robert J. Borghese, as amended by stipulation (the "**Borghese Affidavit**", cited herein as "**Borghese Aff.**", Morrison Decl. Ex. E). (Morrison Decl. ¶ 33.)

43. In their responsive evidence, the Appearing Parties opposed the Sanction Application on six grounds: (i) only the New York Plaintiffs, with the New York Court's approval, may settle the New York Action, and the Foreign Representatives lack authority to do so (Second Singler Aff. ¶ 32; Borghese Aff. ¶¶ 9-15); (ii) the New York Court has already held all of the claims to be sufficiently pleaded in granting the motion to file the subsequently

dismissed Fourth Amended Complaint (Second Singler Aff. ¶¶ 19, 22, 72; Borghese Aff. ¶ 16); (iii) the Foreign Representatives are conflicted and partisan, having shared counsel with the CD&R Defendant and holding a personal interest in suppressing the claims (Second Singler Aff. ¶¶ 8, 23, 38, 49, 53, 65, 73); (iv) the Foreign Representatives should instead "disclaim" the New York Action to the New York Plaintiffs, purportedly at no cost or risk to the Company (Second Singler Aff. ¶¶ 31, 57, 59, 61, 74); (v) the Settlement is less favorable than the 2015 Partial Settlement (Second Singler Aff. ¶¶ 18, 48, 50, 52.1); and (vi) the Foreign Representatives unduly delayed the New York Action and breached their undertaking to give notice before disposing of it (Second Singler Aff. ¶¶ 33-35, 53).

44. On April 23, 2026, the Foreign Representatives filed with the Bermuda Court the Third Morrison Affidavit and the Chapman Expert Affidavit. (Morrison Decl. ¶ 35.) Through these evidentiary submissions, and subsequently through their skeleton brief (the "**Skeleton Brief**", Morrison Decl. Ex. H), the Foreign Representatives refuted each of the Appearing Parties' six arguments, the same six the Bermuda Court would go on to analyze and reject in the Reasons Opinion. (Morrison Decl. ¶ 35; Reasons ¶¶ 28-30.)

45. *First*, the contention that only the New York Plaintiffs may settle or dismiss the New York Action is irreconcilable with this Court's orders. Upon recognition of the Bermuda Liquidation as a foreign main proceeding, the Foreign Representatives were vested with the right to conduct the business of the Debtor and to control its U.S. based assets, including the New York Action—and federal law pre-empts any contrary New York state law analysis. (*See* 11 U.S.C. § 1520(a)(3); Chapman Aff. ¶¶ 29-33, 37, 68.) And even if the New York Court were to conduct its own review of the Settlement under applicable New York law, N.Y. Bus. Corp. Law § 626(d), Judge Chapman opined, the New York Court would have no reason to withhold

approval of a settlement that confers a tangible benefit on the Company and its shareholders and enables completion of the liquidation. (Chapman Aff. ¶¶ 69-71.)

46. *Second*, no court has held that the claims are sufficiently pleaded, much less viable; no complaint has ever survived a motion to dismiss. The New York Plaintiffs' assertion that *Culligan IV* found otherwise conflates two different standards under New York law: the forgiving "palpably insufficient" leave-to-amend standard with the motion-to-dismiss standard. (Chapman Aff. ¶ 44 and n.12.) *Culligan IV* granted partial leave to amend under that lower threshold and did not—and could not—determine the claims' viability. (*Id.* ¶¶ 43-44.) The proof is in the subsequent dismissal of the Fourth Amended Complaint in *Culligan V* for lack of derivative standing. (*Supra* ¶¶ 24, 28). Moreover, following recognition, standing to prosecute the Debtor's claims must now be sought from this Court under the Bankruptcy Code's two-part colorable-claim test—a test the New York Plaintiffs would very likely fail, because the claims are not colorable and the Foreign Representatives' refusal to pursue value-draining litigation is amply justified. (Chapman Aff. ¶¶ 41-48.)

47. *Third*, the "conflict" allegations reduce to (i) conduct that in fact evidences fidelity to fiduciary norms and (ii) a purported conflict that ended when the Foreign Representatives left KPMG. As to the first category, although the New York Court had held, in a ruling affirmed on appeal in *Culligan II*, that the Company's prior counsel, Debevoise, could properly continue to represent the Company jointly with certain defendants unless and until the New York Plaintiffs filed a complaint that "survive[d] the pleading stage", the Foreign Representatives nevertheless engaged, after *Culligan IV*, separate counsel, ABV, for the Company to avoid any whiff of impropriety. (*Culligan II*, 139 A.D.3d at 622; Third Morrison Aff. ¶¶ 16, 23 n.6; *supra* ¶ 28.) As to the second, in addition to this Court's finding that it "is not

convinced that the appearance of KPMG [] as a party in the New York Action creates a conflict of interest sufficient for the Court to mandate abandonment of the action by the Foreign Representatives" (Stay Decision at 29), the circumstance that led the New York Court to decline substitution in *Culligan V*—that the Foreign Representatives were then employed by KPMG, a firm the New York Plaintiffs had joined as a defendant—no longer obtains: the Foreign Representatives are now Senior Managing Directors of Teneo (Bermuda) Limited. (Morrison Decl. ¶ 2; Chapman Aff. ¶ 21 n.4.)

