**Objection Deadline: September 9, 2026 at 5:00 p.m. (prevailing U.S. Eastern Time)**

TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Kyle J. Ortiz
Brian F. Shaughnessy
Amanda C. Glaubach
*Co- Counsel to the New York Plaintiffs.*

SINGLER, PLC
103 Johnson Street
Windsor, CA 95473
Telephone: (707) 823-8719
Peter A. Singler (admitted *pro hac vice*)

*Co- Counsel to the New York Plaintiffs*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re**<br><br>**CULLIGAN LTD.,** [1]<br><br>**Debtor in Foreign Proceedings.** | **Chapter 15**<br><br>**Case No. 20-12192-lgb** |

**OBJECTION BY THE NEW YORK PLAINTIFFS[2] TO THE FOREIGN REPRESENTATIVES' MOTION FOR ENTRY OF AN ORDER (I) RECOGNIZING AND ENFORCING THE BERMUDA COURT'S SANCTION ORDER APPROVING THE SETTLEMENT AGREEMENT; (II) PERMANENTLY ENJOINING ACTIONS IN CONTRAVENTION OF THE SANCTION ORDER; (III) GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY TO DISMISS THE NEW YORK ACTION; AND (IV) GRANTING RELATED RELIEF.**

---

[1] Culligan Ltd. is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 35591. The Debtor's registered office is located at c/o KPMG Advisory Limited, Crown House, 4 Par-la-Ville Road, Hamilton, Bermuda.

[2] The New York Plaintiffs are: Culligan Soft Water Company; Cecil R. Hall; C&D Of Rochester, LLC; Driessen Water, Inc.; Michael A. Bannister; T&B Enterprises, Inc.; California Water & Filter, Inc.; Shar Sher I, Inc.; Water Quality Improvement, Inc.; Culligan Southwest, Inc.; Carey Water Conditioning, Inc.; Michael Carey; Eric B. Clarke; Culligan Water Conditioning (Barrie) Ltd.; Arthur H. Cooksey, Jr.; Corbett's Water Conditioning, Inc.; Glen Craven; Culligan Water Conditioning Horicon, LLP; Henry T. Wood; Mayer Soft Water Co., Inc.; Timothy Fatheree and Sue Fatheree; Clean Water, Inc.; Catherine Gilby; Canatxx, Inc.; Quality Water Enterprises, Inc.; Robert R. Heffernan; Charles F. Hurst; Karger Enterprises, Inc.; Keppler Water Treatment, Inc.; Robert Kitzman And Tracy Kitzman; Ladwig Enterprises, Inc.; Richard Lambert and Marianne Conrad; Low Country Water Conditioning, Inc.; Gina Larson; Michael G. Macaulay; Vetter's, Inc.; Robert W. McCollum and Barbara N. McCollum; Richard C. Meier; Donald E. Meredith; Cleanwater Corporation Of America; John Mollman And Janette Mollman; The Good Water Company Ltd.; E&H Parks, Inc.; Maumee Valley Bottlers, Inc.; Schry Water Conditioning, Inc.; Schry Water Treatment, Inc.; Winslow Stenseng; Stewart Water Conditioning, Ltd.; Bret P. Tangley; B.A.R. Water Corporation; Trilli Holdings, Inc.; Bruce Van Camp; Walter C. Voigt And Charlotte P. Voigt; Marin H2o, Inc.; Allan C. Windover; Everett Windover; Culligan Soft Water Service (Que) Inc.;

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES**......iv

**PRELIMINARY STATEMENT**......1

**RELIEF REQUESTED BY NEW YORK PLAINTIFFS**......10

**JURISDICTION**......11

**ARGUMENT**......20

*A. This Proceeding and the Sanction Order Is A Litigation Tactic That Offends New York Law; The Factors Favoring Comity Do Not Apply*......*20*

1. Comity is not a categorical deference to foreign proceedings......20

a. The Sanction Order applies Bermuda law to matters governed by New York law ......23

b. The Sanction Order does not comport to the Public Policy of the United States......24

c. The Bermuda Proceedings did not offer the New York Plaintiffs an ample opportunity to be heard......26

d. The New York Plaintiffs were to be given three opportunities to present their case; The Bermuda Sanction Hearing did not provide due process. ......28

e. Purdue Pharma rejects the use of general bankruptcy powers to create non-debtor releases for pre-petition conduct. ......29

f. Neither *Odebrecht* Nor *Crédito Real* supports the relief sought here. ......30

g. This Case Is a Perfect Example of the Type of Abuse that the Supreme Court Rejected in *Purdue Pharma*. ......32

2. The requested relief is not expressly authorized by any section of the Bankruptcy Code. ......33

3. The New York Plaintiffs, and entirety of the minority shareholders', interests are extinguished and not sufficiently protected under section 1522. ......35

*B. Injunction Is Neither Authorized Nor Warranted.*......*35*

1. Under New York Law, the Foreign Representatives cannot take exclusive control of the New York Action. ......35

*C. No partial lift of the stay should be ordered; however, the entire stay should be lifted so that these matters may be considered by the New York Court*......*38*

---

G.R. Mccoy; Richard N. Wendt; Richard Sample and Marie Sample; The Water Meister, Inc.; Alex Connelly; Go Water, Inc.; Van D. Waugh; Melissa Grill; Petro's Water Conditioning Of Johnson County, Inc.; Water Treatment Services Of Shelbyville, Inc.; Countryside Management, Inc.; Gulf Coast Water Conditioning, Inc.; Adrian Water Conditioning, Inc.; Canney's Water Treatment, Inc.

**RESERVATION OF RIGHTS ......................................................................... 38**

**CONCLUSION ......................................................................................................... 39**

# TABLE OF AUTHORITIES

## CASES

*Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1054–55, 1067 (5th Cir. 2012) ....................30

*Baker v. Simpson* (2d Cir. 2010) 613 F.3d 346, 350–351 ....................12

*Culligan Soft Water Co. v. Clayton Dubilier & Rice LLC* (N.Y. App. Div. 2014) 118 A.D.3d 422, 423 ....................10, 14, 18

*Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC* (N.Y. App. Div. 2016) 139 A.D.3d 621 ....................16, 17

*Culligan Soft Water, Co. v. Clayton Dubilier & Rice, LLC* (N.Y. App. Div. 2016) 144 A.D.3d 611 ....................15

*German-American Coffee Co. v. Diehl* (1915) 216 N.Y. 57 [109 N.E. 875] ....................10, 14

*Gunzburg v Gunzburg,* (2d Dept 1989) 152 AD2d 537, 538 ....................37

*Harrington v. Purdue Pharma L.P.,* 603 U.S. 204 (2024) ....................12, 29

In re ABC Learning, 445 B.R. at 338 ....................22

*In re Creative Finance Ltd.* (2016) 543 B.R. 498, 50 ....................4, 9

*In re Crédito Real S.A.B. de C.V.,* 670 B.R. 150 (Bankr. D. Del. 2025) ....................31

*In re C-TC 9th Ave. P'ship*, 113 F.3d at 1309 ....................2

*In re Fairfield Sentry Ltd. Litig*., 458 B.R. 665, 678 (S.D.N.Y. 2011) ....................33, 34, 36

*In re Gold & Honey*, 410 B.R. 357, 371–73 (Bankr. E.D.N.Y. 2009 ....................24

*In re Kiener Maschinenbau GmbH* (11th Cir., Feb. 12, 2026, No. 25-13737) 2026 WL 1078034 ....................5

*In re Odebrecht Engenharia e Construcao S.A.,* 669 B.R. 457 (Bankr. S.D.N.Y. 2025) 30, 31

*In re Oi S.A.* (Bankr. S.D.N.Y. 2025) 674 B.R. 175, 187 ....................30, 33, 34

*In re Penn Cent. Securities Litigation* (E.D. Pa. 1971) 335 F.Supp. 1026, 104....24, 36, 37

*In re Purdue Pharma L.P*., 69 F.4th 45 (2d Cir. 2023) ....................31, 32

*In re Qimonda AG Bankruptcy Litigation*, 433 B.R. 547, 567–71 (E.D. Va. 2010) ....................24

*In re Rede Energia S.A.* (Bankr. S.D.N.Y. 2014) 515 B.R. 69 ....................20, 22

In re SCO Group, Inc., 395 B.R. 852, 859 (Bankr. D. Del. 2007) ....................22

*In re Toft* (Bankr. S.D.N.Y. 2011) 453 B.R. 186 ....................9, 25

*In re Treco* (2d Cir. 2001) 240 F.3d 148 ....................5, 23

In re Wood, 825 F.2d 90, 97 (5th Cir.1987) ....................12

*Ind. Inv. Protective League v Time, Inc.*, 50 NY2d 259, 264 [1980] ....................37

Int'l Business Machines v. Fernstrom Storage & Van, Co. (In re Fernstrom Storage & Van Co.), 938 F.2d 731, 737 (7th Cir.1991) ....................22

Izzarelli v. Rexene (In re Rexene Prods. Co.), 141 B.R. 574, 578 (Bankr. D. Del. 1992 .22

*Kiener Maschinenbau GmbH v. Bass* (N.D. Ga. 2025) 808 F.Supp.3d 1339, 1344 5, 8, 20, 21

*Mt. McKinley Ins. Co. v. Corning Inc.* (2d Cir. 2005) 399 F.3d 436, 448 ....................34

