**Hearing Date and Time: September 22, 2026 at 10:00 a.m. (prevailing U.S. Eastern Time)**

ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
Telephone: (212) 571-0550
Facsimile: (212) 571-0555
David A. Berger
David A. Shaiman
Alexander E. Ehrlich

*Counsel to the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re**<br><br>**CULLIGAN LTD.,**[1]<br><br>**Debtor in Foreign Proceedings.** | **Case No. 20-12192 (LGB)**<br><br>**Chapter 15** |

**REPLY DECLARATION OF DAVID A. BERGER IN FURTHER SUPPORT OF THE FOREIGN REPRESENTATIVES' MOTION FOR ENTRY OF AN ORDER (I) RECOGNIZING AND ENFORCING THE BERMUDA COURT'S SANCTION ORDER APPROVING THE SETTLEMENT AGREEMENT; (II) PERMANENTLY ENJOINING ACTIONS IN CONTRAVENTION OF THE SANCTION ORDER; (III) GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY TO DISMISS THE NEW YORK ACTION; AND (IV) GRANTING RELATED RELIEF**

TO THE HONORABLE LISA G. BECKERMAN,
UNITED STATES BANKRUPTCY JUDGE:

I, David A. Berger, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1. I am a member of the bar of this Court and of Allegaert Berger & Vogel LLP ("**ABV**"), counsel to the Debtor, Culligan, and the Foreign Representatives. My firm and I are

---

[1] Culligan Ltd. is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 35591. Culligan's registered office is located at c/o Teneo (Bermuda) Limited, 19 Par-la-Ville Road, 3rd Floor, Hamilton, HM 11, Bermuda.

also counsel to Culligan in the New York Action, and have been since the Foreign Representatives retained ABV as separate counsel for the Debtor in 2019, following the New York Court's January 2, 2019 decision in *Culligan IV*. (Br. ¶ 47; Morrison Decl. ¶ 20.)[2]

2. I submit this Declaration upon personal knowledge and my review of the documents cited herein, each of which is an exhibit to the Morrison Declaration, is otherwise filed on the docket of this Court, or filed on the docket of the New York Action.

3. The Objection, and Mr. Singler's declaration filed with it, make a number of statements about the history of the New York Action, of this chapter 15 case, and of the sanction proceeding before the Bermuda Court that the record does not support. While the Reply does not address each inaccuracy (*see* Reply ¶ 2 n.4), this Declaration attempts to collect the most significant errors, in chronological order, by comparing what the Objection states with what the record shows. This Declaration cites only to the existing record.

**A. The New York Action (2007 to Recognition).**

*i. The reference to a "crime."*

4. The Objection states that the 2007 Dividend "constituted a crime under New York Penal Law § 190.35" and that the Settlement "releases non-debtor parties from illegal acts constituting a crime under New York Law." (Obj. ¶¶ 4, 16; *see id.* ¶¶ 15, 39, 47.) The Objection cites to no factual finding that the allegations made in the New York Action constitute a crime under New York law or that they have been investigated as such by any authority. (*Id.*) I am aware of no criminal charge, indictment, or investigation concerning the 2006/2007

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Foreign Representatives' reply memorandum of law filed concurrently herewith (the "**Reply**"), the Foreign Representatives' memorandum of law in support of the Motion (ECF No. 111, the "**Opening Brief**", cited herein as "**Br.**"), the Motion (ECF No. 112), or the Declaration of Michael W. Morrison (ECF No. 110, the "**Morrison Declaration**", cited herein as "**Morrison Decl.**"). The New York Plaintiffs' Objection (ECF No. 114) is cited herein as "**Obj.**".

Distributions, and the record likewise contains none. As to the releases, the Settlement Agreement provides for releases of the claims asserted against the settling defendants and certain related persons in the New York Action, and for dismissal of that action. (Morrison Decl. ¶ 27; Settlement Agreement §§ 3-5, 9-11.)

