**Hearing Date and Time: September 22, 2026 at 10:00 a.m. (prevailing U.S. Eastern Time)**

ALLEGAERT BERGER & VOGEL LLP
111 Broadway, 20th Floor
New York, New York 10006
Telephone: (212) 571-0550
Facsimile: (212) 571-0555
David A. Berger
David A. Shaiman
Alexander E. Ehrlich

*Counsel to the Foreign Representatives*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Case No. 20-12192 (LGB)** |
| **CULLIGAN LTD.,**[1] | |
| **Debtor in Foreign Proceedings.** | **Chapter 15** |

**THE FOREIGN REPRESENTATIVES'[2] REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR ENTRY OF AN ORDER (I) RECOGNIZING AND ENFORCING THE BERMUDA COURT'S SANCTION ORDER APPROVING THE SETTLEMENT AGREEMENT; (II) PERMANENTLY ENJOINING ACTIONS IN CONTRAVENTION OF THE SANCTION ORDER; (III) GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY TO DISMISS THE NEW YORK ACTION; AND (IV) GRANTING RELATED RELIEF**

[1] Culligan Ltd. ("Culligan" or the "Debtor") is a Bermuda exempted company registered with the Registrar of Companies in Bermuda under registration number 35591. Culligan's registered office is located at c/o Teneo (Bermuda) Limited, 19 Par-la-Ville Road, 3rd Floor, Hamilton, HM 11, Bermuda.
[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Foreign Representatives' memorandum of law in support of the Motion (ECF No. 111, the "Opening Brief", cited herein as "Br."), the Motion (ECF No. 112), or the Morrison Declaration (ECF No. 110).

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... iii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 4

A. *Purdue* Does Not Preclude a Court-Sanctioned Compromise of the Debtor's Own Derivative Claims, Which Sections 1521 and 1507 Expressly Authorize .......... 4

1. *Purdue*, a Chapter 11 Decision, Explicitly Confirms Releases of Derivative Claims Granted to Third Parties Are Permissible. .......... 4

2. Post-Purdue Chapter 15 Decisions, and the Settled Law of This District, Permit Enforcement of Foreign-Court-Approved Releases. .......... 5

B. The Process Here and in Bermuda Comported with this Court's Orders, Applicable Law, and Due Process .......... 7

1. The New York Plaintiffs Had the Opportunity to Be Heard that this Court Prescribed, Abandoned that Opportunity, and Are Owed No Further Hearing Under Section 626(d) or Otherwise Beyond this Motion. .......... 7

2. The Sanction Order Applied Federal Bankruptcy Law, Not Bermuda Law, to Authority and Standing, Relying on Judge Chapman's "Clear Analysis." .......... 9

3. The Bermuda Court's Procedures Comport with United States Public Policy under Section 1506. .......... 11

4. The Bermuda Proceeding Satisfies the Relevant Standard for Comity .......... 12

C. The Injunction and Related Relief Are Authorized, the New York Plaintiffs' Interests Are Sufficiently Protected, and There Is No Basis for Abstention .......... 13

1. The Injunction Meets Section 1521(e)'s Standards, and the Objection Does Not Contend Otherwise. .......... 13

2. Section 1522 Is Satisfied, Because the Interest It "Sufficiently Protects" Is the New York Plaintiffs' Interest as Shareholders. .......... 14

3. Section 1334(c)(2) Has No Application, Because No State-Law Proceeding Is Before This Court and the Motion Is a Core Proceeding.................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Agostino v. Hicks*,
845 A.2d 1110 (Del. Ch. 2004)....2

*In re Ambac Fin. Grp., Inc.*,
487 F. App'x 663 (2d Cir. 2012)....1

*Berry v. Rampersad*,
21 Misc. 3d 851 (Sup. Ct. Kings Cnty. 2008)....9

*Browne v. Prentice Dry Goods, Inc.*,
No. 84 Civ. 8081 (PKL), 1986 WL 6496 (S.D.N.Y. June 5, 1986)....8

*In re Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.*,
670 B.R. 150 (Bankr. D. Del. 2025)....6, 8

*Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*,
144 A.D.3d 611 (1st Dep't 2016)....9

*Farmland Indus., Inc. v. Frazier-Parrott Commodities*,
111 F.3d 588 (8th Cir. 1997)....8

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
178 F.4th 747 (1st Cir. 2026)....5

*In re Garcia Avila*,
296 B.R. 95 (Bankr. S.D.N.Y. 2003)....13

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024)....4, 5

*In re Iida*,
377 B.R. 243 (9th Cir. BAP 2007)....11

*Kiener Maschinenbau GmbH v. Bass*,
808 F. Supp. 3d 1339 (N.D. Ga. 2025)....12, 13

*Life & Cas. Ins. Co. of Tenn. v. McCray*,
291 U.S. 566 (1934)....8

*In re Manley Toys Ltd.*,
580 B.R. 632 (Bankr. D.N.J. 2018)....11

*In re Markus*,
610 B.R. 64 (Bankr. S.D.N.Y. 2019)....14

*In re Metcalfe & Mansfield Alt. Invs.*,
421 B.R. 685 (Bankr. S.D.N.Y. 2010) ..... 6

*Mt. McKinley Ins. Co. v. Corning Inc.*,
399 F.3d 436 (2d Cir. 2005) ..... 15

*In re Nash Eng'g Co.*,
No. 3:25-CV-00055 (JCH), 2025 WL 2731375 (D. Conn. Sept. 25, 2025) ..... 5

*In re Odebrecht Engenharia e Construção S.A. - Em Recuperação Jud.*,
669 B.R. 457 (Bankr. S.D.N.Y. 2025) ..... 6