48. *Fourth*, the proposal that the Foreign Representatives simply "disclaim" the New York Action is not available to them as a matter of Bermuda law. The New York Action is a realizable asset of the Company, presently valued at $1,580,000 (*i.e.,* the Settlement Payment). (Third Morrison Aff. ¶¶ 10, 53-55.) Sections 174(1), 185(1), and 192 of the Bermuda Companies Act require the Foreign Representatives to take the Company's assets into their custody, apply them in satisfaction of its liabilities, and distribute any surplus to shareholders; abandoning a seven-figure asset so that the New York Plaintiffs may resume litigation with such remote prospects would be a dereliction of those statutory duties, not an exercise of them. (*Id.*)[19]

49. *Fifth*, the comparison to the 2015 Partial Settlement ignores that the First Department set that settlement aside precisely because it provided for no payment to the Company (*supra* ¶ 26), whereas the entire $1,580,000 here is payable to the Company, with the amount ultimately payable to non-defendant shareholders increased by the settling shareholder-defendants' agreement to waive their distribution rights (*supra* ¶ 38). (Third Morrison Aff. ¶¶ 29-31, 36-37; Chapman Aff. ¶ 19 n.3.) Nor is the 2015 figure a meaningful comparator: it

[19] Nor would disclaimer clear the path to dissolution: while the New York Action remains pending, it sustains a contingent liability of the Company—the former directors' and officers' contingent indemnification rights in respect of their defense, which the Settlement extinguishes—and a disclaimer would leave outstanding. (Third Morrison Aff. ¶¶ 56-59.)

reflected the lender defendants' wish to exit the litigation early, and the Settlement's provision for the Foreign Representatives' fees is a proper liquidation expense—much of it expected to be borne by insurers—leaving at least $750,000 for distribution to the non-defendant shareholders. (Third Morrison Aff. ¶¶ 33-34, 38-39.)

50. *Sixth*, the delay and notice objections mistake the record. The pace of the litigation reflects the procedural realities of a dispute conducted across the New York Court, this Court, and the Bermuda Court—and this Court has already held the Foreign Representatives' strategy "not unreasonable." (Stay Decision at 34; Chapman Aff. ¶ 46.) As to notice, the Foreign Representatives' undertaking—recorded in the Bermuda Court's September 2021 substitution order—was not to dispose of the New York Action without Bermuda Court sanction and on notice to the New York Plaintiffs "who shall be entitled to be heard". (ECF No. 67-2.) That is precisely the process followed: the Sanction Application was issued and served, directions were given, an extension was granted, and the New York Plaintiffs had more than five months to respond and submit evidence. (Chapman Aff. ¶¶ 59-61; *supra* ¶¶ 41-42.)

51. Following the submission of the Foreign Representatives' reply evidence, the New York Plaintiffs elected not to press their opposition. On May 19, 2026, having appeared, obtained a requested extension of time, and entered their evidence before the Bermuda Court, the Appearing Parties voluntarily withdrew their objections to the Sanction Application. (Morrison Decl. ¶ 36.) In exchange, the Foreign Representatives agreed not to seek costs against them if successful on the Sanction Application. (*Id.*) At the time of this withdrawal, the evidentiary record was fully submitted; the only remaining steps were the sanction hearing and the submission of skeleton briefs. (*Id.*)

52. The Foreign Representatives submitted the Skeleton Brief on July 14, 2026. Subsequently, on July 17, 2026, the Bermuda Court held a hearing on the Sanction Application at which Bermuda counsel for the Foreign Representatives presented argument on the application, including argument addressing the Appearing Parties' withdrawn objections. (Morrison Decl. ¶ 37.) At the hearing, the Bermuda Court reviewed the full record and granted the sanction at the hearing's conclusion, with written reasons to follow. (Reasons ¶¶ 2-3, 45.)

53. On July 18, 2026, the Bermuda Court entered the Sanction Order sanctioning the Foreign Representatives' entry into the Settlement Agreement and on July 29 published the Reasons Opinion explaining the Court's basis for entering the Sanction Order. (Morrison Decl. ¶ 38.) The Sanction Order reflects the Bermuda Court's express determinations that "all parties in interest had reasonable notice and had the opportunity to be heard"; that the claims asserted in the New York Action "lack merit and are unlikely to succeed, will be unduly protracted, and do not justify any further expense"; and that the Settlement Agreement "was the product of arms'-length, good faith negotiation," benefits the Company's shareholders, "eliminates the uncertainty of further litigation, and will permit the winding up of the affairs of the Company." (Sanction Order at 1.) The Order sanctions the compromise and the Foreign Representatives' execution of the Settlement Agreement, and expressly permits them "to seek recognition of this Order pursuant to Chapter 15, Title 11 of the United States Bankruptcy Code." (*Id.* ¶¶ 1-3.)