*SNR Holdings, Inc.*, 54 AD2d at 409....................17, 24, 37

*Soundview Elite*, 503 B.R. at 580 ....................6

*Stern v. Marshall* (2011) 564 U.S. 462....................12

*Stoe v. Flaherty* (3d Cir. 2006) 436 F.3d 209....................11

*Tenney v. Rosenthal* (1959) 6 N.Y.2d 204, 211 ....................37

**STATUTES**

11 U.S.C § 1501(b)....................33

11 U.S.C. § 105(a) ....................32, 33

11 U.S.C. § 1123(b)(6) ....................32

11 U.S.C. § 1501(a)(3) ....................20, 33

11 U.S.C. § 1506 ....................9, 25

11 U.S.C. § 1507 ....................30, 33

11 U.S.C. § 1520(a)(2)-(3) ....................33, 35

11 U.S.C. § 1521 ....................7

11 U.S.C. § 1521(a)(7) ....................27, 28, 33

11 U.S.C. § 1522 ....................passim

11 U.S.C. § 1522(a)....................26, 35

11 U.S.C. §362(d)....................33

28 U.S.C. § 1334(c)(2) ....................11, 34

28 U.S.C. §§ 157(a)....................11

N.Y. Bus. Corp. Law § 102(a)(8)....................2, 23

N.Y. Bus. Corp. Law § 1317(a)(2)....................28

N.Y. Bus. Corp. Law § 1319(a)(1)....................14

N.Y. Bus. Corp. Law § 510....................2, 9, 28

N.Y. Bus. Corp. Law § 626....................passim

N.Y. Bus. Corp. Law § 626(d) ....................5

N.Y. Bus. Corp. Law § 719(a)(1)....................14

N.Y. Bus. Corp. Law § 720 ....................................................................................14
New York Penal Law § 1507 ....................................................................................4
New York Penal Law § 1521 ....................................................................................4
New York Penal Law § 190.35 ....................................................................2, 9, 23, 28

TO THE HONORABLE LISA G. BECKERMAN,
UNITED STATES BANKRUPTCY JUDGE:

1. The New York Plaintiffs, by and through their counsel, respectfully submit their objection ( "Objection") to the *Foreign Representatives' Motion* ("Motion") *for Entry of an Order (I) Recognizing and Enforcing the Bermuda Court's Sanction Order Approving the Settlement Agreement; (II) Permanently Enjoining Actions in Contravention of the Sanction Order; (III) Granting Limited Relief from the Automatic Stay to Dismiss the New York Action; and (IV) Granting Related Relief.* [3] In support of their Objection, the New York Plaintiffs state as follows: [4]

**PRELIMINARY STATEMENT**

2. The Foreign Representatives are asking this Court to undertake and usurp decisions that are properly before the New York Courts, and grant them relief that they could not obtain in state court. As this Court noted when granting recognition: "*Further, it would be premature for this Court to make any such findings regarding the merits of the New York Action, as the New York Court is still considering the latest motion to dismiss."* [DKT 58. P. 37]. It is no more appropriate now for this Court to decide the merits of a non-related state claim than it was upon granting recognition.

3. Since inception of this case, Culligan LTD, a *nominal defendant,* (and later the Joint Liquidators/Foreign Representatives), aligned itself with the underlying

[3] The underlying "Sanction Order" is on file as DKT 110-14, as Exhibit "J" to the Declaration of Michael Morrison [DKT 110; "Morrison Declaration"].

[4] For the Court's convenience, and to avoid duplicative and competing exhibits, whenever possible, the New York Plaintiffs will cite to the Foreign Representatives' Exhibits, attached to the Morrison Declaration, followed by the Exhibit number and page / line number. Additional citations to Exhibits will be attached to the concurrently filed Declaration of Peter Singler ("Singler Dec"), or to this Court's existing Docket Entries ("DKT"). Capitalized terms, unless otherwise specifically defined, will also have the same meaning as in the Foreign Representatives Motion.

culpable parties, the CDR Defendants,[5] sharing the same counsel for the bulk of the proceedings in the New York Action, jointly seeking to dismiss the case or take it over for the purpose of dismissal. They have used every procedural mechanism available to protect the CDR Defendants and dismiss the claims against them. As this Court has repeatedly acknowledged, this Chapter 15 proceeding is a "litigation tactic" per *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1309. For 14 years, Culligan and the Foreign Representatives have continued to attack the New York Plaintiffs' standing, avoiding discussion of the merits all the while.

4. The underlying facts supporting the New York Plaintiffs' claims are rather simple, and undisputed: Culligan significantly overleveraged by borrowing some $850 million, and then paid $575 Million in distributions from these borrowings. By 2012, $640 Million in debt came due; Culligan had only $135 Million in liquid assets.[6] This is the very definition of insolvency under New York Law. N.Y. Bus. Corp. Law §102(a)(8). The distributions were illegal. N.Y. Bus. Corp. Law § 510, and constituted a crime under New York Penal Law § 190.35. The minority shareholders lost the value of their stock, and their rights as shareholders in the equity ownership of the company throughout multiple subsequent sales. Culligan and the Foreign Representatives have been unsuccessful in their multiple attempts to dismiss New York Action, and substitute themselves as plaintiffs to dismiss the case. They now apply to this Court and the Bermuda Court to achieve that which they could not obtain in New York Court. Culligan

---

[5] Clayton Dubilier & Rice, Inc., Clayton Dubilier & Rice, LLC, Clayton, Dubilier & Rice Fund VI Limited, George W. Tamke, David H. Wasserman, Mark Sewals, Bruno Deschamps, Nathan K. Sleeper, Michael J. Durham, Daniel R. Fredrickson, Thomas A. Hays, James Uselton.

[6] See Declaration of Peter Singler ISO Objection to Recognition [DKT 22 , ¶¶ 6-7 and Exhibits referenced therein].

Ltd has no assets, creditors or employees; there is no re-organization or plan which needs any involvement by this Court. [DKT 22, ¶¶10-12 and Exhibits referenced therein]. This proceeding has always been a bad faith tactic to divest the New York Plaintiffs of the ability to prosecute the New York Action, and thereby insulate the CDR Defendants. As this Court noted: "[H]ere the admitted, and apparently entire, purpose of the present Chapter 15 filing is to prevent the New York Plaintiffs from continuing the New York Action." [DKT 58, P. 3].

5. If the Foreign Representatives' Motion is granted, Culligan Ltd does not benefit; yet the non-debtor CDR Defendants Lender Defendants[7] are released from potentially hundreds of millions of dollars in liability. But, while there is no benefit to the debtor, there is a loser: The minority shareholders, including the New York Plaintiffs.

6. The Foreign Representatives' Motion opens with a significant misstatement: It characterizes the New York Action as a "failed" derivative suit which fails to state a claim. The converse is true. Despite repeated attempts and multiple appeals, the Foreign Representatives have failed to get the New York Action dismissed in 14 years. Even after exhausting every procedural mechanism the Foreign Representatives could muster, the New York Court has determined that all claims in the currently operative complaint have been sufficiently pled.[8] The Foreign Representatives' prior attempts to enjoin the New York Plaintiffs from continuing New York Action failed in state court. Their last motion to dismiss was briefed, argued, and likely would have

---

[7] Angelo, Gordon & Co., L.P., Silver Oak Capital, L.L.C., Centerbridge Special Credit Partners, L.P., CCP Credit Acquisition Holdings, L.L.C., CCP Acquisition Holding, L.L.C.

[8] See discussion, *infra*; Second Affirmation of Peter A. Singler [DKT 110-4, PP. 7-8 of 387 (¶13); P. 117 of 387].

been denied. But, before the New York Court was able to rule, as a last-ditch effort, the Foreign Representatives filed this Chapter 15, *admittedly* and for the "entire purpose" of stopping the New York Action before that ruling.[9]

7. After recognition, the Foreign Representatives could have taken the exact steps they did in the Bermuda Courts to obtain the current Sanction Order, and could have applied directly to the New York Courts for any appropriate relief. Despite claiming this proceeding was necessary to complete the Bermuda liquidation, the Foreign Representatives *did nothing* for over four years after this Court granted recognition on July 2, 2021 [DKT 58]; and two years the New York Plaintiffs' motion to lift the stay in was denied in September 2023 [DKT 83]. Even then, Foreign Representatives sought not to finalize a liquidation order in Bermuda, but fabricated a "settlement" to try and create some semblance of value and an "asset" to legitimize its Bankruptcy position. In other words, it created a nominal asset to further its true purpose, which is to release the CDR Defendants under the guise of protecting an asset of the debtor. These added facts establish that the Foreign Representatives' claim of trying to facilitate the winding up was not just unreasonable; it was demonstrably false. As the Court *in In re Creative Finance Ltd.* noted: "But the Court observes that in chapter 15, as in chapter 11, U.S. courts need not tolerate debtor bad faith." *In re Creative Finance Ltd.* (2016) 543 B.R. 498, 501.

8. This case boils down to some fairly simple, yet important questions:

a. May Bankruptcy Code sections 1521, 1507 be used to usurp jurisdiction from a New York court and override established law of a sovereign U.S. state,

[9] "Finally, here the admitted, and apparently entire, purpose of the present Chapter 15 filing is to prevent the New York Plaintiffs from continuing the New York Action." [DKT 58, P. 3]; "Indeed, the Foreign Representatives have admitted that the purpose of the Chapter 15 is to take control of the New York Action." [DKT 83, PP. 37, 39].

particularly when the underlying claims constitute a crime under New York law and do not affect the chapter 15 proceedings?

b. Does recognition of a foreign court's order, which strips aggrieved U.S. citizens of their rights under domestic law, offend the policy of the United States?

c. May non-debtor third parties use the façade of a nominal debtor and Chapter 15 proceedings to shield themselves from liability, where domestic law would not afford such protection?

9. Given the facts of this case, this Court should decline to recognize the Sanction Order, which would extinguish the New York Plaintiffs' right to assert their claims entirely. *In re Treco* (2d Cir. 2001) 240 F.3d 148. Rather, this Court should lift the stay entirely, and allow the case to proceed in the New York Courts to resolve these matters according to New York Law.[10] The New York Court is perfectly capable of determining standing, how to apply comity, and is in the best position to evaluate the fairness of the proposed Settlement Agreement, which it must do anyway, under BCL § 626(d).[11] To comply with New York Law, the New York Plaintiffs must not be limited in asserting their positions by way of injunction, or otherwise.