*ii. The New York Court has not held the claims in any complaint sufficiently pleaded.*

5. The Objection states that "the New York Court has determined that all claims in the currently operative complaint have been sufficiently pled" (Obj. ¶ 6); that "[a]ll of the substantive claims in the operative Fifth Amended Complaint have been determined to be properly pleaded" (*id.* ¶ 18); and that the claims in the Fourth and Fifth Amended Complaints "are substantively identical" (*id.* ¶ 24(p)). The Objection cites the New York Court's January 2, 2019 decision on the New York Plaintiffs' motion for leave to file the Fourth Amended Complaint for these propositions, along with the relevant complaints. (*Id.* ¶¶ 18, 24(m), 24(p) & n.20 (citing ECF No. 22, Ex. 5 at 18-19); *Culligan IV*, 2019 WL 78923.)

6. The record shows the following sequence. *Culligan IV* decided a motion for leave to amend, which the New York Court granted in part and denied in part, applying the standard that "[l]eave to amend a pleading is freely given …, absent prejudice or surprise resulting directly from the delay." (*Culligan IV*, 2019 WL 78923, at *2, *10; Stay Decision at 8-9.) In her expert affidavit, Judge Chapman confirmed that "the New York Court did not rule on the viability of the claims alleged, let alone determine that the New York Plaintiffs had properly pleaded each cause of action in the third amended complaint or in the fourth amended complaint (which was proposed to the court at that time)." (Chapman Aff. ¶ 44.)

7. Subsequently, on March 19, 2020, in *Culligan V*, the New York Court dismissed the Fourth Amended Complaint, holding that the complaint was "devoid of any allegations that

… demand was made or excusing plaintiffs for not making the demand on the Liquidators." (*Culligan V*, 2020 WL 1307209, at *5-6; Stay Decision at 10.) The New York Court did not reach the question of whether any of the claims asserted would separately withstand dismissal, and the dismissal was without prejudice to the filing of a fifth amended complaint within forty-five days. (*Culligan V*, 2020 WL 1307209, at *7; Stay Decision at 10.)

8. The New York Plaintiffs filed the Fifth Amended Complaint on May 4, 2020; all defendants, including the Debtor, moved to dismiss it; the New York Court heard argument on October 28, 2020; and on July 14, 2021—twelve days after this Court entered the Recognition Decision—the New York Court denied the motions without prejudice to renewal in light of the automatic stay. (Stay Decision at 10-11; Br. ¶ 29; Chapman Aff. ¶ 22.) The Objection confirms that the denial was "due to this current stay" and "in light of these Bankruptcy filings." (Obj. ¶¶ 24(a), 27.)

*iii. This chapter 15 case was filed before the New York Plaintiffs filed their opposition to the motion to dismiss the Fifth Amended Complaint.*

9. The Objection states that "[i]t was apparent that Judge Masley was going to deny the Foreign Representatives' motion" to dismiss the Fifth Amended Complaint (Obj. ¶ 24(b)); that the motion "likely would have been denied" (*id.* ¶ 6); and that the Foreign Representatives filed this case "before the New York Court was able to rule, as a last-ditch effort" (*id.*). None of these statements is supported by citation to record evidence.

10. The record shows the following. By stipulation of all parties in the New York Action, the Debtor's motion to dismiss the Fifth Amended Complaint was filed on July 3, 2020, the New York Plaintiffs' opposition was due on September 30, 2020, and the Debtor's reply was due on October 21, 2020. (New York Action Docket at NYSCEF Doc. No. 536.)

11. This chapter 15 case was commenced on September 17, 2020 with the filing of the Debtor's petition for recognition. (ECF No. 1.)

12. Concerning the Objection's statement that it "was apparent" that the New York Court "was going to deny" the motion to dismiss, that statement is unsupported by record evidence; the motion had been *sub judice* for more than eight months when it was denied without prejudice on July 14, 2021, following entry of recognition. (Obj. ¶ 24(b); Stay Decision at 10-11; Br. ¶ 29; Chapman Aff. ¶ 22.) The transcript of the oral argument can be found at ECF No. 68-1 and contains Justice Masley's actual statements.