*In re Oi S.A.*,
674 B.R. 175 (Bankr. S.D.N.Y. 2025) ..... 2, 5

*In re Olinda Star Ltd.*,
614 B.R. 28 (Bankr. S.D.N.Y. 2020) ..... 13

*In re Pack Liquidating, LLC*,
658 B.R. 305 (Bankr. D. Del. 2024) ..... 1

*In re Penn Cent. Sec. Litig.*,
335 F. Supp. 1026 (E.D. Pa. 1971) ..... 5

*In re Rede Energia S.A.*,
515 B.R. 69 (Bankr. S.D.N.Y. 2014) ..... 12, 13, 14

*In re Sino-Forest Corp.*,
501 B.R. 655 (Bankr. S.D.N.Y. 2013) ..... 6

*In re Toft*,
453 B.R. 186 (Bankr. S.D.N.Y. 2011) ..... 11, 12

*In re Treco*,
240 F.3d 148 (2d Cir. 2001) ..... 12, 13

*In re Vitro S.A.B. de C.V.*,
701 F.3d 1031 (5th Cir. 2012) ..... 6

Statutes

11 U.S.C. § 1517(d) ..... 2

11 U.S.C. § 1520(a)(3) ..... 2, 10

11 U.S.C. § 1521(a)(3) ..... 1

11 U.S.C. § 1521(a)(5) ..... 5

11 U.S.C. § 1521(a)(7) .......... 1, 5

28 U.S.C. § 157(b)(2)(P) .......... 15

28 U.S.C. § 1334(c)(2) .......... 15

Bermuda Companies Act § 175(1)(f) .......... 9

N.Y. Bus. Corp. Law § 626(d) .......... *passim*

N.Y. Crim. Proc. Law § 30.10(2)(c) .......... 11

New York Penal Law § 190.35 .......... 11

<u>Rules</u>

Fed. R. Bankr. P. 8002(a)(1) .......... 3

Fed. R. Bankr. P. 9019(a) .......... 1, 5, 12

Fed. R. Bankr. P. 9023 .......... 3

Fed. R. Bankr. P. 9024 .......... 3

Fed. R. Civ. P. 60(b)(1), (2) .......... 2

Fed. R. Evid. 702 .......... 9

<u>Other Authorities</u>

U.S. Const. art. VI, cl. 2 .......... 9

TO THE HONORABLE LISA G. BECKERMAN,
UNITED STATES BANKRUPTCY JUDGE:

1. The Foreign Representatives respectfully submit this reply memorandum of law in further support of their Motion and in response to the New York Plaintiffs' Objection.[3]

**PRELIMINARY STATEMENT**

2. The New York Plaintiffs' Objection is procedurally improper, substantively flawed, and riddled with both conclusory statements and misstatements of controlling law. Chiefly, it seeks to untimely relitigate legal and factual[4] findings decided by this Court and the Bermuda Court, including who controls the New York Action's claims and how they may be compromised. The Objection reads as though recognition never occurred. But it did.

3. Recognition has four important consequences: (1) as this Court has held, the Foreign Representatives are now vested "with the 'rights and powers' of a bankruptcy trustee to control the Debtor's U.S.-based assets, *see* 11 U.S.C. § 1521(a)(3), which includes the derivative claims comprising the New York Action" (Stay Decision at 23); (2) the Foreign Representatives may settle derivative claims because compromise of the estate's own cause of action is relief "available to a trustee" (11 U.S.C. § 1521(a)(7)) in every case, *see* Fed. R. Bankr. P. 9019(a); (3) the New York Plaintiffs lack a cognizable interest in the release of those claims;[5] and (4) any argument that the Settlement must be approved by the New York Court, or is otherwise subject to N.Y. Bus. Corp. Law § 626(d), must yield to the Supremacy Clause.[6]

---

[3] ECF No. 114 (the "Objection," cited herein as "Obj.").
[4] The focus of this brief is the Objection's substantive failings. The Foreign Representatives do not here address each of the near myriad misstatements of fact made in the Objection but, for purposes of preserving the record, address the most significant misstatements in the accompanying Reply Declaration of David A. Berger.
[5] *See In re Ambac Fin. Grp., Inc.*, 487 F. App'x 663, 665 (2d Cir. 2012) (summary order) (where Ambac released derivative claims "as part of a settlement with (*inter alia*) its directors' and officers' liability insurers …. [T]he derivative claims belong to the Ambac estate and [the shareholder] lacks a cognizable interest in their release.").
[6] *See In re Pack Liquidating, LLC*, 658 B.R. 305, 324 (Bankr. D. Del. 2024) (a state statute that "sought to restrict the authority of a bankruptcy court" to authorize an action on the estate's behalf "would conflict with the Bankruptcy Code and thus be preempted" under the Supremacy Clause, which provides that federal laws "'shall be

4. The Objection nonetheless asks this Court to disregard that law, nullify its prior decisions, and grant relief the New York Plaintiffs have not properly sought. Without making the required motions, let alone showings, they ask the Court to "lift the stay as to the New York Action completely, and allow the New York Courts to decide whether to extend comity and approve the settlement agreement, or confirm the New York Plaintiffs' standing and allow the case to proceed." (Obj. ¶ 19; *see also id.* ¶ 71.) This is precisely the relief the Stay Decision denied after applying the *Sonnax* factors (Stay Decision at 31-36, 40). It is also relief that may be sought only by a motion under section 362(d), which the New York Plaintiffs have not made. The Objection's suggestion that "this Petition [be] dismissed" (Obj. ¶ 21) would undo the Recognition Decision, relief this Court has held may be revisited only under section 1517(d), upon a showing that the grounds for recognition "were fully or partially lacking or have ceased to exist." *In re Oi S.A.*, 674 B.R. 175, 189-90 (Bankr. S.D.N.Y. 2025) (Beckerman, J.) (quoting 11 U.S.C. § 1517(d)). No such motion is before the Court, and the Court has already rejected all of the New York Plaintiffs' termination arguments reiterated in the Objection.[7] The Objection should be dismissed for these reasons alone.