54. In the Reasons Opinion, the Bermuda Court credited the Foreign Representatives' analysis: finding, although it was not required to "decide the ultimate merits of the claim, or conduct a mini-trial of the issues", that the New York Plaintiffs "have as yet failed to establish standing," leaving the claim "demurrable and vulnerable to summary dismissal"; successive New York attorneys have advised for more than ten years that the dividend claim is "a weak claim on

the facts and the law"; the Company "never was insolvent"; and the New York Plaintiffs "acquiesced in and benefitted from the dividend" they now challenge—together, the Bermuda Court found, these findings represent "substantial (if not insurmountable) obstacles" to the claim. (Reasons ¶¶ 19, 22-23.) The Settlement, by contrast, "achieves a return for the estate from a meritless claim, where a dismissal of the claim, or failure at trial, will achieve nothing," and is structured so that "only those who were not defendants to the New York [A]ction will receive any financial benefit," thereby "avoiding circularity." (*Id.* ¶¶ 24-25.)

55. Although the Appearing Parties had withdrawn their objections, the Bermuda Court nevertheless undertook "a high level evaluation" of each of the six objection arguments and concluded that there was "no substantial reason why the court should withhold its sanction." (Reasons ¶¶ 28-30.) Specifically, the court held that: (i) upon recognition of the Bermuda Liquidation, the Foreign Representatives "were vested with the rights and powers of a bankruptcy trustee over the company's US assets under US federal Bankruptcy law which supersedes any New York law analysis," and therefore have authority to settle the New York Action (*id.* ¶¶ 31-33, crediting the "clear analysis" of the Chapman Expert Affidavit); (ii) the New York Plaintiffs "are likely to fail to meet" the Bankruptcy Code's colorable-claim pleading standard to obtain derivative standing (*id.* ¶ 34); (iii) there is "no evidence of any conflict of interest that would undermine the court's confidence in granting the sanction" (*id.* ¶ 35); (iv) the New York Action sustains a contingent liability and "cannot be disclaimed as a matter of Bermuda law" (*id.* ¶ 36); (v) unlike the 2015 Partial Settlement, which "was wholly exhausted by the fee claims for the litigation," the Settlement will yield "a surplus distributed to the minority shareholders," whereas without it there is "a likelihood of no return at all" (*id.* ¶ 38); and (vi) the

notice objection was "not a substantive objection" and the Foreign Representatives followed the Bermuda Court's prior order regarding notice (*id.* ¶ 40).

56. Weighing these elements, the Bermuda Court was "satisfied" that the Foreign Representatives genuinely and reasonably believe the Settlement to be in the interests of the estate as a whole, free of any conflict, partisanship, or flawed understanding of fact or law; that the Settlement "achieve[s] a discernible benefit to the estate as a whole"; and that it causes no harm to the estate. (Reasons ¶ 41.) The court concluded "the claim is one that justifies settlement on the best available terms" and it was "entirely satisfied that the interests of the estate are better served by the entry into the Settlement Agreement than not doing so." (*Id.* ¶ 44.)

**ARGUMENT**

57. This Court is vested with, and should exercise, its authority pursuant to chapter 15's "broad, flexible rules to fashion relief that is appropriate to effectuate the objectives of the chapter in accordance with comity." *In re Rede Energia S.A.*, 515 B.R. 69, 91 (Bankr. S.D.N.Y. 2014) (citing *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 333-34 (S.D.N.Y. 2008)). Specifically, the Court should exercise its discretion and grant each element of the relief sought: (i) recognition and enforcement of the Sanction Order, (ii) entry of a permanent injunction against actions by the New York Plaintiffs in contravention of the Settlement Agreement, and (iii) limited relief from the automatic stay to seek dismissal of the New York Action with prejudice.

**A. Recognition and Enforcement of the Sanction Order Is "Appropriate Relief" Under Section 1521 and "Additional Assistance" Under Section 1507 That the Court Should Grant Consistent with Chapter 15's Focus on Comity.**

**1. Comity strongly favors recognition and enforcement of the Sanction Order.**

58. Comity underlies the purpose of chapter 15 and "refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *In re PT Bakrie Telecom Tbk*, 628 B.R. 859, 878 (Bankr. S.D.N.Y. 2021). "Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." *In re Sino-Forest Corp.*, 501 B.R. 655, 662 (Bankr. S.D.N.Y. 2013) (quoting *In re Atlas Shipping A/S*, 404 B.R. 726, 733 (Bankr. S.D.N.Y. 2009)). And "when the foreign proceeding is in a sister common law jurisdiction with procedures akin to our own, comity should be extended with less hesitation, there being fewer concerns over the procedural safeguards employed in those foreign proceedings." *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 66 (Bankr. S.D.N.Y. 1999), *aff'd*, 275 B.R. 699 (S.D.N.Y. 2002) (citation omitted). Bermuda is precisely such a "sister common law jurisdiction", and courts in this district have repeatedly extended comity to orders entered in Bermuda insolvency proceedings. *See, e.g.*, *In re Markel CATCo Reinsurance Fund Ltd.*, No. 21-11733 (LGB) (Bankr. S.D.N.Y. Mar. 16, 2022), ECF No. 40. Foreign judgments "are generally granted comity as long as the proceedings in the foreign court 'are according to the course of a civilized jurisprudence, i.e. fair and impartial.'" *Rede Energia*, 515 B.R. at 92 (citations omitted). And because "one of the primary goals of Chapter 15 is to treat the multinational bankruptcy as a single process in the foreign main proceeding, with other courts assisting in that single proceeding," *In re Manley Toys Ltd.*, No. 16-15374 (JNP), 2020 WL 1580244, at *7 (Bankr. D.N.J. Mar. 31, 2020) (citations and

quotation marks omitted), comity is appropriate where, as here, the foreign court supervising a recognized foreign main proceeding has ruled on the administration of the estate's own assets.[20]