---

[10] *See*, *Kiener Maschinenbau GmbH v. Bass* (N.D. Ga. 2025) 808 F.Supp.3d 1339, 1344, appeal dismissed sub nom. *In re Kiener Maschinenbau GmbH* (11th Cir., Feb. 12, 2026, No. 25-13737) 2026 WL 1078034. (stay not extended to allow claims against debtor's third party insurers to proceed).

[11] (d) Such action shall not be discontinued, compromised or settled, without the approval of the court having jurisdiction of the action. If the court shall determine that the interests of the shareholders or any class or classes thereof will be substantially affected by such discontinuance, compromise, or settlement, the court, in its discretion, may direct that notice, by publication or otherwise, shall be given to the shareholders or class or classes thereof whose interests it determines will be so affected; if notice is so directed to be given, the court may determine which one or more of the parties to the action shall bear the expense of giving the same, in such amount as the court shall determine and find to be reasonable in the circumstances, and the amount of such expense shall be awarded as special costs of the action and recoverable in the same manner as statutory taxable costs. *Id.*

10. At the time this Court determined this filing was a "litigation tactic" (when recognizing this case as a foreign main proceeding), there was insufficient information for the Court to conclude that the Bermuda tribunal's safeguards and procedures did not comport with the public policy of the United States [DKT 58, 32]. There was no order at the time indicating that the Bermuda Court would not apply New York law where required.[12] The Sanction Order does exactly this.

11. In granting recognition, the Court found that it did not have discretion under section 1506, and was compelled to recognize the Bermuda Liquidation as a foreign main proceeding. [DKT 58, 37]. In denying the New York Plaintiffs' later motion to lift the automatic stay,[13] the Court affirmed the conclusion that this filing was a "litigation tactic" [DKT 83, 39]. The Foreign Representatives argued that the filing of this action was "in furtherance of the debtor's wind-down." The Court stated that the Foreign Representatives' "may or may not be correct". . . but their "view is not unreasonable" as required to lift the stay, per *Soundview Elite*, 503 B.R. at 580. [DKT 83,

[12] DKT 83, P. 35 (fn 30)-

The New York Plaintiffs conflate (i) the law that applies to the underlying claims comprising the New York Action with (ii) the authority of a bankruptcy fiduciary to take custody of a debtor's assets. New York Plaintiffs imply that the Bermuda Court will apply Bermuda law to the underlying claims notwithstanding the First Department's ruling in Culligan I, 118 A.D. at 423, that New York law applies to the majority of the claims. See Motion ¶ 35 ("Because Bermuda law does not recognize derivative claims of the type asserted in the New York Action, the case will likely be enjoined from that forum unless the New York Plaintiffs can seek recourse in New York, in which the First Department bindingly held that the claims at issue are governed by New York law, not Bermuda law."). But the New York Plaintiffs have not cited a ruling by the Bermuda Court applying Bermuda law to the underlying claims in the New York Action. Instead, the authority cited in the Bermuda Substitution Order is for the proposition that the Joint Liquidators are obligated to take custody and control of the Debtor's property under section 174(1) of the Bermuda Companies Act. See Bermuda Substitution Order at 1. U.S. law is the same in this regard. See Ambac Fin. Grp., 487 F. App'x at 665 ("when Ambac filed for bankruptcy, the derivative claims became property of the debtor-in-possession, Ambac").

[13] DKT 63, filed 9/24/2; decided 9/12/23, DKT 83.

40]. The Court presumed there was a legitimate intent to complete an orderly liquidation in Bermuda.

12. Contradicting their assertion, the Foreign Representatives *did nothing* for over four years after this Court granted recognition on July 2, 2021 [DKT 58]; and two years after it denied the New York Plaintiffs' motion to lift the stay in September 2023 [DKT 83]. These added facts establish that the Foreign Representatives' claim of trying to facilitate the winding up was a pretense. Their sole purpose, from the time the Foreign Representatives first rejected the New York Plaintiffs' claims in 2013, until the present, has been to protect the CDR Defendants, at the expense of the minority shareholders' interests, and in contravention of New York law.

13. The Bermuda Sanction Order does not comport with the public policy of the United States in the following ways:

a. Applying exclusively Bermuda law, the Sanction Order presumed a benefit to the Company, without considering the damage to the minority shareholders, who are "interested parties" and whose interests must be protected pursuant to section 1522(a):

> The court may grant relief under section 1519 or 1521, or may modify or terminate relief under subsection (c), only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected. 11 U.S.C.A. § 1522 (West).

b. The Bermuda Court applied Bermuda law to the issue of standing, not New York law [Sanction Order, DKT 110-1, P.6, ¶31]. The Sanction Order did not consider the Affidavit of Robert Borghese ["Borghese Aff.", DKT 110-5 (Ex. E to Morrison Dec.)] as to the applicability of New York law to all substantive issues, as

ordered in *Culligan 1*.[14] [Sanction Order, DKT 110-1, P.1, ¶2.].

c. The Bermuda Court's analysis of the merits of the New York Action again applied Bermuda standards as to insolvency and other substantive matters. [Sanction Order, DKT 110-1, P.5, ¶23.]. It cites to a solvency opinion letter, upon which the original Board of Directors relied, by Duff & Phelps. [DKT 110, ¶ 6]. However, despite being repeatedly cited and attested to under oath as a basis for the "reasonableness" of the Board's actions (as affirmed by the Foreign Representatives), that letter has never been produced. This is despite producing (heavily redacted) copies of relevant Board meeting minutes [DKT 110-6, PP. 346-357]. Part of the redacted materials, presumably, was an opinion by the Company's CFO, and the Duff & Phelps opinion. From a strictly evidentiary standpoint, this would be violative of the Federal Rules of Evidence (and corresponding New York rules) as to "hearsay" and "best evidence". Fed. Rule of Evid., Rules 802, 1001-1007. Substantively, at the time the New York action was commenced, Culligan LTD's Board, and subsequently counsel for the Foreign Representatives, relied solely on the application of Bermuda law in assessing the New York Plaintiffs' claims.

14. This case tests the limits of what Chapter 15 is, and what it is not. It ***is*** intended "to provide effective mechanisms for dealing with cases of cross-border insolvency" and gain the ability to marshal control over assets located in the United States. *Kiener Maschinenbau GmbH v. Bass, supra.*

15. Chapter 15 *is not* intended to provide a means for a foreign shell entity to evade established United States law and extend immunity for culpable non-debtor parties

[14] *Culligan Soft Water Co. v Clayton Dubilier & Rice LLC*, 118 AD3d 422, 422-423 (1st Dept 2014) ("*Culligan 1*").

who engage in illegal business practices in the United States, all of whom are United States citizens. . .It is not insignificant that the underlying claim under BCL 510(a) (illegal dividends) is a crime under New York law as well. New York Penal Law 190.35. As the court asked in *In re Creative Finance Ltd.* (Bankr. S.D.N.Y. 2016) 543 B.R. 498: "[M]ust a U.S. Bankruptcy Court tolerate debtor bad faith in a chapter 15 case that a U.S. court would never tolerate in a case under any other chapter of the Code?" Its answer was "no". *Id.,* at 500.

16. In *In re Toft* (Bankr. S.D.N.Y. 2011) 453 B.R. 186, the court invoked § 1506 and refused to grant Chapter 15 relief where the conduct authorized by the foreign order "would appear to constitute" violations of criminal statutes and "might subject" the foreign representative and others to criminal liability. *Id.,* at 197-198. The court held that such relief was "manifestly contrary to the public policy of the United States." Although *Toft* dealt with a prospective illegal act, the underlying principle is the same. Illegal acts are not to be condoned simply because a foreign entity has filed chapter 15. The proposed Settlement Agreement releases non-debtor parties from illegal acts constituting a crime under New York Law. BCL, 510(a); New York Penal Law 190.35.

17. As the New York Court of Appeals stated over 100 years ago, and is as germane now as it was then:

> As long as a foreign corporation keeps away from this state it is not for us to say what it may do or not do.
>
> But when it comes into this state and transacts its business here, it must yield obedience to our laws. [ ] For many purposes the fiction of its residence in the state of its origin must then be disregarded. [ ] . . . A foreign corporation not engaged in interstate commerce may be excluded altogether. [ ] If admitted, it may be subjected to conditions [ ] and violation of a condition may be made to impose a liability on the directors who violate it. [ ] If they take the corporation out of the state, they may declare dividends as they please. If they elect to keep it with us, they must not lead it into paths of ruin. In these days,

> when countless corporations, organized on paper in neighboring states, live and move and have their being in New York, a sound public policy demands that our Legislature be invested with this measure of control. If the control is irksome, it may be avoided by leaving us. Even if the prohibited act is done in the home state it may be so bound up in its results with the business in this state that we cannot view it with indifference. A prohibition which lasts while business within the state continues, and may be escaped when business within the state is stopped, is, in effect, a condition imposed on the right to do business, and nothing more.
>
> We hold, therefore, that directors of a foreign corporation transacting business in this state and subjecting itself to the conditions established by our laws may be charged with liability if they declare dividends from capital.

*German-American Coffee Co. v. Diehl* (1915) 216 N.Y. 57 [109 N.E. 875] [*internal citations omitted*].

18. *German-American Coffee*, was specifically relied upon and cited favorably by the First Appellate Department in the New York Action, when it definitively ruled that New York Law applied both to the issue of derivative standing, and the New York Plaintiffs' substantive claims. *Culligan 1, supra*.[15] All of the substantive claims in the operative Fifth Amended Complaint have been determined to be properly pleaded. [DKT 22, Ex. 5, 18-19; Borghese Aff., DKT 110-5, PP. 3-7, 11]. The Bermuda Court, without referencing the Borghese Affidavit, concluded the opposite, defying the actual history of the case, ignored New York law and the holdings in the New York Action.