*iv. The Bermuda Anti-Suit Action was stayed by stipulation, not injunction.*

13. The Objection states that "[t]he Foreign Representatives' prior attempts to enjoin the New York Plaintiffs from continuing New York Action failed in state court" (Obj. ¶ 6), and that at a September 21, 2020 hearing "Judge Masley stated she was granting the injunction" and "requested that the parties stipulate to the relief requested and submit a stipulation and order so that she need not prepare a detailed order and decision" (*id.* ¶ 25). The first statement is completely unsupported, while the second cites only an unsupported statement in an earlier declaration made by Mr. Singler in this action. (ECF No. 22 ¶ 8(n).)

14. The record shows the following. On June 22, 2020, the Foreign Representatives commenced the Bermuda Anti-Suit Action, and on July 16, 2020 the Bermuda Court granted leave to serve the New York Plaintiffs through their U.S. counsel. (Stay Decision at 13.) Before service was effected, the New York Plaintiffs moved in the New York Action by order to show cause for a temporary restraining order, and the New York Court held a hearing on September 21, 2020. (*Id.*) I negotiated and signed, on behalf of Culligan, the Stipulation and Order dated September 24, 2020 that resolved that motion, which Justice Masley so-ordered and which was

filed as NYSCEF Doc. No. 633 in the New York Action. (ECF No. 22-15.) It provides that the order to show cause "shall remain in effect until: a) further order by this Court; or b) the United States Bankruptcy Court for the Southern District of New York hears the matter of In re: CULLIGAN LTD., Debtor in Foreign Proceedings, Case No. 20-12192(JLG) and issues an order recognizing a foreign proceeding or otherwise orders that these proceedings be stayed," and that, "[f]or avoidance of doubt, it shall not be deemed a further prosecution of the [Bermuda Anti-Suit Action] or a violation of this Stipulation and Order for Culligan Ltd. to advise the court in the Bermuda Action regarding the status of proceedings herein." (*Id.* ¶¶ 1-2.) The Stipulation and Order contains no finding and grants no injunction, and the New York Court issued no decision on the motion.

15. I also note that this Court previously considered the same characterization of the resolution of the Bermuda Anti-Suit Action in 2023 and found it "unpersuasive": "the New York Plaintiffs imply that the Foreign Representatives 'failed' in their attempt [to] enjoin the New York Action through the Bermuda Anti-Suit Action. … However, as described above, the Foreign Representatives stipulated with the New York Plaintiffs to stay the Bermuda Anti-Suit Action pending recognition proceedings in this Court." (Stay Decision at 40 n.32; *see also* Recognition Decision at 31 ("the Foreign Liquidators have agreed to stay any pursuit of the Anti-Suit Injunction at this time").)

*v. Counsel to the Company, and the alleged conflict.*

16. The Objection states that Culligan and certain defendants "shar[ed] the same counsel for the bulk of the proceedings in the New York Action" (Obj. ¶ 3; *see id.* ¶¶ 40, 66, 69), and that the Foreign Representatives are conflicted by reason of their former employment at KPMG (*id.* ¶ 69).

17. The record shows the following. In 2016, in *Culligan II*, the First Department affirmed the New York Court's denial of the New York Plaintiffs' motion to disqualify the Company's then-counsel, Debevoise & Plimpton LLP, and "advised the Debtor to retain separate counsel to the extent the repleaded complaint survives the pleading stage." (Stay Decision at 8 n.11; *Culligan II*, 139 A.D.3d at 622.) The Objection acknowledges both the affirmance and that "Culligan Ltd retained new counsel, pursuant to the directive of *Culligan 2*." (Obj. ¶¶ 24(j), 24(n).) Although no complaint has yet survived the pleading stage, the Foreign Representatives retained ABV as separate counsel for the Company in 2019, and ABV has represented the Company in the New York Action since then and the Foreign Representatives in this case since its commencement. (Br. ¶ 47; Morrison Decl. ¶ 20; *supra* ¶ 1.)

18. As to KPMG, the New York Court in *Culligan V* denied the Foreign Representatives' request to be substituted as plaintiffs "[a]t this juncture" because "it is unclear" whether their relationship with KPMG raised a "possible conflict," in the same decision in which it dismissed the Fourth Amended Complaint. (*Culligan V*, 2020 WL 1307209, at *4; Stay Decision at 9-10, 29 n.25.)