5. The New York Plaintiffs fail to identify a single "mistake" in the Court's prior decisions or a shred of material, outcome-determinative "newly discovered evidence." *See* Fed.

the supreme law of the Land; and the Judges in every State shall be bound thereby'"); *Agostino v. Hicks*, 845 A.2d 1110, 1126 (Del. Ch. 2004) (state court asked by a shareholder to allow him to proceed on "potential derivative claims" a bankruptcy court's confirmation order had "extinguished" "faced … a large obstacle: the Supremacy Clause [because] federal law operated to extinguish plaintiff's claim entirely").

[7] The Objection's arguments—that this case is a "bad faith" "litigation tactic" (Obj. ¶¶ 3-7, 12, 34), that the Foreign Representatives are conflicted (*id.* ¶¶ 40, 66-69), that they should have abandoned the New York Action (*id.* ¶¶ 46, 48), and that section 1520(a)(3) did not give the Foreign Representatives control of the claims (*id.* ¶¶ 64-65)—were each duly considered and rejected. *See* Recognition Decision at 28-32 (bad faith does not trigger section 1506); Stay Decision at 39-40 (chapter 15 may be used "to bring the New York Action to a conclusion in furtherance of the Debtor's wind-down"); *id.* at 29 (Court "not convinced" that KPMG's status as a defendant "creates a conflict of interest"); *id.* at 24-26 (section 554 inapplicable); *id.* at 20-21, 23 (recognition vested the Foreign Representatives with the rights of a trustee over "the derivative claims comprising the New York Action").

R. Civ. P. 60(b)(1), (2); Fed. R. Bankr. P. 9024. The New York Plaintiffs' unsupported rhetoric is plainly insufficient to overturn the Court's findings that the Bermuda Liquidation is entitled to recognition and comity, that the Foreign Representatives control the New York Action, and that the stay pending the Bermuda Court's disposition was proper. (Recognition Decision at 39; Stay Decision at 23, 30-31, 40.) The time to appeal or seek reconsideration of those decisions has long expired. *See* Fed. R. Bankr. P. 8002(a)(1), 9023; Br. ¶ 33.[8]

6. Tellingly, the Objection never confronts the benefit the Settlement delivers. It is the first—and only—recovery the New York Action has produced for the Company in fourteen years. The $1,580,000 Settlement Payment is payable to the Company (the settling shareholder-defendants having waived any distribution rights) and without it, the Bermuda Court found, there is "a likelihood of no return at all" to the shareholders the New York Plaintiffs purport to represent. (Reasons ¶¶ 9, 24-25, 38; Br. ¶¶ 38-40.)

7. Lacking any substantive objection, the New York Plaintiffs resort to wholly unsupported character attacks on the Foreign Representatives and assert that the Settlement Payment is "a testament to self-interest." (Obj. ¶ 48.) The reality is that granting the Objection would resume, at the estate's expense, a case this Court found "nowhere close to trial ready" and potentially expose the estate to indemnification claims, forfeit a Settlement Payment that is conditioned on recognition and enforcement of the Sanction Order, and leave open a court-supervised liquidation already in its seventh year. (Stay Decision at 33-34; Settlement Agreement § 1; Morrison Decl. ¶ 27; Reasons ¶ 26.)

---

[8]The only supposed "new facts" the Objection offers, that the Foreign Representatives "did nothing" after the Stay Decision and then "fabricated" a settlement (Obj. ¶¶ 7, 12, 30), are neither new nor accurate. The Stay Decision expressly contemplated the precise sequence that followed: a Bermudian sanction application on notice to the New York Plaintiffs, followed by this request to recognize the resulting order. (Stay Decision at 30-31.) Settlement negotiations began in February 2024, culminated in the summer of 2025, and the Sanction Summons was filed in August 2025. The delays in Bermuda were at the Appearing Parties' own request. (Morrison Decl. ¶¶ 26, 31-33.)

8. In the circumstances, the Motion asks for nothing extraordinary. It seeks recognition of the Sanction Order, an injunction to protect it, and limited stay relief to implement it—assistance courts in this district routinely grant to foreign-court-approved settlements. (Br. ¶¶ 57-66.) The Objection provides no reason to withhold this relief and should be dismissed.

## ARGUMENT

### A. *Purdue* Does Not Preclude a Court-Sanctioned Compromise of the Debtor's Own Derivative Claims, Which Sections 1521 and 1507 Expressly Authorize.

#### 1. *Purdue*, a Chapter 11 Decision, Explicitly Confirms Releases of Derivative Claims Granted to Third Parties Are Permissible.

9. The Objection misreads *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204 (2024), as barring the releases in the Settlement, and ignores the Supreme Court's holding that it neither applies outside chapter 11 ("we hold only that the bankruptcy code does not authorize a release … as part of a plan of reorganization under Chapter 11," *id.* at 227), nor precludes settlements of derivative claims ("The dissent neglects why a bankruptcy court may resolve derivative claims … because those claims belong to the debtor's estate. … **[N]o one questions that Purdue may address in its own bankruptcy plan claims … including those claims derivatively asserted by another on its behalf**," *id.* at 219 (emphasis added)). In *Purdue*'s words, derivative claims "belong to the debtor's estate." *Id.* That is the dispositive distinction the Objection ignores: derivative claims may be resolved by the estate's fiduciary, while claims belonging to third parties are different. (Obj. ¶¶ 50-58.)