59. The sanction process here satisfies the dictates of comity. The Foreign Representatives provided notice to counsel for the New York Plaintiffs, some of whom appeared to oppose the Foreign Representatives' application; the Bermuda Court entered a Directions Order establishing a procedural timetable for responsive evidence; the Appearing Parties' requests for extensions were largely accommodated by agreement and further order of the Bermuda Court; the Appearing Parties filed both fact and expert evidence in opposition; and the Foreign Representatives answered each objection on the merits, submitting the Third Morrison Affidavit and the Chapman Expert Affidavit. (*Supra* ¶¶ 41-50.) Even after the New York Plaintiffs voluntarily withdrew their objections in exchange for the Foreign Representatives' agreement not to seek costs against them, the Bermuda Court did not simply approve the Settlement as a matter of course: it held a hearing, reviewed the evidence submitted on both sides, undertook "a high level evaluation" of each withdrawn objection to satisfy itself that there was no "substantial reason" to withhold sanction, and entered the Sanction Order upon express findings that the Settlement "was the product of arms'-length, good faith negotiation," is "in the best interest of and benefits the shareholders of the Company," and "achieve[s] a discernible benefit to the estate as a whole" with "no harm caused to the estate." (Sanction Order at 1; Reasons ¶¶ 29-30, 41; *supra* ¶¶ 51-56.) Such proceedings are "according to the course of a civilized jurisprudence," and the resulting order is entitled to comity. *Rede Energia*, 515 B.R. at 92; *see also In re Agrokor d.d.*, 591 B.R. 163, 189 (Bankr. S.D.N.Y. 2018) (in deciding whether

[20] This Court has, of course, already extended comity to the Bermuda Liquidation itself by "recognizing, granting comity to, and giving full force and effect in the United States to the Bermuda Liquidation." (Recognition Decision at 2, 13-14, 39; *see also* Stay Decision at 23.) This Motion asks the Court only to extend that same comity to an order entered in that recognized proceeding.

to extend comity to relief granted in a foreign main proceeding, courts consider whether the proceeding afforded interested parties a full and fair opportunity to be heard consistent with due process and whether the foreign court approved the relief (citing *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 698-99 (Bankr. S.D.N.Y. 2010))).

60. Extending comity to the Sanction Order is also appropriate here because the Sanction Order resolved the very issue this Court has already determined belongs, in the first instance, to the Bermuda Court. (*See* Stay Decision at 30-31) (explaining that the disposition of the New York Action would be addressed first by the Bermuda Court, on notice to the New York Plaintiffs, with recognition and enforcement of the resulting order to be sought in this Court.) That is precisely what has occurred here: the New York Plaintiffs were provided the first of the opportunities the Court identified as satisfying due process—notice and an opportunity to appear through Bermuda counsel—and availed themselves of it, obtaining additional time to respond, and placing fact and expert evidence before the Bermuda Court. (*Supra* ¶¶ 41-42, 51.) To withhold recognition of the Sanction Order now would allow the relitigation in the United States of matters committed to, and resolved by, the court supervising the foreign main proceeding—the exact outcome chapter 15 exists to prevent. *See Manley Toys*, 2020 WL 1580244, at *7 ("one of the primary goals of Chapter 15 is to treat the multinational bankruptcy as a single process in the foreign main proceeding, with other courts assisting in that single proceeding" (citations and quotation marks omitted)).

61. Where, as here, the foreign forum afforded objectors "a full and fair opportunity to be heard," the resulting judgment "should be enforced" and not "tried afresh." *Sino-Forest*, 501 B.R. at 662-63, 666 (enforcing settlement order where the parties "had a full and fair

opportunity to litigate the issues" in the foreign proceeding) (quoting *Hilton v. Guyot*, 159 U.S. 113, 202-03 (1895)).

### 2. **Sections 1521 and 1507 authorize recognition and enforcement of the Sanction Order.**

62. "Appropriate relief" under section 1521(a) includes "relief previously available under Chapter 15's predecessor, [section] 304," which included the recognition and enforcement in the United States of orders entered in foreign insolvency proceedings. *In re Odebrecht Engenharia e Construcao S.A. - Em Recuperacao Jud.,* 669 B.R. 457, 470 (Bankr. S.D.N.Y. 2025) (quoting *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1054 (5th Cir. 2012)). Such post-recognition relief is largely discretionary, and the Court is to be "guided by principles of comity and cooperation with foreign courts in deciding whether to grant the foreign representative additional post-recognition relief." *In re Energy Coal S.P.A.*, 582 B.R. 619, 626-27 (Bankr. D. Del. 2018) (quoting *In re Daebo Int'l Shipping Co.*, 543 B.R. 47, 52-53 (Bankr. S.D.N.Y. 2015)). It is not necessary that the relief granted in the foreign proceeding be identical to the relief that would be available under U.S. law in order for a U.S. court to recognize that relief here. *Rede Energia*, 515 B.R. at *91 (citing *Metcalfe*, 421 B.R. at 697).[21]