**RELIEF REQUESTED BY NEW YORK PLAINTIFFS**

19. The New York Plaintiffs respectfully request that this Court deny the Motion outright, lift the stay as to the New York Action completely, and allow the New York Courts to decide whether to extend comity and approve the settlement agreement, or confirm the New York Plaintiffs' standing and allow the case to proceed.

---

[15] The claim and party whose dismissal was upheld as part of that decision (CDR Fund VI) was later re-pleaded and upheld by the New York Supreme Court. [DKT 22, Ex. 5, 18-19]

20. Alternatively, the Court should abstain from ordering any injunction or otherwise prohibiting the New York Plaintiffs from pursuing their claims in the New York Action. 28 U.S.C. § 1334(c)(2); *Stoe v. Flaherty* (3d Cir. 2006) 436 F.3d 209, as amended (Mar. 17, 2006).

21. For clarity, the New York Plaintiffs will confirm that Culligan LTD is a nominal defendant only, and that the New York Action seeks no affirmative relief from it. They will further agree not to seek any relief from the Foreign Representatives in the New York Action, provided this Petition is dismissed, or the stay is otherwise lifted, and the New York Plaintiffs are permitted to proceed with the New York Action.

22. For further clarity, and as discussed further below, there was no need for Culligan LTD or the Foreign Representatives to be involved in the New York Action at all. Some of the Lender Defendants represented that they possess all documents and servers that would be relevant to discovery. [DKT 22, ¶ 15] There is no need for the debtor to expend any money or be involved with discovery or other proceedings. Culligan LTD has affirmed several times that its fees are covered by insurance, and the only amounts not covered are a part of the Foreign Representatives' (Joint Liquidators') expenses [DKT 83, P. 16]. Again though, there was never a reason for the Foreign Representatives to incur fees, and they do so voluntarily, for the purpose of aligning and defending the CDR Defendants.

**JURISDICTION**

23. This Court has jurisdiction over these Chapter 15 proceedings pursuant to 28 U.S.C. §§ 157(a). However, the New York Plaintiffs respectfully submit that the New York Action is neither a "core" nor "related action" under section 157. As such, it does not have jurisdiction to resolve any substantive issues in the New York Action, including standing, or

to issue any order, injunction, or relief which would contradict New York law, such as the notice and opportunity to be heard under BCL, 626(d). *See., Stern v. Marshall* (2011) 564 U.S. 462; *Baker v. Simpson* (2d Cir. 2010) 613 F.3d 346, 350–351.[16] *Harrington v. Purdue Pharma L.P., infra.* (no release or non-debtor pre-filing wrongdoing)

**BACKGROUND**

24. The Foreign Representatives make much ado about the New York Action being in its "sixth iteration," and claim that the New York Plaintiffs allegedly still have not established standing. This is a gross mischaracterization. The following is a more accurate summary of the current status of the case. In sum, the complaint is on its second substantive iteration, necessitated by Court errors and changes in ownership and circumstances. The 14 years of litigation has been due solely to Culligan and the Foreign Representatives exhausting every procedural mechanism available, COVID delays, and significant delays in the appellate process.

a. Currently, the New York Plaintiffs' Fifth Amended Complaint is operative, and the Foreign Representatives' motion to dismiss has been denied due to this current stay. [Singler Dec., ¶ 4]. In other words, but for the stay in this bankruptcy, the New York Plaintiffs would have been able to move forward with their claims *six years ago*. The Foreign Representatives need not answer or participate further, albeit they will inevitably decide to refile motions which have, substantively, been decided and / or attempt to substitute as plaintiffs again and enforce the Settlement Agreement. This is all voluntary, and nothing compels them, as stewards of a *nominal defendant,* to take these

[16] "As the Fifth Circuit has explained, although the definition of a proceeding "arising in" Title 11 is not entirely clear, it covers claims that "are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Wood,* 825 F.2d 90, 97 (5th Cir.1987). The new York Action pre-dated, and obviously exists outside of this Bankruptcy.

actions.

b. Prior to this Petition, the Foreign Representatives filed a motion to dismiss the Fifth Amended Complaint. It has been fully briefed and the Court heard over two hours of oral argument. It was apparent that Judge Masley was going to deny the Foreign Representatives' motion. Prior to ruling, the Foreign Representatives filed this Chapter 15 proceeding, and the stay went into effect upon recognition. A synopsis of prior pleading history follows. [17]

c. The New York Plaintiffs filed their original complaint on May 30, 2012, the day before Culligan was scheduled to file a pre-packaged bankruptcy. However, Culligan was able to effect an eleventh-hour alternative out-of-court reorganization with the Lender Defendants. Hence, the New York Plaintiffs filed a First Amended Complaint, as of right and prior to any responsive pleading being filed, to reflect the change in ownership of Culligan's assets and the change in circumstances.

d. Culligan and the CDR Defendants (acting through the same counsel) filed a motion to dismiss that First Amended Complaint, which was granted March 13, 2013. The trial court erroneously held that Bermuda law applied to the issue of standing.

e. The New York Plaintiffs timely filed an appeal of that decision on May 1, 2013. In the interim, on April 29, 2013, Culligan LTD rushed to file a voluntary dissolution proceeding in Bermuda, and Charles Thresh and Michael Morrison, "Managing Directors at KPMG Advisory Ltd in Bermuda," were appointed as joint liquidators.

---

[17] *See also,* Docket 22, ¶ 8.

f. The First Department unanimously reversed the dismissal as to all but one claim (which claim was later reinstated), holding:[18]

> BCL § 1319(a)(1) expressly provides that BCL § 626 (shareholders' derivative action) shall apply to a foreign corporation doing business in New York. Thus, the issue of plaintiffs' standing to bring a shareholder derivative action is governed by New York law, not Bermuda law . . . .
>
> Pursuant to *German–American Coffee Co. v. Diehl*, 216 N.Y. 57, 62–64, 109 N.E. 875 (1915) and BCL §§ 1319(a)(1), 719(a)(1), and 510, New York law applies to the second cause of action, which alleges that the directors of Culligan Ltd. declared illegal dividends. To the extent plaintiffs allege violations of BCL § 720 (e.g. waste and unlawful conveyance), which is made applicable to foreign corporations doing business in New York by BCL § 1317(a)(2), those claims are also governed by New York law.

*Culligan 1*, *at 422-423*.

g. The New York Plaintiffs filed a Second Amended Complaint to comport to the findings in *Culligan 1*. Culligan Ltd's counsel[19] objected to some of the terms and references in that complaint. Rather than contest those points, the New York Plaintiffs stipulated with Culligan and the CDR Defendants to file a Third Amended Complaint. That complaint was filed October 31, 2014. No action was taken on the Second Amended Complaint.

h. In late October and early November, the Lender Defendants reached out to New York Plaintiffs to discuss partial settlement. The New York Plaintiffs informed them that they would prefer a global settlement discussion with all Defendants, but were told by the Lender Defendants that the CDR Defendants and the

[18] The single claim (against CDR Fund VI) was later reinstated, and held by the Court to properly state cause of action. [DKT 22, Ex. 5, 18-19] .

[19] Debevoise & Plimpton – representing both the CDR Defendants and the company through its Joint Liquidators – Messrs. Tresh and Morrison.

Joint Liquidators were not interested. Ultimately, the Lender Defendants and the New York Plaintiffs arrived at a partial settlement, including the payment of $4 Million and, more importantly, the delivery of substantial documents and information to the New York Plaintiffs to assist in prosecuting claims against the CDR Defendants (the "Lender Settlement"). The joint liquidators (Messrs. Thresh and Morrison who are now the Foreign Representatives) vehemently opposed the Lender Settlement and sought dismissal of the case and termination of New York Plaintiffs' claims. The trial court approved the settlement, and the Joint Liquidators and the CDR Defendants (again acting through the same counsel), appealed.[20]

i. The Joint Liquidators and the CDR Defendants filed motions to dismiss the Third Amended Complaint, this time based on New York law. The Court granted the motion on the grounds that (although New York Plaintiffs had made several demands) they had not pled around a demand refusal (which was actually delivered after the action was commenced). The court also held that because the New York Plaintiffs had pled actual demand, they could not alternatively plead that demand would have been futile. The dismissal was with prejudice. The Court conditioned further amendment on the New York Plaintiffs' payment of Defendants' legal fees, which they claimed to be in excess of $679,000 for that single motion.

j. The New York Plaintiffs filed a motion to reconsider, reargue or amend, as well as a motion to disqualify Debevoise & Plimpton, as it was confirmed by

[20] The First Department did overturn the order approving the Lender Settlement as the $4 Million was designated to be used to continue the New York Action, and the New York Plaintiffs, at that point, had not established standing. *Culligan Soft Water, Co. v. Clayton Dubilier & Rice, LLC* (N.Y. App. Div. 2016) 144 A.D.3d 611 [41 N.Y.S.3d 423, 424] ("*Culligan 3*"). This appeal was decided between the time that the New York Plaintiffs received the ruling in *Culligan 2*, but prior to the time the Supreme Court had ruled on their motion to file a Fourth Amended Complaint, whereupon the court determined that all claims were properly pled.

the Lender Defendants that Debevoise & Plimpton and KPMG had written opinion letters in conjunction with the underlying transactions. The trial court denied each of those motions and the New York Plaintiffs appealed these rulings, which appeals were consolidated. In *Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC* (N.Y. App. Div. 2016) 139 A.D.3d 621 [33 N.Y.S.3d 34] ("*Culligan 2*"), the First Department reversed denial of leave to amend as the lower court had: 1) incorrectly imposed a requirement that plaintiffs plead around demand refusal; and, 2) that the court had applied the wrong standard for pleading futility. Although it affirmed the decision to not disqualify Debevoise & Plimpton, the First Department did state that the company and directors should have separate counsel if the case moved beyond the pleading stage.

k. In or about November or December of 2017, the Lender Defendants sold the Culligan Entities to the Advent Defendants.[21]

l. On November 8, 2017, New York Plaintiffs filed a motion for leave to amend, together with a proposed Fourth Amended Complaint. Defendants, including Culligan Ltd, sought several continuances to file oppositions and postpone oral argument on that motion. Oral argument was heard on May 8, 2018.

m. On December 31, 2018. The court granted the New York Plaintiffs' motion, holding that the New York Plaintiffs had adequately pled: 1) a majority of directors were interested in the underlying transactions; 2) breach of fiduciary duty by CDR and Director Defendants; and 3) dominion and control of Director Defendants by CDR. [DKT 22, ¶ 8(j), Ex. 5, 18-19; Borghese Aff., DKT 110-5, PP. 3-7,

[21] Advent International Corporation, Advent Partners GPE VIII-C Culligan (Cayman) Limited, Advent Partners GPE VIII-A Cayman Limited Partnership, AP GPE VIII GP Limited Partnership ("GPE VIII-GP").