19. This Court has found that the Foreign Representatives were appointed as Joint Liquidators in their individual capacities, and that they transitioned their employment from KPMG to Teneo (Bermuda) Limited on or about October 25, 2022. (Stay Decision at 18 n.18, 27; ECF No. 79; Morrison Decl. ¶ 2.) On the record before it in 2023, which included the declaration of Abid Qureshi and the transcript of the October 28, 2020 oral argument, this Court found that the New York Plaintiffs "have not established by a preponderance of the evidence that an actual conflict exists" (Stay Decision at 26); that the purported "confirmation" from defense counsel on which the KPMG allegation rested was "at best, disputed, and at worst, conjectural"

(*id.* at 28); that the Court was "not convinced that the appearance of KPMG Advisory as a party in the New York Action creates a conflict of interest sufficient for the Court to mandate abandonment of the action by the Foreign Representatives" (*id.* at 29); and that "the mere fact of joint representation does not raise the risk of trial taint when 'an attorney represents two or more clients who are similarly situated with regard to a lawsuit'" (*id.* at 30 n.26 (citations omitted)). The Bermuda Court, in turn, stated: "There is no evidence of any conflict of interest that would undermine the court's confidence in granting the sanction." (Reasons ¶ 35.)

**B. This Chapter 15 Case (2020 to the Present).**

*i. This Court found the case was not filed in bad faith.*

20. The Objection states that "[a]s this Court has repeatedly acknowledged, this Chapter 15 proceeding is a 'litigation tactic,'" and that "[t]his proceeding has always been a bad faith tactic." (Obj. ¶¶ 3-4; *see id.* ¶ 34.) In the Recognition Decision, this Court found that "the filing of this chapter 15 is a litigation strategy," held that the section 1506 exception "is not met by a simple finding that the Chapter 15 Petition has been filed as a litigation tactic," and granted recognition. (Recognition Decision at 32, 39.) In the Stay Decision the Court held "that the Foreign Representatives did not commence this chapter 15 case in bad faith"; that their strategy "is not so much a tactic to combat a negative outcome in the New York Action as it is a tactic to bring the New York Action to a conclusion in furtherance of the Debtor's wind-down"; and that "their view is not unreasonable." (Stay Decision at 38, 40.) The New York Plaintiffs did not appeal from, or move for reconsideration of, either decision. (*See generally* docket; Br. ¶ 33; Morrison Decl. ¶ 24.)

*ii. The Debtor's assets, and the New York Plaintiffs' own description of them.*

21. The Objection states that "Culligan Ltd has no assets, creditors or employees"; that "there is no benefit to the debtor" from the Settlement; and that the Debtor "has no obligation, expense, or liability relating to the New York Action." (Obj. ¶¶ 4, 5, 34, 48.) This contradicts the New York Plaintiffs' earlier statements to the Court that the New York Action "is the Debtor's only remaining significant asset" (Recognition Decision at 33 (quoting the New York Plaintiffs' objection to recognition)), and that the New York Action "is the Debtor's sole remaining asset." (Stay Decision at 37 (describing the New York Plaintiffs' motion).) This Court also found that the claims underlying the New York Action "constitute intangible property of the Debtor." (Recognition Decision at 25.)

22. The record also shows that the Settlement resolves a liability of the Debtor: the former directors' and officers' contingent indemnification rights against the Debtor for the claims in the New York Action. (Br. ¶ 48 n.19; Third Morrison Aff. ¶¶ 56-59, Morrison Decl. Ex. F.)

*iii. Insurance does not cover the Foreign Representatives' fees.*

23. The Objection states that "Culligan LTD has affirmed several times that its fees are covered by insurance, and the only amounts not covered are a part of the Foreign Representatives' (Joint Liquidators') expenses," citing "DKT 83, P. 16," and that the Foreign Representatives "incur fees … voluntarily." (Obj. ¶ 22.) Page 16 of the Stay Decision is the Court's summary of the New York Plaintiffs' own arguments on their 2023 motion, including their contention that "the Debtor's legal fees associated with the New York Action are mostly covered by insurance." (Stay Decision at 16 (citing their motion ¶ 30).)