10. The compromised claims are the Debtor's derivative claims, as this Court has already confirmed (Stay Decision at 20-21, 23; Settlement Agreement §§ 3-5, 9-11; Br. ¶ 39), and courts applying *Purdue* routinely hold that settlements of claims belonging to the estate

remain proper.[9] The Objection's mistaken premise—that the Foreign Representatives seek "to extinguish the New York Plaintiffs' claims against those defendants" (Obj. ¶ 58)—fails because the New York Plaintiffs have no such claims: the New York Action asserts only claims of the Company (Stay Decision at 5; Morrison Decl. ¶ 11), the releases are given by the Company and affect only the Company's claims. (Settlement Agreement §§ 3-5, 9-11; Br. ¶ 39.)

11. This is consistent with chapter 15 and general bankruptcy principles. A fiduciary's compromise of the estate's own cause of action is relief "available to a trustee" (11 U.S.C. § 1521(a)(7)) in every case, *see* Fed. R. Bankr. P. 9019(a), and chapter 15 authorizes this Court to grant a foreign representative both that relief and an order "entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative." 11 U.S.C. § 1521(a)(5), (7); *Oi*, 674 B.R. at 186-87. The Objection's assertion that "[t]he requested relief is not expressly authorized by any section of the Bankruptcy Code" (Obj. at 33, ¶ 59) overlooks both provisions.[10]

**2. Post-Purdue Chapter 15 Decisions, and the Settled Law of This District, Permit Enforcement of Foreign-Court-Approved Releases.**

12. *Crédito Real*, which the Objection cited favorably, held that *Purdue*'s construction of section 1123(b)(6) does not limit the relief available under section 1521 and that "[i]t is well-settled that enforcement of a third-party release contained in a foreign plan is appropriate

[9] *See, e.g.*, *In re Nash Eng'g Co.*, No. 3:25-CV-00055 (JCH), 2025 WL 2731375, at *7 (D. Conn. Sept. 25, 2025), appeal docketed, No. 25-2553 (2d Cir. Oct. 16, 2025) ("The key holding in *Purdue* is that a settlement may be approved, where the release of claims and injunctions are the property of the Bankruptcy Estate."); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 178 F.4th 747, 758 (1st Cir. 2026) (*Purdue* "distinguished between (1) claims nominally held by third parties, which can be settled in the ordinary course of bankruptcy proceedings because they substantively belong to the debtor, and (2) claims truly belonging to third parties, which cannot be so resolved.").

[10] The Objection's own authority confirms the point. *Penn Central*, cited by the New York Plaintiffs (Obj. ¶¶ 40, 68), gave court-appointed and supervised trustees exclusive control of thirteen derivative suits and dismissed the shareholder plaintiffs from those claims, finding "a clear case … for the absence of collusion and the presence of good faith." *In re Penn Cent. Sec. Litig.*, 335 F. Supp. 1026, 1040-41 (E.D. Pa. 1971). The Bermuda Court likewise found "no evidence of any conflict of interest," as has this Court. (Reasons ¶¶ 35, 41; Stay Decision at 29 & n.25.)

under [section 1521(a)]."[11] *In re Odebrecht Engenharia e Construção S.A. - Em Recuperação Jud.*, 669 B.R. 457 (Bankr. S.D.N.Y. 2025), held the same: "[a]ssuming arguendo" that the instant order created nonconsensual third-party releases, the court "has the power to issue such an order in a Chapter 15 case, pursuant to at least section 1521." *Id.* at 472; *see also id.* at 469 (collecting S.D.N.Y. decisions enforcing foreign plans containing nonconsensual third-party releases).[12] The Objection's assertion that "neither *Odebrecht* nor *Crédito Real* has been affirmed by any District Court" (Obj. ¶ 57) is wrong as to *Crédito Real*: the District Court affirmed in March 2026,[13] and misleading as to *Odebrecht*, where no appeal was taken.

13. Nor is the Objection correct that *Odebrecht* and *Crédito Real* stand alone; courts in other chapter 15 cases have enforced releases of claims arising from "a non-debtor's own pre-petition wrongdoing." (Obj. ¶¶ 54, 57.) *See In re Sino-Forest Corp.*, 501 B.R. 655, 657-59, 663-66 (Bankr. S.D.N.Y. 2013) (enforcing Canadian order releasing the class plaintiffs' own pre-petition securities-fraud claims—direct claims pending in United States class actions, not estate claims—against the debtor's non-debtor auditor), *cited at* Br. ¶¶ 61, 63; *In re Metcalfe & Mansfield Alt. Invs.*, 421 B.R. 685, 692-700 (Bankr. S.D.N.Y. 2010) (enforcing Canadian plan releasing pre-petition claims—including investors' direct claims sounding in fraud—against non-debtor financial institutions), *cited at* Br. ¶ 65.[14] Both remain good law in this district. *Odebrecht*, 669 B.R. at 469, 475-76. Here, the Settlement seeks far less: a release of the

---

[11] *In re Crédito Real, S.A.B. de C.V., SOFOM, E.N.R.*, 670 B.R. 150, 166-67 (Bankr. D. Del. 2025), *aff'd*, 677 B.R. 192 (D. Del. 2026), *appeal dismissed*, No. 26-2356 (3d Cir. Sept. 11, 2026).