63. Applying these standards, courts in this district have repeatedly recognized and enforced foreign court orders approving settlements, schemes, and plans—under section 1521, section 1507, or both—in circumstances similar to those presented here. *See Agrokor*, 591 B.R. at 196 (recognizing and enforcing "settlement agreement" (essentially, a Croatian plan of reorganization that included third-party releases) approved by foreign court as discretionary post-

[21] Where, as here, the requested relief falls comfortably within section 1521, the Court "need not consider the request for relief under section 1507", although that section's catch-all grant of "additional assistance" independently supports the same result. *In re Comair Ltd. (In Liquidation)*, No. 21-10298 (JLG), 2025 WL 3037797, at *8 (Bankr. S.D.N.Y. Oct. 30, 2025) (citations omitted).

recognition relief under sections 1521 and 1507, guided by principles of comity); *Sino-Forest*, 501 B.R. at 663-66 (recognizing and enforcing Ontario court order approving settlement—including of claims pending in U.S. litigation—and the third-party releases and injunctions granted thereunder as appropriate "additional assistance" under section 1507); *Rede Energia*, 515 B.R. at 91-94 (recognizing and enforcing confirmed Brazilian reorganization plan over creditor objection, holding that plan enforcement relief, including a permanent injunction against acts in the U.S. in contravention of the foreign confirmation order, "is relief that is proper under section 1521"); *In re Olinda Star Ltd.*, 614 B.R. 28, 45-48 (Bankr. S.D.N.Y. 2020) (recognizing and enforcing BVI scheme and sanction order, and granting permanent injunction against interfering acts, as "appropriate relief" under section 1521); *In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 617-18 (Bankr. S.D.N.Y. 2018) (recognizing and enforcing English scheme of arrangement, including third-party releases, under sections 1521 and 1507).

64. The Sanction Order is the order by which the court supervising the recognized foreign main proceeding—on notice, on a full evidentiary record, and upon express findings of fairness—approved the disposition of the Debtor's principal remaining U.S. based asset, the derivative claims comprising the New York Action, which the Foreign Representatives alone control. (*Supra* ¶¶ 33, 35, 41-53; *see also* 11 U.S.C. § 1520(a)(3); Stay Decision at 20-21, 23.) Recognition and enforcement of that order is the paradigmatic assistance an ancillary court renders to a foreign main proceeding, and is "appropriate relief" under section 1521 and "additional assistance" under section 1507.

65. The releases granted in the Settlement Agreement and approved by the Sanction Order are likewise well recognized as appropriate. U.S. bankruptcy courts routinely recognize and enforce foreign court orders or plans of reorganization approving third-party releases under

section 1521. *See, e.g., Odebrecht*, 669 B.R. at 472 (holding that, even if the proposed order created a third-party release, the court "has the power to issue such an order in a Chapter 15 case, pursuant to at least section 1521, in support of a foreign proceeding"); *In re Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.*, 670 B.R. 150, 166-67 (Bankr. D. Del. 2025) (finding, following the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024) (holding that a chapter 11 plan cannot provide for a nonconsensual third-party release of claims against a non-debtor), that such releases remain available in chapter 15, and noting that "[i]t is well-settled that enforcement of a third-party release contained in a foreign plan is appropriate under [section 1521(a)]."); *Metcalfe*, 421 B.R. at 697-700 (enforcing non-debtor release and injunction in Canadian court order).

66. Accordingly, it is clear that the Court has the authority to recognize and enforce the Sanction Order here, including its releases and the Foreign Representatives' request for injunctive relief. The releases and injunction are both issued in service of the Foreign Representatives' sole right, by operation of section 1520(a)(3), to compromise claims that are the Debtor's property, as established in both the Recognition and Stay Decisions. (Settlement Agreement §§ 3-5, 9-11; Stay Decision at 20-21, 23.) Enforcement of releases embedded in a foreign-court-sanctioned settlement of the estate's own claims fits comfortably within the relief that sections 1521 and 1507 authorize.

#### 3. **<u>The interests of the New York Plaintiffs and all other interested parties are sufficiently protected under section 1522.</u>**

67. Section 1522(a) requires that, in granting relief under section 1521, "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). Sufficient protection encompasses (i) the just treatment of all holders of claims against the estate, (ii) the protection of U.S. claimants against prejudice and

inconvenience in asserting their claims in the foreign proceeding, and (iii) the distribution of the estate's assets in accordance with priorities consistent with U.S. law. *See In re Markus*, 610 B.R. 64, 76 (Bankr. S.D.N.Y. 2019), *aff'd*, 620 B.R. 31 (S.D.N.Y. 2020) (citing *Atlas Shipping*, 404 B.R. at 740). The inquiry requires "a balancing of the respective parties' interests." *In re ENNIA Caribe Holding N.V.*, 596 B.R. 316, 322 (Bankr. S.D.N.Y. 2019); *see also Rede Energia*, 515 B.R. at 90 (citing *In re Int'l Banking Corp. B.S.C.*, 439 B.R. 614, 626 (Bankr. S.D.N.Y. 2010)). Each element is satisfied here.