11]. On January 17, 2019, the New York Plaintiffs filed their Fourth Amended Complaint.

n. On or about March 15, 2019, all Defendants again filed motions to dismiss. Culligan Ltd retained new counsel, pursuant to the directive of *Culligan 2*. Culligan Ltd moved on entirely new grounds, to both have the joint liquidators substituted as Plaintiffs in the stead of the New York Plaintiffs, and to dismiss the complaint as there was no allegation that New York Plaintiffs have made a demand or pled why such demand would have been futile on the joint liquidators between the time of the dismissal of the Third Amend Complaint and the subsequent filing of the Fourth Amended Complaint. Culligan Ltd argued that the joint Liquidators should be treated as "Trustees" or "Receivers" under New York law, and allowed to take over and dismiss the New York Action.

o. Justice Masley rendered a decision on March 19, 2020. [DKT 22, ¶ 8(m), Ex. 14]. The court denied the Joint Liquidators' request to substitute as plaintiffs, declining to extend comity recognition of the Bermuda Court's sanction, and finding a potential conflict of interest as to the roles of Messrs. Morrison and Thresh as managing directors of KPMG Bermuda Ltd., citing *SNR Holdings, Inc*., 54 AD2d at 409. However, Justice Masley did grant Culligan Ltd's motion to dismiss on the grounds that (although futility was pled with regard to the original board) the New York Plaintiffs needed to plead demand or futility with regard to the joint liquidators. The New York Plaintiffs filed the currently operative Fifth Amended Complaint fully rectifying these issues.

p. The claims alleged in the Fourth Amended Complaint and the Fifth Amended Complaint are substantively identical. The additions to the Fifth Amended Complaint were to address the demand, and futility of demand, as to the Joint

Liquidators, who had represented Culligan Ltd since before the decision in *Culligan 1.* [DKT 22, Ex. 5, 18-19; Borghese Aff., DKT 110-5, PP. 3-7, 11]

25. With these motions pending, and the likelihood that New York Plaintiffs would finally be able to proceed to discovery and pursue their claims, Culligan Ltd petitioned the Court in Bermuda to order a supervised winding up of Culligan Ltd on July 2, 2019. Thereafter, they filed a new action in the Supreme Court of Bermuda Companies (Winding Up) Commercial Court, case number 2020: No. 194, entitled MICHAEL MORRISON AND CHARLES THRESH (AS LIQUIDATORS OF CULLIGAN LIMITED), Plaintiffs, and CULLIGAN SOFT WATER COMPANY AND OTHERS, Defendants" (the "Bermuda Action"). The sole defendants in that action were the New York Plaintiffs; the sole relief sought, to enjoin further prosecution of the New York Action. Rather than appear in Bermuda and submit to jurisdiction in Bermuda, the New York Plaintiffs sought an emergency restraining order in the New York Action, enjoining Culligan Ltd and anyone on its behalf, from continuing the Bermuda action. After the hearing on that emergency application, the parties stipulated to the emergency restraining order proposed by the New York Plaintiffs, pending a fully briefed hearing. That hearing was conducted on September 21, 2020. After hearing arguments, Judge Masley stated she was granting the injunction. Due to her calendar and caseload, she requested that the parties stipulate to the relief requested and submit a stipulation and order so that she need not prepare a detailed order and decision. The parties agreed. A copy of that order is filed as [DKT 22, ¶ 8(n), Ex. 15].

26. While awaiting the final hearing to enjoin Culligan Ltd from continuing the Bermuda Action, Culligan Ltd filed this current Chapter 15 Petition, and again seeks

to stop the New York Plaintiffs from pursuing their claims under New York law, which were properly brought in New York Courts some 14 years ago.

27. The Foreign Representatives' Motion to Dismiss was fully briefed, extensively argued, and awaiting the Court's decision. Subsequently, the Court denied the motion in light of these Bankruptcy filings. [Singler Dec. 4].

28. Over the New York Plaintiffs' objection, this Court granted recognition of the Bermuda Liquidation as a Foreign Main Proceeding, also triggering the automatic stay under section 362 on July 2, 2021. [DKT 58]

29. The New York Plaintiffs subsequently filed a motion to lift the stay on July 30, 2021 [DKT 61], which the Court denied on September 12, 2023. [DKT 83].

30. After two years of doing nothing, and upon the Court ordering a status conference, the Foreign Representatives announced that they had reached a settlement of the New York Action, without any prior notice to or involvement by the New York Plaintiffs. [DKTS 87, 90]. In that latter document, the New York Plaintiffs requested that this Court consider a motion to dismiss due to lack of prosecution, or set a briefing schedule to allow the New York Plaintiffs file a motion to vacate and reconsider recognition. [Singler Dec., ¶ 5].

31. Judge Garrity ordered the Foreign Representatives to proceed with their filings in Bermuda. He also specifically ordered the parties to confer and schedule a status conference prior to filing any motion for recognition of a Bermuda Court order. The Foreign Representatives gave no prior notice and simply filed the current Motion. [DKT 91; Singler Dec., ¶ 6].

## ARGUMENT

### *A. This Proceeding and the Sanction Order Is A Litigation Tactic That Offends New York Law; The Factors Favoring Comity Do Not Apply.*

32. The general principles of comity do not apply in this case as: 1) Comity is not a categorical deference to foreign proceedings; 2) The Sanction Order applies Bermuda law to substantive issues determined by the New York Court to be controlled by New York law; 3) Bermuda law does not comport to U.S. law, would destroy the New York Plaintiffs' claims and, under these facts, is manifestly contrary to United States policy; 4) *Purdue Pharma* rejects non-debtor releases such as those in the Settlement Agreement.

#### 1. <u>Comity is not a categorical deference to foreign proceedings.</u>

33. The Foreign Representatives' argument commences with citing, and relies heavily upon, 1) *In re Rede Energia S.A.* (Bankr. S.D.N.Y. 2014) 515 B.R. 69; and 2) the presupposition that "comity" requires automatic enforcement of a foreign jurisdiction's order. The former is neither compelling nor applicable here; the latter is not the law.

34. Comity and respect for foreign proceedings under Chapter 15 rest upon the premise that the foreign proceeding is being used for the legitimate purpose, specifically including the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3). *Kiener Maschinenbau GmbH, supra*., at 1344. That premise is absent here. This Court has already found that the Chapter 15 proceeding was instituted as a litigation strategy to terminate the New York Action. [DKT 58, 3; DKT 83, 39]. Who does this protect? Not the minority shareholders, as their claims are terminated. Nor does it benefit the debtor. Culligan LTD has no assets, no creditors and

does no business; it is an all but liquidated shell. [DKT 22, ¶¶10-12 and Exhibits referenced therein]. The Sanction Order and proposed settlement favors the real parties in interest: CDR, and the former officers and directors who approved excessive borrowing, then declared and authorized illegal dividends that led to the company's demise. [DKT 110-4, Ex. D, PP. 5-6 of 387].

35. *Kiener Maschinenbau* was a Chapter 15 that involved a wrongful death action filed pre-petition, and the plaintiffs sought relief from the stay to pursue recovery from the debtor's insurers. The court lifted the stay and allowed the case to proceed against the insurers. Unlike this case, the reason the chapter 15 and underlying German insolvency proceedings were filed were unrelated to the plaintiffs' claims. In contrast, here the Chapter 15 was filed by the Foreign Representatives for the entire purpose of ending the New York Action. [DKT 58, P. 3]. What is similar is that the New York Plaintiffs are seeking claims against third parties that are not relevant to the Bermuda Liquidation or these proceedings. Culligan is a nominal defendant only, and has no legitimate role in the New York action. Its involvement for the last 14 years has been lockstep with the CDR Defendants, who are the responsible third parties. In declining to extend the stay to the third-party insurer's, the *Kiener Maschinenbau* Court held:

> [T]he State of Georgia and the United States have a strong interest in the liquidation of Mrs. Bass's claims in a court in Georgia pursuant to Georgia and United States law that, at a minimum, counterbalance issues of cross-border insolvency at play in this case. With that in mind, the Court now turns to the three-factor test.

*Id.,* at 876.