24. The record shows the following. The Foreign Representatives have averred that while certain defense costs in the New York Action are covered under a liability policy issued to the Debtor, "the fees of the Foreign Representatives in connection with their work supporting the effort of Debtor's counsel in the New York Action, including reviewing pleadings, preparing factual submissions, and otherwise supervising counsel in the New York Action, are not covered under the Insurance Policy and are therefore chargeable to the Debtor's estate," and that "some, but not all, of the Foreign Representatives' fees in connection with this chapter 15 proceeding will be covered under the Insurance Policy." (First Thresh Decl. ¶¶ 43-44 (ECF No. 7); Br. ¶ 35.)

*iv. The Foreign Representatives did not "do nothing" after the Stay Decision.*

25. The Objection states that the Foreign Representatives "did nothing for over four years after this Court granted recognition" and for "two years" after the Stay Decision; that they "fabricated a 'settlement'"; and that the Settlement was announced only "upon the Court ordering a status conference." (Obj. ¶¶ 7, 12, 30.)

26. The record shows the following sequence. Recognition was granted on July 2, 2021. (Recognition Decision at 39.) On July 30, 2021, the New York Plaintiffs moved to lift the stay and to compel abandonment of the New York Action; that motion remained pending, through briefing, a hearing, and supplemental letters, until the Court denied it on September 12, 2023. (ECF No. 65; Stay Decision at 15-19, 40.) In September 2021, the Foreign Representatives obtained the Bermuda Substitution Order, under which they may not "seek the dismissal of or otherwise dispose of the New York Action without sanction of the Bermuda Court," on notice to the New York Plaintiffs' counsel. (Stay Decision at 15, 30-31; ECF No. 67-2.) The Stay Decision described the process that would follow: a sanction application in the

Bermuda Court, on notice to the New York Plaintiffs, and then a return to this Court "to obtain recognition of such sanction and for limited relief from the automatic stay to dismiss the New York Action." (Stay Decision at 30-31.) In or about February 2024, the Foreign Representatives, through counsel, opened settlement negotiations with counsel for the defendants in the New York Action; those negotiations continued for approximately eighteen months and produced, in the summer of 2025, an agreement in principle and a draft agreement, subject to the Bermuda Court's sanction. (Morrison Decl. ¶ 26.) On July 7, 2025, in advance of a status conference held the following day, I reported to the Court by letter that "[a]fter nearly 18 months of settlement discussions" an agreement in principle had been reached, that the Foreign Representatives would seek the Bermuda Court's sanction "upon notice to all interested parties, including the plaintiffs in the New York Action," and that, should sanction be granted, they "would then seek recognition from this Court accordingly." (ECF No. 87 at 1.) On August 29, 2025, the Foreign Representatives filed the Sanction Summons in the Bermuda Court. (Morrison Decl. ¶ 31.)

*v. The undertaking was to give notice of the sanction application, not of the negotiations.*

27. The Objection states that the Settlement was reached "without any prior notice to or involvement by the New York Plaintiffs." (Obj. ¶ 30; *see* Second Singler Aff. ¶¶ 33, 35.) The Foreign Representatives' undertaking, recorded in the Bermuda Substitution Order, was that they would not seek dismissal or disposition of the New York Action without the Bermuda Court's sanction, and that any hearing on those matters would be "on notice to the attorney for the [New York Plaintiffs] who shall be entitled to be heard at such sanction application." (Stay Decision at 30-31 (quoting Bermuda Substitution Order at 1, ECF No. 67-2).) Neither that order nor the Stay Decision required the Foreign Representatives to give notice of, or to include the New York

Plaintiffs in, settlement negotiations; the notice required was notice of the sanction application, and it was given. (Morrison Decl. ¶ 32.) The Bermuda Court addressed this objection directly: "This is not a substantive objection. The recital to the Order requires the joint liquidators to give notice of the present application for sanction, which they have done." (Reasons ¶ 40.)