[12] The Objection misleadingly quotes from *Odebrecht*'s survey of chapter 11 exculpation standards to argue that only "post-petition conduct" may be released in chapter 15. (Obj. ¶ 55.) *Odebrecht* held no such thing. *Compare* 669 B.R. at 468, *with id.* at 472.

[13] After the Third Circuit denied its motion to hold the appeal in abeyance, *In re Crédito Real*, No. 26-2356 (3d Cir. July 10, 2026), ECF No. 24, appellant voluntarily dismissed the appeal. *Id.* at ECF Nos. 29, 30 (Sept. 11, 2026).

[14] The Objection addresses neither case. *Vitro*, on which it relies instead (Obj. ¶ 52), affirmed the denial of enforcement of a Mexican plan that "discharg[ed] obligations held by non-debtor guarantors" to objecting noteholders—the creditors' own claims, not the debtor's. *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1058, 1063-64, 1067-68 (5th Cir. 2012).

Company's own claims, sanctioned by the court supervising its liquidation, in exchange for the only recovery those claims have ever produced, which will fund the Debtor's distributions and permit the Bermuda Liquidation to wind down. (Reasons ¶¶ 9, 24, 26, 37-39.)

### B. The Process Here and in Bermuda Comported with this Court's Orders, Applicable Law, and Due Process.

#### 1. The New York Plaintiffs Had the Opportunity to Be Heard that this Court Prescribed, Abandoned that Opportunity, and Are Owed No Further Hearing Under Section 626(d) or Otherwise Beyond this Motion.

14. The Objection's due-process argument recasts the Stay Decision as a promise that the New York Plaintiffs would be heard in the New York Court on the Settlement, and under the rubric of N.Y. Bus. Corp. Law § 626(d). (Obj. ¶¶ 44, 49, 71.) But the Stay Decision made no such promise. It stated that the New York Plaintiffs "will seemingly have *up to* three opportunities to challenge dismissal of the New York Action" (emphasis added), and it premised the third as arising only if the New York Plaintiffs were successful in moving to lift the stay to oppose dismissal. (Stay Decision at 31 ("(assuming this Court lifts the stay for such limited purpose) *possibly* before the New York Court opposing final dismissal ….") (emphasis added).) As to the other two opportunities, the Court identified the Bermuda hearing as answering the New York Plaintiffs' due-process complaint, an opportunity they took and then abandoned. (*Id.*; Morrison Decl. ¶¶ 33-36.) The second opportunity is this Motion. As to the "possible" third, the New York Plaintiffs have not brought a proper section 362(d) lift-stay motion to oppose dismissal, nor established through a proper showing that they are entitled to such relief.

15. The New York Plaintiffs' attempt to recast the Appearing Parties' voluntary withdrawal of their objection in Bermuda as a denial of due process is meritless. They were served, appeared through Bermuda counsel, obtained an extension, and filed fact and purported expert evidence objecting to the Settlement. They elected to withdraw their objection only after,

at the Appearing Parties' instigation, the Foreign Representatives agreed not to seek costs against them. (Morrison Decl. ¶¶ 32-36; Obj. ¶ 44.)[15] The New York Plaintiffs attempt to excuse the withdrawal on the grounds that Bermuda applies the "English" fee-shifting rule.[16] However, the Supreme Court has long recognized that fee-shifting against the defeated litigant, as per the "English Rule," comports with due process.[17] Where, as here, an objector "played an active role" in the foreign proceeding and elected not to press an available objection there, it "cannot contend that there was a procedural unfairness." *Crédito Real*, 670 B.R. at 171-73. Moreover, the Bermuda Court did not treat the withdrawal as a default: it took the withdrawn objections "into account," evaluated each, and found it "would not have been inclined to accept them" were they pressed. (Reasons ¶¶ 28-30.)

16. The New York Plaintiffs' other argument, which suggests either the Bermuda or New York Court must apply the rubric of N.Y. Bus. Corp. Law § 626(d) before approving the settlement and dismissing the New York Action, does not permit relitigation of the Settlement. Its requirement of "the approval of the court having jurisdiction of the action" presupposes that a derivative plaintiff is in control of the action, but control of these claims passed to the Foreign

---

[15] The Foreign Representatives are aware of no chapter 15 decision denying recognition of a foreign order because the foreign jurisdiction follows the "English Rule" on fees, and the Objection cites none. Courts recognizing foreign judgments under relevant statutes hold the opposite. *See, e.g.*, *Browne v. Prentice Dry Goods, Inc.*, No. 84 Civ. 8081 (PKL), 1986 WL 6496, at *3 (S.D.N.Y. June 5, 1986) ("While it is true that under the so-called 'American Rule' attorneys' fees are not awarded to the successful litigant, this does not mean that an award of attorneys' fees under the 'English Rule' … is repugnant to the policy of New York State.").

[16] The New York Plaintiffs' other argument—that the Appearing Parties had insufficient time to consult the remaining New York Plaintiffs—rings hollow: the Directions Order issued September 26, 2025, but the hearing was not held by the Bermuda Court until July 17, 2026, nearly ten months later, largely because of the extension the Appearing Parties sought and were provided. (Morrison Decl. ¶¶ 32-37; Obj. ¶ 44.)

[17] *See Life & Cas. Ins. Co. of Tenn. v. McCray,* 291 U.S. 566, 569 (1934) (Cardozo, J.) (upholding a state-law fee-shifting provision and noting that "[t]here are systems of procedure neither arbitrary nor unenlightened, and of a stock akin to ours, in which submission to such a burden is the normal lot of the defeated litigant, whether plaintiff or defendant. The taxing master in the English courts may allow the charges of the barrister as well as the fees of the solicitor. Nothing in the Fourteenth Amendment forbids a like procedure here."); *see also Farmland Indus., Inc. v. Frazier-Parrott Commodities,* 111 F.3d 588, 591 (8th Cir. 1997) (rejecting losing party's contention that attorneys' fee exposure "penalizes it for going to court": a fee award "does not bar the door to the courthouse, but simply makes the losing party's trip to the courthouse more expensive").