68. *First*, all creditors and stakeholders are treated equally, and distributions will follow Bermuda law priorities that are consistent with U.S. law. The entire $1,580,000 Settlement Payment is payable to the Debtor—in pointed contrast to the 2015 Partial Settlement, which the First Department set aside precisely because it "does not provide for payment to the company" and only paid the New York Plaintiffs, a subset of a minority of all shareholders, and their lawyers (*Culligan III*, 144 A.D.3d at 611)—and will be administered and distributed under the supervision of the Bermuda Court in accordance with the priorities of the Bermuda Companies Act. (*Supra* ¶¶ 7, 26, 38.) Moreover, the settling shareholder-defendants have waived their rights to any distribution from the Settlement Payment—a structure the Bermuda Court found ensures "there is no repugnancy in the terms of the settlement," "increas[es] the distribution to those who are not alleged to have benefitted improperly" and "avoid[s] circularity"—thereby *increasing* recoveries for non-defendant stakeholders, like the New York Plaintiffs, with at least $750,000 of the Settlement Payment anticipated to be distributed to the Company's non-defendant shareholders. (*Supra* ¶¶ 38-39; Reasons ¶ 25.)

69. *Second*, the New York Plaintiffs suffered no cognizable prejudice or inconvenience in litigating their objection in Bermuda. They are shareholders of a Bermuda

company, and the record forecloses any suggestion that the Bermuda forum was inaccessible to them: they were given notice of the Sanction Application, afforded more than five months to review and respond to it, appeared through experienced Bermuda counsel, sought and obtained an extension of time, filed both fact and expert evidence, and were afforded the opportunity to press their objection at a contested hearing—a process the Bermuda Court found ensured that "all parties in interest had reasonable notice and had the opportunity to be heard." (*Supra* ¶¶ 41-43, 51-52; Sanction Order at 1.) That they instead elected to withdraw their opposition in exchange for the Foreign Representatives' agreement not to seek costs against them if successful was their own tactical decision, not a deprivation of process, and the Bermuda Court deemed the New York Plaintiffs' complaints about notice "not a substantive objection" at all. (*Supra* ¶ 51; Reasons ¶ 40.) Process afforded to the New York Plaintiffs comfortably exceeds what section 1522 requires. *See Crédito Real*, 670 B.R. at 171-73 (objector that actively participated in the foreign proceeding but declined to press an available objection there "cannot contend that there was a procedural unfairness").

70. *Third*, the balancing of interests that section 1522 contemplates is not close. *See Rede Energia*, 515 B.R. at 90. On one side of the ledger stands consummation of a court-sanctioned Settlement that produces the Debtor's first recovery in fourteen years of litigation, permits completion of the outstanding shareholder distributions, and enables the long-delayed conclusion of the Bermuda Liquidation, which the Foreign Representatives "are under a positive duty to progress." (*Supra* ¶¶ 38-40; Reasons ¶ 43.) On the other side stand multiple attempts by the New York Plaintiffs to state a claim that could survive a motion to dismiss and an objection in Bermuda that the New York Plaintiffs themselves withdrew after the Foreign Representatives

refuted it point by point in their reply evidence. (*Supra* ¶¶ 19-30, 44-51.) The balance decisively favors the requested relief.

#### 4. <u>Recognition and enforcement of the Sanction Order is not manifestly contrary to United States public policy.</u>

71. Section 1506 permits a court to decline to take an action only where the action would be "manifestly contrary to the public policy of the United States"—a narrow exception in which the word "manifestly" restricts the inquiry to the most fundamental policies of the United States. *See In re Canterbury Sec., Ltd.*, 675 B.R. 109, 119 (S.D.N.Y. 2025); *In re Ephedra Prods. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006) (exception must be "narrowly interpreted"). The key determination is whether the procedures used in the foreign jurisdiction "meet our fundamental standards of fairness." *Metcalfe*, 421 B.R. at 697; *see also Agrokor*, 591 B.R. at 184 (deference is warranted so long as the foreign proceedings are procedurally fair and not manifestly contrary to U.S. public policy). This Court has already determined that the conduct of the Bermuda Liquidation is not manifestly contrary to U.S. public policy (*see* Recognition Decision at 28-33; Stay Decision at 30-31), and there is no question that the Bermuda sanction process provided the Appearing Parties due process by giving them the opportunity, on notice, to submit evidence and be heard in opposition to the Sanction Application. (*Supra* ¶¶ 41-53.)

### B. All Parties, Including the New York Plaintiffs, Should Be Enjoined From Taking Any Action in the United States in Contravention of the Sanction <u>Order</u>

72. Because relief under section 1521(a) of the Bankruptcy Code is tantamount to a permanent injunction, the "standards, procedures, and limitations applicable to an injunction shall apply to [such] relief." 11 U.S.C. § 1521(e). To obtain injunctive relief, a movant must demonstrate that (i) an injunction is required to avoid irreparable harm, and (ii) there is a