36. Those same "three factors" are all found in the present case: 1) Neither Culligan nor its creditors (of which there are none) will suffer any great prejudice from continuing the New York Action [DKT 22, ¶¶10-12 and Exhibits referenced therein]; 2)

The hardship to the New York Plaintiffs (and Culligan's other minority shareholders) substantially outweighs the hardship to the debtors (i.e., the derivative claims will be destroyed for a nominal sum; Culligan need not participate in the New York Action at all); and 3) The New York Plaintiffs have a probability of success on the merits. As the court noted, "[e]ven a slight probability of success on the merits may be sufficient to support lifting the automatic stay in an appropriate case.[22]

37. The New York Plaintiffs have significantly more than a "slight probability." For 14 years, the parties have contested solely the issue of derivative standing and what law applies. What is undisputed is that Culligan and its consolidated affiliates were in default of loan covenants, and had a deficit of over $500 million in relating to its liquid assets to satisfy those debts. That is the very definition of "insolvency" under New York law. [DKT 110-4, Ex. D, PP. 5-6 of 387].[23]

38. *Rede Energia* is wholly distinguishable. It involved a Brazilian reorganization proceeding, to which there were multiple moving parts and continued acts requiring a consistent plan of enforcement. That is nothing like the present case, where the debtor is liquidating, has no creditors, employees or assets [DKT 22, ¶¶10-12] and there is nothing to be done in the United States, save to determine rights to claims against third parties in the New York Action. Regardless, although Judge Chapman confirmed the Brazilian plan over objections, the court acknowledged the limitations of Chapter 15,

---

[22] Id., at 878*, citing In re ABC Learning*, 445 B.R. at 338 (citing *In re SCO Group, Inc.,* 395 B.R. 852, 859 (Bankr. D. Del. 2007); *Int'l Business Machines v. Fernstrom Storage & Van, Co. (In re Fernstrom Storage & Van Co.),* 938 F.2d 731, 737 (7th Cir.1991); *Izzarelli v. Rexene (In re Rexene Prods. Co.)*, 141 B.R. 574, 578 (Bankr. D. Del. 1992).

[23] Second Affidavit of Peter A. Singler, ¶¶ 5-6, and related exhibits.

as expressed in the Second Circuit's decision in *In re Treco* (2d Cir. 2001) 240 F.3d 148.

The Treco Court explained:

> The principle of comity has never meant categorical deference to foreign proceedings. It is implicit in the concept that deference should be withheld where appropriate to avoid the violation of the laws, public policies, or rights of the citizens of the United States.

*Id*., at 157.

As in *Treco*, granting relief as the Foreign Representatives request would destroy the New York Plaintiffs' claims, which is not within the scope of Chapter 15 authority.[24]

**a. The Sanction Order applies Bermuda law to matters governed by New York law.**

39. The Bermuda Court applied Bermuda law to the issues of standing and the substantive claims in the New York Action. Bermuda law does not allow derivative standing, except in extremely exceptional circumstances;[25] New York law does. BCL, §626. The definition of "insolvency" under New York law is specifically defined as the inability to pay debts as they mature, not when incurred, and regardless if the company was able to operate for five years in the interim. [BCL, §102(a)(8); Bermuda Sanction (DKT 110-14, Ex. J, ¶ 23)] Under New York law, making a distribution that renders a company insolvent is a crime. New York Penal Law 190.35. Bermuda law has no equivalent protection. As with *Treco*, application of Bermuda law to either the issue of standing or the simple definition of "insolvency" not only "threatens", but utterly

[24] In *Treco*, the objectors alleged that they secured noteholders. If the Brazilian plan was secured, their claims would lose priority to administrative costs and be lumped with junior creditors, which would have denied them significant protections afforded under U.S. law. The *Treco* Court remanded for a determination of whether the objector's claim was secured or not. However, if it was, then the relief was not appropriate as it threated to destroy the noteholder's claims under section 304(c) (Now 1507(b)). *Id.,* at 160.

[25] *See*, Declarations of Christian Luthi, [DKT 6, ¶ 34] and of Charles Thresh [DKT 7, ¶ 22] in support of Motion for Recognition.

"destroys", the New York Plaintiffs' claims. This is exactly the scenario where comity should neither be extended, nor "additional assistance" afforded under section 1507.

40. Although a trustee in bankruptcy, or in this case the Foreign Representatives, step into the shoes of the Board of Directors, that does not mean they can simply dispose of pre-petition derivative claims which the Board refused to bring, particularly when that Board was conflicted. This is particularly poignant when the Foreign Representatives were participating in the litigation for some 10 years prior to the filing of this Chapter 15, were fully aligned with the real defendants in interest (the CDR Defendants), and were even represented by the same counsel. As a matter of United States law, a trustee cannot take over litigation from a derivative plaintiff if there is even a hint of impropriety, conflict or collusion. *In re Penn Cent. Securities Litigation* (E.D. Pa. 1971) 335 F.Supp. 1026, 1040. Proof is not required at the pleading stage, only the possibility of conflict. *SNR Holdings, Inc. v. Ataka America, Inc.* (1976) 54 A.D.2d 406, 409.

**b. <u>The Sanction Order does not comport to the Public Policy of the United States.</u>**

41. Chapter 15 cannot be used to defeat fundamental U.S. statutory or constitutional protections. For example, in *In re Qimonda AG Bankruptcy Litigation*, 433 B.R. 547, 567–71 (E.D. Va. 2010), a German insolvency administrator sought to terminate U.S. patent licenses. On remand, the bankruptcy court held that allowing German law to eliminate those protections would be manifestly contrary to U.S. public policy. 462 B.R. 165, 183–85 (Bankr. E.D. Va. 2011). In *In re Gold & Honey*, 410 B.R. 357, 371–73 (Bankr. E.D.N.Y. 2009), an Israeli bank pursued receivership proceedings despite the U.S. automatic stay and an express U.S. court order, then sought recognition

of the resulting receivership. The court refused recognition because doing so would reward the violation and undermine the fundamental purposes of the U.S. automatic stay. And in *In re Toft, supra*, 453 B.R. at 196–98, a foreign representative sought enforcement of foreign orders permitting access to a debtor's U.S.-based emails; the court refused the requested relief because the orders exceeded the powers of a U.S. bankruptcy trustee, violated statutory protections, and potentially caused criminal liability. These cases show when § 1506 applies when, as here, Chapter 15 would be used to undermine substantive rights protected by U.S. law. That is precisely the concern presented here: the Bermuda Sanction Order does not merely facilitate administration of a foreign liquidation—it purports to determine and extinguish rights arising under U.S. law. The approach taken in *Treco* and *Kiener Maschinenbau* guides the appropriate handling of this case.

42. Bermuda law does not provide the same protections as section 1522. It is axiomatic that the Sanction Order does not implicate any sort of injunctive relief, it only approved a settlement agreement, applying Bermuda law. Here, the Foreign Representatives are requesting significant, discretionary relief from this Court. The Bermuda Court's legal parameters are far less stringent or protective than United States law.

> [A Bermuda Court] is entitled to take into account and attach considerable weight to the liquidator's views unless the evidence reveals substantial reasons why it should not do so, or that for some other reason the liquidator's view is flawed. [DKT 110-14, ¶ 17].

As for the Joint Liquidator's determination:

> [T]he liquidator seeking a sanction of a compromise must take the view that the proposed compromise is in the best interests of the estate as a whole but does not need to be satisfied that it is in the best interests of every creditor or stakeholder. [DKT 110-14, ¶ 18]

43. In contrast, section 1522 allows relief under additional relief under sections 1519 or 1521 "***only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected.***" 11 U.S.C.A. § 1522(a) (emphasis added).

**c. <u>The Bermuda Proceedings did not offer the New York Plaintiffs an ample opportunity to be heard.</u>**

44. Two of the New York Plaintiffs (John Packard on behalf of Culligan Soft Water, and Donald Meredith) objected to the Sanction Order. However, they withdrew their objection for three primary reasons:

1) Bermuda does not recognize derivative standing and gives great deference to a liquidator's request, without the same protections afforded by section 1522, or under New York law;

2) Bermuda follows the English rule awarding attorney fees to the prevailing party, unlike U.S. law. The costs associated with the Bermuda objection were substantially more than the New York Plaintiffs had anticipated. The appearing parties (John Packard, on behalf of Culligan Soft Water, and Donald Meredith) had authority to commit funds made available for this purpose. However, if, as anticipated, the Bermuda Court did approve the Sanction Order, then all of the New York Plaintiffs could have been jointly liable for all of Culligan Ltd's fees. Messrs. Packard and Merdith also had significant health and family issues pending and could not feasibly contact and get consent of all of the New York Plaintiffs. Legally and ethically, they could

not proceed with the objection and subject the other New York Plaintiffs to a potential significant fee award without their consent. [Singler Dec., ¶ 7].

3) This Court had previously ruled that due process would be satisfied by affording the New York Plaintiffs at last three opportunities to challenge the Sanction Order: 1) In Bermuda; 2) Before this Court in response to this Motion; and 3) In the New York Court if / when the Foreign Representatives sought to settle / dismiss the New York Action. [DKT 83, P. 31].

45. Relying on these latter two options, Messrs. Packard and Meredith opted to avoid exceeding their authority and the risk of subjecting the remaining New York Plaintiffs to a cost award, and pursuing their arguments here in U.S. Bankruptcy Court, and in the New York Court. [Singler Dec., ¶ 7].

46. The Foreign Representatives had alternatives to extinguishing the New York Action and chose not to pursue them:

a. They could have done nothing. Culligan LTD is a nominal defendant. No relief is sought against it, and it had no role in the litigation. Yet, from the outset, the Foreign Representatives, represented by the same counsel, aligned with the culpable CDR Defendants. [*See, e.g.,* DKT 22, ¶ 8, and *infra*].

b. They could have abandoned claims to the New York Plaintiffs at any time, including in this Bankruptcy proceeding. 11 U.S.C.A. § 1521(a)(7)(West); DKT 83, P. 25.[26]

47. This is not a case of reorganization, liquidation and distribution of assets located in the United States, or other such issues which warrant deference and comity to

[26] "Since a court can grant a trustee's motion to abandon property under section 554 in a plenary bankruptcy case, section 1521(a)(7) allows a court to provide the same relief to a foreign representative." *Id.*

take precedence over United State law. BCL 510 (illegal dividends) is a significant policy of New York, violation of which its legislature determined to be a crime. New York Penal Law 190.35. New York further applies its laws to businesses coming within its borders, and specifically applies those laws to foreign entities. BCL 1317(a)(2). Foreign Representatives are asking this Court to allow an admitted litigation tactic to allow non-debtor parties to evade New York law, grant immunity to illegal conduct, all while the foreign shell corporation gains nothing, and at the expense of aggrieved minority shareholders. This is what Chapter 15 *is not* intended to do.