*vi. The Motion was filed after the status conferences the Court directed.*

28. The Objection states that Judge Garrity "specifically ordered the parties to confer and schedule a status conference prior to filing any motion for recognition of a Bermuda Court order," and that "[t]he Foreign Representatives gave no prior notice and simply filed the current Motion." (Obj. ¶ 31 (citing ECF No. 91); ECF No. 115 ¶ 6.) ECF No. 91 is the minute order from the September 9, 2025 status conference, at which Mr. Singler appeared. It directs that, "[b]efore filing any pleading in this Court seeking recognition of any order of the Bermuda Court sanctioning the proposed settlement, counsel to the Foreign Representatives and counsel to New York Plaintiffs will contact Chambers to arrange for a status conference prior to moving forward with any motions in this Court." (ECF No. 91.) Status conferences were held before Judge Garrity on November 4 and December 23, 2025 (ECF Nos. 94, 99), and before Your Honor on July 8, 2026, at which time the scheduled sanction hearing in Bermuda was discussed, as was the fact that the Foreign Representatives hoped to be seeking recognition of the resulting order in this Court shortly thereafter. (ECF No. 107.) The Foreign Representatives filed the Motion on August 12, 2026, after the Sanction Order was entered on July 18, 2026 and the Reasons Opinion was published on July 29, 2026. (Morrison Decl. ¶ 38; ECF Nos. 110, 111.)

### C. The Sanction Proceeding Before the Bermuda Court (August 2025 to July 2026).

*i. Notice, service, and the opportunity to be heard.*

29. The Objection states that "[t]he Bermuda Proceedings did not offer the New York Plaintiffs an ample opportunity to be heard" (Obj. at 26); that "[t]he Bermuda Sanction Hearing did not provide due process" (*id.* at 28); and that the Appearing Parties withdrew their objection because of "[t]he costs associated with the Bermuda objection" and the risk that, under "the English rule," "all of the New York Plaintiffs could have been jointly liable for all of Culligan Ltd's fees" (*id.* ¶¶ 44-45).

30. The record shows the following. The Sanction Application was commenced on August 29, 2025. (Morrison Decl. ¶ 31.) By the Directions Order of September 26, 2025, the Bermuda Court directed the Foreign Representatives to deliver the Sanction Summons, the Second Morrison Affidavit, and the Directions Order by international courier to the New York Plaintiffs' New York attorneys, and set deadlines of October 17, 2025 for any notice of intention to appear and October 31, 2025 for responsive evidence; those documents were so served. (Directions Order ¶¶ 2-3, Morrison Decl. Ex. C; Morrison Decl. ¶ 32.) Two of the New York Plaintiffs, the Appearing Parties, gave notice of their intention to appear, sought and obtained an extension of time, and on March 5, 2026—more than five months after the Directions Order—filed their evidence, the Second Singler Affidavit and the Borghese Affidavit. (Morrison Decl. ¶ 33 & Exs. D, E.)

31. On May 19, 2026, after the Foreign Representatives had filed their responsive evidence, the Appearing Parties withdrew their objections when the Foreign Representatives agreed not to seek costs against them if the Sanction Application succeeded. (*Id.* ¶¶ 35-36.) Despite the withdrawal, the Bermuda Court "read the affidavits of Mr Morrison and Mr Singler

(who had sworn affidavits in opposition to the sanction), as well as the expert opinion on New York law provided by Hon Shelley C. Chapman (Ret)," and, "[e]ven though [the objections] are no longer pursued, the court has taken into account the points raised in its assessment of the sanction application." (Reasons ¶¶ 2, 28.) The Sanction Order recites that "all parties in interest had reasonable notice and had the opportunity to be heard." (Sanction Order at 1.)