Representatives on recognition. (Obj. ¶ 9 n.11; Stay Decision at 20-21, 23.) Once the claims vested in a bankruptcy fiduciary, their compromise became governed by the insolvency regime under which the fiduciary acts—Bermuda Companies Act § 175(1)(f), empowering a liquidator to compromise "all claims" of the company "with the sanction … of the court"—subject to this Court's review under sections 1521 and 1522. (Reasons ¶¶ 14-15, 32-33; Br. ¶ 45; Chapman Aff. ¶¶ 29-37, 49, 56-61.) The Bermuda Court so held on the "uncontradicted and clear" analysis of Judge Chapman (which, contrary to the Objection's claim (Obj. ¶ 13(b)), addressed the contentions of Mr. Borghese[18] (Chapman Aff. ¶¶ 34, 48 n.13)): federal bankruptcy law "supersedes any New York law analysis." (Reasons ¶ 32.) And under the Supremacy Clause, the New York Court is bound to give effect to federal law, including an order of this Court recognizing and enforcing the Sanction Order. U.S. Const. art. VI, cl. 2; *Berry v. Rampersad*, 21 Misc. 3d 851, 856-57 (Sup. Ct. Kings Cnty. 2008) (state court obliged under the Supremacy Clause to follow a bankruptcy court's order rather than substitute its own interpretation); (Chapman Aff. ¶ 68; Br. ¶ 78). Should this Court enter the Proposed Order, the New York Court's role on the dismissal application is to give effect to it, not to reopen the Settlement. The Settlement also complies with section 626(d): it pays only the Company,[19] and Judge Chapman opined that, the Supremacy Clause aside, the New York Court would have no reason to withhold approval under section 626(d). (Chapman Aff. ¶¶ 69-71; Br. ¶¶ 45, 78; Reasons ¶ 32.)

### 2. The Sanction Order Applied Federal Bankruptcy Law, Not Bermuda Law, to Authority and Standing, Relying on Judge Chapman's "Clear Analysis."

17. The Objection's central theme is that the Sanction Order "applies Bermuda law to

[18] Mr. Borghese, the New York Plaintiffs' purported New York law expert, is not a New York lawyer (ECF No. 110-5 ¶ 1) and would not qualify as an expert on New York law under Fed. R. Evid. 702.

[19] This is in contrast to the 2015 Partial Settlement, which the First Department set aside because it "does not provide for payment to the company." *Culligan Soft Water Co. v. Clayton Dubilier & Rice, LLC*, 144 A.D.3d 611, 611 (1st Dep't 2016); Br. ¶¶ 25-26, 78 n.23.

matters governed by New York law." (Obj. at 23; *see also id.* ¶¶ 10, 13, 32, 39.) The Reasons Opinion refutes that charge. On the Foreign Representatives' authority to settle, the Bermuda Court held that "upon recognition of the present liquidation proceedings as a foreign main proceeding under 11 USC 1520(a)(3) the joint liquidators were vested with the rights and powers of a bankruptcy trustee over the company's US assets under US federal Bankruptcy law which supersedes any New York law analysis." (Reasons ¶ 32.) On standing, it held that "the relevant standard of pleading would be governed by the requirements of the US Bankruptcy Code." (*Id.* ¶ 34.) On the merits, it stated that it was "not required to decide the ultimate merits of the claim, or conduct a mini-trial of the issues," and that it "does not need to (and does not) make any ultimate findings." (*Id.* ¶¶ 19, 34.) The first two of those conclusions rested on the "clear analysis" of the Chapman Expert Affidavit. (*Id.* ¶¶ 32, 34.) This Court reached the same conclusion three years ago when it held that "[t]he New York Plaintiffs conflate (i) the law that applies to the underlying claims comprising the New York Action with (ii) the authority of a bankruptcy fiduciary to take custody of a debtor's assets." (Stay Decision at 35 n.30.) The Objection's contrary reading rests on paragraph 31 of the Reasons Opinion, which addresses vesting the Company's claims in its liquidators as a matter of Bermuda law (Obj. ¶ 13(b))—a proposition this Court has held is "the same" under U.S. law—while ignoring paragraph 32, which applies federal law. (Stay Decision at 35 n.30; Reasons ¶¶ 31-32.)[20]

18. Nor is there substance to the claim that the Bermuda Court "ignored New York law." (Obj. ¶ 18.) The Bermuda Court reviewed "the background materials," the Morrison and Singler affidavits, and the Chapman Expert Affidavit on New York and federal law, and then

[20] The Objection's further suggestion that the Bermuda Court applied "Bermuda standards as to insolvency" (Obj. ¶ 13(c)) cites paragraph 23 of the Reasons Opinion, which recites the Foreign Representatives' reasons for settling—including that the Company "continued to operate for almost five years" after the 2007 Dividend and "never was insolvent"—and articulates no Bermuda insolvency standard at all. (Reasons ¶ 23.)

evaluated each of the Appearing Parties' six objections—including the contention, advanced through the Borghese Affidavit, that "the joint liquidators have no authority to settle the New York action"—before concluding that none was a "substantial reason" to withhold sanction. (Reasons ¶¶ 2, 28-40; Br. ¶¶ 43-45.)[21]

### 3. The Bermuda Court's Procedures Comport with United States Public Policy under Section 1506.

19. As to the Objection's public policy argument, section 1506 is "narrow," reaches only "the most fundamental policies of the United States," and asks "not whether the actions of the debtor violate public policy, but rather whether the foreign tribunal's procedures and safeguards do not comport with United States public policy." (Recognition Decision at 28-29, 32 (quoting *In re Iida*, 377 B.R. 243, 259 (9th Cir. BAP 2007), and *In re Manley Toys Ltd.*, 580 B.R. 632, 648 (Bankr. D.N.J. 2018), *aff'd*, 597 B.R. 578 (D.N.J. 2019))).