likelihood of success on the merits. *See In re Garcia Avila*, 296 B.R. 95, 107 (Bankr. S.D.N.Y. 2003); *see also Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 (2d Cir. 1989) (movant must demonstrate "both irreparable harm and a likelihood of success on the merits or a sufficiently serious question regarding the merits to make it a fair ground for litigation with the balance of hardship tipping decidedly in its favor"). A foreign representative is likely to succeed on the merits, as here, where recognition of a foreign proceeding under chapter 15 is appropriate. *See In re Garcia Avila*, 296 B.R. at 107 (under former section 304, foreign representative likely to succeed on the merits where likely to prevail under § 304(c)). And "irreparable harm is present when the failure to enjoin local actions will disrupt the orderly reconciliation of claims and the fair distribution of assets in a single, centralized forum." *Id.* at 114; *see also In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("Irreparable harm may result if the foreign representative is forced to participate in expensive litigation that threatens to drain the assets of the estate"); *In re Rubin*, 160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) ("there appears to be little dispute regarding the notion that the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury" (citation omitted)); *In re Brierley*, 145 B.R. 151, 168 (Bankr. S.D.N.Y. 1992). Similar injunctive relief has been granted by U.S. bankruptcy courts in numerous chapter 15 cases. *See Odebrecht*, 669 B.R. at 464, 476-77 (granting injunctive relief prohibiting action in contravention of foreign plan and confirmation order); *Olinda Star*, 614 B.R. at 47 ("The Court also agrees that the issuance of a permanent injunction against acts that would interfere with the BVI Scheme and BVI Sanction Order is also appropriate under section 1521"); *In re Avanti Commc'ns Grp. PLC*, No. 18-10458 (MG) (Bankr. S.D.N.Y. Apr. 6, 2018), ECF No. 15 (permanently enjoining all holders of discharged or cancelled debt from taking any and all acts to enforce or collect against or from the debtor and its

U.S. property); *Sino-Forest*, 501 B.R. at 665-66 (enforcing settlement order and the injunctions provided for thereunder). Both requirements are met here.

73. The Foreign Representatives' likelihood of success on the merits is established. This Court has already recognized the Bermuda Liquidation as a foreign main proceeding, and the New York Plaintiffs neither appealed from nor sought reconsideration of the Recognition Decision (Recognition Decision at 39; *supra* ¶ 33). *See Garcia Avila*, 296 B.R. at 107. And for the reasons set forth in Section A, the Sanction Order is entitled to recognition and enforcement under sections 1521 and 1507: it issued from a procedurally fair process, the interests of all interested parties are sufficiently protected, and no public policy concern is implicated. (*Supra* ¶¶ 58-71.)

74. Irreparable harm is equally plain. Absent an injunction, any resumption of the New York Action, or any collateral attack on the Settlement, would disrupt "the orderly reconciliation of claims and the fair distribution of assets in a single, centralized forum." *Garcia Avila*, 296 B.R. at 114. Payment of the $1,580,000 Settlement Payment is conditioned upon, among other things, entry of the Sanction Order and its recognition and enforcement by this Court; renewed litigation would thus jeopardize the only recovery the estate has ever obtained on these claims, while consuming the Debtor's few remaining assets in renewed defense costs and further delaying the shareholder distributions that litigation expense has long held hostage. (Settlement Agreement § 1; Stay Decision at 26, 33-34; *supra* ¶¶ 17-18, 38-39.) Nor is the risk of continued interference hypothetical: the New York Plaintiffs' proposed Sixth Amended Complaint sought to name the Foreign Representatives as defendants and to enjoin them from pursuing the Bermuda proceedings. (ECF No. 57 at Ex. B ¶¶ 270-275; *supra* ¶ 32.)

Additionally, the New York Plaintiffs' U.S. counsel has made clear that his goal is to exhaust the Settlement through continued litigation:

> Approval of both the U.S. Bankruptcy Court and the New York Supreme Court will be required to complete the proposed settlement. The Bankruptcy Court will review any sanction order from this Court for due process under United States law and [will] be asked to review the entirety of the case to determine whether or not the Joint Liquidators acted in bad faith. It will also have to deal with the question of (assuming the sanction is granted) whether an order from a foreign court can be enforced when that order directly conflicts with the laws of the United States and its separate states. Even if confirmed by the Bankruptcy Court, the New York Supreme Court will then have to approve the settlement under New York law. Given the history of this case, just those proceedings could take years, and substantial additional fees to achieve, even if upheld by the U.S. Courts. **The net result will be that there is no benefit to the Company or shareholders, the settlement funds will be depleted by the Joint Liquidators, and the case will drag on for several more years, with anything but a certain outcome**.

(Second Singler Aff. ¶¶ 52.3-52.4 (emphasis added).)

75. *Rede Energia* is instructive. There, over the objection of crammed-down noteholders, the court recognized and enforced a confirmed Brazilian reorganization plan and entered an injunction against acts in contravention of the Brazilian confirmation order, reasoning that refusal of such relief would prevent full implementation of the plan, delay distributions, and invite the objectors to "commence lawsuits against the Debtor in the United States" in pursuit of "another chance" at relief they could not show they would obtain. *Rede Energia*, 515 B.R. at 93-94. The parallels here are striking, and, if anything, the case for an injunction is stronger, because the New York Plaintiffs, unlike the *Rede Energia* objectors, withdrew their objections in the foreign main proceeding. (*Supra* ¶ 51.) The injunction does not deprive the New York Plaintiffs of any legitimate right: they remain free to oppose this Motion, and they will receive their *pro rata* share of the enhanced distributions the Settlement makes possible. (*Supra* ¶¶ 38-39.) What the injunction forecloses is only the relitigation, in a seventh complaint or otherwise, of questions that the Bermuda Court has now resolved in sanctioning a Settlement without

which, that court found, there is "a likelihood of no return at all" for shareholders from a court-supervised compulsory liquidation already "in its seventh year, with no other tangible benefit to the estate to show for it." (Reasons ¶¶ 26, 38.)