48. In short, there is no burden to the debtor. It has no obligation, expense, or liability relating to the New York Action, and the claimed "asset" of the newly fabricated settlement is a construct to release culpable non-debtor parties, with no benefit to the company, and to the extreme detriment of the minority shareholders, including the New York Plaintiffs. With no burden, there is no legitimate basis for extinguishing the New York Plaintiffs' claims *against third parties,* in exchange for a sum so small it is a testament to self-interest. The Foreign Representatives could abandon the claims per section 1521(a)(7); alternatively, they could request that the Court entrust the claims to the New York Plaintiffs. But the New York Plaintiffs do not seek to compel either of these. . . they merely ask this Court to allow the process to be completed by the New York Courts, and abstain from precluding this avenue, which the Court had previously stated was available.

**d. <u>The New York Plaintiffs were to be given three opportunities to present their case; The Bermuda Sanction Hearing did not provide due process.</u>**

49. As the Foreign Representatives Acknowledge, this Court expressly identified three opportunities for the New York Plaintiffs to contest the disposition of the

New York Action as part of its due-process analysis: first, in Bermuda; second, before this Court upon any request to recognize and enforce the Bermuda order; and third, in the New York Court. [DKT 111, ¶ 2 (referencing the "stay decision", DKT 83, P. 31)]. However, by way of this Motion, the Foreign Representatives seek to enjoin the latter option. This contradicts this Court's prior orders, effectively usurps the New York Plaintiffs' rights to be heard, and the New York Court's ability to hear arguments against the settlement and dismissal of the New York Action. This offends fundamental due process. As stated, BCL 626(d) requires notice and an opportunity for interested shareholders to object to a settlement or dismissal of a derivative claim. The Foreign Representatives ask this Court to completely override New York law in this regard.

**e. <u>Purdue Pharma rejects the use of general bankruptcy powers to create non-debtor releases for pre-petition conduct.</u>**

50. *Harrington v. Purdue Pharma L.P.,* 603 U.S. 204 (2024), reflects a basic structural limitation on a Bankruptcy Court's power: To wit, bankruptcy cannot be used to extinguish claims against non-debtors based on their own alleged *pre-filing* wrongdoing. In *Purdue*, the claims released by the bankruptcy plan arose from the Sacklers' misconduct in the years before Purdue's bankruptcy. This alleged wrongdoing led to the bankruptcy. The Sacklers were not debtors, had not placed their assets in the bankruptcy estate, and nevertheless received a release from those independent claims. The Supreme Court held that the Bankruptcy Code did not authorize that result.

51. The basis of that decision was the basic rule of statutory construction: When Congress intends bankruptcy to extinguish preexisting claims against non-debtors, it says so expressly and carefully defines the circumstances in which that extraordinary relief is available. This is consistent with this Court's holding that the exercise of

discretion under Section 105(a) must "be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective." *In re Oi S.A.* (Bankr. S.D.N.Y. 2025) 674 B.R. 175, 187. For example, Congress's treatment of asbestos claims shows that releasing non-debtors for their own pre-bankruptcy conduct is an extraordinary exercise of bankruptcy power. Congress authorized such releases under section 524(g), but only subject to specific statutory requirements and procedural safeguards.

52. In *Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1054–55, 1067 (5th Cir. 2012), the bankruptcy court did not abuse its discretion in denying the foreign representatives' request for "additional assistance" under Chapter 15 to enforce a Mexican *concurso* plan that purported to extinguish the guarantees of the debtor's non-debtor subsidiaries. Although such relief could, in exceptional circumstances, be available under § 1507, the court found those circumstances absent where the subsidiaries had not themselves filed for bankruptcy, the affected creditors had not consented to the releases, the plan provided no alternative means of recovery, and the creditors would receive only a fraction of the amounts owed.

53. These principles apply here: the New York derivative claims arise from alleged pre-bankruptcy wrongdoing concerning the 2007 dividend and related transactions, not from the administration of Culligan's Bermuda liquidation. Chapter 15's authority to administer Culligan's estate therefore cannot, without specific congressional authorization, be expanded into authority to extinguish substantive claims arising from pre-bankruptcy conduct by non-debtor parties. *Purdue Pharma L.P, supra.*

**f. Neither *Odebrecht* Nor *Crédito Real* supports the relief sought here.**

54. The Foreign Representatives attempt to skirt *Purdue* by citing *In re Odebrecht Engenharia e Construcao S.A.,* 669 B.R. 457 (Bankr. S.D.N.Y. 2025) and *In*

*re Crédito Real S.A.B. de C.V.,* 670 B.R. 150 (Bankr. D. Del. 2025). However, those cases are inapposite. Neither involved the use of an insolvency proceeding to extinguish an existing lawsuit arising from a non-debtor's own *pre-petition* wrongdoing.

55. In *Odebrecht*, the injunction protected the foreign restructuring itself; it did not release non-debtors from liability for their own *pre-petition* conduct. As the *Odebrecht* Court stated: "courts in the Second Circuit allow exculpation provisions so long as they apply to *post-petition* conduct [emphasis added]." *In re Odebrecht, supra,* 669 B.R. at 468.

56. *Crédito Real* likewise involved releases tied to possible *future* causes of action arising out of the administration and implementation of the restructuring, protecting participants in that process rather than extinguishing independent preexisting claims based on third parties' own pre-*petition* alleged misconduct.

57. The facts of *Purdue Pharma* (as with the present case) are wholly distinguishable. *Purdue* flatly rejected the use of bankruptcy to release non-debtors from claims arising from their own alleged *pre-petition* wrongdoing. That is the precise situation here. The claims in the New York Action arose from alleged pre-liquidation wrongdoing, not from conduct undertaken in administering Culligan's liquidation. Yet, the Foreign Representatives seek to use the Bermuda liquidation to extinguish those claims. *Odebrecht* and *Crédito Real* do not authorize that result, and Congress has not provided the specific congressional authorization that *Purdue* requires. It is noteworthy that neither *Odebrecht* nor *Crédito Real* has been affirmed by any District Court or the Court of Appeal, much less by the Supreme Court. The absence of appellate approval is particularly significant because the Supreme Court's decision in *Purdue* reversed both the Bankruptcy Court and the Second Circuit's contrary interpretation of the Bankruptcy

Code. In *In re Purdue Pharma L.P.*, 69 F.4th 45 (2d Cir. 2023), the Second Circuit had held that §§ 105(a) and 1123(b)(6) authorized nonconsensual third-party releases. The Supreme Court reversed that decision, holding that the Bankruptcy Code did not authorize a Chapter 11 plan to discharge *preexisting* claims against non-debtors without the affected claimants' consent. 603 U.S. at 226–27.

#### g. **This Case Is a Perfect Example of the Type of Abuse that the Supreme Court Rejected in *Purdue Pharma*.**

58. The reasoning behind the Supreme Court's decision in *Purdue* is not limited to the particular Chapter 11 provision that was before the Court. *Purdue* rejected a fundamental proposition underlying broad theories of bankruptcy authority: that a court may derive extraordinary power to extinguish substantive claims against non-debtors based on pre-petition conduct from generalized provisions granting equitable or discretionary authority. A non-debtor cannot receive the equivalent of a bankruptcy discharge without submitting itself and its assets to the bankruptcy process, and Congress has specifically authorized non-debtor releases only in limited circumstances—for example asbestos claims—Chapter 15 is not one of them. That reasoning applies with full force to the releases sought here. The released defendants are not debtors. They have not subjected themselves or their assets to this Chapter 15 proceeding. The alleged misconduct occurred before the bankruptcy filing. Yet the Foreign Representatives ask this Court to extinguish the New York Plaintiffs' claims against those defendants for a sum that is nominal, at best, and to permanently enjoin the Plaintiffs from pursuing them, in contradiction of New York law.

**2. The requested relief is not expressly authorized by any section of the Bankruptcy Code.**

59. The Motion is brought under Bankruptcy Code sections 105(a), 362(d), 1507, 1521 and 1522. None expressly provide for the "additional relief" the Foreign Representatives here seek, and so it must fall within the scope of the Court's discretionary power. The discretion afforded under section 1521(a) is "'exceedingly broad' since a court may grant 'any appropriate relief' that would further the purposes of chapter 15 and protect the debtor's assets and the interests of creditors." *In re Oi S.A.* (Bankr. S.D.N.Y. 2025) 674 B.R. 175, 186. However, the scope of such discretion is not without limit, and the requested relief does not fall within the express provision of the Bankruptcy Code.

60. The first limitation is that such discretion must further the purposes of chapter 15 and protect assets and creditor interests. The purpose of chapter 15 is defined in section 1501(a), i.e., to promote cooperation, efficiency and consistency in cross-border insolvency proceedings, and to specifically protect "the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C.A § 1501(a)(1)-(3). The Court's function is to "provide assistance" to a foreign representative (11 U.S.C.A § 1501(b); Chapter 15 is not intended to usurp substantive U.S. law, nor go beyond the administrative functions of being "an adjunct or arm of a foreign bankruptcy court where the main proceedings are conducted." [DKT 83, P. 20 (citing, *In re Fairfield Sentry Ltd. Litig*., 458 B.R. 665, 678 (S.D.N.Y. 2011))].