*ii. The law the Bermuda Court applied, and the evidence it considered.*

32. The Objection states that the Bermuda Court "appl[ied] exclusively Bermuda law"; "applied Bermuda law to the issue of standing, not New York law"; "applied Bermuda standards as to insolvency and other substantive matters"; and "did not consider the Affidavit of Robert Borghese." (Obj. ¶¶ 13(a)-(c), 18, 39.) The Objection cites for these statements paragraphs 2, 23, and 31 of the "Sanction Order, DKT 110-1." (*Id.* ¶ 13(b)-(c).) Those are paragraphs of the Reasons Opinion.[3] The Reasons Opinion states, at the paragraphs the Objection cites and those adjacent to them:

> 2. The sanction application was heard on 17 July 2026. At the hearing, the court reviewed the background materials in support of the application, read the affidavits of Mr Morrison and Mr Singler (who had sworn affidavits in opposition to the sanction), as well as the expert opinion on New York law provided by Hon Shelley C. Chapman (Ret) a retired judge of the US Bankruptcy Court in relation to matters of New York law, and considered the legal principles that apply on an application for sanction under section 175 (1) of the Companies Act 1981.
>
> 23. The joint liquidators have been consistently advised by successive New York attorneys over a period of more than ten years that the derivative claim to recover the dividend is a weak claim on the facts and the law. The 2007 refinancing was supported by an independent opinion as to solvency by a reputable financial adviser before the dividend was paid. The

[3] Exhibit I to the Morrison Declaration, the Sanction Order, is a two-page order. The paragraphs the Objection cites as "Sanction Order, DKT 110-1, P.1, ¶2," "P.5, ¶23," and "P.6, ¶31" (Obj. ¶ 13(b)-(c)) correspond to paragraphs 2, 23, and 31 of the Reasons Opinion, which the Bermuda Court published on July 29, 2026, eleven days after the Sanction Order. (Morrison Decl. ¶ 38.)

> directors are entitled to rely upon the business judgment rule, in the absence of self dealing, which is not alleged. The company continued to operate for almost five years before it was liable to default on its loan obligations. The evidence is that it never was insolvent. The plaintiffs in the New York action acquiesced in and benefitted from the dividend the legality of which they now seek to challenge. The claim seeks a recoupment of a dividend in order to distribute it back to the shareholders by way of distribution on a liquidation, with no benefit to the company. These factors present substantial (if not insurmountable) obstacles to the progress and successful outcome of the claim.
>
> 31. The court accepts that as a matter of Bermuda law, the derivative cause of action being pursued by the plaintiffs in the New York action vested in the joint liquidators upon their appointment under sections 174 (1) and 185 (1) of the Bermuda Companies Act 1981.
>
> 32. The court also accepts that upon recognition of the present liquidation proceedings as a foreign main proceeding under 11 USC 1520 (a) (3) the joint liquidators were vested with the rights and powers of a bankruptcy trustee over the company's US assets under US federal Bankruptcy law which supersedes any New York law analysis. This is based on the uncontradicted and clear analysis given by Hon Judge Shelley Chapman (Ret) in her expert affidavit on US Bankruptcy law.
>
> 34. The court is satisfied that following the recognition of the Bermuda liquidations as a foreign main proceeding, the relevant standard of pleading would be governed by the requirements of the US Bankruptcy Code for the New York plaintiffs to show a colourable claim and an unjustified failure of the estate to sue because the litigation would benefit the estate. … Although the court does not need to (and does not) make any ultimate findings, it is clear the joint liquidators' reasoning on this point is not based on a flawed understanding of the relevant legal issues.

(Reasons ¶¶ 2, 23, 31-32, 34 (footnotes omitted).) Paragraph 23 of the Reasons Opinion, which the Objection cites for the statement that the Bermuda Court "applied Bermuda standards as to insolvency," indicates only that "the evidence is that [the Debtor] never was insolvent", but does not state that it is applying "Bermuda standards." As to the Borghese Affidavit: it was filed by the Appearing Parties on March 5, 2026 as part of their responsive evidence (Morrison Decl. ¶

33 & Ex. E); it was cited in support of the first two of the Appearing Parties' six grounds of objection (*id.* ¶ 34); it was addressed by name in the Chapman Expert Affidavit (Chapman Aff. ¶¶ 43-44); and the six grounds it supported are the six the Bermuda Court "has taken into account" and addressed in the Reasons Opinion (Reasons ¶¶ 28-40).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on this 18th day of September, 2026
in New York, New York

s/ David A. Berger
David A. Berger