20. Section 1506 does not ask whether the underlying claims allege criminal conduct. The Objection's reference to New York Penal Law § 190.35 and its assertion that the underlying claims "constitute a crime under New York law" (Obj. ¶¶ 8, 15-16, 47) concern the alleged conduct of certain defendants—and are not a consequence of the Sanction Order.[22] *Toft* does not hold otherwise: there the relief ordered by the foreign court was "banned under U.S. law" and "would seemingly result in criminal liability … for those who carried it out." *In re Toft*, 453 B.R. 186, 196-98 (Bankr. S.D.N.Y. 2011). Court approval of a compromise of civil claims (including claims supposedly based on criminal law infractions) violates no law; it is relief a

[21] That the Chapman analysis was unchallenged is the consequence of the Appearing Parties' withdrawal prior to the hearing, not a failure by the Bermuda Court to consider the New York Plaintiffs' own expert opinion.

[22] Although irrelevant under section 1506, the New York Plaintiffs do not suggest that any criminal proceeding was brought against the defendants in the New York Action (none was), and the limitations period has run. *See* N.Y. Penal Law § 190.35 ("[m]isconduct by corporate official is a class B misdemeanor."); N.Y. Crim. Proc. Law § 30.10(2)(c) ("[a] prosecution for a misdemeanor must be commenced within two years after the commission thereof.").

United States bankruptcy trustee obtains routinely. *See* Fed. R. Bankr. P. 9019(a). The Bermuda proceeding afforded notice, an opportunity to present evidence (which was in fact proffered by the New York Plaintiffs), a hearing in which the New York Plaintiffs' objections were considered, and written reasons, and did so in a forum this Court has already refused to treat as "invalid or inferior to domestic courts." (Sanction Order at 1; Reasons ¶¶ 2-3, 45; Stay Decision at 35; *see also* Recognition Decision at 32.)

**4. <u>The Bermuda Proceeding Satisfies the Relevant Standard for Comity</u>.**

21. The Objection's comity argument is based on its repeated invocation of *In re Treco*, 240 F.3d 148 (2d Cir. 2001), for the proposition that "comity has never meant categorical deference to foreign proceedings." (Obj. ¶¶ 38, 63 (quoting *Treco,* 240 F.3d at 157).) That is the same standard the Foreign Representatives invoke. Comity is available where, as here, the foreign proceeding was conducted "according to the course of a civilized jurisprudence, *i.e.* fair and impartial," and where the objector had notice and a fair opportunity to be heard. *In re Rede Energia S.A.*, 515 B.R. 69, 91-92 (Bankr. S.D.N.Y. 2014) (quoting *Toft*, 453 B.R. at 194).

22. Each element is established: the New York Plaintiffs were served, appeared, obtained an extension, submitted evidence, and withdrew; the Bermuda Court held a hearing, reviewed both sides' evidence, applied federal law on authority and standing, and issued written reasons addressing each objection. (Morrison Decl. ¶¶ 32-38; Reasons ¶¶ 2-3, 28-40, 45.) That is the process contemplated when the Court held that disposition of the New York Action would be addressed first by the Bermuda Court, on notice to the New York Plaintiffs, and that Bermuda's procedures, which "differ from that of the U.S.," are not "invalid or inferior to domestic courts." (Stay Decision at 30-31, 35; Br. ¶¶ 41-56.)[23] The Sanction Order is entitled to

[23] *Kiener* and *Treco* (Obj. ¶¶ 9-10, 14, 34-38, 41) apply the same standard to different facts. *Kiener* involved a plaintiff pursuing her own direct wrongful-death claim—not derivative claims belonging to the estate—where the debtors'

comity.

### C. The Injunction and Related Relief Are Authorized, the New York Plaintiffs' Interests Are Sufficiently Protected, and There Is No Basis for Abstention.

#### 1. The Injunction Meets Section 1521(e)'s Standards, and the Objection Does Not Contend Otherwise.

23. The Opening Brief established both elements required for injunctive relief under section 1521(e): likelihood of success (established because recognition is final and the Sanction Order is entitled to comity), and irreparable harm (established because the failure to enjoin local actions would "disrupt the orderly reconciliation of claims and the fair distribution of assets in a single, centralized forum"). (Br. ¶¶ 72-75); *In re Garcia Avila*, 296 B.R. 95, 107, 114 (Bankr. S.D.N.Y. 2003) (quoting 2 Collier on Bankruptcy ¶ 304.05 (15th ed. rev. 2003)); *In re Olinda Star Ltd.*, 614 B.R. 28, 47-48 (Bankr. S.D.N.Y. 2020). The Objection does not respond to that analysis; it argues only that the Foreign Representatives lack control of the New York Action (Obj. ¶¶ 64-70) and that New York law requires a hearing under N.Y. Bus. Corp. Law § 626(d) (*id.* ¶¶ 49, 63, 71). As explained above, both arguments fail. The Objection confirms the need for the injunction. The New York Plaintiffs state that, absent one, they will ask the New York Court to "confirm the New York Plaintiffs' standing and allow the case to proceed" (Obj. ¶ 19), and their counsel has described the object of that effort as ensuring that "the settlement funds will be depleted by the Joint Liquidators, and the case will drag on for several more years." (Second Singler Aff. ¶¶ 52.3-52.4.) The Settlement Payment is conditioned on recognition and enforcement of the Sanction Order. (Settlement Agreement § 1; Morrison Decl. ¶ 27.) *Rede*