### C. **The Court Should Grant Limited Relief from the Automatic Stay Pursuant to Section 362(d)(1) to Permit Dismissal of the New York Action with Prejudice.**

76. Upon recognition, section 1520(a)(1) imposed the automatic stay of section 362 with respect to the Debtor's U.S. property. *See* 11 U.S.C. §§ 362(d), 1520(a)(1). Section 362(d)(1) provides that the Court may grant relief from the stay for "cause." *In re ABC Learning Centres Ltd.*, 445 B.R. 318, 336-37 (Bankr. D. Del. 2010), *aff'd*, 728 F.3d 301 (3d Cir. 2013). The phrase "for cause" is not defined in the Bankruptcy Code. (Stay Decision at 31.) "Cause" is a flexible concept, and courts conduct a fact-intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay. *See Manley Toys*, 2020 WL 1580244, at *5. To establish cause, the party seeking relief from the stay must show that "the balance of hardships from not obtaining relief tips significantly in [its] favor." *Atl. Marine, Inc. v. Am. Classic Voyages, Co.*, 298 B.R. 222, 225 (D. Del. 2003).

77. Cause plainly exists here. The relief is sought by the Debtor's own Bermuda Court-appointed fiduciaries—officers who, the Bermuda Court has emphasized, "are under a positive duty to progress the liquidation"—at the direction of that court, for the sole purpose of implementing a settlement, sanctioned as being on "the best available terms," that benefits all stakeholders. (Sanction Order ¶¶ 1-3; Reasons ¶¶ 43-44; Stay Decision at 31; *supra* ¶¶ 36, 53.) The balance of hardships tips entirely in the Foreign Representatives' favor. Without the requested relief, the Settlement cannot be consummated, the Settlement Payment cannot be collected, and the Bermuda Liquidation cannot conclude; with it, no party suffers any cognizable hardship, because the New York Plaintiffs' recoveries are enhanced, not impaired, by the

Settlement. *See Am. Classic Voyages*, 298 B.R. at 225; (*supra* ¶¶ 38-39.) The requested relief is thus the mirror image of the stay relief this Court denied to the New York Plaintiffs—relief that would have *depleted* the estate in service of a case "nowhere close to trial ready" (Stay Decision at 33-34, 40)—and is fully consistent with the Foreign Representatives' rights under sections 1520(a)(3) and 1524 to control litigation that is an asset of the Debtor. *See* 11 U.S.C. §§ 1520(a)(3), 1524.[22]

78. The New York Court, in turn, can be expected to accord comity to the Sanction Order and to grant the resulting application to dismiss. The Sanction Order was issued in a recognized foreign main proceeding; it will (upon entry of the order requested here) have been recognized and enforced by this Court; it conforms with the public policy of New York and of the United States, having been entered following a procedurally fair process in which the New York Plaintiffs participated; and the Settlement Agreement independently complies with New York law governing the compromise of derivative claims, including N.Y. Bus. Corp. Law § 626(d)—although, as the Bermuda Court accepted on the "clear" analysis of the Chapman Expert Affidavit, federal bankruptcy law "supersedes any New York law analysis" in any event. (*Supra* ¶ 45; Chapman Aff. ¶¶ 63-67, 69-71; Reasons ¶¶ 32-34.)[23]

79. Accordingly, the Foreign Representatives respectfully submit that the requested relief is necessary and appropriate.

---

[22] *Manley Toys* confirms the point from the opposite direction: there, the court denied stay relief to a claimant that sought to pursue claims belonging to the debtor, because "the Liquidators have exclusive standing" over such claims and lifting the stay for anyone else would not "offer [the movant] the relief it seeks." 2020 WL 1580244, at *6. Here, by contrast, the Foreign Representatives themselves seek narrowly tailored relief to compromise the Debtor's claims at the supervising court's direction.

[23] Unlike the 2015 Partial Settlement, the Settlement provides payment to the Company, for the benefit of shareholders. (*Supra* ¶¶ 25-26, 38-39.)

## CONCLUSION

WHEREFORE, the Foreign Representatives respectfully request that the Court enter an order (i) recognizing and enforcing the Sanction Order in the United States and giving it full force and effect; (ii) permanently enjoining all parties, including the New York Plaintiffs, from taking any action in the United States in contravention of the Sanction Order; (iii) granting limited relief from the automatic stay to permit the Foreign Representatives to seek dismissal of the New York Action with prejudice; (iv) authorizing the Foreign Representatives to take all other actions necessary or appropriate to implement the Settlement Agreement and the Sanction Order; and (v) granting such other and further relief as the Court may deem just and appropriate.

Dated: New York, New York
August 12, 2026

ALLEGAERT BERGER & VOGEL LLP

By: /s/ David A. Berger

David A. Berger (dberger@abv.com)
David A. Shaiman (dshaiman@abv.com)
Alexander E. Ehrlich (aehrlich@abv.com)

111 Broadway, 20th Floor
New York, New York 10006
T: (212) 571-0550
F: (212) 571-0555

*Counsel to the Foreign Representatives*