61. Once this proceeding was designated a foreign main proceeding, the Foreign Representatives gained legal standing as a Trustee in U.S. proceedings [DKT 83, P. 20; 11]. 11 U.S.C. § 1520(a)(2)-(3). In other words, they had everything they needed

to make their case in both Bermuda, and in the New York Court. Particularly poignant here, the Foreign Representatives were Joint Liquidators appointed by the Bermuda Court in 2013, who exercised the authority of Culligan LTD's Board, and upon whom demand was made, notwithstanding that demand was futile. [DKT 110-5, Ex. E].[27] In this capacity, the Foreign Representatives / Joint Liquidators who fail to act once BCL 626(c) has been complied with cannot escape a derivative action by simply filing a chapter 15 petition. A Trustee (foreign representative) steps into the debtor's shoes . . . it does not get to buy new shoes altogether. There is no further need for this Court to intervene in the New York Action, and it should abstain pursuant 28 U.S.C. § 1334.

> Thus, abstention is required where (1) the motion to abstain was timely filed, (2) the action is based on state-law claims, (3) the action is non-core, (4) the sole basis for federal jurisdiction is 28 U.S.C. § 1334, (5) an action is commenced in state court, and (6) that action can be timely adjudicated in state court.

*In re Fairfield Sentry Ltd. Litigation* (S.D.N.Y. 2011) 458 B.R. 665, 689. *See also Mt. McKinley Ins. Co. v. Corning Inc.* (2d Cir. 2005) 399 F.3d 436, 448 ("Non-core, 'related-to' proceedings are subject to mandatory abstention if 'an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.' 28 U.S.C. § 1334(c)(2)").[28]

62. Beyond this, section 105 further constrains the exercise of discretion to being "tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or objective". *In re Oi S.A.,* at 187. The Foreign Representatives are doing just

---

[27] Affidavit of Robert Borghese, ¶¶7-16; the Fifth Amended Complaint is attached, and relevant paragraphs are PP. 0067- 0072 (numbers are the small four-digit bates numbering in lower right-hand corner).

[28] This case is certainly "non-core", and not even "related to" the chapter 15 proceedings. Regardless, even if it was and abstention was discretionary, killing the New York Action does not further the purpose of chapter 15. The Bermuda liquidation could be completed regardless of the New York Action, and the Foreign Representatives could certainly choose to disclaim or not participate in the New York Action and complete it wind-up. The Court should abstain from interfering with the New York Action by enjoining the New York Plaintiffs, and should allow the New York Court to resolve all matters related to the Settlement Agreement and that merits of that action.

that . . . relying on the general concept and amorphous "additional assistance" language to seek relief, which is neither founded in the Bankruptcy Code, and is of the type specifically rejected by *Purdue Pharma.*

**3. The New York Plaintiffs, and entirety of the minority shareholders', interests are extinguished and not sufficiently protected under section 1522.**

63. Here, the Foreign Representatives seek to terminate minority shareholders' ability to assert their derivative rights, and extinguish their claims. Moreover, they seek to prohibit the New York Plaintiffs from even challenging the proposed settlement of the claims they brought in the New York Court. Section 1522(a) expressly conditions Chapter 15 relief on "sufficient protection" of the interests of creditors and other interested entities. 11 U.S.C. § 1522(a). That protection cannot be reduced to formal recognition of the foreign proceeding where the requested relief would extinguish the rights of U.S. parties without an adequate opportunity to protect those rights. See *In re Treco*, *supra*, at 156–57 ("The principle of comity has never meant categorical deference to foreign proceedings. It is implicit in the concept that deference should be withheld where appropriate to avoid the violation of the laws, public policies, or rights of the citizens of the United States"); *In re Toft*, *supra,* at 190–91 (applied to Chapter 15 proceeding). As noted above, New York law similarly requires notice and an opportunity for any shareholder whose rights will be substantially affected by a compromise or termination of a derivative action to be heard. BCL § 626(d).

***B. Injunction Is Neither Authorized Nor Warranted.***

**1. Under New York Law, the Foreign Representatives cannot take exclusive control of the New York Action.**

64. Recognition does not resolve who may control and settle the pending New York Action. The Foreign Representatives rely heavily on Section 1520(a)(3). That

section does provide them certain powers over Culligan's assets; however, it does not automatically give them the power to take over and extinguish an already-pending derivative action.

Section 1520(a)(3) provides:

> Upon recognition of a foreign proceeding that is a foreign main proceeding . . . unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552. 11 U.S.C. § 1520(a)(3).

65. That does not answer the question before this Court. Even assuming the Foreign Representatives could step into Culligan's shoes with respect to the Company's property (unless this Court orders otherwise), it does not follow that they acquired the unrestricted power to take over an already-pending derivative action *against third parties* and extinguish it through a settlement. The New York Plaintiffs had already asserted their derivative claims under New York law before recognition, and the New York Action was already pending against the individual defendants. Nothing in section 1520(a)(3) says that recognition automatically transfers control of such an action to the Foreign Representatives or eliminates the derivative plaintiffs' rights against third parties. *In re Penn Cent. Securities Litigation, Supra.* See also, *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 683–90 (S.D.N.Y. 2011) [claims asserted before Chapter 15 case, based on prepetition events and independent of the foreign insolvency proceeding, were non-core claims that "could have proceeded in the state courts." *Id.*, at 684–85].

66. As noted, since 2013, the Messrs. Thresh and Morrison, as Joint Liquidators (and now Foreign Representatives) have sought to dismiss the New York Action, being wholly aligned with the CDR Defendants, and even represented by the

same counsel. Both Federal and New York cases require that a corporation or its representative stepping into a derivative action must prosecute that action in good faith.

67. "In a very real sense, in modern theory, the standing of the shareholder is based on the fact that, when he sues derivatively, he is defending his own interests as well as those of the corporation." *Tenney v. Rosenthal* (1959) 6 N.Y.2d 204, 211. Dissolution of corporation does not affect shareholder standing to maintain derivative action. *Ind. Inv. Protective League v Time, Inc.*, (1959) 50 NY2d 259, 264 . Demand need not be made on a receiver appointed after the commencement of an action. "The claim [lack of demand on the receiver] as it pertains to the receiver, while properly before this court, is meritless because the receiver had not yet been appointed at the time the complaint was filed." *Gunzburg v Gunzburg,* (2d Dept 1989) 152 AD2d 537, 538.

68. More Definitively, even a hint of impropriety, conflict or collusion prohibits substitution:

> [I]n order for a corporation or its representative to take over control of an action instituted on its behalf by its stockholders, there must be no hint of collusion between the corporation and the defendants to the suit or evidence that the corporation may not prosecute the action in good faith.

*In re Penn Cent. Securities Litigation* (E.D. Pa. 1971) 335 F.Supp. 1026, 1040

> While no misconduct has been proven, at this stage of the action, it appears from the pleadings that there is a possible conflict of interest which, if established, would make impossible that undivided loyalty requisite for the protection of the bankrupts' interests.

*SNR Holdings, Inc. v. Ataka America, Inc.* (1976) 54 A.D.2d 406, 409.

69. As noted, Culligan and the CDR Defendants were represented by the same counsel for the bulk of the New York Action; The Foreign Representatives were managing directors of KPMG Bermuda LTD, with "KPMG" being implicated in the underlying transactions. The continued active and aggressive litigation stance taken by a

nominal defendant is both unusual and was unnecessary here, but for some form of conflict or collusion. This constitutes more than a "hint", per *Penn Cent. Securities.*

70. The Foreign Representatives' on *Berry v. Rampersad*. *Berry* is inapplicable here. That case involved substitution of a bankruptcy trustee to preserve a discrimination action for the benefit of the bankruptcy estate after the debtor had failed to schedule that claim. *Berry* did not involve a pending shareholder derivative action, competing claims to control of that action, or an effort by a trustee or foreign representative to take over the litigation for the purpose of dismissing the claims and releasing the third-party defendants.

### *C. No partial lift of the stay should be ordered; however, the entire stay should be lifted so that these matters may be considered by the New York Court*

71. As stated, this Court already ruled that the New York Plaintiffs would be able to challenge any Bermuda Order in the New York Court. [DKT 83, P. 31] New York law requires the Court to give notice and an opportunity for any affected shareholder to be heard. BCL, § 626(d). The Foreign Representatives seek to deny the New York Plaintiffs due process and the ability to be heard, and have this Court sanction the undermining of New York law. The Court should lift the stay, in full, and allow the Foreign Representatives and the New York Plaintiffs to make their respective cases before the New York Court. . . a process that would have already been completed, but for the delays caused by the Foreign Representatives by filing this chapter 15 petition.

## RESERVATION OF RIGHTS

New York Plaintiffs submit this Objection without prejudice to, and with a full reservation of, all rights, including discovery and to introduce evidence at any hearing related to the Motion. Further, the New York Plaintiffs reserve the right to amend or

supplement the grounds for this Objection and to reply to any facts or arguments that the Debtor makes or presents in support of the Motion.

**CONCLUSION**

Respectfully, this Court should deny recognition of the Sanction Order, lift the stay in its entirety, and allow the New York Court to resolve any issues, according to New York Law. This Bankruptcy was filed in bad faith, for the "entire" purpose of wrestling the New York Action from the New York Plaintiffs. The debtor and the Foreign Representatives have been completely aligned with the third-party CDR Defendants from the outset, and there is, at a minimum, a hint of conflict or collusion. The Foreign Representatives now seek to use this Court to obtain relief they could not obtain in the New York Court. Culligan Ltd is free to wind up in Bermuda, and the New York Action seeks no recovery from it, nor is its participation required. There is no burden and only the minority shareholders stand to lose. The CDR Defendants and the Lender Defendants get released from all liability, for a mere pittance. This contradicts the United States Supreme Court's rationale in *Purdue Pharma*, and eviscerates New York law and policy holding foreign corporations who do business in the state are accountable for illegal conduct.

Dated: September 8, 2026

NEW YORK PLAINTIFFS
SINGLER, PLC
Counsel to the New York Plaintiffs

____/s/ Peter A. Singler______

Peter A. Singler *(pro hac vice)*
103 Johnson Street
P.O. Box 2298
Windsor, California 95492
Telephone: (707) 823-8719
pas@singler-law.com