costs were "covered by eroding limits insurance" and the case was "nearly ready for trial after four years." *Kiener Maschinenbau GmbH v. Bass*, 808 F. Supp. 3d 1339, 1348-49 (N.D. Ga. 2025). Here, the claims are the Debtor's, the Foreign Representatives' fees are uninsured, and the New York Action remains in the pleading stage after fourteen years—"nowhere close to trial ready." (Stay Decision at 23, 33-34.) The "strong interest" passage the Objection attributes to *Kiener* (Obj. ¶ 35) does not appear in the district court's opinion. *Treco* concerned a secured creditor's own lien, which Bahamian law would have subordinated. *Treco*, 240 F.3d at 157-60; Obj. ¶ 38 n.24.

*Energia* enjoined similar conduct when an objector that lost in Brazil "simply want[ed] another chance" in this country; the Settlement requires the same protection. 515 B.R. at 92-94.

24. The Objection likewise offers no ground to deny the limited stay relief, and only argues improperly, without actually moving, for the stay to be lifted "in full" to allow the New York Action to proceed (Obj. ¶ 71), relief already denied in the Stay Decision. (Stay Decision at 40.) The Foreign Representatives' request is the final step the Court's decision contemplated (*id.* at 31; Br. ¶ 9), sought by the Debtor's court-appointed fiduciaries, who "are under a positive duty to progress the liquidation," to implement a Settlement sanctioned as "on the best available terms." (Reasons ¶¶ 43-44.) The balance of hardships is not close. (Br. ¶ 77.)

**2. Section 1522 Is Satisfied, Because the Interest It "Sufficiently Protects" Is the <u>New York Plaintiffs' Interest as Shareholders</u>.**

25. The Objection repeatedly asserts that the New York Plaintiffs are not "sufficiently protected" by the Settlement and the Sanction Order, without engaging in section 1522's three-part test or the balancing it requires[24]—a test the Opening Brief showed is met. (Br. ¶¶ 67-70.) The Objection argues only that Bermuda's sanction standard is "far less stringent" than section 1522 (Obj. ¶ 42) and that the New York Plaintiffs' "interests are extinguished" (*id.* at 35). The first contention is beside the point: section 1522 is applied by this Court, not by the Bermuda Court, which nonetheless applied its own exacting standard to the Sanction Application, finding that the Foreign Representatives' decision to compromise rested on a genuinely held belief on reasonable grounds, free of partisanship or conflict and of any flawed understanding of fact or law, and that the Settlement confers a discernible benefit on the estate and causes it no harm.

[24] Sufficient protection encompasses (i) the just treatment of all holders of claims against the estate, (ii) the protection of U.S. claimants against prejudice and inconvenience in asserting their claims in the foreign proceeding, and (iii) the distribution of the estate's assets in accordance with priorities consistent with U.S. law. *See In re Markus*, 610 B.R. 64, 76 (Bankr. S.D.N.Y. 2019), *aff'd*, 620 B.R. 31 (S.D.N.Y. 2020).

(Reasons ¶¶ 17-18, 41.) The second argument mistakes whose interests are at stake. The New York Plaintiffs' interest as shareholders is in the distributions the estate can make, and the Settlement increases them: at least $750,000 of the $1,580,000 Settlement Payment is expected to reach non-defendant shareholders, while without the Settlement there is "a likelihood of no return at all." (Reasons ¶¶ 9, 25, 38; Br. ¶¶ 38-39, 68.) The Proposed Order preserves those distribution rights expressly. (Proposed Order ¶ 7.)

**3. Section 1334(c)(2) Has No Application, Because No State-Law Proceeding Is Before This Court and the Motion Is a Core Proceeding.**

26. Finally, the Objection's request that this Court "abstain" under 28 U.S.C. § 1334(c)(2) (Obj. ¶¶ 20, 61 & n.28) fails at the threshold. Mandatory abstention applies only "[u]pon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11," and only where the federal court would otherwise "hear[] such proceeding." *Mt. McKinley Ins. Co. v. Corning Inc.*, 399 F.3d 436, 446 (2d Cir. 2005) (quoting 28 U.S.C. § 1334(c)(2)); *see id.* at 447-48 (mandatory abstention reaches only non-core, "related-to" proceedings). *Mt. McKinley* involved a removed state-court action pending before the federal court. *Id.* at 440. Not only is no state-law proceeding pending before this Court, but the New York Action is not removable to federal court. In any event, the Motion seeks recognition and enforcement of a foreign order and related relief under sections 362(d), 1507, and 1521—a core proceeding under 28 U.S.C. § 157(b)(2)(P). (Br. ¶ 11; Stay Decision at 3.)

WHEREFORE, the Foreign Representatives respectfully request that (i) this Court dismiss the Objection, and (ii) enter the Proposed Order granting the relief requested therein and such other and further relief as the Court may deem just and appropriate.

Dated: New York, New York
September 18, 2026

ALLEGAERT BERGER & VOGEL LLP

By: /s/ David A. Berger

David A. Berger (dberger@abv.com)
David A. Shaiman (dshaiman@abv.com)
Alexander E. Ehrlich (aehrlich@abv.com)

111 Broadway, 20th Floor
New York, New York 10006
T: (212) 571-0550
F: (212) 571-0555

*Counsel to the Foreign Representatives*